**UNITED STATED DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

**LINDA M. LESLIE, Regional Director of the**
**Third Region of the National Labor Relations Board,**
**for and on behalf of the**
**NATIONAL LABOR RELATIONS BOARD**

            Petitioner

      v.                                   **CIVIL Case No. _____**

**STARBUCKS CORPORATION**

            Respondent

**PETITION FOR INJUNCTION UNDER SECTION 10(j)**
**OF THE NATIONAL LABOR RELATIONS ACT, AS AMENDED**

To the Honorable Judges of the United States District Court for the Northern District of New York:

Comes now Linda M. Leslie, Regional Director of the Third Region of the National Labor Relations Board, (Board), and petitions this Court, for and on behalf of the Board, pursuant to Section 10(j) of the National Labor Relations Act, as amended [61 Stat. 149; 73 Stat. 544; 29 U.S.C. Sec. 160(j)], (the Act), for appropriate injunctive relief pending the final disposition of the matters involved herein pending before the Board, based upon the Consolidated Complaint of the General Counsel of the Board, alleging that Starbucks Corporation, (Respondent), has engaged in, and is engaging in, acts and conduct in violation of Section 8(a)(1), (3), (4), and (5) of the Act. In support thereof, Petitioner respectfully shows as follows:

1.      Petitioner is the Regional Director of Region Three of the Board, an agency of the United States, and files this petition for and on behalf of the Board.

2.      Jurisdiction of this Court is invoked pursuant to Section 10(j) of the Act.

3.      As set forth below, Workers United (Union), pursuant to the provisions of the Act, filed with the Board unfair labor practice charges, alleging that Respondent has engaged in, and is engaging in, unfair labor practices with the meaning of Section 8(a)(1), (3), (4), and (5) of the Act. (A copy of each of the original charges and amended charges are attached as Exhibit 1(a)-(hh).) The Union also filed objections to an election conducted in case 03-RC-282128. (A copy of the petition associated with this election is attached as Exhibit 1(ii).)

a.      The charge in Case 03-CA-285671 was filed by the Union on November 4, 2021, and a copy was served on Respondent by U.S. mail on the same date.

b.      The amended charge in Case 03-CA-285671 was filed by the Union on February 24, 2022, and a copy was served on Respondent by U.S. mail on the same date.

c.      The charge in Case 03-CA-290555 was filed by the Union on February 14, 2022, and a copy was served on Respondent by U.S. mail on the same date.

d.      The charge in Case 03-CA-291157 was filed by the Union on February 24, 2022, and a copy was served on Respondent by U.S. mail on the same date.

e.      The charge in Case 03-CA-291196 was filed by the Union on February 24, 2022, and a copy was served on Respondent by U.S. mail on February 25, 2022.

f.      The charge in Case 03-CA-291197 was filed by the Union on February 24, 2022, and a copy was served on Respondent by U.S. mail on the same date.

g.      The charge in Case 03-CA-291199 was filed by the Union on February 25, 2022, and a copy was served on Respondent by U.S. mail on the same date.

h.      The amended charge in Case 03-CA-291199 was filed by the Union on March 2, 2022, and a copy was served on Respondent by U.S. mail on the same date.

i.      The charge in Case 03-CA-291202 was filed by the Union on February 24, 2022, and a copy was served on Respondent by U.S. mail on the same date.

j.      The charge in Case 03-CA-291377 was filed by the Union on March 1, 2022, and a copy was served on Respondent by U.S. mail on the same date.

k.      The charge in Case 03-CA-291378 was filed by the Union on March 1, 2022, and a copy was served on Respondent by U.S. mail on the same date.

l.      The charge in Case 03-CA-291379 was filed by the Union on March 1, 2022, and a copy was served on Respondent by U.S. mail on the same date.

m.      The charge in Case 03-CA-291381 was filed by the Union on March 1, 2022, and a copy was served on Respondent by U.S. mail on the same date.

n.      The charge in Case 03-CA-291386 was filed by the Union on March 1, 2022, and a copy was served on Respondent by U.S. mail on the same date.

o.      The charge in Case 03-CA-291395 was filed by the Union on March 1, 2022, and a copy was served on Respondent by U.S. mail on the same date.

p.      The charge in Case 03-CA-291399 was filed by the Union on March 1, 2022, and a copy was served on Respondent by U.S. mail on the same date.

q.      The charge in Case 03-CA-291408 was filed by the Union on March 1, 2022, and a copy was served on Respondent by U.S. mail on the same date.

r.      The charge in Case 03-CA-291412 was filed by the Union on March 1, 2022, and a copy was served on Respondent by U.S. mail on the same date.

s.      The charge in Case 03-CA-291416 was filed by the Union on March 1, 2022, and a copy was served on Respondent by U.S. mail on the same date.

t.      The charge in Case 03-CA-291418 was filed by the Union on March 1, 2022, and a copy was served on Respondent by U.S. mail on the same date.

u.      The charge in Case 03-CA-291423 was filed by the Union on March 1, 2022, and a copy was served on Respondent by U.S. mail on the same date.

v.      The charge in Case 03-CA-291431 was filed by the Union on March 1, 2022, and a copy was served on Respondent by U.S. mail on the same date.

w.      The charge in Case 03-CA-291434 was filed by the Union on March 1, 2022, and a copy was served on Respondent by U.S. mail on the same date.

x.      The charge in Case 03-CA-291725 was filed by the Union on March 7, 2022, and a copy was served on Respondent by U.S. mail on the same date.

y.      The charge in Case 03-CA-292284 was filed by the Union on March 16, 2022, and a copy was served on Respondent by U.S. mail on the same date.

z.      The amended charge in Case 03-CA-292284 was filed by the Union on March 18, 2022, and a copy was served on Respondent by U.S. mail on the same date.

aa.      The charge in Case 03-CA-293362 was filed by the Union on April 1, 2022, and a copy was served on Respondent by U.S. mail on the same date.

bb.      The charge in Case 03-CA-293469 was filed by the Union on April 4, 2022, and a copy was served on Respondent by U.S. mail on April 5, 2022.

cc.      The charge in Case 03-CA-293489 was filed by the Union on April 4, 2022, and a copy was served on Respondent by U.S. mail on April 5, 2022.

dd.      The charge in Case 03-CA-293528 was filed by the Union on April 5, 2022, and a copy was served on Respondent by U.S. mail on April 6, 2022.

ee.     The amended charge in Case 03-CA-293528 was filed by the Union on April 8, 2022, and a copy was served on Respondent by U.S. mail on the same date.

ff.     The charge in Case 03-CA-293546 was filed by the Union on April 5, 2022, and a copy was served on Respondent by U.S. mail on April 6, 2022.

gg.     The charge in Case 03-CA-294336 was filed by the Union on April 20, 2022, and a copy was served on Respondent by U.S. mail on the same date.

hh.     The charge in Case 03-CA-294341 was filed by the Union on April 20, 2022, and a copy was served on Respondent by U.S. mail on the same date.

ii.     The petition in Case 03-RC-282127 was filed on August 30, 2021, and a copy was served on Respondent by U.S. mail on the same date.

4.     On May 19, 2022, the General Counsel of the Board, by the Regional Director of Region Three of the Board, on behalf of the Board, issued an Order Further Consolidating Cases, Amended Consolidated Complaint and Notice of Hearing Against Respondent in the cases set forth above in paragraph 3(a) through (ii). (A copy of the Amended Consolidated Complaint is attached as Exhibit 2).

5.     There is reasonable cause to believe that the allegations set forth in the Amended Consolidated Complaint are true and that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1), (3), (4), and (5) of the Act and in objectionable conduct in a representation election, affecting commerce within the meaning of Section 2(6) and (7) of the Act.

6.     In support of the Petition, based on information and belief, the Petitioner states that:

a.     At all material times, Respondent has been a corporation with an office and place of business in Seattle, Washington and various locations throughout the United States

including in and around Buffalo, New York (Respondent's Buffalo facilities)[1] and in Rochester, New York,[2] and has been engaged in the retail operation of stores offering coffee and quick-service food.

      b.    Annually, Respondent, in conducting its business operations described above in paragraph 6(a), derives gross revenues in excess of $500,000.

      c.    Annually, Respondent purchases and receives at each of its Buffalo facilities and its Rochester facility products, goods, and materials valued in excess of $5,000 directly from points outside the State of New York.

      d.    At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

      e.    At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

      f.    At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

          David Almond      —      Store Manager

---

[1] Respondent's Buffalo facilities are located at 520 Lee Entrance, Buffalo, NY 14228 (UB Commons store); 1703 Niagara Falls Blvd., Buffalo, NY 14228 (NFB store); 8100 Transit Rd., Suite 100, Williamsville, NY 14221 (Transit & Maple store); 933 Elmwood Ave., Buffalo, NY 14222 (Elmwood store); 235 Delaware Ave., Buffalo, NY 14202 (Delaware & Chippewa store); 3540 McKinley Pkwy, Buffalo, NY 14219 (McKinley store); 4770 Transit Rd., Depew, NY 14043 (Transit & French store); 2730 Delaware Ave., Buffalo, NY 14216 (Delaware & Kenmore store); 5395 Sheridan Dr., Buffalo, NY 14221 (Williamsville Place store); 9660 Transit Rd., Suite 101, East Amherst, NY 14051 (Transit Commons store); 4255 Genesee St., Suite 100, Cheektowaga, NY 14225 (Genesee Street store); 3235 Southwestern Blvd., Orchard Park, NY 14127 (Orchard Park store); 5120 Camp Rd., Hamburg, NY 14075 (Camp Road store); 5265 Main St., Williamsville, NY 14221 (Main Street store); 1 Walden Galleria K-04, Cheektowaga, NY 14225 (Galleria kiosk); 1775 Walden Ave., Cheektowaga, NY 14225 (Walden & Anderson store); 5590 Niagara Falls Blvd., Niagara Falls, NY 14304 (Niagara Falls store); 6707 Transit Rd. #100, Buffalo, NY 14221 (Transit Regal store); 3186 Sheridan Dr., Buffalo, NY 14226 (Sheridan & Bailey store); 3015 Niagara Falls Blvd., Amherst, NY 14228 (East Robinson store); 3611 Delaware Ave., Tonawanda, NY 14217 (Delaware & Sheridan store).
[2] Respondent's Rochester facility is located at 2750 Monroe Avenue, Rochester, NY 14618 (Respondent's Rochester facility).

Julie Almond     —     Store Manager

Aimee Alumbaugh     —     Support Manager

Taylor Alviar     —     Support Manager

Ray Ballard     —     Store Manager

Andy Behrend     —     Store Manager

Amber Bogges     —     Support Manager

Brittany Cahill     —     District Manager

Greta Case     —     District Manager

Nathalie Cioffi     —     Partner Resources Director

Lukeitta Clark     —     Store Manager

Tori Clow     —     Hourly Recruiter

Mallori Coloumbe     —     District Manager

Gavin Crawford     —     Support Manager

Louis Defoe     —     Support Manager

Joe DePonceau     —     Store Manager

Tracie Desjardins     —     District Manager

Michael Donovan     —     Assistant Store Manager

Heather Dow     —     Support Manager

| Bonnie Elster | — | Facilities Services Manager |
|---|---|---|
| Kate Fenton | — | Human Resources Manager |
| Emily Filc | — | Partner Resources Manager |
| David Fiscus | — | Store Manager |
| Melissa Garcia | — | Assistant Store Manager/Store Manager |
| Sebastian Garcia | — | Support Manager |
| Shannon Garcia | — | Senior Vice President, U.S. Operations |
| Ana Gutierrez | — | Regional Operations Coach |
| Kelleigh Hanlon | — | Support Manager |
| Mary Harris | — | Support Manager |
| Josie Havens | — | Support Manager |
| Joana Hernandez | — | Support Manager |
| Robert Hernberger | — | Support Manager |
| Robert Hunt | — | Store Manager |
| Kevin Johnson | — | President and Chief Executive Officer |
| Melanie Joy | — | Partner Resource Manager |
| Ashley Justus | — | Support Manager |
| Jodi Keller | — | Store Manager |
| Kathleen Kelly | — | Partner Resources Manager |

| | | |
|---|---|---|
| Marsh King | — | Support Manager |
| Holly Klein | — | Partner Resources Manager |
| Matt Lavoie | — | Support Manager |
| David LeFrois | — | District Manager |
| Tricia Lowder | — | District Manager |
| Tiffany Mann | — | Support Manager |
| Lion Mendoza | — | Support Manager |
| Kristina Mkrutumyan | — | District Manager |
| Adam Modzel | — | Director, U.S. Community Engagement |
| Adrian Morales | — | Support Manager |
| David Morales | — | Store Manager |
| Matthew Moreale | — | Store Manager |
| Jack Morton | — | Support Manager |
| Sarah Muntz | — | Support Manager |
| Michaela Murphy | — | District Manager |
| Romalie Murphy | — | Support Manager |
| Dimas Nava | — | Support Manager |
| Denise Nelson | — | Senior Vice President, U.S. Operations |

| | | |
|---|---|---|
| Allyson Peck | — | Regional Vice President, Northeast Region |
| Elizabeth Pool | — | Store Manager |
| Katherine Posey | — | Support Manager |
| Johnathan Prime | — | Store Manager |
| Taylor Pringle | — | Support Manager |
| Deanna Pusatier | — | Regional Director |
| Marcus Rainford | — | District Manager |
| Robert Rankin | — | Store Manager |
| Tanner Rees | — | Assistant Store Manager/Store Manager |
| J. Carlos Rodriguez | — | Partner Resources Director |
| Kim Roewer | — | Store Manager |
| Kelly Roupe | — | Support Manager |
| Alex Roux | — | Support Manager |
| Lori Ruffin | — | Hourly Recruiter |
| Amy Ruiz | — | Support Manager |
| Brittney Sanders | — | Office Manager |
| Tito Santiago | — | Area Operations Coach |
| Alyssa Schieda | — | Assistant Store Manager/Store Manager |

| | | |
|---|---|---|
| Howard Schultz | — | Chairman/Interim CEO |
| Patricia Shanley | — | Store Manager |
| Gina Sterling | — | District Manager |
| Chris Stewart | — | Partner Resources Leader |
| Derek Sveen | — | Support Manager |
| Mark Szto | — | District Manager |
| Dustin Taylor | — | Support Manager |
| Ashlyn Tehoke | — | Assistant Store Manager/Acting Store Manager |
| Nicholas Tollar | — | Store Manager |
| Richard Tran | — | Support Manager |
| Sarah Tromp | — | Support Manager |
| Sonia Velasquez | — | Store Manager |
| Rossann Williams | — | Executive Vice President/President North America |
| Christopher Wright | — | Store Manager |
| Christine Winnett | — | Store Manager |
| Shelby Young | — | District Manager |
| Tina Zunner | — | Store Manager |
| Avery (unknown) | — | Support Manager |

| | | |
|---|---|---|
| David (unknown) | — | District Manager |
| Fred (unknown) | — | Support Manager |
| Jared (unknown) | — | Support Manager |
| Jen (unknown) | — | Support Manager |
| Joe (unknown) | — | Support Manager |
| Jody (unknown) | — | Store Manager |
| Katie (unknown) | — | Support Manager |
| Kevin (unknown) | — | Support Manager |
| Louis (unknown) | — | Support Manager |
| Taylor (unknown) | — | Support Manager |
| Vania (unknown) | — | Support Manager |
| Valerie (unknown) | — | Support Manager |

7.     In support of the Petition, based on information and belief, the Petitioner further states that:

a.     Respondent, by the individuals named below, about the dates opposite their names, at Respondent's store located at 5120 Camp Road, Hamburg, New York 14075 ("Camp Road store") by soliciting employee complaints and grievances, promised its employees increased benefits and improved terms and conditions of employment if they refrained from union organizational activity:

| Agent(s) | | Date |
|---|---|---|
| (i) | Fiscus | August 23, 2021 |
| (ii) | Fiscus | Late August 2021 |
| (iii) | Williams | About late August |
| (iv) | Peck, Pusatier, and Williams | September 9, 2021 |
| (v) | Peck, Pusatier, and Williams | September 10, 2021 |
| (vi) | Peck, Pusatier, and Williams | September 15, 2021 |

b.      Respondent, by the individuals named below, about the dates opposite their names, at Respondent's store located at 4255 Genesee Street, Suite 100, Cheektowaga, New York 14225 (Genesee Street store), by soliciting employee complaints and grievances, promised its employees increased benefits and improved terms and conditions of employment if they refrained from union organizational activity:

| Agent(s) | | Date |
|---|---|---|
| (i) | LeFrois | August 24, 2021 |
| (ii) | Peck, Pusatier, and Williams | September 9, 2021 |
| (iii) | Peck, Pusatier, and Williams | September 10, 2021 |
| (iv) | Peck, Pusatier, and Williams | September 16, 2021 |
| (v) | Williams | October 24, 2021 |

c.      Respondent, by the individuals named below, about the dates opposite their names, at Respondent's store located at 4770 Transit Road, Depew, NY 14043 (Transit & French store), by soliciting employee complaints and grievances, promised its employees increased benefits and improved terms and conditions of employment if they refrained from union organizational activity:

13

| Agent(s) | | Date |
|---|---|---|
| (i) | Mkrtumyan | September 2021 |
| (ii) | Morton | September 2021 |
| (iii) | Mkrtumyan | October 2021 |

        d.      Respondent, by the individuals named below, about the dates opposite their names, at Respondent's store located at 8100 Transit Road, Suite 100, Williamsville, NY 14221 (Transit & Maple store), by soliciting employee complaints and grievances, promised its employees increased benefits and improved terms and conditions of employment if they refrained from union organizational activity:

| Agent(s) | | Date |
|---|---|---|
| (i) | Mkrtumyan, M. Murphy, and Williams | September 2021 |
| (ii) | Peck | September 2021 |

        e.      About September 2021, Respondent, by Murphy, Mkrtumyan, and Hunt, at Respondent's store located at 235 Delaware Ave., Buffalo, NY 14202 (Delaware & Chippewa store), by soliciting employee complaints and grievances, promised its employees increased benefits and improved terms and conditions of employment if they refrained from union organizational activity.

        f.      Respondent, by the individuals named below, about the dates opposite their names, at Respondent's store located at 5165 Main Street, Williamsville, New York 14221 (Main Street store), by soliciting employee complaints and grievances, promised its employees increased benefits and improved terms and conditions of employment if they refrained from union organizational activity:

| Agent(s) | | Date |
|---|---|---|
| (i) | Filc, Pusatier, and Williams | September 2, 2021 |
| (ii) | Filc, Pusatier, and Williams | September 2, 2021 |
| (iii) | Cioffi, Filc, Pusatier, and Williams | September 3, 2021 |
| (iv) | Nelson, Pusatier, and Williams | September 2021 |

g.     Respondent, by the individuals named below, about the dates opposite their names, at Respondent's store located at 933 Elmwood Avenue, Buffalo, NY 14222 (Elmwood store), by soliciting employee complaints and grievances, promised its employees increased benefits and improved terms and conditions of employment if they refrained from union organizational activity:

| Agent(s) | | Date |
|---|---|---|
| (i) | Williams | September 4, 2021 |
| (ii) | Peck, Pusatier, and Williams | September 9, 2021 |
| (iii) | Peck, Pusatier, and Williams | September 10, 2021 |
| (iv) | Peck, Pusatier, and Williams | September 19, 2021 |
| (v) | Mkrutumyan, M. Murphy, and Young | November 8, 2021 |

h.     About September 20, 2021, Respondent, by Modzel and Pusatier, at Respondent's store located at 3235 Southwestern Boulevard, Orchard Park, NY 14127 (Orchard Park store), by soliciting employee complaints and grievances, promised its employees increased benefits and improved terms and conditions of employment if they refrained from union organizational activity.

i.     Respondent, by the individuals named below, about the dates opposite their names, at Respondent's store located at 5395 Sheridan Dr., Buffalo, NY 14221 (Williamsville Place store), by soliciting employee complaints and grievances, promised its employees increased

benefits and improved terms and conditions of employment if they refrained from union organizational activity.

| Agent(s) | | Date |
|---|---|---|
| (i) | Modzel, Peck, and Williams | September 22, 2021 |
| (ii) | Coloumbe and Peck | October 12, 2021 |

j. Respondent, by the individuals named below, about the dates opposite their names, at Respondent's store located at 6707 Transit Rd. #100, Buffalo, NY 14221 (Transit Regal store), by soliciting employee complaints and grievances, promised its employees increased benefits and improved terms and conditions of employment if they refrained from union organizational activity:

| Agent(s) | | Date |
|---|---|---|
| (i) | Keller and Rees | August 24, 2021 |
| (ii) | Pusatier and Williams | September 22, 2021 |
| (iii) | Modzel and Stewart | September 29, 2021 |

k. About end of September or early October 2021, Respondent, by Modzel, Pusatier, and Williams., at Respondent's Buffalo facility located at 9660 Transit Rd., Suite 101, East Amherst, NY 14051 (Transit Commons store), by soliciting employee complaints and grievances, promised its employees increased benefits and improved terms and conditions of employment if they refrained from union organizational activity.

l. Respondent, by the individuals named below, about the dates opposite their names, at Respondent's store located at 6707 Transit Rd. #100, Buffalo, NY 14221 (Transit Regal store), by soliciting employee complaints and grievances, promised its employees increased benefits and improved terms and conditions of employment if they refrained from union organizational activity:

| Agent(s) | | Date |
|---|---|---|
| (iv) | Keller and Rees | August 24, 2021 |
| (v) | Pusatier and Williams | September 22, 2021 |
| (vi) | Modzel and Stewart | September 29, 2021 |

8.      In support of the Petition, based on information and belief, the Petitioner further states that:

a.      Respondent, by the individuals named below, about the dates opposite their names, at the Williamsville Place store, promised employees the following if they refrained from union organizational activity.

| Agent(s) | | Date | Promise |
|---|---|---|---|
| (i) | Modzel | September 28, 2021 | Extensive store renovation |
| (ii) | Modzel | September 28, 2021 | Conversion to a drive-thru and mobile ordering store |
| (iii) | Unnamed agent of Respondent | October 2021 | Extensive store renovation |

b.      About October 2021, Respondent, by J. Almond, at the Main Street store, by announcing that mental health counselors would be available for in-person consultations, promised its employees increased benefits and improved terms and conditions of employment if they refrained from union organizational activity.

c.      About October 2021, Respondent, by D. Almond, at the Transit and Commons store, informed employees that a seniority-based wage increase was granted in response to organizing efforts.

d.      About October 1, 2021, Respondent, by Peck and Szto, at the Elmwood store, promised its employees increased benefits and improved terms and conditions of employment if they refrained from union organizational activity.

e.      About October 27, 2021, Respondent announced an increase in benefits by informing employees it would be granting a seniority-based wage increase to all of its United States-based employees.

f.      About November 6, 2021, Respondent, by Peck, at a meeting for employees of all Respondent's Buffalo facilities, by promising improved working conditions and benefits, promised an increase in benefits to its employees.

g.      About November 6, 2021, Respondent, by Schultz, at a meeting for employees of all Respondent's Buffalo facilities, promised an increase in benefits of its employees at the Buffalo facilities.

h.      About November 2021 or December 2021, Respondent, by Dustin Taylor, at the Elmwood store, by promising an extensive store renovation, has been promising an increase in benefits to its employees.

i.      Since about December 2021, Respondent, by Mkrtumyan, at the Transit & French store, by repeatedly promising to expand the size of the store, has been promising an increase in benefits to its employees.

9.      In support of the Petition, based on information and belief, the Petitioner states that:

a.      About late August 2021, Respondent, by D. Almond, at the Transit Commons store, by photographing an employee wearing a union pin, engaged in surveillance of employees engaged in union activities.

b.      Since about September 2021, Respondent has been more closely supervising, monitoring, or creating an impression among its employees that their union activities were under surveillance by, at Respondent's Buffalo facilities, stationing support managers at all stores.

        c.     Since about September 2021, Respondent has been more closely supervising, monitoring, or creating an impression among its employees that their union activities were under surveillance by, at Respondent's Buffalo facilities, having high-ranking officials of Respondent, including Cioffi, Filc, Garcia, Modzel, Nelson, Peck, Pusatier, and Williams, make unprecedented and repeated visits to each store.

        d.     Since about September 2021, Respondent has been more closely supervising, monitoring, or creating the impression among employees that their union activities were under surveillance by, at Respondent's Buffalo facilities, scheduling managers at the store during all operational hours.

        e.     About September 13, 2021, Respondent, by Filc, more closely supervised, monitored, or created an impression among its employees that their union activities were under surveillance by, at Respondent's Buffalo facilities, removing the ability of store managers to hire employees thereby increasing their ability to surveille their employees' union activities.

        f.     Since about September 15, 2021, Respondent, by the individuals named below, at the locations opposite their names/titles, by monitoring employees' conversations on headsets, has been engaging in surveillance of employees' union activities:

| Agent(s) | Location |
|---|---|
| (i)  Pringle/Support Managers | Camp Road store |
| (ii)  Support Managers | Transit & French store |
| (iii)  Support Managers | Genesee Street store |
| (iv)  Support Managers | Sheridan & Bailey store |

        g.     About November 2021, Respondent, by Shanley, at the Elmwood store, interrogated an employee about wearing a union pin.

h.      About February 25, 2021, Respondent, by Scheida, at the Transit & French store, interrogated employee Angel Krempa about passing out union pins to coworkers.

10.     In support of the Petition, based on information and belief, the Petitioner states that:

a.      About September 2021, by changing its training policy such that all newly hired employees at Respondent's Buffalo facilities would be trained at a single training facility, Respondent remedied grievances it solicited and also increased benefits to employees.

b.      Since September 2021, by hiring additional employees for Respondent's Buffalo facilities, Respondent has been remedying grievances it solicited about staffing shortages and also increased benefits to employees.

c.      Since September 2021, by making facilities improvements to Respondent's Buffalo facilities, Respondent has been remedying grievances it solicited and increased benefits to employees.

d.      Since September 2021, by permitting shift supervisors of its Buffalo facilities to disable mobile ordering, Respondent has been increasing benefits to employees.

e.      Since about September 2021, by offering additional hours to employees at the Transit & French store, Respondent has been increasing benefits to employees.

f.      Since about September 2021, by authorizing additional hours of labor per week at the Transit Commons store, Respondent has been increasing benefits to employees.

g.      Since about September 2021, by permitting shift supervisors to close the café at Respondent's Buffalo facilities, Respondent has been increasing benefits to employees.

h.      Since September 2021, by permitting shift supervisors to close the Main Street store, Respondent has been increasing benefits to employees.

i.      About September 2021, by removing and replacing both district managers overseeing Respondent's Buffalo facilities, Respondent remedied grievances it solicited regarding those managers and increased benefits of its employees.

j.      Respondent, about the dates listed below, by renovating the stores listed below, remedied grievances it solicited and increased benefits to employees.

| Date | | Location |
|---|---|---|
| (i) | September 2021 | Transit & French store |
| (ii) | Late September 2021 | Camp Road store |
| (iii) | September to October 2021 | Respondent's store located at 1703 Niagara Falls Blvd., Buffalo, NY 14228 (NFB store) |
| (iv) | October 2021 | Transit & Maple |
| (v) | Early October 2021 | Transit Commons store |
| (vi) | Mid-October 2021 | Genesee Street store |
| (vii) | Mid-October 2021 | Transit Regal |
| (viii) | October 13, 2021 | Sheridan & Bailey |
| (ix) | October 11-17, 2021 | Elmwood store |
| (x) | Late October 2021 | Williamsville Place store |
| (xi) | December 5-19. 2021 | Transit Commons store |
| (xii) | Early December 2021 to present | Respondent's store located at 3540 McKinley Pkwy, Buffalo, NY 14219 (McKinley store) |
| (xiii) | January 2022 | Delaware & Chippewa store |

k.      Respondent, about the dates listed below, at the locations listed below, by making the following improvements, remedied grievances it solicited and increased benefits to employees:

|  | Date | Location | Improvement |
|---|---|---|---|
| (i) | September 2021 | Elmwood store | Removed carpet from backroom |
| (ii) | September 2021 | Sheridan & Bailey store | Upgraded equipment |
| (iii) | September 2021 | Main Street store | Resolved insect control issues |
| (iv) | September 2021 | Respondent's store located at 520 Lee Entrance, Buffalo, NY 14228 (UB Commons store) | Upgraded equipment |
| (v) | September 2021 | Respondent's store located at 1775 Walden Avenue, Cheektowaga, New York 14225 (Walden & Anderson store) | Resolved insect control issues |
| (vi) | September 2021 | Orchard Park store | Made repairs |
| (vii) | Late September 2021 | Camp Road store | Resolved insect control issues, replaced sink and toilet, and installed new flooring |
| (viii) | December 2021 | Sheridan & Bailey store | Replaced computers and point-of-sale system |
| (ix) | December 2021 | UB Commons store | Renovated storage room and installed signage regarding mobile orders, new flooring, and a pest control device |

l.      About September 15, 2021, by removing Fiscus as a store manager of the Camp Road store, Respondent remedied grievances it solicited and increased benefits of its employees.

m.      About September 20, 2021, by removing Wright as a store manager of the Genesee Street store, Respondent remedied grievances it solicited and increased benefits of its employees.

n.      About early October 2021, by arranging shift supervisor training for employee Angel Krempa, Respondent remedied grievances it solicited and increased benefits to employees.

o.      About early October 2021, by removing an employee from the Transit & French store, Respondent remedied grievances it solicited and increased benefits to employees.

p.      About October 2021, by Williams, by ensuring that schedules were posted more quickly at the Genesee Street store, Respondent remedied grievances it solicited and increased benefits to employees.

q.      About November 2021, by changing its training policy such that all newly hired employees at Respondent's Buffalo facilities would be trained at one of three training stores, Respondent remedied grievances it solicited and increased benefits to employees.

r.      About November 8, 2021, by permanently disabling mobile ordering at the Walden & Anderson store, Respondent remedied grievances it solicited and increased benefits to employees.

s.      About January 2022, Respondent increased the benefits of its employees by implementing a seniority-based wage increase to all its United States-based employees.

t.      Respondent engaged in the conduct described above in paragraph 10(a) through (s) because employees of Respondent formed the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

11.      In support of the Petition, based on information and belief, the Petitioner further states that:

a.      About September 15, 2021, Respondent, by Pusatier, at the Camp Road store, by stating that managers would be unable to assist employees on the floor of their stores,

threatened its employees with loss of a benefit if they selected the union as their bargaining representative.

      b.      Respondent, by the individuals named below, about the dates and at the locations opposite their names, threatened its employees with loss of a direct relationship with management if they selected the union as their bargaining representative:

| Agent(s) | | Date | Location |
|---|---|---|---|
| (i) | Williams | September 15, 2021 | Elmwood store |
| (ii) | Pusatier and Williams | September 15, 2021 | Camp Road store |
| (iii) | Peck | September 19, 2021 | Elmwood store |
| (iv) | Unidentified agent of Respondent | Late September 2021 | Main Street store |
| (v) | Nelson | November 8, 2021 | Elmwood store |

      c.      Respondent, by the individuals named below, about the dates and at the locations opposite their names, by telling employees they would lose the right to pick up shifts at other stores, threatened its employees with the loss of a benefit if they selected the union as their bargaining representative.

| Agent(s) | | Date | Location |
|---|---|---|---|
| (i) | Williams | September 15, 2021 | Camp Road store |
| (ii) | Pusatier | September 16, 2021 | Genesee Street store |
| (iii) | Fenton | September 28, 2021 | Williamsville Place store |
| (iv) | Unidentified agent of Respondent | Late September 2021 | Main Street store |

      d.      Respondent, by the individuals named below, about the dates and at the locations opposite their names, threatened that managers would be unable to assist employees on the floor of their stores if employees selected the union as their bargaining representative.

| | Agent(s) | Date | Location |
|---|---|---|---|
| (i) | Shanley | August 2021 | Elmwood store |
| (ii) | Unidentified Agent of Respondent | Late September 2021 | Main Street |

   e.  About September 15, 2021, Respondent, by Williams, at the Camp Road store, threatened its employees that Respondent would not offer additional benefits in a contract with the Union.

   f.  About September 16, 2021, Respondent, by Williams, at the Genesee Street store, by telling employees that Respondent would lose the ability to offer new benefits or act quickly during exigent circumstances, threatened its employees with the loss of a benefit if they selected the union as their bargaining representative.

   g.  About September 2021, Respondent, by DePonceau, at the Transit & Maple store, threatened its employees with discipline for engaging in protected concerted activity.

   h.  About October 2021, Respondent, by Hunt, at the Delaware & Chippewa store, threatened to impose more onerous and rigorous terms and conditions of employment on its employees by announcing a minimum availability requirement.

   i.  About February 8, 2022, Respondent, by Dow, at the Delaware & Chippewa store, threatened employees would not get raises if they selected the union as their bargaining representative.

   12.  In support of the Petition, based on information and belief, the Petitioner further states that:

   a.  At all material times, Respondent has maintained the following rule:

   <u>Prohibition Against Harassment</u>

    Harassment includes conduct that creates an intimidating, disrespectful, degrading, offensive, or hostile working environment. Starbucks prohibits harassment based on race, color,

25

religion and religious creed, national origin or place of origin, sex (including pregnancy, childbirth, breastfeeding or related medical conditions), physical or mental disability, age, protected military or veteran status, sexual orientation, gender identity, gender expression, transgender status, genetic information, legally protected medical condition, marital or domestic partner status, status as a victim of domestic violence (including sexual assault or stalking), or any other basis protected by applicable law.

The prohibition against harassment, including sexual harassment and bullying, applies to our partners. Starbucks also prohibits harassment against a job applicant, or harassment against a partner by non-partners, including vendors, suppliers or customers. Any partner who engages in harassment, including sexual harassment and bullying, in violation of this policy will be subject to disciplinary action, up to and including separation from employment. Detailed information about harassment follows.

Harassing conduct can take many forms and may include, but is not limited to, the following:

1. Physical harassment such as touching, kissing, or groping

2. Verbal harassment such as threats, degrading comments, epithets, slurs, sexual teasing, and requests for sexual favors

3. Nonverbal harassment such as obscene gestures or leering

4. Written communications, including but not limited to letters, emails, text messages, or social media posts that could offend individuals in a particular group, such as references to racial or ethnic stereotypes or caricatures

5. Derogatory posters, electronic images, photographs, cartoons, drawings or gestures, or pornographic materials

6. The improper use of authority to endanger or undermine a partner's job, job performance or career at Starbucks

7. Harassment involving workplace violence or a threat of violence (refer to Workplace Violence section in this guide for additional information)

b.    At all material times, Respondent has maintained the following rule:

<u>A Respectful Workplace Is Everyone's Responsibility</u>

1.  Refrain from any conduct that could be construed as discrimination, harassment, bullying or retaliation.

2.  Treat others with respect and dignity. Everyone at Starbucks, including partners and customers, should feel welcomed and safe.

3.  Keep the workplace professional at all times.

4.  Draw early attention to unwelcome or offensive conduct by informing the offending person to stop, if comfortable doing so.

5.  If experiencing or becoming aware of conduct that violates the respectful workplace policies, immediately report concerns to a store manager, district manager, the Partner Resources Support Center, or to Ethics & Compliance.

c.    At all material times, Respondent has maintained the following rule:

<u>How We Communicate</u>

Partners are expected to communicate with other partners and customers in a professional and respectful manner at all times. The use of vulgar or profane language is not acceptable.

d.    At all material times, Respondent has maintained the following rule:

<u>Corrective Action</u>

In cases of serious misconduct, immediate separation from employment may be warranted. Examples of serious misconduct include, but are not limited to:

- Violation of safety and/or security rules.
- Theft or misuse of company property or assets.
- Falsification or misrepresentation of any company document.
- Violation of Starbucks drug and alcohol policy.
- Possession of or use of firearms or other weapons on company property.
- Harassment or abusive behavior toward partners, customers or vendors.
- Violence or threatened violence.
- Insubordination (refusal or repeated failure to follow directions).
- Violation of any other company policy.

e.     At all material times, Respondent has maintained the following rule:

<u>Dress Code & Personal Appearance</u>

Shirts may have a small manufacturer's logo, but must not have other logos, writings or graphics. The base shirt color must be within the color palette (black, gray, navy blue, brown, khaki or white). These same colors may be the base color for a subdued, muted pattern. Starbucks®-issued promotional shirts may be worn for events or when still relevant for product marketing.

Solid-color sweaters or jackets within the color palette may be worn. Other than a small manufacturer's logo, outerwear must not have logos or writings.

Partners may only wear buttons or pins issued to the partner by Starbucks for special recognition or for advertising a Starbucks-sponsored event or promotion; and one reasonably sized and placed button or pin that identifies a particular labor organization or a partner's support for that organization, except if it interferes with safety or threatens to harm customer relations or otherwise unreasonably interferes with Starbucks public image. Pins must be securely fastened.

Partners are not permitted to wear buttons or pins that advocate a political, religious or personal issue.

f.   At all material times, Respondent has maintained the following rule:

<u>Personal Mobile Devices; Personal Telephone Calls and Mail</u>

Partners are not permitted to send or receive text messages using personal mobile devices while working. In addition, if a partner needs to contact the manager during nonworking hours (e.g., partner is unable to report for work), the partner must call the manager rather than send a text message

Partners are not permitted to receive personal telephone calls at the store, unless the nature of the call is an emergency. Personal telephone calls may be made only while on break, from the store's back room or office, and only if absolutely necessary and without disrupting store operations…

g.   At all material times, Respondent has maintained the following rule:

<u>Soliciting/Distributing Notices</u>

Partners are prohibited from distributing or posting in any work areas any printed materials such as notices, posters or leaflets. Partners are further prohibited from soliciting other partners or non-partners in stores or on company premises during working time or the working time of the partner being solicited. The only exception that may apply is when a partner is engaged in distribution or solicitation related to a Starbucks-sponsored event or activity.

Persons not employed by Starbucks are at all times prohibited from selling, soliciting, distributing or posting written materials on company premises. If inappropriate solicitation occurs in a store by a non-partner, a partner should politely ask the nonpartner to stop or leave the store.

h.   At all material times, Respondent has maintained the following rule:

<u>Attendance and Punctuality</u>

A partner's reliability in reporting to work when scheduled and on time is essential to a store's efficient operations and in providing customers with the Starbucks Experience.

If a partner cannot report to work as scheduled or will be late to work, the partner must call and speak directly with the store manager or assistant store manager with as much advance notice as possible prior to the beginning of the shift. If a manager is not in the store, the partner should notify the partner leading the shift. Leaving a message or note without first making reasonable attempts to directly contact a manager or the partner leading the shift is not acceptable. Sending an email or a text message is not an acceptable form of providing notice.

*Responsibility for Finding a Substitute*: Planned time off, such as for a vacation day, must be approved in advance by the manager. If a partner will be unable to report to work for a scheduled shift and knows in advance, it is the partner's responsibility to notify the store manager or assistant store manager and for the partner to arrange for another partner to substitute.

In the event of an unplanned absence, e.g., the sudden onset of illness, injury or emergency, or when the partner is using paid sick leave allowable by law, the partner will not be held responsible for finding a substitute. The partner is still responsible for notifying the store manager or assistant store manager (or partner leading the shift if the manager is not in the store) of the absence prior to the beginning of the shift so coverage can be arranged if needed.

Failure to abide by this policy may result in corrective action, up to and including separation from employment. Some examples of failure to follow this policy include irregular attendance, one or more instances of failing to provide advance notice of an absence or late arrival, or one or more instances of tardiness.

Under certain circumstances, inability to work due to a medical condition may entitle a partner to a leave of absence. (*Refer to the "Time Away from Work" section of this guide for more information.*)

i.   At all material times, Respondent has maintained the following rule:

<u>Partners Not Working While Ill</u>

A partner who is experiencing symptoms such as vomiting, diarrhea, jaundice, sore throat with fever, or a medically diagnosed communicable disease must notify the manager. The manager will determine whether work restrictions apply.

j.   At all material times, Respondent has maintained the following rule:

<u>COVID LOG</u>

Use this log to validate that all partners have completed the mandatory pre-check and are ready and able to work their shift. Store managers and Play Callers must take their own temperature and have another partner in the store verify they completed all steps. Any Starbucks partner including, DMs, RDs, etc., that visit your store for work purposes must also complete all monitoring your health steps via the Quick Connect before working in your store.

- When a partner arrives, the Play Caller will ask the partner to complete the pre-check steps:

    1.  Partner takes own temperature and shows the Play Caller whether it is above or below 100.4 F / 38 C. If a thermometer is unavailable, ask the partner if they feel feverish (chills or sweating); if they are feeling feverish and has not been vaccinated within the last three days, send the partner home immediately.

    2.  Partner navigates through the COVID-19 Virtual Coach and receives a message the partner should not come to work OR partner may return to work, and shows the message to the Play Caller.

- The Play Caller will log the results as 'Yes' or 'No' on the *Partner Pre-Check Log* below.

- If the partner's temperature is 38 C or 100.4 F or higher send the partner home immediately.

- If the partner receives a message of partner should not come to work from COVID-19 Virtual Coach, send the partner home immediately and let the store manager know the next steps and pay options.

- When complete, store this log in the binder where other Health Department and *Food Safety Assessments* are located.

k.   At all material times, Respondent has maintained the following rule:

<u>Free Food Item and Beverages While Working</u>

A store partner may consume—free of charge—one food item and any coffee, tea or blended beverages while on break during the partner's scheduled shift or during the 30 minutes prior to or after the partner's scheduled shift. The food benefit of one item per shift includes bakery, breakfast sandwiches, oatmeal and lunch items such as bistro boxes, salads and sandwiches.

The store partner food and beverage benefit is available at the store in which the partner is working for the partner's personal consumption only; partners may not give away their partner food items or beverages to any other individuals. A partner may not receive more than one free beverage at a time and may not order multiple free beverages after the shift ends. The partner beverage may not be consumed while the partner is actually working, but only while on a rest or meal break. Additionally, partners are required to wait in line with other customers to receive their partner food items or beverages, and another partner should ring out each partner's item(s).

l.   Since about September 2021, Respondent has been enforcing the rules described above in paragraph 12(a) through (k) selectively and disparately by applying it more strictly against employees who formed, joined, or assisted the Union.

13.     In support of the Petition, based on information and belief, the Petitioner further states that:

a.     About September 2021, Respondent temporarily closed and then extended the closure of the Walden & Anderson store.

b.     About September 2021, Respondent temporarily closed and then permanently closed its Buffalo facility located at 1 Walden Galleria K-04, Cheektowaga, New York 14225 (Galleria kiosk).

c.     About September 2021, by transferring responsibility for hiring employees from store managers at its Buffalo facilities to dedicated recruiters, Respondent withdrew benefits of its employees.

d.     Since September 2021, by centralizing training for Respondent's Buffalo facilities, Respondent withdrew benefits of its employees.

e.     About October 2021, by transferring responsibility for scheduling employees to support managers at the Elmwood store, Respondent withdrew benefits of its employees at that store.

f.     About October 2021, by transferring responsibility for promoting employees from Shanley to support managers at the Elmwood store, Respondent withdrew benefits of its employees at that store.

g.     About November 2021, by transferring responsibility for scheduling employees to support managers at the Williamsville Place store, Respondent withdrew benefits of its employees at that store.

h.     About November 15, 2021, Respondent, by Hernberger and Mkrtumyan, by rescinding a promise to convert the Williamsville Place store to a drive-thru and mobile ordering

location, withdrew a promised benefit of employees at the store.

        i.      Since about February 2022, Respondent, by M. Murphy, Hunt, and Shanley, imposed more onerous and rigorous terms and conditions of employment on its employees by requiring that they offer minimum scheduling availability to retain employment.

        j.      Respondent engaged in the conduct described above in paragraph 13(a) through (i) because employees of Respondent formed the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

      14.    In support of the Petition, based on information and belief, the Petitioner further states that:

        a.      About the dates set forth opposite their names, Respondent refused to approve or delayed approving Erin O'Hare to transfer to another store.

        b.      About September 2021, Respondent, by Stewart, Szto, Dustin Taylor, Mkrutumyan, refused to assign employee Erin O'Hare to a home store.

        c.      About December 2021, Respondent issued a verbal warning to Angel Krempa.

        d.      About February 16, 2022, Respondent issued a verbal warning to Angel Krempa.

        e.      About the dates set forth opposite their names, Respondent issued final written warnings to the employees named below:

| Names | Dates |
|---|---|
| (i)  Edwin "Minwoo" Park | December 3, 2021 |
| (ii)  Angel Krempa | December 6, 2021 |

        f.      About the dates set forth opposite their names, Respondent sent home the employees named below prior to the end of their shifts:

| Names | Dates |
|---|---|
| (i)  Angel Krempa | March 15, 2022 |
| (ii) Nathan Tarnowski | March 24, 2022 |

   g.  About November 2021, Respondent imposed more onerous and rigorous terms and conditions of employment on its employees Angel Krempa and Minwoo Park by randomizing their shifts.

   h.  About the dates set forth opposite their names, Respondent issued a coaching to the employees named below:

| Names | Dates |
|---|---|
| (i)    Edwin "Minwoo" Park | December 9, 2021 |
| (ii)   Daniel Rojas | January 26, 2022 |
| (iii)  Angel Krempa | February 25, 2022 |

   i.  About the dates set forth opposite their names, Respondent terminated the employees named below:

| Names | Dates |
|---|---|
| (i) Cassie Fleischer | February 20, 2022 |
| (ii) Daniel Rojas Jr. | March 4, 2022 |
| (iii) Edwin "Minwoo" Park | March 21, 2022 |
| (iv) Brian Nuzzo | March 21, 2022 |
| (v) Nathan Tarnowski | March 30, 2022 |
| (vi) Angel Krempa | April 1, 2022 |

   j.  About March 27, 2022, Respondent banned its employee Brian Nuzzo from all of Respondent's stores.

k.     Respondent engaged in the conduct described above in paragraph 14(a) through (j) because employees of Respondent formed the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

l.     Respondent engaged in the conduct described above in paragraph 14(d), (e)(ii), (f)(i), (h)(iii), and (i)(vi) because Krempa testified at a Board hearing in Case 03-RC-285989.

15.     In support of the Petition, based on information and belief, the Petitioner further states that:

a.     About end of January 2022, Respondent, by Shanley, enforced a new minimum availability requirement for employee Kellen Montanye.

b.     By the conduct described above in paragraph 15(a), Respondent caused the termination of its employee Montanye.

c.     Respondent engaged in the conduct described above in paragraphs 15(a) and (b) because the named employees of Respondent formed the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

16.     In support of the Petition, based on information and belief, the Petitioner further states that:

a.     The following employees of Respondent (Elmwood Unit) constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act:

> All full-time and part-time Baristas and Shift Supervisors employed by the Employer at its 933 Elmwood Avenue, Buffalo, New York facility, excluding office clerical employees, guards, professional employees and supervisors as defined in the Act.

b.      On December 17, 2021, the Board certified the Union as the exclusive collective-bargaining representative of the Elmwood Unit.

c.      At all times since December 17, 2021, based on Section 9(a) of the Act, the Union has been the exclusive collective-bargaining representative of the Elmwood Unit.

17.     In support of the Petition, based on information and belief, the Petitioner further states that:

a.      Since about February 2022, Respondent has been implementing a minimum availability policy at the Elmwood store.

b.      The subject set forth above in paragraph 17(a) relates to wages, hours, and other terms and conditions of employment of the Elmwood Unit and are mandatory subjects for the purposes of collective bargaining.

c.      Respondent engaged in the conduct described above in paragraph 17(a) without first bargaining with the Union to an overall good-faith impasse for a collective-bargaining agreement.

18.     In support of the Petition, based on information and belief, the Petitioner further states that the serious and substantial unfair labor practice conduct described above in paragraphs 7 through 15 and 17 is such that there is only a slight possibility of traditional remedies erasing their effects and conducting a fair election.  Therefore, on balance, the employees' sentiments regarding representation, having been expressed through authorization cards, would be protected better by issuance of a bargaining order for the Camp Road store.

19.     In support of the Petition, based on information and belief, the Petitioner further states that the allegations described above in paragraph 18 requesting the issuance of a bargaining order are supported by, among other things:

     a.     High-ranking supervisors are responsible for the discriminatory conduct described above in paragraphs 7 through 15 and 17;

     b.     the conduct described above in paragraphs 7 through 15 and 17 has not been retracted;

     c.     there are approximately 27 employees at the Camp Road store and approximately 630 employees at Respondent's Buffalo facilities;

     d.     the conduct described above in paragraphs 8 through 16 and 18 was directed at all employees at all of Respondent's Buffalo facilities, including the 27 employees in the Camp Road Unit;

     e.     27 employees in the Camp Road Unit learned or were likely to learn of the conduct described above in paragraphs 7 through 15 and 17;

     f.     the conduct described above in paragraphs 7 through 15 and 17 commenced immediately on the heels of the Respondent's knowledge of the Union's campaign; and

     g.     the employees described above in paragraphs 14(i) and 15 were leading organizers for the Union.

20.     By the conduct described above in paragraphs 7 through 11, Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act

21.     By the conduct described above in paragraphs 12 through 15, Respondent has been discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act.

22.     By the conduct described above in paragraph 14(d), (e)(ii), (f)(i), (h)(iii), and (i)(vi), Respondent has been discriminating against employees for filing charges or giving testimony under the Act in violation of Section 8(a)(1) and (4) of the Act.

23.     By the conduct described above in paragraph 17, Respondent has been failing and refusing to bargain collectively and in good faith with the exclusive collective-bargaining representative of its employees in violation of Section 8(a)(1) and (5) of the Act.

24.     The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

25.     Upon information and belief, it may be fairly anticipated that, unless enjoined, Respondent will continue to engage in the said acts and conduct, in violation of Section 8(a)(1), (3), (4), and (5) of the Act.

26.     Upon information and belief, unless the continuation of the aforementioned unfair labor practices is immediately restrained, a serious flouting of the Act and of public policies involved in the Act will continue, with the result that enforcement of important provisions of the Act and of the public policy will be impaired before Respondent can be placed under legal restraint through the regular procedures of a Board Order and enforcement decree. Unless injunctive relief is immediately obtained, it is anticipated that Respondent will continue its unlawful conduct during the proceedings before the Board and during subsequent proceedings before a Court of Appeals for an enforcement decree, with the result that employees will continue to be deprived of their fundamental right to organize for purposes of collective bargaining as provided for in the Act.

27.     Upon information and belief, to avoid the serious consequences set forth above, it is essential, appropriate, just and proper, for the purposes of effectuating the policies of the Act and avoiding substantial, irreparable, and immediate injury to such policies, to the public

interest, and to employees of Respondent, and in accordance with the purposes of Section 10(j) of the Act, that, pending the final disposition of the matters involved herein pending before the Board, Respondent be enjoined and restrained from the commission of the acts and conduct alleged above, similar or related acts or conduct or repetitions thereof.

28.     No previous application has been made for the relief requested herein.

**WHEREFORE**, Petitioner seeks the following relief:

a.     That the Court issue an order directing Respondent to appear before this Court, at a time and place fixed by the Court, and show cause, if any there be, why an injunction should not issue enjoining and restraining Respondent, their officers, representatives, agents, servants, employees, attorneys, successors and assigns, and all persons acting in concert or participation with them, pending final disposition of the matters involved herein pending before the Board, from:

i.     discharging, disciplining or otherwise discriminating against employees for supporting Workers United or any other labor organization or participating in any National Labor Relations Board proceedings;

ii.     more closely supervising, monitoring, or surveilling the activities of employees for supporting Workers United or any other labor organization;

iii.     soliciting grievances from employees and promising or impliedly promising to remedy them;

iv.     withholding benefits from employees for supporting Workers United or any other labor organization;

v.     granting benefits to deter organizing activity;

vi.        promising or impliedly promising benefits for not supporting Workers United or any other labor organization or for non-union stores only;

vii.        threatening reprisals for supporting Workers United or any other labor organization;

viii.        permanently or temporarily closing stores;

ix.        implementing a minimum hours or availability requirement, or making any other changes to terms and conditions of employment, without notice to or bargaining with Workers United at the Elmwood store and other stores at which the Employer has a bargaining obligation with Workers United;

x.        failing and refusing to bargain with Workers United at the Elmwood store and other stores at which the Employer has a bargaining obligation with Workers United; and

xi.        in any other manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them under Section 7 of the Act at any of the Employer's stores in the United States and its territories.

b.        That the Court issue an affirmative order directing Respondent, their officers, representatives, agents, servants, employees, attorneys, successors and assigns, and all persons acting in concert or participation with them, pending final disposition of the matters involved herein pending before the Board, to:

i.        within five (5) days of the district court's order, offer, in writing, reinstatement to their former positions to: Cassie Fleischer, Daniel Rojas, Edwin Park, Brian Nuzzo, Nathan Tarnowski, Angel Krempa, and Kellen Montanye; or, if those positions no longer exist, to substantially equivalent positions without prejudice to seniority or any other rights and

privileges previously enjoyed, displacing, if necessary, any employee who may have been hired or reassigned to replace them;

      ii.     immediately rescind the minimum availability requirement at the Elmwood store;

      iii.    bargain with Workers United over any new policies before implementing them at the Elmwood store;

      iv.    reopen the Employer's Galleria kiosk store and within five (5) days of the district court's order, offer, in writing, reinstatement to their former positions to any employee reassigned, transferred, or discharged as a result of the closure;

      v.     Immediately recognize and, upon request, bargain in good faith, until agreement or good-faith impasse, with the Workers United as the exclusive collective-bargaining representative of the employees in the following Unit at the Camp Road store:

> Included: All full-time and regular part-time Baristas, Shift Supervisors, and Assistant Store Managers located at 5120 Camp Rd., Hamburg, New York 14075.

> Excluded: Store Managers, office clericals, guards, and supervisors as defined by the Act.

      vi.    within seven (7) days from the date of the District Court's Order, the Employer shall:

      1.     Post physical copies of the District Court's Order at all of the Employer's stores in the United States and its territories, as well as translations in other languages as necessary to ensure effective communication to the Employer's employees as determined by the Board's Regional Director of Region 3, said translations to be provided by the Employer at the Employer's expense and approved by the Regional Director, on the bulletin board, in all

breakrooms, and in all other places where the Employer typically posts notices to its employees at each of its stores; maintain these postings during the pendency of the Board's administrative proceedings free from all obstructions and defacements; grant all employees free and unrestricted access to said postings; and grant to agents of the Board reasonable access to its worksite to monitor compliance with this posting requirement;

2.      Distribute electronic copies of the District Court's Order, as well as translations in other languages as necessary to ensure effective communication to the Employer's employees as determined by the Board's Regional Director of Region 3, said translations to be provided by the Employer at the Employer's expense and approved by the Regional Director, to all employees employed by the Employer in the United States and its Territories via the Partner Hub, and all other intranet or internet sites or apps that the Employer uses to communicate with employees;

3.      Convene one or more mandatory meetings, on working time and at times when the Employer customarily holds employee meetings and scheduled to ensure the widest possible attendance, at all of the Employer's stores in the United States and its territories, during which the District Court's Order will be read to all employees, supervisors, managers, and agents, or at the Employer's option, by an agent of the Board in English. The Employer shall also afford the Union, through the Regional Director, reasonable notice and opportunity to have a representative present when the Order is read to employees. Interpreters shall be made available for any individual whose language of fluency

is other than English at the Employer's expense. The Employer shall announce the meeting(s) for the Order reading in the same manner it would customarily announce a meeting to employees; the meeting(s) shall be for the above-stated purpose only. Individuals unable to attend the meeting to which they have been assigned will be able to attend a subsequent meeting during which the same reading shall take place under the same conditions. The Employer shall allow all employees to attend these meetings without penalty or adverse employment consequences, either financial or otherwise;

   4. Distribute electronic copies of a high-level Employer official (in the presence of a Board agent) or a Board agent (in the presence of a high-level Employer official) reading the District Court's Order, on its Partner Hub and all other intranet or internet sites or apps that the Employer uses to communicate with employees, such that the video can be accessed by employees at all of its stores in the United States and its Territories.

   vii. within twenty (20) days of the issuance of the District Court's decision and order, file with the District Court, with a copy sent to the Regional Director of the Board for Region 3, a sworn affidavit from a responsible Employer official setting forth with specificity the manner in which the Employer has complied with the terms of the Court's decree, including how and where the documents have been posted, and the date(s), time(s), and location(s) that the order was read to employees and by whom, as required by the Court's order.

**DATED** at Buffalo, New York, this 21st day of June, 2012.

                             /s/ Linda M. Leslie

                             **LINDA M. LESLIE,** Regional Director
                             National Labor Relations Board – Region 3
                             Niagara Center Building
                             130 S. Elmwood Avenue, Suite 630
                             Buffalo, New York 14202

CAROLINE V. WOLKOFF, Counsel for the Petitioner
JESSICA L. CACCACIO, Counsel for the Petitioner
ALICIA P. STANLEY, Counsel for the Petitioner