## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| **LINDA M. LESLIE, Regional** | ) | |
| **Director of Region 3 of the National** | ) | |
| **Labor Relations Board, for and on** | ) | |
| **behalf of the NATIONAL LABOR** | ) | |
| **RELATIONS BOARD,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:22-cv-00478-JLS** |
| | ) | |
| **STARBUCKS CORPORATION,** | ) | |
| | ) | |
| **Respondent** | ) | |

---

### PETITIONER'S MOTION TO QUASH RESPONDENT'S SUBPOENAS DUCES TECUM OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

---

# Contents

I.    INTRODUCTION ................................................................................................ 5

  a.   The Subpoenas Should be Quashed as Discovery is Unnecessary ............... 5

  b.   The Information Requested is Irrelevant, Redundant, and Coercive ............ 7

II.   EACH SUBPOENA REQUEST SHOULD BE QUASHED IN ITS ENTIRETY ........ 5

  a.   Requests 1(a) - (f) of the Subpoenas Should be Quashed ......................... 11

    i.   The Requests Seek Privileged Information ........................................... 13

    ii. The Requests Seek Irrelevant Information ........................................... 15

    iii.   The Requests are Unduly Burdensome .............................................. 16

  b.   Request 1(g) of the Subpoenas Should be Quashed ................................. 18

  c.   Request 2 of the Subpoenas Should be Quashed ..................................... 19

  d.   Requests 3-6 of the Subpoenas Should be Quashed ................................ 20

  e.   Requests 7 and 8 of the Subpoenas Should be Quashed .......................... 21

  f.   Request 9 of the Subpoenas Should be Quashed ..................................... 22

  g.   Requests 10-11 of the Subpoenas Should be Quashed ............................ 23

  h.   Request 12 of the Subpoenas Should be Quashed ................................... 23

  i.   Request 13 of the Subpoenas Should be Quashed ................................... 24

  j.   Request 14-16 of the Subpoenas Should be Quashed .............................. 24

  k.   Request 17 of the Subpoenas Should be Quashed ................................... 25

  l.   Request 18 of the Subpoenas Should be Quashed ................................... 26

III.  CONCLUSION ................................................................................................ 26

**Table of Authorities**

Cases

*Abbey's Transp. Servs., Inc. v. NLRB,*
    837 F.2d 575 (2d Cir. 1988) ........................................................................................ 6
*Aguayo v. Tomco Carburetor Co.,*
    853 F.2d (overruled on other grounds) ...................................................................... 7
*Ahearn v. Jackson Hosp. Corp.,*
    351 F.3d .................................................................................................................... 7
*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,*
    300 F.R.D. 406 (C.D. Cal. 2014) ............................................................................. 17
*Angle v. Sacks,*
    382 F.2d 655 (10th Cir. 1967) ............................................................................. 6, 10
*Anwar v. Fairfield Greenwich Ltd.,*
    297 F.R.D. 223 (S.D.N.Y. 2013) ............................................................................. 17
*Blyer v. One Stop Kosher Supermarket, Inc.,*
    720 F. Supp. 2d 221 (E.D.N.Y. 2010) ..................................................................... 19
*Blyer v. Pratt Towers, Inc.,*
    124 F. Supp. 2d 136 (E.D.N.Y. 2000) ..................................................................... 19
*Castle v. Sangamo Weston, Inc.,*
    744 F.2d 1464 (11th Cir. 1984) ............................................................................... 14
*Dunbar v. Carrier Corp.,*
    66 F. Supp. 2d 346 (N.D.N.Y. 1999) ......................................................................... 7
*Eisenberg v. Tubari, Ltd., Inc.,*
    No. 85-1857, 1985 WL 32832 (D.N.J. July 8, 1985) ............................................... 15
*Fernbach v. Raz Dairy, Inc.,*
    881 F. Supp. 2d 452 (S.D.N.Y. 2012) ........................................................................ 7
*Fernbach v. Sprain Brook Manor Rehab., LLC,*
    91 F. Supp. 3d 531 (S.D.N.Y. 2015) .......................................................................... 6
*Frankl v. HTH Corp.,*
    650 F.3d 1334 (9th Cir. 2011) .................................................................................... 6
*G.W. Galloway Co.,*
    281 NLRB 262 (1986) .......................................................................................... 7, 11
*Gottfried v. Frankel,*
    818 F.2d 485 (1987) ................................................................................................... 7
*Gottfried v. Mayco Plastics, Inc.,*
    472 F. Supp. 1161 (E.D. Mich. 1979) ...................................................................... 10
*Heinrich Motors, Inc. v. NLRB,*
    403 F.2d 145 (2d Cir. 1968) ....................................................................................... 9
*Hickman v. Taylor,*
    329 U.S. 495 (1947) ............................................................................................ 13, 14
*Hitterman v. List Indus., Inc.,*
    No. 2:21-CV-395-PPS-JEM, 2022 WL 2663400 (N.D. Ind. July 11, 2022) ........... 15
*In re Pub. Offering PLE Antitrust Litig.,*
    427 F.3d 49 (1st Cir. 2005) ...................................................................................... 17

2

*In re Subpoena to Goldberg,*
  693 F. Supp. 2d 81 (D.D.C. 2010) ........................................................ 17
*Information Resources, Inc. v. Dunn & Bradstreet Corp.,*
  999 F. Supp. 591 (S.D.N.Y. 1998) ....................................................... 14
*Kaynard v. Mego,*
  633 F.2d 1026 (2d Cir. 1980) ................................................................. 7
*Kaynard v. Palby Lingerie, Inc.,*
  625 F.2d 1047 (2d Cir. 1980) .................................................. 6, 16, 23
*Landis Plastics, Inc.,*
  977 F. Supp. 169 (N.D.N.Y. 1997) ........................................................ 7
*Lyman Printing and Finishing Co.,*
  183 NLRB 1048 (1970) ...................................................................... 7, 11
*Mattina v. Kingsbridge Heights Rehab. & Care Ctr.,*
  2008 WL 3833949 (S.D.N.Y. 2008) ....................................................... 6
*McClain Indus., Inc.,*
  521 F.2d 596 (6th Cir. 1974) ............................................................. 8, 11
*N. Am. Rockwell v. NLRB,*
  389 F.2d 866 (10th Cir. 1968) ........................................................... 8, 11
*NLRB v. Automotive Textile Prods. Co.,*
  *Inc.*, 422 F.2d 1255 (6th Cir. 1970) ................................................. 8, 11
*NLRB v. Link-Belt Co.,*
  311 U.S. 584 (1941) ................................................................................ 6
*NLRB v. Movie Star, Inc.,*
  361 F.2d 346 (5th Cir. 1966) ............................................................. 8, 11
*NLRB v. Robbins Tire & Rubber Co.,*
  437 U.S. 214 (1978) ............................................................................ 8, 11
*Noble Roman's, Inc.,*
  314 F.R.D. 304 (S.D. Ind. 2016) ........................................................ 8, 10
*Overstreet v. David Saxe Prods., LLC,*
  2019 WL 332406 n.4 (D. Nev. 2019) .................................................... 10
*Pascarell v. Orit Corp.,*
  705 F. Supp. 200 (D.N.J. 1989) ............................................................ 15
*Paulsen v. Renaissance Equity Holdings, LLC,*
  849 F. Supp. 2d 335 (E.D.N.Y. 2012) .................................................. 19
*Raser Tanning v. NLRB,*
  276 F.2d 80 (6th Cir. 1960) ............................................................... 8, 11
*Schaaf v. Smithkline Beecham Corp.,*
  233 F.R.D. 451 (E.D.N.C. 2005) .......................................................... 17
*Schaub v. W., Mich. Plumbing & Heating, Inc.,*
  250 F.3d 962 (6th Cir. 2001) ................................................................. 7
*Sharp v. Webco Indus., Inc.,*
  225 F.3d1130 (10th Cir. 2000) .............................................................. 7
*Silverman v. Whittall & Shon, Inc.,*
  1986 WL 15735 (S.D.N.Y. 1986) ........................................................... 9
*U.S. v. A.T. & T. Co.,*
  642 F.2d 1285 (D.C. Cir. 1980) ............................................................ 14

*U.S. v. Schwimmer,*
   892 F.2d 237 (2d Cir. 1989) ................................................................................. 13

*Upjohn Co. v. U.S.,*
   449 U.S. 383 (1981) ........................................................................................... 13

*Va. Dep't of Corr. v. Jordan,*
   921 F.3d 180 (4th Cir. 2019) ............................................................................... 17

*Wellman Indus., Inc. v. NLRB,*
   490 F.2d 427 (4th Cir. 1974) ........................................................................... 8, 11

*Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC,*
   No. 10-CV-35A SR, 2013 WL 5652759 (W.D.N.Y. Oct. 15, 2013) ...................... 17

# I.     INTRODUCTION

Petitioner Linda M. Leslie, Regional Director for Region 3 of the National Labor Relations Board, respectfully requests that this Court quash the subpoenas duces tecum issued by the Respondent or, in the alternative, issue a protective order.[1] The subpoenas issued here are excessive. They represent yet another dilatory tactic deployed in contravention of the statutory purpose of Section 10(j) to allow for an expedited proceeding to determine the narrow question of the need for temporary injunctive relief only until the longer administrative process concludes.

## a.   The Subpoenas Should be Quashed as Discovery is Unnecessary

The administrative record contains the full set of facts from which to conclude that there is *both* reasonable cause to believe the violations occurred *and* that injunctive relief is just and proper. Consequently, Respondent and the Court have complete access to Petitioner's evidence. Respondent has already been given a full and fair opportunity to cross-examine Petitioner's witnesses and examine Petitioner's documentary evidence, so additional discovery at this post-full-litigation stage is moot. Additionally, this proceeding has already been delayed so that a fully litigated record could be used as the basis for this Court to rule on Petitioner's claims. Permitting additional discovery at this stage serves to do nothing more than delay the proceedings. As is detailed below, nothing Respondent has requested in its duces tecum subpoenas is warranted. Here, discovery is unnecessary as both evidentiary prongs have been fully litigated in the administrative record.

---

[1] On September 10, 2022, Respondent issued the subpoenas in question to 22 third-party witnesses, most of them unrepresented employee witnesses. Specifically, Respondent issued the subpoenas to Alexis Rizzo, Angel Krempa, Brian Nuzzo, Casey Moore, Cassie Fleischer, Colin Cochran, the Custodian of Records for Workers United (Union), Daisy Pitkin, Danka Dragic, Danny Rojas, Edwin Minwoo Park, James Skretta, Jaz Brisack, Kai Hunter, Kayla Desorbo, Kellen Montanye Higgins, Larue Heutmaker, Michaela Wagstaff, Michelle Eisen, Nathan Tarnowski, Richard Bensinger, and Will Westlake.

The existence of the "just and proper" prong does not automatically warrant discovery. Several circuit courts of appeals have held that certain violations, by their nature, tend to cause irreparable harm and chill employee Section 7 rights, and courts have drawn inferences of harm from these violations such that separate, independent "proof" of harm is not necessary. *See Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1053 (2d Cir. 1980); *Abbey's Transp. Servs., Inc. v. NLRB*, 837 F.2d 575, 576 (2d Cir. 1988); *Frankl v. HTH Corp.*, 650 F.3d 1334, 1363 (9th Cir. 2011) (holding that "likelihood of success" in proving discriminatory discharge of union activists during organizing drive "largely establishes" likely irreparable harm, absent unusual circumstances); *Angle v. Sacks*, 382 F.2d 655, 660 (10th Cir. 1967) (holding that separate evidence of harm not required because discharges during an organizing campaign "operate predictably to destroy or severely inhibit employee interest in union representation, and activity toward that end"); *NLRB v. Link-Belt Co.*, 311 U.S. 584, 598 (1941) (holding that discharge of activists during campaign "effectively ... restrain[ed] the employees' choice" and "tend[ed] to have as potent an effect as direct statements to the employees that they could not afford to risk selection of [the union]."). Although direct evidence of harm has already been presented here, even without direct evidence courts have drawn their own legal conclusions as to the propriety of relief from reasonable cause evidence alone. Indeed, courts in the Second Circuit regularly consider petitions in this manner without ordering discovery at all. *See*, *e.g.*, *Mattina v. Kingsbridge Heights Rehab. & Care Ctr.*, 2008 WL 3833949 at *1 (S.D.N.Y. 2008) (granting injunction based on affidavits from petitioner's witnesses, the record and decision of the administrative law judge in the underlying case, and testimony of one employer witness), *aff'd*, 329 F. App'x 319, 323 (2d Cir. 2009); *Fernbach v. Sprain Brook Manor Rehab., LLC*, 91 F. Supp. 3d 531, 537 n.1 (S.D.N.Y. 2015) (deciding 10(j) relief on the papers, including "declarations and exhibits;" administrative

hearing ongoing at the time); *Fernbach v. Raz Dairy, Inc.*, 881 F. Supp. 2d 452, 456-60 (S.D.N.Y. 2012) (making fact findings based on affidavits prior to completion of ALJ record); *Dunbar v. Carrier Corp.*, 66 F. Supp. 2d 346, 351-52, 354 n.4 (N.D.N.Y. 1999) (granting injunction based on oral argument and affidavits).[2]

Here, the Court has the administrative record as additional proof that Respondent's unlawful actions in repeatedly terminating Buffalo-area organizers during the height of the union campaign, and otherwise trampling employees' statutory rights to participate freely in such organization, is likely to irreparably chill organizing activity. The administrative record readily establishes the need for interim relief to preserve the Board's remedial authority.

### b. The Information Requested is Irrelevant, Redundant, and Coercive

The additional documentary evidence requested by Respondent via 22 subpoenas, largely and inappropriately directed at individual government witnesses,[3] is simply unnecessary to this

---

[2] Courts have routinely decided Section 10(j) petitions without discovery because sworn affidavits provide reliable evidence and will conserve the time and resources of the court and the parties. *See Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir. 1987); *Schaub v. W. Mich. Plumbing & Heating, Inc.*, 250 F.3d 962, 967 (6th Cir. 2001); *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d at 239; *Aguayo v. Tomco Carburetor Co.*, 853 F.2d at 750-51 (overruled on other grounds); *Sharp v. Webco Indus., Inc.*, 225 F.3d 1130, 1134 (10th Cir. 2000); *Kaynard v. Mego*, 633 F.2d 1026, 1031 (2d Cir. 1980); *Landis Plastics, Inc.*, 977 F. Supp. 169, 176-77 (N.D.N.Y. 1997).

[3] The evidence at issue in a petition for Section 10(j) relief is the evidence that forms the basis for Petitioner's administrative case. As a result, subpoenaing individual, non-party government witnesses is inappropriate and unprecedented. Petitioner has been unable to identify a single instance in which a court has permitted a Respondent to subpoena government witnesses directly for documents in a Section 10(j) proceeding, which makes sense because the question before the court is the General Counsel's evidence as prosecutor of violations of the National Labor Relations Act. Respondent's brazen decision to directly subpoena government witnesses serves its dual purpose of seeking a second bite of the apple in presenting its case, thereby risking a parallel and duplicative litigation, and of advancing a strategy of delay, harassment, and waste. Additionally, it is an attempt to end-run the prohibitions against pre-trial discovery in Board proceedings by seeking information directly from the government's witnesses even when it would not be entitled to such evidence from the government. *See G.W. Galloway Co.*, 281 NLRB 262, n.1 (1986), *rev'd on other grounds*, 856 F.2d 275 (1988); *Lyman Printing and Finishing Co.*, 183 NLRB 1048, 1055

Court's determination of the central question. The Petitioner has provided over a thousand pages—the entire evidentiary basis for its request—with the Petition and has subsequently developed or duplicated that evidence at the administrative hearing, which is memorialized by thousands of pages of transcripts and exhibits. Respondent thus has access to all relevant evidence, has cross-examined all witnesses, and would suffer no prejudice from the Court's quashing the subpoenas.

All but five[4] of the third-party witnesses are unrepresented current or former employees. Compliance would therefore be unduly burdensome. Further, the effect of subpoenaing such parties is inherently coercive. The government has a duty to prevent the coercion of its witnesses, and accordingly, retains the requisite standing to move to quash these subpoenas. *See, e.g.*, *Noble Roman's, Inc.*, 314 F.R.D. 304, 305-07 (S.D. Ind. 2016) (affirming court's power to consider objections from a plaintiff that objects to a non-party subpoena, especially where the subpoena infringes upon the movant's legitimate interests). In the alternative, the court may issue a protective order to enforce the limits on discovery provided by the federal rules. F.R.C.P 26(b) (stating court may issue protective order where party is unduly burdened by discovery request). Federal Rule of Civil Procedure 26(b)(1) limits "relevance" to nonprivileged[5] matters that are proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

---

(1970). Federal courts have routinely held that the Board's prohibition on discovery is not a denial of due process. *See, e.g.*, *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978); *McClain Indus., Inc.*, 521 F.2d 596 (6th Cir. 1974); *Wellman Indus., Inc. v. NLRB*, 490 F.2d 427 (4th Cir. 1974); *NLRB v. Automotive Textile Prods. Co., Inc.*, 422 F.2d 1255 (6th Cir. 1970); *N. Am. Rockwell v. NLRB*, 389 F.2d 866 (10th Cir. 1968); *NLRB v. Movie Star, Inc.*, 361 F.2d 346 (5th Cir. 1966); *Raser Tanning v. NLRB*, 276 F.2d 80 (6th Cir. 1960), *cert. denied* 363 U.S. 830.

[4] Michelle Eisen, Daisy Pitkin, Richard Benzinger, Casey Moore, and Jaz Brisack are employed by the Union.

[5] For the reasons discussed below, the information sought here is privileged.

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Indeed, each of the subpoenas seek irrelevant information; information the Petitioner has already turned over directly to Respondent in the administrative proceeding, duplicative information that is already on the administrative record, and/or information that Respondent has superior access to via its own sources. For example, evidence not introduced by Petitioner during the administrative proceeding about other employees' "loss of support" statements is completely unnecessary for Respondent to obtain or for the Court to consider when evaluating Petitioner's showing of harm.

Similarly, Respondent's demand for information about post-discharge employment, earnings, education, training, or availability for work is irrelevant to the merits of the unfair labor practices, employees' Section 7 rights, and the interim remedy sought here. It is the choice of each discriminatee, regardless of post-discharge circumstances, whether to accept a reinstatement order. Even if a discriminatee rejects an order of reinstatement, an order made and publicized under an injunction will show remaining employees that discharged employees' continued absence from the workplace is a result of their choice, not of Respondent continuing to act unlawfully with impunity nor the inefficacy of the Board to promptly remedy the harms that flow from Respondent's conduct. As a result, a reinstatement order will have a curative effect on remaining employees, sending necessary assurances that their rights will be protected. *Silverman v. Whittall & Shon, Inc.*, 1986 WL 15735, at *1 (S.D.N.Y. 1986) (finding interim relief necessary to erase chilling effect of the remaining employees having witnessed multiple union leaders who "attempted to exercise rights protected by the Act had been discharged" and waited for "years to have their rights vindicated"); *Heinrich Motors, Inc. v. NLRB*, 403 F.2d 145, 150 (2d Cir. 1968) (ordering

reinstatement has dual purpose of protecting discharged employee and demonstrating employer's good faith to other employees); *Overstreet v. David Saxe Prods., LLC*, 2019 WL 332406, at *9 n.4 (D. Nev. 2019); (assigning little weight to whether the discriminatees wanted their jobs back because reinstatement also "sends a message to other employees that retaliatory discharges will be redressed"); *Angle v. Sacks*, 382 F.2d 655, 660, 661 (10th Cir. 1967) (finding interim reinstatement to be "best visible means" of rectifying chill of protected activity); *see also Gottfried v. Mayco Plastics, Inc.,* 472 F. Supp. 1161, 1166 (E.D. Mich. 1979) (holding, even after employer voluntarily offered reinstatement, reinstatement order necessary to clear inhospitable atmosphere created by unlawful terminations). In addition, most of the witnesses are unrepresented, and the burden of production significantly outweighs any benefit, especially given that the Respondent already had the opportunity to cross-examine the witnesses at the administrative hearing.

Because the information sought is irrelevant and unduly burdensome, unreasonably cumulative, and Respondent has already had ample opportunity to obtain what it seeks, the subpoenas must be quashed. *See* F.R.C.P. 26(b)(2)(C). To allow otherwise is to conduct a duplicative proceeding, wasting judicial and party resources at the expense of the preservation of employees' rights, and frustrating Congress's statutory intent that Section 10(j) proceedings be expedited in nature and limited in scope. *See Noble Roman's, Inc.,* 314 F.R.D. at 307-09 (discussing the historical narrowing of discovery under Rule 26 to protect against over-discovery, increased access to information in recent decades, and the weaponization of discovery as an instrument of delay and oppression). Thus, the individual document requests should be quashed for those and the additional reasons set forth in detail below.

## II.      EACH SUBPOENA REQUEST SHOULD BE QUASHED IN ITS ENTIRETY

The individual requests in Respondent's subpoenas uniformly seek documents that were already provided to it during the administrative proceeding and/or which are otherwise irrelevant to the issues before the Court. Therefore, as described above and articulated in detail with respect to each request below, Respondent's subpoena requests should be quashed.

### a.   Requests 1(a) - (f) of the Subpoenas Should be Quashed

Request 1(a) of the subpoenas[6] seeks documents and recordings relating to communications between the witnesses and other of Respondent's employees, Workers United (Union), the NLRB,[7] and the media about the number of employees expected to vote in favor and against representation for each of the Buffalo and Rochester store petitions in the weeks leading up to each election or to the present if an election is scheduled for a rerun.

---

[6] Requests 1 through 17 appear in all 22 subpoenas with the exception that the subpoena issued to the Union's Custodian of Records excludes requests 10 and 11.

[7] Respondent is not entitled to information relating to communications with the NLRB. Under Section 102.118 of the Board's Rules, an agent of the Board may not produce any file or records contained in any case file without the written consent of the General Counsel of the Board. *G.W. Galloway Co.*, 281 NLRB 262, n.1 (1986), *rev'd on other grounds*, 856 F.2d 275 (1988). Indeed, it is well established that a Respondent is not entitled to pretrial discovery under the Act. *Lyman Printing and Finishing Co.*, 183 NLRB 1048, 1055 (1970). Federal courts have routinely held that the Board's prohibition on discovery is not a denial of due process. *See, e.g.*, *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978); *McClain Indus., Inc.*, 521 F.2d 596 (6th Cir. 1974); *Wellman Indus., Inc. v. NLRB*, 490 F.2d 427 (4th Cir. 1974); *NLRB v. Automotive Textile Prods. Co., Inc.*, 422 F.2d 1255 (6th Cir. 1970); *N. Am. Rockwell v. NLRB*, 389 F.2d 866 (10th Cir. 1968); *NLRB v. Movie Star, Inc.*, 361 F.2d 346 (5th Cir. 1966); *Raser Tanning v. NLRB*, 276 F.2d 80 (6th Cir. 1960), *cert. denied* 363 U.S. 830. Nonetheless, this request—and others—seeks information that pertains to the agency's investigation and would necessarily constitute the materials contained within the General Counsel's investigative files. Respondent is not permitted to use a witness as a straw man to obtain discovery of the General Counsel's investigatory file, nor to make an end-run around the prohibition against disclosing those documents. Respondent should not be permitted to render the Board's Rules meaningless by subpoenaing witnesses directly to obtain documents that Respondent would otherwise need to obtain through permission of the General Counsel. This request, and all others seeking communications with the NLRB, should therefore be quashed.

Request 1(b) of the subpoenas seeks documents and recordings relating to communications between the witnesses and other of Respondent's employees, the Union, the NLRB, and the media about statements or "things the employee did"[8] by any employee who was or has been considered to have changed from being in favor of union representation to being against it.

Request 1(c) of the subpoenas seeks documents and recordings relating to communications between the witnesses and other of Respondent's employees, the Union, the NLRB, and the media about the number of employees who favored or disfavored union representation at Respondent's Buffalo stores and Rochester store for which a petition was filed since the onset of organizing in Buffalo.

Request 1(d) of the subpoenas seeks documents and recordings relating to communications between the witnesses and other of Respondent's employees, the Union, the NLRB, and the media about each employee of Respondent's Buffalo stores and the Rochester store for which petitions have been filed "who was or has been considered at any time to have changed from being in favor or [sic] union representation to not being in favor of it, any statements the employee made or things that the employee did that factored into that determination and, if there are any, the employee's name."

Request 1(e) of the subpoenas seeks documents and recordings relating to communications between the witnesses and other of Respondent's employees, the Union, the NLRB, and the media about the number of Respondent's employees outside of the Buffalo stores and the Rochester store

---

[8] It bears noting that a request for "things the employee did" is overly broad and unduly burdensome. The request is so vague as to encompass a limitless range of "things" such that witnesses will be unable to understand what must be produced. This portion of the request should therefore be quashed for that additional reason.

who have communicated with the Union or current or former employees of Respondent from the Buffalo stores or the Rochester store about unionization at their store or elsewhere.

Request 1(f) of the subpoenas seeks documents and recordings relating to communications between the witnesses and other of Respondent's employees, the Union, the NLRB, and the media about statements made by any employee outside of Buffalo stores and the Rochester store about unionization, including statements about being in favor or against unionization and the reasons for that position as well as the employee's name.

### i.  The Requests Seek Privileged Information

Documents contained in these requests seeking information regarding communications between witnesses and the NLRB are covered by work-product, deliberative process, or potentially attorney-client privilege under the common interest rule.[9]  It bears repeating that a majority of the investigatory file has already been provided to Respondent. However, to the extent that these requests seek additional information from the witnesses, those communications are memorialized in documents prepared by a government attorney, or a non-attorney government agent, in anticipation of litigation. *See* F.R.C.P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 509-12 (1947) (statements by surviving sailors to company lawyer in anticipation of litigation by families of deceased sailors were work product because they reflected attorney's questions and concerns, and necessarily revealed thought processes, theories, and strategies); *Upjohn Co. v. U.S.*, 449 U.S. 383, 399-02 (1981) (attorney's notes and memoranda of witnesses' oral statements are protected work product). The work product doctrine reflects the strong public policy against invading the privacy

---

[9] The common interest rule "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties." *U.S. v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) (cleaned up).

attached to an attorney's preparation of a case, which is so essential to an orderly working of the American legal system. *Hickman v. Taylor*, 329 U.S. at 510-12. Here, although such communications may contain factual material, they necessarily reveal the Board agents' thought processes, legal theories, and strategies. Moreover, Respondent cannot demonstrate the extraordinary and particularized need necessary to overcome the attorney work product privilege.

Communications between the Petitioner's witnesses and the Charging Party Union are similarly shielded by the same privileges under the common interest rule. As the Charging Party, the Union in this case is an allied party that shares common interests with the Petitioner. The common interest rule would privilege such documents from disclosure by the Petitioner. The Respondent now seeks the same privileged information from a third-party source, but the privilege covering the information remains intact. Neither Petitioner nor the third-party witnesses may be compelled to produce the work product of litigation allies. *See*, *e.g., Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1466 (11th Cir. 1984) (holding plaintiff did not waive privilege by sharing work product with EEOC in joint actions against defendant; district court order that EEOC produce documents received was overturned); *U.S. v. A.T. & T. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) (holding work product privilege not waived where party gave information to a government agency); *Information Resources, Inc. v. Dunn & Bradstreet Corp.,* 999 F. Supp. 591, 591-92 (S.D.N.Y. 1998), and cases cited therein (holding work product privilege not waived when product shared with allied party).

Because the witnesses' compliance with the subpoenas would require production of privileged documents, the subpoenas should be quashed.

### ii. The Requests Seek Irrelevant Information

Moreover, the Court should quash these requests because they seek irrelevant information: Respondent already has access to all relevant evidence through the administrative proceeding and had a full and fair opportunity to elicit information about whether interim relief is "just and proper"; it should not be permitted to launch a redundant, harassing, and unduly burdensome parallel proceeding now.

Presumably, Respondent seeks the information at issue in request 1(a)-(f) in connection with the "just and proper" prong for determining whether Section 10(j) relief is appropriate. However, as previously described, the ALJ accepted "just and proper" evidence in the interest of judicial economy such that all relevant information pertaining to that prong is before the Court via the administrative record, eliminating the need to take evidence on the issue in the 10(j) proceeding. *See*, *e.g.*, *Hitterman v. List Indus., Inc.*, No. 2:21-CV-395-PPS-JEM, 2022 WL 2663400, at *13 (N.D. Ind. July 11, 2022) ("Where, as here, the administrative record is robust and the court determines that no additional testimony is needed to evaluate whether injunctive relief is "just and proper," the Director is entitled to "a favorable construction of the evidence, much as . . . if he were a plaintiff appealing the grant of summary judgment in favor of the defendant."); *Pascarell v. Orit Corp.*, 705 F. Supp. 200, 202-03 (D.N.J. 1989), *aff'd*, 866 F.2d 1412 (3d Cir. 1988) (holding interim relief to be "just and proper" based on administrative record); *cf Eisenberg v. Tubari, Ltd., Inc.*, No. 85-1857, 1985 WL 32832, at *3 (D.N.J. July 8, 1985) (seeking additional information on "just and proper" evidence where "[i]t is . . . agreed that the "just and proper" determination was not before the ALJ and that the administrative record is not entirely complete in this regard."). Respondent had a full and fair opportunity to vet the quality and nature of this evidence, to cross-examine witnesses, including by asking about statements and

information that might weigh against a finding of chill, and to present its own evidence on the issue. It should not be permitted a second bite at the apple in presenting its case, nor to engage in a fishing expedition to harass and unduly burden government witnesses. The Court should, therefore, rely upon the administrative record to make the "just and proper" determination and quash this request for seeking extraneous and redundant information better obtained through existing sources.

The evidence Respondent seeks is, moreover, irrelevant because—except to the extent information was offered into the administrative record—it does not serve as the basis of Petitioner's request and is therefore not properly before the Court.  Federal Rule of Civil Procedure 26(b)(1) requires that any matter sought in discovery must be "relevant to any party's claim or defense" and "proportional to the needs of the case," requiring courts to assess "whether the burden or expense of the proposed discovery outweighs its likely benefit." Here, the "just and proper" evidence before the Court exceeds what is necessary to decide whether interim relief is "just and proper" because courts may do so without specific evidence but rather based on legal inferences as to the likely consequences of the unfair labor practices in question. *See, e.g.*, *Palby Lingerie*, 625 F.2d at 1053. Respondent therefore seeks irrelevant information that is disproportionate to the needs of the case, thereby imposing undue expense and burden on the witnesses greater than any speculative benefit Respondent might derive.

### iii.  The Requests are Unduly Burdensome

The requests, moreover, run afoul of Federal Rule of Evidence 45(d)(3)(A)(iv) because they are unduly burdensome on third-party witnesses. That rule requires federal courts to "quash or modify a subpoena" which "subjects a person to undue burden." Courts have delineated "a heightened regard for the burden to be imposed on a third party" in determining whether to quash

a subpoena served upon a non-party to the case, as here. *In re Subpoena to Goldberg,* 693 F. Supp. 2d 81, 88 (D.D.C. 2010); *Schaaf v. Smithkline Beecham Corp.,* 233 F.R.D. 451, 453 (E.D.N.C. 2005); *accord Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (describing Rule 45's proscription against imposing an undue burden on non-parties as a "more demanding variant of the proportionality analysis" applied under Federal Rule of Civil Procedure 26 and noting that "courts must give the recipient's non-party status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally") (quoting *In re Pub. Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005)). As a result, federal courts have quashed subpoenas to third parties when the information sought would be available through other sources. *See, e.g.*, *Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC*, No. 10-CV-35A SR, 2013 WL 5652759, at *3 (W.D.N.Y. Oct. 15, 2013) ("As set forth in [Rule] 26(b)(2)(C)(I), however, courts are required to limit discovery if, *inter alia,* it "can be obtained from some other source that is more convenient, less burdensome, or less expensive.") (citations omitted); *Va. Dep't of Corr.*, 921 F.3d at 189 ("Courts should also consider what information is available to the requesting party from other sources."); *Anwar v. Fairfield Greenwich Ltd.*, 297 F.R.D. 223, 226 (S.D.N.Y. 2013) (citation omitted); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,* 300 F.R.D. 406, 412, n.6 (C.D. Cal. 2014). As noted above, Respondent has received all the evidence that serves as the basis for Petitioner's request for injunctive relief in the administrative hearing and had a full opportunity to vet the quality and nature of that evidence as well as to adduce its own. By subpoenaing information directly from non-party witnesses rather than relying on the robust administrative record, Respondent is seeking cumulative and duplicative information and placing an undue burden on those witnesses who have already testified in full while being subject to Respondent's myriad unfair labor practices and the stress of large-scale litigation over that

17

conduct. The individual subpoena requests are all-the-more egregious because Respondent has superior access to evidence that weighs against harm to employees' Section 7 rights; it has full control, for example, over its own supervisors, managers, and agents who may provide testimony and evidence as to whether employees continued to support the union notwithstanding the unfair labor practices in question.

These requests should, therefore, be quashed in their entirety.

### b.   Request 1(g) of the Subpoenas Should be Quashed

Request 1(g) of the subpoenas seeks documents and recordings relating to communications between the witnesses and other of Respondent's employees, the Union, the NLRB, and the media about the conduct in which Respondent is alleged to have engaged that the Complaint alleges violated the NLRA. Presumably, Respondent is seeking this information in connection with the "reasonable cause" prong of the 10(j) analysis. The Court should, therefore, quash request 1(g) of the subpoenas for the reasons as set forth in the preamble and as elaborated below.

Petitioner placed all evidence supporting the reasonable cause determination into the record of the administrative proceeding. That information, therefore, is already in Respondent's possession, rendering the request for such information duplicative, harassing, and an undue burden upon government witnesses in contravention of Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 45(b)(2)(C)(i) as discussed fully with respect to request 1(a). Respondent had a full and fair opportunity to vet the nature and quality of Petitioner's "reasonable cause" evidence during the administrative proceeding; it should not be allowed to launch a redundant, harassing, and unduly burdensome parallel proceeding now.

The information sought is, moreover, irrelevant. The scope of the Court's review with respect to reasonable cause is one of great deference to the Regional Director's factual and legal

determinations. *Paulsen v. Renaissance Equity Holdings, LLC*, 849 F. Supp. 2d 335, 353 (E.D.N.Y. 2012) ("[R]easonable cause to believe that unfair labor practices have been committed" is a more forgiving standard than "likelihood of success on the merits" such that a petitioner need only "come forward with evidence 'sufficient to spell out a likelihood of violation.'") (quoting *Blyer v. One Stop Kosher Supermarket, Inc.*, 720 F. Supp. 2d 221, 224-25 (E.D.N.Y. 2010) and *Blyer v. Pratt Towers, Inc.,* 124 F. Supp. 2d 136, 143 (E.D.N.Y. 2000) (citations omitted)). Any evidence not offered in the administrative proceeding did not form the basis for the Regional Director's conclusions. Likewise, such evidence cannot bear upon an assessment of reasonable cause because the Board and enforcing Court of Appeals will review only the evidence entered during the administrative proceeding. Because this evidence will not be considered by the Board or the Court of Appeals, it would be inappropriate for this Court to rely on it in evaluating reasonable cause. Given the redundancy and irrelevance of the request, it serves only to advance Respondent's strategy of delay and intimidation.

The Court should, therefore, quash request 1(g) of the subpoenas in its entirety as it seeks irrelevant information, places an undue burden on government witnesses, and to develop a redundant record on matters related to the "reasonable cause" prong of the 10(j) analysis.

### c.  Request 2 of the Subpoenas Should be Quashed

Request 2 of the subpoenas seeks documents relating to statements and information the witnesses posted to social media since August 2021 about organizing at the Buffalo stores, Rochester store, and other of Respondent's stores, Respondent's conduct alleged in the Complaint, and protected concerted activity involving organizing or Respondent's unfair labor practices. The Court should quash request 2 for the same reasons as set forth in the preamble and with respect to requests 1(a)-(f) and (g), and as elaborated below.

As an initial matter, it is unclear how employee and union organizers' social media posts have any bearing on this proceeding. Specifically, that information has no bearing on the existence of reasonable cause because the witnesses' motivations are not at issue; the issue before the Court relates to Respondent's conduct and motivations and the impact thereof on employees' Section 7 rights. In that regard, this request seeks irrelevant information beyond the scope of the administrative record and is therefore unnecessary given the scope of the Court's review. To the extent the information sought somehow relates to the "just and proper" prong, it likewise seeks redundant and irrelevant information. Whether these witnesses did or did not post on social media does not weigh on whether injunctive relief is just and proper. All relevant evidence as to both prongs has been adduced in the administrative hearing during which Respondent had a full and fair opportunity to vet and elicit evidence on this issue; it should not be allowed to launch a redundant, harassing, and unduly burdensome parallel proceeding now.

Request 2 of the subpoenas should, therefore, be quashed in its entirety.

**d.   Requests 3-6 of the Subpoenas Should be Quashed**

Request 3 of the subpoenas seeks communications between employees and/or organizers and the Union concerning media contacts.

Request 4 of the subpoenas seeks information about communications between employees and/or organizers and the Union concerning information to be provided to the media.

Request 5 of the subpoenas seeks information about communications between employees and/or union organizers and the media.

Request 6 of the subpoenas seeks information about statements made by employees and/or union organizers regarding various forms of protected concerted activity.

The purpose of these requests is indeterminable and overly broad. Whether the individuals spoke to, or contemplated speaking to, the media is entirely irrelevant. Additionally, actual (as opposed to contemplated) discussions with the media are a matter of public record and requesting such information from government witnesses places an undue burden on them in contravention of Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 45(b)(2)(C)(i). The Court should, therefore, quash request 3 of the subpoenas in its entirety for the same reasons as set forth in the preamble and with respect to requests 1(a)-(f), 1(g), and 2.

### e.   Requests 7 and 8 of the Subpoenas Should be Quashed

Request 7 of the subpoenas seeks information relating to payments to employees and/or organizers by the Union.

Request 8 of the subpoenas seeks information relating to payments made to employees and/or organizers by any person or entity at the Union's request related to protected concerted activity or in any way to Respondent.

It is unclear how the requested information bears on the existence of "reasonable cause" or whether interim relief is "just and proper." Employees' and the Union's motivations for organizing are not at issue in the underlying administrative case nor in this proceeding; the sole questions before the Court relate to Respondent's conduct and motivations, and the impact of Respondent's conduct. The Court should, therefore, quash requests 7 and 8 of the subpoenas in their entirety for the same reasons as set forth in the preamble and with respect to requests 1(a) - (f), 1(g), and 2, and as elaborated below.

Likewise, to the extent Respondent seeks this information in connection with the "just and proper" prong to show that a discriminatee is unlikely to accept reinstatement or to challenge their backpay award, the information is irrelevant. Information about post-discharge employment has

no bearing on the merits of the unfair labor practices, the harm caused to employees' Section 7 rights, or the efficacy of a final remedy in that regard. A reinstatement order is essential regardless of a discriminatee's post-discharge circumstances to provide the discriminatee the opportunity to consider the offer and to demonstrate to remaining employees that the Board is not ineffectual in vindicating their rights.

Similarly, to the extent these requests seek evidence of mitigation of damages and/or interim earnings that might offset a backpay award, such issues are wholly irrelevant to the merits of the case and are accordingly not at issue in the underlying administrative case nor in this 10(j) proceeding. This petition seeks only interim reinstatement of the discharged employees; no backpay is sought in this forum. The Board has a separate procedure for determining the propriety of final reinstatement and backpay awards which commences after litigation on the merits. Respondent will have every opportunity to avail itself of that procedure and raise concerns about reinstatement and backpay at that time. Theses requests therefore seek irrelevant information and therefore places an undue burden on the witnesses in contravention of Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 45(b)(2)(C)(i).

Requests 7 and 8 should, therefore, be quashed in their entirety.

**f.   Request 9 of the Subpoenas Should be Quashed**

Request 9 of the subpoenas seeks information relating to employees' and/or organizers' communications with the Union about recording conversations.

This request should be quashed in its entirety. Employees' and the Union's conduct and motivations are not at issue; the sole questions before the Court relate to Respondent's conduct and motivations and the impact of that conduct on employees' Section 7 rights. Questions about motivations and other matters related to employees' and organizers' recordings simply have no

bearing on these issues and are entirely irrelevant. To the extent this information is being sought to assess witness credibility, that is beyond the scope of this Court's review in this matter. *Palby Lingerie*, 625 F.2d at 1051-52, n.5. The Court should, therefore, quash request 9 for the same reasons as set forth in the preamble and with respect to requests 1(a)-(f), 1(g), and 2.

### g.   Requests 10-11 of the Subpoenas Should be Quashed[10]

Request 10 of the subpoenas seeks information related to employees' and organizers' employment, other than with Respondent, since the start of the organizing campaign.

Request 11 of the subpoenas seeks information related to employees' and organizers' attendance or participation in education or vocational programs since the start of the organizing campaign.

The purpose of this request is entirely unclear. Information relating to external employment for employees and "organizers" has no bearing on this proceeding in any way. As is discussed at length in the preamble, this information is unnecessary for the finding of a reinstatement order, and it is inappropriate for Respondent to seek future backpay evidence in this proceeding. During the administrative proceeding, Respondent unsuccessfully sought evidence regarding how employees were educated about their Section 7 rights. Such information is just as irrelevant now as it was then. The Court should, therefore, quash request 10 for the same reasons as set forth in the preamble and with respect to requests 1(a)-(f), 1(g), 2, and 7-8.

### h.   Request 12 of the Subpoenas Should be Quashed

Request 12[11] of the subpoenas seeks information related to calls involving employees, organizers, and Union agents.

---

[10] The subpoena to the Custodian of Records does not include these requests.

[11] This is request 10 in the subpoena to the Custodian of Records.

The purpose and relevance of this request is entirely unclear. Indeed, questions related to calls between employees, organizers, and the Union are inappropriate as they seek to uncover protected concerted activity as well as protected union activity, which unto itself may constitute an unfair labor practice. Additionally, the Court should quash request 12 for the same reasons as set forth in the preamble and with respect to requests 1(a)-(f), 1(g), 2, and 7-8.

### i.   Request 13 of the Subpoenas Should be Quashed

Request 13[12] of the subpoenas seeks information related to discussions by employees and/or organizers about any increase or decline in support of organizing campaigns at Buffalo and Rochester stores.

This request ostensibly speaks to the "just and proper" prong of the 10(j) analysis. The Court should, therefore, quash this request in its entirety for the same reasons as set forth in the preamble and with respect to request 1(a)-(f). All relevant evidence is before the Court, the request seeks irrelevant information, and Respondent had a full and fair opportunity to elicit information about whether interim relief is "just and proper" during the administrative proceeding; it should not be allowed to launch a redundant, harassing, and unduly burdensome parallel proceeding now.

### j.   Request 14-16 of the Subpoenas Should be Quashed

Request 14[13] of the subpoenas seeks information related to communications between employees, organizers, and the Union with publicly elected or appointed officials.

---

[12] This is request 11 in the subpoena to the Custodian of Records.

[13] This is request 12 in the subpoena to the Custodian of Records.

Request 15[14] of the subpoenas seeks information related to changes in the timing of filing election petitions based on the Complaint, underlying charges, other alleged unfair labor practices, and other factors.

Request 16[15] of the subpoenas seeks emails from the sbworkersunited@gmail.com email account regarding support for the Union, protected concerted activity, and fear of retaliation for engaging in union activities.

The Court should quash these requests for the same reasons as set forth in the preamble and with respect to requests 1(a) - (f), 1(g), 2, and 7-8. Additionally, employees', the Union's, and public officials' conduct and motivations are not at issue in this proceeding; the sole questions before the Court relate to Respondent's conduct and motivations and the impact of that conduct on employees' Section 7 rights. Questions related to their communications and to filing petitions are also inappropriate as they inappropriately seek to uncover protected concerted activity.

### k.  Request 17 of the Subpoenas Should be Quashed

Request 17[16] of the subpoenas seeks documents relating to and/or discussing reasons other than alleged retaliation that employees have cited as a reason for not supporting the Union.

This request ostensibly speaks to the "just and proper" prong of the 10(j) analysis. All relevant evidence is before the Court, the request seeks irrelevant information, and Respondent had a full and fair opportunity to elicit information about whether interim relief is "just and proper" during the administrative proceeding; it should not be afforded the opportunity to launch a redundant, harassing, and unduly burdensome parallel proceeding now. The Court should,

---

[14] This is request 13 in the subpoena to the Custodian of Records.
[15] This is request 14 in the subpoena to the Custodian of Records.
[16] This is request 15 in the subpoena to the Custodian of Records.

therefore, quash this request for the same reasons as set forth in the preamble and with respect to request 1(a)-(f).

### l.   Request 18 of the Subpoenas Should be Quashed[17]

Request 18 of the subpoenas seeks documents relating to the witness's employment with or termination of employment from other entities since the employees' termination by Respondent.

Request 19 seeks information relating to payments to and employment by other entities since the witnesses' termination by Respondent.

Request 20 seeks information relating participation in educational and training programs since the employees' termination by Respondent.

Request 21 seeks information relating to employees' availability to work since their termination by Respondent.

These requests are completely immaterial to the questions before the Court. Indeed, each request addresses conduct *after* the employees' termination. Employees' conduct outside the scope of their employment with Respondent is not at issue in this proceeding; the sole questions before the Court relate to Respondent's conduct and motivations and the impact on employees' Section 7 rights. The Court should, therefore, quash requests 18 through 21 for the same reasons as set forth in the preamble and with respect to requests 1(a) and (g), 2, and 7-8.

### III.   CONCLUSION

For the reasons stated above, Petitioner respectfully urges the Court to quash Respondent's Subpoenas to third-party witnesses in this matter or, in the alternative, to grant a protective order.

---

[17] Requests 18 through 21 were only included in subpoenas to witnesses who are alleged in the Complaint to have been terminated or constructively discharged by Respondent. Specifically, these requests appear in the subpoenas issued to Krempa, Nuzzo, Fleischer, Rojas, Park, Montanye Higgins, and Tarnowski.

Respectfully submitted this 16th day of September 2022.

Linda M. Leslie, Regional Director
National Labor Relations Board – Region 3
Niagara Center Building
130 S. Elmwood Avenue—Suite 630
Buffalo, NY 14202-2465

By:

/s/ Caroline V. Wolkoff
COUNSEL FOR PETITIONER
National Labor Relations Board – Region 3
Leo O'Brien Federal Building
11A Clinton Ave. – Room 342
Albany, NY 12207
E-mail: caroline.wolkoff@nlrb.gov
New York Attorney Registration No. 4893434

## **CERTIFICATE OF SERVICE**

Counsel for the Petitioner hereby certifies that on the 16th day of September 2022, the foregoing has been electronically filed via the CM/ECF system.

Counsel for the Petition further certifies that the forgoing has been mailed by electronic mail, to the following:

- Adam Tuzzo, Esq, via ECF and electronic mail (atuzzo@littler.com)
- Jacqueline Phipps Polito, Esq., via ECF and electronic mail (jpolito@littler.com)
- Jonathan O. Levine, Esq., via ECF and electronic mail (jlevine@littler.com)
- David A. Kadela, Esq., via ECF and electronic mail (dkadela@littler.com)
- Jeffrey S. Hiller, Esq., via ECF and electronic mail (jhiller@littler.com)
- Brittany L. Stepp, Esq., via ECF and electronic mail (bstepp@littler.com)
- Ian Hayes, Esq., via ECF and electronic mail (ihayes@hayesdolce.com)

Respectfully submitted this 16th day of September 2022.

/s/ Caroline V. Wolkoff
COUNSEL FOR PETITIONER
National Labor Relations Board – Region 3
Leo O'Brien Federal Building
11A Clinton Ave. – Room 342
Albany, NY 12207
E-mail: caroline.wolkoff@nlrb.gov