**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

**LINDA M. LESLIE, Regional Director of the**
**Third Region of the National Labor Relations**
**Board, for and on behalf of the**
**NATIONAL LABOR RELATIONS BOARD,**

        **Petitioner,**

    **vs.**

**STARBUCKS CORPORATION,**

        **Respondent.**

**Case No. 1:22-cv-00478-JLS**

**STARBUCKS CORPORATION'S MEMORANDUM IN OPPOSITION TO**
**MOTION TO QUASH SUBPOENA *DUCES TECUM* TO**
**THIRD-PARTY STARBUCKS EMPLOYEES AND WORKERS UNITED**
**REPRESENTATIVES**

<u>**TABLE OF CONTENTS**</u>

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ............................................................................................... 1

II.     LEGAL STANDARD........................................................................................... 2

III.    ARGUMENT ....................................................................................................... 3

        A.      NO EMPLOYEE-UNION PRIVILEGE EXISTS OR APPLIES.......................... 3

        B.      THE UNION'S ARGUMENTS REGARDING PRIVILEGE, FOIA,
                SECTION 7 AND JENCKS HAVE NO APPLICATION HERE........................ 5

        C.      THE UNION'S WORK PRODUCT ARGUMENTS ARE MISPLACED........... 9

        D.      THE UNION'S ARGUMENTS ABOUT RELEVANCE,
                AVAILABILITY FROM OTHER SOURCES, OR THAT REQUESTS
                ARE CUMULATIVE OR DUPLICATIVE DO NOT SUPPORT
                QUASHING THE SUBPOENA, AND THE UNION FAILS TO
                ESTABLISH UNDUE BURDEN....................................................... 12

        E.      THE UNION'S ARGUMENTS THAT THE SUBPOENA SEEKS
                CONFIDENTIAL INFORMATION AND ITS SPECIFIC OBJECTIONS
                FAIL FOR THE SAME REASONS OUTLINED ABOVE............................... 15

IV.     CONCLUSION.................................................................................................... 15

4853-5657-8868.2 / 055187-1401

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agent Orange Prod. Liab. Litig.*,
  517 F.3d 76 (2d Cir. 2008) ........................................................................................2

*Am. Sav. Bank, FSB v. UBS PaineWebber, Inc.*,
  330 F.3d 104 (2d Cir. 2003)........................................................................................2

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*,
  262 F.R.D. 293 (S.D.N.Y. 2009) ...............................................................................15

*Belcastro v. United Airlines, Inc.*,
  No. 17-cv-1682, 2021 U.S. Dist. LEXIS 74710 (N.D. Ill. Apr. 19, 2021) ...............5

*Bell v. Vill. of Streamwood*,
  806 F. Supp. 2d 1052 (N.D. Ill. 2011) ...................................................................4,5

*Boyer v. Rock Twp. Ambulance Dist.*,
  No. 4:10-cv-02344, 2012 U.S. Dist. LEXIS 41709 (E.D. Mo. Mar. 27, 2012).......4

*Concord Boat Corp. v. Brunswick Corp.*,
  169 F.R.D. 44 (S.D.N.Y. 1996) .................................................................................14

*Curry v. Contra Costa Cnty.*,
  No. 12-cv-03940, 2013 U.S. Dist. LEXIS 122857 (N.D. Cal. Aug. 28, 2013) ........4

*D'Ippolito v. Cities Serv. Co.*,
  39 F.R.D. 610 (S.D.N.Y. 1965) (disclosure of exhibit to the Anti-trust
  Division of the U.S. Department of Justice constituted waiver of plaintiff's
  asserted work product privilege)................................................................................11

*First Fed. Sav. & Loan Asso. v. Oppenheim, Appel, Dixon & Co.*,
  110 F.R.D. 557 (S.D.N.Y. 1986) .................................................................................3

*Ghonda v. Time Warner Cable, Inc.*,
  No. 16-cv-2610, 2017 U.S. Dist. LEXIS 11769 (E.D.N.Y. Jan. 27, 2017) .............14

*Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Service Center of Haverstraw,
  Inc.*,
  No. 02-cv-0504, 2003 U.S. Dist. LEXIS 15917 (S.D.N.Y. Sept. 10, 2003) ...........10

*Matter of Grand Jury Subpoenas*,
  959 F.2d 1158 (2d Cir. 1992)....................................................................................10

ii

*In Re Grand Jury Subpoenas*,
    995 F. Supp. 332 (E.D.N.Y. 1998) ................................................................3

*Hernandez v. Office of the Comm'r of Baseball*,
    331 F.R.D. 474 (S.D.N.Y. 2019) ...............................................................4

*Hickman v. Taylor*,
    329 U.S. 495 (1947) ..................................................................................10

*Guess?, Inc.*,
    339 NLRB 432 (2003) ................................................................................7

*Info. Resources v. Dun & Broadstreet Corp.*,
    999 F. Supp. 591-593 (S.D.N.Y. 1998) ...................................................11

*Jencks v. U.S.*,
    353 U.S. 657 (1957) ..............................................................................5, 7

*Johnson v. J. Walter Thompson U.S.A., LLC*,
    No. 16-cv-1805, 2017 U.S. Dist. LEXIS 111548 (S.D.N.Y. July 18, 2017) ...........................14

*Jones v. Hirschfeld*,
    219 F.R.D. 71 (S.D.N.Y. 2003) ................................................................13

*Kirschner v. Klemons*,
    No. 99-cv-4828, 2005 U.S. Dist. LEXIS 9803 (S.D.N.Y. May 19, 2005) ............................14

*Kyei v. Or. DOT*,
    497 F. App'x 711 (9th Cir. 2012) ................................................................4

*Local 3621, EMS Officers Union v. City of N.Y.*,
    No. 18-cv-4476, 2020 U.S. Dist. LEXIS 231434 (S.D.N.Y. Dec. 9, 2020) .....................3, 12

*Morelli v. Alters*,
    No. 1:19-cv-10707, 2020 U.S. Dist. LEXIS 207362 (S.D.N.Y. Nov. 5, 2020).......................8

*National Telephone Directory Corp.*,
    319 NLRB 420 (1995) ................................................................................7

*NetJets Aviation, Inc. v. NetJets Ass'n of Shared Aircraft Pilots*,
    No. 2:17-mc-00038, 2017 U.S. Dist. LEXIS 129354 (S.D. Ohio Aug. 15, 2017) ........................................................................................4

*NLRB v. Interstate Builders*,
    351 F.3d 1020 (10th Cir. 2003) ...............................................................15

*NLRB v. Robbins Tire & Rubber Co.*,
    437 U.S. 214 (1978).....................................................................................5

4853-5657-8868.2 / 055187-1401

*Ozark Auto. Distribs. v. NLRB*,
   779 F.3d 576 (D.C. Cir. 2015) ...................................................................................8

*Parra v. Bashas' Inc*.,
   No. 02-cv-591, 2003 U.S. Dist. LEXIS 28375 (D. Ariz. Oct. 1, 2003)......................3

*Sea Tow Int'l, Inc. v. Pontin*,
   246 F.R.D. 421 (E.D.N.Y. 2007) ...............................................................................13

*Toyo Tire & Rubber Co. v. Atturo Tire Corp*.,
   No. 14-cv-206, 2016 U.S. Dist. LEXIS 72756 (N.D. Ill. June 3, 2016)....................9

*Tracy Auto, L.P.*,
   2021 NLRB LEXIS 402 (2021) ...................................................................................7

*Univ. of Pa. v. EEOC*,
   493 U.S. 182 (1990)......................................................................................................3

*Urban 8 Fox Lake Corp. v. Nationwide Afford. Hous. Fund 4, LLC*,
   334 F.R.D. 149 (N.D. Ill. 2020) ..................................................................................3

*Valero Energy Corp. v. United States*,
   569 F.3d 626 (7th Cir. 2009) .......................................................................................3

*Von Bulow by Auersperg v. Von Bulow*,
   811 F.2d 136 (2d Cir. 1987).................................................................................3, 10

*Wong v. Bd. of Educ. of Comm. Consol*.,
   No. 11-cv-07357, 2013 U.S. Dist. LEXIS 141859 (N.D. Ill. Sept. 30, 2013) ...........4

*Wyatt v. Kozlowski*,
   No. 19-cv-159, 2019 U.S. Dist. LEXIS 133785 (W.D.N.Y. Aug. 8, 2019) .......3, 11

**Rules**

Federal Rules of Civil Procedure, Rule 26 ....................................................2, 8, 10, 15

Federal Rules of Civil Procedure, Rule 45 .......................................................................2

Federal Rules of Evidence, Rule 501................................................................................3, 5

**Statutes**

Freedom of Information Act .........................................................................................5, 6

National Labor Relations Act, 29 U.S.C. §§151-169 ............................................3, 6, 7, 8, 13, 15

iv

**Other Authorities**

9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE
§ 2459 (3d ed. 2020) ....................................................................................................................8

4853-5657-8868.2 / 055187-1401

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **LINDA M. LESLIE, Regional Director of the Third Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,** | |
| **Petitioner,** | **Case No. 1:22-cv-00478-JLS** |
| **vs.** | |
| **STARBUCKS CORPORATION,** | |
| **Respondent.** | |

**STARBUCKS CORPORATION'S MEMORANDUM IN OPPOSITION TO MOTION TO QUASH SUBPOENA *DUCES TECUM* TO THIRD-PARTY STARBUCKS EMPLOYEES AND WORKERS UNITED REPRESENTATIVES**

## I.     INTRODUCTION

Respondent Starbucks opposes the motion filed by Workers United (the "Union") to quash Starbucks's subpoena *duces tecum* to third-party Starbucks employees and Union representatives. (Doc. 42). The Union argues the subpoenas should be quashed because they are unduly burdensome or require production of privileged materials: (1) citing "employee-union representative privilege," which is not recognized in this Circuit and which would not cover the documents requested, even if applicable; (2) asserting general "work product" of the Union or the National Labor Relations Board ("NLRB"), but which privilege does not extend to Starbucks employees communicating with each other or Union organizers, nor to employee communications to the NLRB (which does not represent the Union or its members), and, in any event, which privilege is waived by both testimony of witnesses and the production and use of an "excerpt" of emails from the Union's Gmail account by Petitioner in the administrative proceeding; (3)

1

claiming irrelevance despite the Union being fully aware that the subpoena seeks documents used in excerpts or referenced in testimony by two Union organizers and witnesses called by Petitioner for the express purpose of giving alleged "just and proper" testimony at the administrative hearing; and, (4) & (5) claiming the subpoenas are cumulative or duplicative, and seek information already available or provided to Starbucks, merely because Petitioner filed affidavits with its Petition or produced its hand-picked exhibits at the administrative hearing, but which filings and exhibits did not include all of the information sought by the subpoenas. Each of the Union's arguments fail for the reasons set forth herein.[1]

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." The Court has "wide latitude to determine the scope of discovery[.]" *Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008); *see also Am. Sav. Bank, FSB v. UBS PaineWebber, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003).

Non-parties may attempt to quash a Rule 45 subpoena for document production where the subpoena requires "disclosure of privileged or other protected matters, if no exception or waiver applies," or if a demonstration is made of undue burden. Fed. R. Civ. P. 45(d). It is the objector's burden to demonstrate an undue burden or that any privileged material requiring protection exists in the requested materials. *Wyatt v. Kozlowski*, No. 19-cv-159, 2019 U.S. Dist. LEXIS 133785, at *7 (W.D.N.Y. Aug. 8, 2019).

---

[1] Respondent's counsel requested that counsel for the Union – who attended the September 7 hearing as a non-party, not at Respondent's invitation – accept service of non-party subpoenas. Contrary to the misplaced argument in the Union's motion to quash, this request to a non-party to accept service of a non-party subpoena was in no way an effort to "integrate the Union" as a party to these proceedings. Respondent continues to oppose the Union multiplying these proceedings by unnecessarily participating as *amicus curiae*, and – now joined by Petitioner – continues to oppose the Union participating as a party.

4853-5657-8868.2 / 055187-1401

Federal common law governs assertions of privilege for claims arising under federal law, as this action does (Section 10(j)). Fed. R. Evid. 501; *see also First Fed. Sav. & Loan Asso. v. Oppenheim, Appel, Dixon & Co*., 110 F.R.D. 557, 560 (S.D.N.Y. 1986). Privileges should be narrowly construed and expansions cautiously extended. *Univ. of Pa. v. EEOC*, 493 U.S. 182, 189 (1990). Evidentiary privileges are construed narrowly because they can operate to impede the search for truth. *Von Bulow by Auersperg v. Von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987); *Valero Energy Corp. v. United States*, 569 F.3d 626, 630 (7th Cir. 2009). The party asserting privilege has the burden to demonstrate that it applies. Further, blanket privileges are disfavored, meaning that the party must establish that the privilege applies on a document-by-document basis. *Urban 8 Fox Lake Corp. v. Nationwide Afford. Hous. Fund 4, LLC*, 334 F.R.D. 149, 156 (N.D. Ill. 2020).

## III.   ARGUMENT

### A.   NO EMPLOYEE-UNION PRIVILEGE EXISTS OR APPLIES

A union-member privilege has not been recognized in the Second Circuit. *See In Re Grand Jury Subpoenas*, 995 F. Supp. 332, 334 (E.D.N.Y. 1998) ("declin[ing] to recognize a common law privilege shielding conversations between union officials and members on matters of union concern."); *see also Local 3621, EMS Officers Union v. City of N.Y.*, No. 18-cv-4476, 2020 U.S. Dist. LEXIS 231434, at *10 (S.D.N.Y. Dec. 9, 2020)(same). Claims of such a privilege are consistently rejected by the courts.  *See Parra v. Bashas' Inc*., No. 02-cv-591, 2003 U.S. Dist. LEXIS 28375, at *11-12 (D. Ariz. Oct. 1, 2003) (denying motion to quash subpoena for union-employee communications where "neither the Union's briefings, nor [the court's] own research, has found any authority for the existence of a privilege for union-employee communications"). *See also, Kyei v. Or. DOT*, 497 F. App'x 711, 713 (9th Cir. 2012) (in finding that a district court's admission of testimony by two union representatives did not constitute plain error, the court noted that "[n]either Supreme Court nor Ninth Circuit precedent provide authority for a union

3

member/union representative privilege" and that it was not going to "continue the evolutionary development of testimonial privileges by recognizing a new privilege in this case."); *NetJets Aviation, Inc. v. NetJets Ass'n of Shared Aircraft Pilots*, No. 2:17-mc-00038, 2017 U.S. Dist. LEXIS 129354, at *11 (S.D. Ohio Aug. 15, 2017) (the "vast majority of courts" have declined to recognize that *Bell*'s employee-union representative "privilege exists"); *Curry v. Contra Costa Cnty.*, No. 12-cv-03940, 2013 U.S. Dist. LEXIS 122857, at *13 (N.D. Cal. Aug. 28, 2013) (declining to recognize "a union-employee communications privilege"); *Boyer v. Rock Twp. Ambulance Dist.*, No. 4:10-cv-02344, 2012 U.S. Dist. LEXIS 41709, at *8 (E.D. Mo. Mar. 27, 2012) ("[T]here is no precedent from the Eighth Circuit or this District Court finding a union member-union representative privilege, and the Court is not inclined to find that such a privilege exists absent such authority. Rather the Court will follow the weight of federal authority that no such privilege exists.").

In *Hernandez v. Office of the Comm'r of Baseball*, 331 F.R.D. 474, 477 (S.D.N.Y. 2019), the Court held that this Circuit has not recognized such a privilege and declined to recognize it. *Hernandez* noted that *Bell v. Vill. of Streamwood*, 806 F. Supp. 2d 1052 (N.D. Ill. 2011) - the only case the Union cites (Doc. 43, at 4) here to assert a union-member privilege - "relate[d] only to communications between union members and union representatives which occurred during the course of disciplinary proceedings." *Id.* (*citing Bell*, 806 F. Supp. 2d 1052). Further, as later clarified by Illinois federal courts: "No controlling authority establishes a federal privilege protecting employee-union representative communications." *Wong v. Bd. of Educ. of Comm. Consol.*, No. 11-cv-07357, 2013 U.S. Dist. LEXIS 141859, at *7 (N.D. Ill. Sept. 30, 2013) (requiring production of union representatives' notes of interviews and finding such notes were important and could be used to refresh recollection or impeach). Rather, in *Belcastro v. United*

4

*Airlines, Inc.*, No. 17-cv-1682, 2021 U.S. Dist. LEXIS 74710, at *12 (N.D. Ill. Apr. 19, 2021), the court explained that the union-member privilege in *Bell* was based upon a specific Illinois law establishing a union agent-member privilege, noted that the state statutory privilege still does not shield crucial evidence, and held that "recognizing an employee-union representative privilege . . . would not be in line with 'reason and experience.'" *Id.* (*quoting* Fed. R. Evid. 501). Notably, the *Belcastro* court also held that a union member's emails were fair game:

> . . . Plaintiff's emails with his union representatives about the circumstances that led to his discipline and what occurred—is critical and singular enough that to shield it from disclosure would be to unacceptably impede the search for truth. . . . Defendants also have an important interest in learning what Plaintiff's narrative was contemporaneously with the events at issue in the lawsuit.

*Id.* at *11. Accordingly, there is no privilege protecting against discovery of the communications and materials sought by Respondent's subpoena, and the line of cases flowing from the Union's cite actually supports their production.

## B.   THE UNION'S ARGUMENTS REGARDING PRIVILEGE, FOIA, SECTION 7 AND *JENCKS* HAVE NO APPLICATION HERE

The Union also asserts that just because the Union (or a witness) may give a document to the NLRB, it is thereby protected as "privileged."  As an initial matter, Counsel for the General Counsel are not the attorneys for the Union or its members, so no attorney-client privilege attaches to such communications between the NLRB and the Union or the witnesses.  The Union's citation to *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 241-43 (1978) does not assist its argument. *Robbins Tire* stands for the proposition that statements provided to the NLRB are exempt under FOIA Exemption 7(A) from a FOIA request *prior to* the administrative hearing, and only "to the extent that the production of such records . . . would interfere with enforcement proceedings." *Id.* As the Union is aware, the administrative record in the underlying enforcement proceeding before the administrative law judge ("ALJ") is now closed, as the hearing concluded on September 14,

4853-5657-8868.2 / 055187-1401

2022.  Thus, the exemption no longer would apply. Regardless, Respondent is not requesting the Board's records – it is requesting the Union's and the individual witnesses' records. Petitioner put these records at issue when it filed the Petition in this case, and when it offered affidavit and live testimony of such witnesses.

Respondent's subpoenas already provide safeguards for its employees' Section 7 rights. Each subpoena appropriately carves out an exception for limited materials that would identify the name of any Starbucks hourly employee not yet identified (and excludes those who have already testified at the administrative hearing or who provided an affidavit that was filed in this case), or information from which their identity could be discerned, from any responsive documents if failing to do so would disclose their sentiments toward the Union, except where it reflects matters impacting their interest in union organizing or representation or where it related to whether Section 10(j) relief would be "just and proper."[2]

---

[2] Instruction 26 to the individual Subpoenas issued to the Union's Custodian of Records provides:  "To ensure that the requests that follow are not construed to have the purpose or effect of interfering with, restraining or coercing employees in the exercise of their rights under Section 7 of the National Labor Relations Act (the "NLRA"), please redact from responsive Documents the name of any Starbucks hourly employee (excluding Cassie Fleischer, Brian Nuzzo, Edwin "Minwoo" Park, Angel Krempa, Daniel Rojas, Jr., Nathan Tarnowski, Kellen Montanye Higgins, Colin Cochran, Larue Heutmaker, Danka Dragic, Casey Moore, Jaz Brisack, Will Westlake, Alexis Rizzo, Michelle Eisen, Kai Hunter, Kayla Desboro, James Skretta, Michaela Wagstaff, and any other witness who has testified at the administrative hearing on the Complaint or who provided an affidavit that was filed in this case), or information from which the identity of any Starbucks hourly employee could be discerned, from any responsive Documents where failing to do so would result in disclosure of the employee's sentiments toward the Union, except where a Document reflects or could be construed to reflect matters that effected the employee's interest, one way or the other, in union organizing or union representation or where the Document otherwise relates to whether Section 10(j) relief would be "just and proper," as referenced, if applicable, in Your testimony at the hearing on the Complaint. To be clear, this subpoena does not seek evidence of Section 7 activities that are unrelated to matters that had or may have had an effect on other employee's interest in union organizing or union representation or that otherwise do not relate to whether Section 10(j) relief would be "just and proper." The subpoena likewise does not seek affidavits provided to the National Labor Relations Board. If deemed necessary, Starbucks will agree to the entry of an appropriate protective order with respect to the production of any Documents for which a concern is expressed that production may interfere with, restrain, or coerce an employee in the exercise of the employee's Section 7 rights."

Similarly, each subpoena expressly carves out so-called *Jencks* materials in the same subpoena instruction (Instruction 26), excluding from its requested production any affidavits provided to the NLRB.  Respondent already has the 52 affidavits filed with the Petition, and Respondent excluded *Jencks* materials from its subpoena requests.  *See Jencks v. U.S.*, 353 U.S. 657, 672 (1957). Accordingly, the Union's arguments regarding the protected nature of such statements have no bearing on the subpoenas at issue.

In the same subpoena instruction, Starbucks also offered to agree to the entry of any necessary and appropriate protective order with respect to the production of any documents for which a concern is expressed that production may interfere with, restrain, or coerce an employee in the exercise of employees' Section 7 rights. Rather than engage in any discussion with Respondent about such a protective order, the Union and Petitioner filed their motions to quash, and Petitioner requested in the alternative that the Court enter a protective order.

The Union also argues that all documents that might tangentially refer to Section 7 activities by employees are privileged. Again, however, the Union's argument is based on NLRB decisions that have no application in federal court in a Section 10(j) proceeding. Further, even if they did apply here (which they do not), the same NLRB decisions cited by the Union make clear that the documents should be produced. The NLRB conducts a balancing test to weigh the employer's need for the information against employees' Section 7 rights in deciding these issues. *See Guess?, Inc.*, 339 NLRB 432, 434-435 (2003); *National Telephone Directory Corp.*, 319 NLRB 420, 421 (1995). Even under *Guess?*, Starbucks' right to the documents requested outweighs any right the Union or witnesses have to protect it.  *See e.g., Tracy Auto, L.P.*, 2021 NLRB LEXIS 402, *111 (2021) ("[A]n employer accused of unfair labor practices must be afforded a full opportunity to defend itself, including by subpoenaing documents that touch upon

7

an issue in controversy in the case."); *Ozark Auto. Distribs. v. NLRB*, 779 F.3d 576 (D.C. Cir. 2015) (denying enforcement of Board's decision because employer's document subpoena was improperly revoked).  Further, the Union makes no showing that the bulk of responsive materials are related to disciplinary proceedings, as its own NLRB case citations would require.

Here, the balancing test the NLRB itself uses (if it applied here, which it does not) would still tilt sharply in favor of producing the requested records. The Petition broadly alleges that Respondent violated the NLRA in a number of respects, and that injunctive relief is just and proper. As a result, through the subpoena, Starbucks is simply seeking documents that will assist in its defense of those allegations. *Morelli v. Alters*, No. 1:19-cv-10707, 2020 U.S. Dist. LEXIS 207362, at *12 (S.D.N.Y. Nov. 5, 2020) ("Information within [the] scope of discovery need not be admissible in evidence to be discoverable.") (*quoting* Fed. R. Civ. P. 26(b)(1)); *see also* 9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2459 (3d ed. 2020) ("[T]he scope of discovery is not limited to matters that are admissible or relevant to the issues formulated in the case but extends to any nonprivileged matter that is relevant to the claim or defense of any party in the pending action."). Respondent is not seeking information about whether or not partners engaged in Section 7 activities, nor does Respondent seek to discover the identity of those partners who may have done so, as noted in its subpoena instructions. In any event, the Board itself has already disclosed the identity of a number of employees who allegedly engaged in Section 7 activities, either by naming those individuals in the ULP complaint or by including their affidavits in the record filed in this case.  Further, the 19 Starbucks partners and two Union organizers called by Petitioner at the administrative hearing to testify regarding whether injunctive relief is just and proper, identified additional partners, some by name. Finally, each alleged discriminatee who claims to have been disciplined by Starbucks has waived any alleged privilege

8

based on the public filing in this case of affidavits discussing such discipline. Accordingly, the Union's general objections based on privilege and Section 7 should be overruled.

### C.     THE UNION'S WORK PRODUCT ARGUMENTS ARE MISPLACED

Contrary to the Union's arguments, Starbucks does not seek information that is protected by the attorney-client privilege or work product doctrine, as noted in its subpoena instructions.[3] The Union asserts that materials provided to a Union attorney are privileged. However, it fails to cite any particular offending request in the subpoenas that request communications between a Union attorney and a represented party regarding the subject matter of their representation (i.e., privileged communications) or materials prepared by or at the direction of counsel in anticipation of litigation and not in the ordinary course of business (i.e., attorney work product), as opposed to Starbucks employee communications with the Union organizers or agents regarding how to start a campaign or other matters.

The fact that Union organizers or agents may have later handed or forwarded, for example, Starbucks employee emails or text messages to a Union attorney so that the attorney could investigate whether an unfair labor practice may have occurred does not make that initial communication privileged or work product. As is often repeated, the attorney-client communication privilege protects communications, not facts. *Toyo Tire & Rubber Co. v. Atturo Tire Corp.*, No. 14-cv-206, 2016 U.S. Dist. LEXIS 72756, at *8-9 (N.D. Ill. June 3, 2016) ("the relevant inquiry is whether the documents or communications sought were transmitted for the purpose of obtaining legal advice"). Documents and records do not become privileged and beyond

---

[3] Instruction 14 of the Subpoena provides: "This subpoena does not seek Documents or Recordings (or portions of such matters) that You conclude must be withheld because they are covered by the attorney-client privilege, or the work product doctrine. For any Document or Recording withheld on a claim of privilege and/or under the work-product doctrine, identify (a) the date, (b) author, (c) recipients, (d) title, (e) general subject of the Document or Recording, (f) privilege claimed, and (g) the factual or other basis for Your belief that all the necessary elements for the privilege or protection applies."

the reach of discovery merely because they were provided to an attorney at some point in the course of an attorney-client relationship. *See Hickman v. Taylor*, 329 U.S. 495, 508 (1947) (explaining that "the protective cloak of [the attorney-client] privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation."); *see also Matter of Grand Jury Subpoenas*, 959 F.2d 1158, 1165 (2d Cir. 1992) ("Documents created by and received from an unrelated third party and given by the client to his attorney in the course of seeking legal advice do not thereby become privileged.").

Further, the work product doctrine covers materials prepared in anticipation of litigation and by or at the direction of counsel, not in the ordinary course of business. Fed. R. Civ. P. 26 (b)(3); *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Service Center of Haverstraw, Inc.*, No. 02-cv-0504, 2003 U.S. Dist. LEXIS 15917, at *12 (S.D.N.Y. Sept. 10, 2003); *Von Bulow by Auersperg v. Von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987). The Union fails to substantiate that the documents requested constitute such work product. Similarly, the Union fails to identify any evidence that materials sought by the subpoena were prepared at the direction of Union counsel.

The Union objects to the requests for the Union's email inbox, purportedly because such documents are not relevant and may contain privileged or work product materials. However, Petitioner already introduced into evidence at the administrative hearing a five-page exhibit that contained five emails from Starbucks partners to the Union expressing an interest in starting a union campaign at their stores. In one email, for example, an employee stated: "I've been wanting to encourage collective action at the store for awhile [sic] now and was inspired by the success in Buffalo."[4] Petitioner cited these as evidence of an alleged "chilling effect" outside Buffalo. Accordingly, any argument about lack of relevance and any alleged privilege that might attach was

---

[4] The administrative proceeding exhibit referenced here is Counsel for General Counsel Ex. 160.

waived.[5]  Respondent is entitled to any other examples of same, context of and responses and follow-up dialogue following such emails, and examples of support for the union.

Further, both the Union organizers (Richard Bensinger and Daisy Pitkin) and Union employees who also worked for Starbucks (including Casey Moore and Jaz Brisack), testified that they answered emails from interested Starbucks partners who emailed the Union, and claimed to have been told by others of general employee "fear" and evidence of a purported chilling effect based on their communications.  Petitioner's witnesses repeatedly referenced discussing the Union and conducting the campaign via email, text, group chat, and other written means.  At no time did these witnesses assert any "privilege" related to this testimony at the ULP hearing.  Accordingly, Petitioner has already demonstrated that it believes such communications are relevant, and the Union – which had counsel present in the hearing  – has waived any alleged privilege that might otherwise have attached to such communications.

The Union has failed to make clear how the requested materials would implicate any privileged communications with Union attorneys.  There is no allegation that any of the individuals referenced in the subpoena topics were involved in or anticipating litigation or seeking legal advice.  Absent disclosure of the identities of the speakers in the communications, Starbucks does not have sufficient information to evaluate the claim of erosion of union support or fear/chilling

---

[5] Indeed, even if they had not been used in the administrative proceeding, the Union's provision of these materials to Petitioner would also waive any alleged privilege. *Wyatt*, 2019 U.S. Dist. LEXIS 133785, at *14 ("Even assuming, despite Defendants' failure to demonstrate what the County Attorney submitted to the Commission in fact constitutes work-product, by submitting the documents voluntarily to the Commission Defendants have waived the protection"); *Info. Resources v. Dun & Broadstreet Corp*., 999 F. Supp. 591-593 (S.D.N.Y. 1998) (plaintiff waived privilege by providing materials to government agencies where plaintiff sought "to incite an attack" against  its adversary); *D'Ippolito v. Cities Serv. Co.*, 39 F.R.D. 610, 610 (S.D.N.Y. 1965) (disclosure of exhibit to the Anti-trust Division of the U.S. Department of Justice constituted waiver of plaintiff's asserted work product privilege).

effect, and whether the communications support or undermine Petitioner's claim. *Local 3621*, 2020 U.S. Dist. LEXIS 231434, at *12.

The Union failed to make clear how the requested information could represent attorney mental impressions, legal theories and otherwise protectable work product.

### D.   THE UNION'S ARGUMENTS ABOUT RELEVANCE, AVAILABILITY FROM OTHER SOURCES, OR THAT REQUESTS ARE CUMULATIVE OR DUPLICATIVE DO NOT SUPPORT QUASHING THE SUBPOENA, AND THE UNION FAILS TO ESTABLISH UNDUE BURDEN

It is remarkable to read the Union's argument that "Starbucks had a full and complete chance to gather information" simply because there was an administrative hearing and Petitioner called its witnesses and introduced its exhibits. (Doc. 42, at 9). The Union is fully aware that the ALJ in that matter denied every subpoena Respondent issued prior to such witnesses being called, including to the Union itself and some of the individuals from whom Respondent now seeks documents, often by reciting simply that there is no pre-hearing discovery in ULP litigation.  The Union is aware of this because the Union filed those petitions to revoke, in tandem with Petitioner, and was copied on the ALJ's orders revoking Starbucks's subpoenas.

The subpoenas issued to the Starbucks employees and Union representatives largely seek communications or documents made or produced by Starbucks employees, such as records of communications between employees and the Union, or statements or communications made to the public or third parties. The Union objects to some requests because they allegedly seek documents that are also available to Respondent from other sources, such as the record filed with the Petition, or that are cumulative. The subpoenas, of course, do not seek only the documents produced by Petitioner in support of its case. The Union's objections fail to account for documents the Union did not produce to the NLRB, or that the NLRB received from the Union but did not append to its Petition or use as exhibits at the hearing, or different versions of produced/used documents that

12

may be in the Union's possession, for example, or documents that are not otherwise in Respondent's or Petitioner's possession (such as communications the individual did not give to the Union), to which Respondent is entitled.

Moreover, the Union objects to specific requests directed to individuals who claim to have been discharged or constructively discharged for their alleged Section 7 activity. (Doc. 42, at 21-25). The Union's objections to these individual requests fail to account for documents that the Union did not produce to the NLRB or that the NLRB received from the Union but did not append to its Petition, or different versions of produced/used documents that may be in the Union's possession, that tend to show whether outside employment, compensation, or schooling directly impacted the employee's allegations of discharge or constructive discharge. Each of these challenged requests relates to testimony bearing on the issue of separation.  During the proceeding, former partners, including Cassie Fleischer and Kellen Montanye Higgins, testified about additional, full-time employment and educational opportunities that impacted their employment with Respondent. Other employees, including Michelle Eisen and Casey Moore, testified that they engaged in other employment, sometimes in the form of salaried positions, from the Union or other outside entities that tended to impact their employment with Respondent.

The Union further argues that some documents are purportedly not relevant to the claims or defenses. (See Doc. 43, at 7). However, the Union has the burden of persuasion in a motion to quash a subpoena. *Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 424 (E.D.N.Y. 2007) ("The burden of persuasion in a motion to quash a subpoena . . . is borne by the movant.") quoting *Jones v. Hirschfeld*, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003). That is not the posture of this matter, where the non-party Union has the burden to show that the documents sought by the subpoenas are not relevant, as it filed the motion to quash. The movant carries the burden of proving that a subpoena

13

imposes an undue burden. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48-49 (S.D.N.Y. 1996). "Because the burden is on the party seeking to quash a subpoena, that party cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance." *Kirschner v. Klemons*, No. 99-cv-4828, 2005 U.S. Dist. LEXIS 9803, at *6 (S.D.N.Y. May 19, 2005) (citation omitted). Courts have refused to quash subpoenas where the plaintiff offers nothing more than a conclusory statement that the subpoenaed party will be harmed. In *Ghonda v. Time Warner Cable, Inc.*, No. 16-cv-2610, 2017 U.S. Dist. LEXIS 11769, at *7 (E.D.N.Y. Jan. 27, 2017), the Eastern District held that "Plaintiff's contention that the mere service of the challenged subpoena would cause her harm [was] conclusory and speculative." Similarly, in *Johnson v. J. Walter Thompson U.S.A., LLC*, No. 16-cv-1805, 2017 U.S. Dist. LEXIS 111548, at *11 (S.D.N.Y. July 18, 2017), the Southern District held that the plaintiff's contention that the requested discovery would be "intrusive and burdensome" was "too nebulous to justify denying discovery of relevant information." *Id.* at *4. Here too, the Union has put forth a conclusory and speculative assertion that the subpoenas would be overly burdensome, without any specific evidence to support this claim.

Further, the Union's contention that any of the requests contained in the subpoenas were "transparently designed to harass third party individuals" is meritless. (Doc. 42, at 12). The Union produced witnesses at the administrative hearing, knowing at all times, that these witnesses could be subpoenaed by Respondent to produce records or testify, before, during, or after the Counsel for the General Counsel concluded its case-in-chief in front of the ALJ. Respondent properly served subpoenas only on those witnesses that testified during the hearing.

14

Further, the Union's citations of cases where the NLRB has revoked subpoenas about union operations, including in cases where the NLRB sought enforcement of its orders and a party challenged the NLRB's ruling on a subpoena, have no bearing here. In such cases, the determination is based on Section 11(1) of the NLRA – not Fed. R. Civ. P. Rule 26 or Section 10(j) of the NLRA – and is upheld absent an abuse of discretion. *See* Doc. 43, at 7-8; *NLRB v. Interstate Builders*, 351 F.3d 1020, 1028-29 (10th Cir. 2003) (analyzing issuance of subpoenas under NLRA Section 11(1)). In a Section 10(j) case, this Court decides whether matters are not within the scope of Rule 26 and owes absolutely no deference to an ALJ's determinations on any subpoena.

In any event, the relevance of the requested documents is not the "controlling factor" in assessing whether the subpoena imposes an undue burden, and the broad scope of discovery is set by Rule 26. *See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams*., 262 F.R.D. 293, 300 (S.D.N.Y. 2009).

### E. THE UNION'S ARGUMENTS THAT THE SUBPOENA SEEKS CONFIDENTIAL INFORMATION AND ITS SPECIFIC OBJECTIONS FAIL FOR THE SAME REASONS OUTLINED ABOVE

In its specific objections to each request in Respondent's subpoena, the Union simply quotes the relevant request and reiterates its references to the foregoing arguments. Because none of its arguments have any merit, however, the Union's motion to quash should be denied in whole.

## IV.    CONCLUSION

For all aforementioned reasons, Respondent Starbucks opposes the Union's Motion to Quash Starbucks's Subpoenas *Duces Tecum* to third-party Starbucks employees and Workers United representatives.

Dated: September 21, 2022

/s/ *David Kadela*

David Kadela (*Pro Hac Vice*)
Jeffrey S. Hiller (*Pro Hac Vice*)
LITTLER MENDELSON, P.C.
41 South High Street, Suite 3250
Columbus, OH 43215
Tel: 614-463-4201
Fax: 614-573-7475
Email: dkadela@littler.com
         jhiller@littler.com

Jacqueline Phipps Polito
LITTLER MENDELSON, P.C.
375 Woodcliff Drive, Suite 2D
Fairport, NY 14450
Tel:  585-203-3413
Fax:  585-486-1774
Email: jpolito@littler.com

Jonathan Levine (*Pro Hac Vice*)
Adam-Paul Tuzzo (*Pro Hac Vice*)
LITTLER MENDELSON, P.C.
111 East Kilbourn Ave., Suite 1000
Milwaukee, WI 53202
Tel: 414-291-5536
Fax: 414-291-5526
Email: jlevine@littler.com
         atuzzo@littler.com

Brittany L. Stepp (*Pro Hac Vice*)
LITTLER MENDELSON, P.C.
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102
Tel: 267-402-3124
Fax: 267-402-3131
Email: bstepp@littler.com

*Attorneys for Respondent*
*Starbucks Corporation*