UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 3

STARBUCKS CORPORATION

    Employer

and                                 Case 03-RC-282115

WORKERS UNITED

    Petitioner

**TYPE OF ELECTION:** RD DIRECTED

## CERTIFICATION OF REPRESENTATIVE

An election has been conducted under the Board's Rules and Regulations. The Tally of Ballots shows that a collective-bargaining representative has been selected. No timely objections have been filed.

As authorized by the National Labor Relations Board, it is certified that a majority of the valid ballots has been cast for

    Workers United

and that it is the exclusive collective-bargaining representative of the employees in the following appropriate unit:

**Unit**: All full-time and part-time Baristas and Shift Supervisors employed by the Employer at its 933 Elmwood Avenue, Buffalo, New York facility, excluding office clerical employees, guards, professional employees and supervisors as defined in the Act.



December 17, 2021      /s/NANCY WILSON

                                                 _____
                                                 NANCY WILSON
                                                 Acting Regional Director, Region 3
                                                 National Labor Relations Board

Attachment: Notice of Bargaining Obligation

EXHIBIT NO. GC 5   RECEIVED X   REJECTED _____

CASE NO 03-CA-285671   CASE NAME STARBUCKS

NO OF PAGES 3   DATE: 07/11/22   REPORTER: THOMAS BAKER

# NOTICE OF BARGAINING OBLIGATION

In the recent representation election, a labor organization received a majority of the valid votes cast. Except in unusual circumstances, unless the results of the election are subsequently set aside in a post-election proceeding, the employer's legal obligation to refrain from unilaterally changing bargaining unit employees' terms and conditions of employment begins on the date of the election.

The employer is not precluded from changing bargaining unit employees' terms and conditions during the pendency of post-election proceedings, **as long as** the employer (a) gives sufficient notice to the labor organization concerning the proposed change(s); (b) negotiates in good faith with the labor organization, upon request; and (c) good faith bargaining between the employer and the labor organization leads to agreement or overall lawful impasse.

This is so even if the employer, or some other party, files objections to the election pursuant to Section 102.69 of the Rules and Regulations of the National Labor Relations Board (the Board). If the objections are later overruled and the labor organization is certified as the employees' collective-bargaining representative, the employer's obligation to refrain from making unilateral changes to bargaining unit employees' terms and conditions of employment begins on the date of the election, not on the date of the subsequent decision by the Board or court. Specifically, the Board has held that, absent exceptional circumstances,[1] an employer acts at its peril in making changes in wages, hours, or other terms and conditions of employment during the period while objections are pending and the final determination about certification of the labor organization has not yet been made.

It is important that all parties be aware of the potential liabilities if the employer unilaterally alters bargaining unit employees' terms and conditions of employment during the pendency of post-election proceedings. Thus, typically, if an employer makes post-election changes in employees' wages, hours, or other terms and conditions of employment without notice to or consultation with the labor organization that is ultimately certified as the employees' collective-bargaining representative, it violates Section 8(a)(1) and (5) of the National Labor Relations Act since such changes have the effect of undermining the labor organization's status as the statutory representative of the employees. This is so even if the changes were motivated by sound business considerations and not for the purpose of undermining the labor organization. As a remedy, the employer could be required to: 1) restore the status quo ante; 2) bargain, upon request, with the labor organization with respect to these changes; and 3) compensate employees, with interest, for monetary losses resulting from the unilateral implementation of these changes, until the employer bargains in good faith with the labor organization, upon request, or bargains to overall lawful impasse.

---

[1] Exceptions may include the presence of a longstanding past practice, discrete event, or exigent economic circumstance requiring an immediate response.