# 22-

# United States Court of Appeals

*for the*

# Second Circuit

In re
WORKERS UNITED, RICHARD BENSINGER, JAZ BRISACK,
COLIN COCHRAN, KAYLA DISORBO, DANKA DRAGIC,
MICHELLE EISEN, CASSIE FLEISCHER, LARUE HEUTMAKER,
KELLEN MONTAYNE HIGGINS, KAI HUNTER, ANGEL KREMPA,
CASEY MOORE, NATHAN TARNOWSKI, BRIAN NUZZO,
EDWIN MINWOO PARK, DAISY PITKIN, ALEXIS RIZZO, DANNY ROJAS,
JAMES SKRETTA, MICHAELA WAGSTAFF, and WILL WESTLAKE,
*Petitioners.*

---

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES
DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK
IN NO. 22-CV-00478 (LGS), HONORABLE JOHN L. SINATRA

# PETITION FOR A WRIT OF MANDAMUS

IAN HAYES
HAYES DOLCE
*Attorneys for Petitioners*
135 Delaware Ave. #502
Buffalo, NY 14202
(716) 608-3427

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................1

PROCEDURAL AND FACTUAL BACKGROUND ...............................3

  A. Starbucks workers' campaign to unionize and the Company's  violations of federal labor law. .......................................................................3

  B. The underlying administrative case and the petition for injunctive  relief. .....4

  C. Starbucks' Subpoenas in the §10(j) case. ...........................................6

ARGUMENT .............................................................................................8

Applicable law ........................................................................................9

  A. Standard for mandamus ...................................................................9

  B. The right to confidential communications regarding union organizing.........10

    i.  Rights under the NLRA...............................................................10

    ii.  Common law privilege. ..............................................................13

  C. It is appropriate for the Court to consider mandamus in this case ................14

  D.    The district court's order is a clear abuse of discretion ............................17

    i.  Starbucks' requests unlawfully seek union activity communications which are protected from disclosure.......................................................17

      a. Requests that would reveal employee support or lack of support for the Union ........................................................................................17

      b. Requests that would reveal advice to potential members and strategy communications ...........................................................................19

      c. Requests that would reveal protected communications with the NLRB .20

      d. Requests that would reveal confidential communications with the

media...................................................................................................21

ii.  The district court failed to afford protections adequate to remedy the harm
from the subpoenas or render them lawful ........................................................22

iii.   Starbucks' request for the documents are irrelevant to the 10(j)
proceeding .............................................................................................24

iv.   At a minimum, the district court should have deferred to the NLRB's
resolution of the subpoena ULP case...................................................29

v.  In the alternative, the Court should grant the petition to consider the
application and scope of a federal common law privilege.............................32

CONCLUSION ......................................................................................35

## TABLE OF AUTHORITIES

### Cases

*Bell v. Village of Streamwood*, 806 F.Supp.2d 1052 (N.D. Ill. 2011) .............. 13, 33

*Bevona v. Field Bridge Assocs.*, No. 90 Civ. 5191 (RJW), 1991 BL 202, (S.D.N.Y. Dec. 5, 1991) ..................................................................................................29

*Chinese Daily News*, 353 NLRB 613 (2008)..........................................................12

*Chino Valley Medical Center,* 362 NLRB 283 (2015) ........................ 11, 12, 23, 28

*City of Newburgh v. Newman*, 421 N.Y.S.2d 673 (App. Div. 3d Dep't 1979)........34

*Comm. on Masonic Homes of R. W. Grand Lodge, F. & A. M. of Pa. v. NLRB*, 556 F.2d 214 (3d Cir. 1977) ........................................................................................18

*Constellation Brands, U.S. Operations, Inc. v. NLRB*, 842 F.3d 784, 791 (2d Cir. 2016) .....................................................................................................................11

*Dilling Mech. Contractors, Inc.*, 357 NLRB 544 (2011) .......................................29

*DOJ v. Fed. Labor Relations Auth.*, 39 F.3d 361 (D.C. Cir. 1994)........................34

Dunbar ex rel. NLRB v. Landis Plastics, Inc, 996 F. Supp. 174 (N.D.N.Y. 1998)25, 27

*Dunbar v. Landis Plastics, Inc.*, 977 F. Supp. 169 (N.D.N.Y. 1997)......................25

*Eastex, Inc. v. NLRB*, 437 U.S. 556 (1978) .............................................................21

*Elec. Contractors, Inc. v. NLRB*, 245 F.3d 109 (2d Cir. 2001) ..............................11

*Grace Lines, Inc. v. Motley*, 439 F.2d 1028 (1971)................................................17

*Guess?, Inc.,* 339 N.L.R.B. 432 (2003) ..................................................................11

*Hernandez v. Office of the Commission of Baseball*, 331 FRD 474 (S.D.N.Y. 2019) .............................................................................................................................14

*Hoffman ex rel. NLRB v. Inn Credible Caterers, Ltd.,* 247 F.3d 360 (2d Cir. 2001) .............................................................................................................................27

*In re Petroleum Products Antitrust Litigation*, 680 F.2d 5 (2d Cir. 1982)....... 13, 22

*In re Reyes*, 814 F.2d 168 (5th Cir. 1987) ..............................................................28

*In re S.E.C. ex rel. Glotzer*, 374 F.3d 184 (2d Cir. 2004).......................................15

*In re Sims*, 534 F. 3d 117 (2d Cir. 2008) .......................................................... 10, 14

*Int'l Org. of Masters, Mates & Pilots v. Trinidad Corp.,* 803 F.2d 69 (2d Cir. 1986) .............................................................................................................................30

*International Union v. Garner*, 102 F.R.D. 108 (M.D.Tenn. 1984) .......... 13, 32, 33

*Jaffee v. Redmond*, 518 U.S. 1 (1996) ....................................................................32

*Kaynard v. Bagel Bakers Council of Greater New York*, No. 67-C-776, 1968 BL 212 (E.D.N.Y. Feb. 20, 1968) ..............................................................................25

*Kreisberg ex rel. NLRB v. HealthBridge Mgmt., LLC*, 732 F.3d 131 (2d Cir. 2013) .............................................................................................................................24

*Leslie v. Starbucks Corporation*, 22-cv-00478-JLS (W.D.N.Y. 2022) ....................5

*MacNamara v. City of New York*, 607 F.3d 923 (2d Cir. 2010)............................10

*McKinney v. Starbucks Corp.*, 2022 WL 5434206 (W.D.Tenn. Aug. 18, 2022) ......4

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009)........................................9

*N. Cal. Dist. Council of Hod Carriers, Bldg. & Constr. Laborers v. Opinski*, 673 F.2d 1074 (9th Cir. 1982) ...............................................................................29

*NAACP v. State of Ala. ex. rel. Patterson*, 357 U.S. 449 (1958)...........................13

*National Telephone Directory Corp.*, 319 NLRB 420 (1995) ................................11

*Newport News Shipbuilding and Drydock Co. v. Peninsula Shipbuilders Ass'n*, 646 F.2d 117 (4th Cir.1981) ...................................................................................31

*NLRB v. Carpenters Local 608*, 811 F.2d 149 (2d Cir. 1987)................................33

*NLRB v. Electrical Workers Local 1229 (Jefferson Standard)*, 346 U.S. 464 (1953) ..............................................................................................................................21

*NLRB v. Maxwell*, 637 F.2d 698 (9th Cir. 1981) ...................................................21

*NLRB v. Scrivener*, 405 U.S. 117 (1972).............................................................13

*Pac. Molasses Co. v. NLRB Reg'l Office # 15*, 577 F.2d 1172 (5th Cir. 1978) ......18

*Pain Relief Centers, P.A.*, 371 NLRB No. 143 (2022).................................... 12, 20

*Paulsen ex rel. NLRB v. Remington Lodging & Hosp., LLC*, 773 F.3d 462 (2d Cir. 2014) ................................................................................................................27

*Peterson v. State,* 280 P.3d 559 (Alaska 2012) ....................................................34

*See United States v. Doe*, 219 F.3d 175 (2d Cir. 2000)...........................................34

*Seeler v. The Trading Port, Inc.*, 517 F.2d 33 (2d Cir. 1975) ................................25

*Sheet Metal Workers Local 36 v. Murphy Constr. Co.,* 191 F.3d 909 (8th Cir. 1999)................................................................................................................30

*Silverman v. Imperia Foods, Inc.*, 646 F.Supp. 393 (S.D.N.Y. 1986) ...................25

*Starbucks Corp and Workers United*, 2022 WL 6435891 (NLRB Div. of Judges Oct. 7, 2022) ......................................................................................................4

*Starbucks Corp. and Chicago and Midwest Regional Joint Board, Workers United, SEIU*, 2022 WL 7506363 (NLRB Div. of Judges Oct. 12, 2022)........................4

*Starbucks Corp. and Workers United Affiliated with SEIU*, 2022 WL 16709898 (NLRB Div. of Judges Nov. 3, 2022)...................................................................4

*Tower Industries*, 349 NLRB 1077 (2007)............................................................12

*United Nurses Associations of California v. NLRB*, 871 F.3d 767 (9th Cir. 2017)12, 18

*United States v. Dist. Council of N.Y.C. & Vicinity of Carpenters,* No. 90 Civ. 5722 (RMB), 2013 BL 417041 (S.D.N.Y. June 5, 2013) .............................................19

*United States v. Manzano*, 945 F.3d 615 (2d. Cir. 2019) .........................................9

*Veritas Health Servs., Inc. v. NLRB,* 671 F.3d 1267 (D.C. Cir. 2012)...................11

*Wright Electric, Inc.,* 327 NLRB 1194 (1999) .......................................................11

**Statutes**

29 U.S.C. § 157 et seq............................................................................... 10, 12

**Other Authorities**

Turner, J. M., & Koppin, J. M. (2012). "Discovery in NLRA Section 10(j)
  Proceedings." ABA Journal of Labor & Employment Law, Vol. 27, No. 3
  (Spring 2012)..........................................................................................25

## **PRELIMINARY STATEMENT**

Under the National Labor Relations Act ("NLRA" or "Act"), employees and unions have a right to communicate confidentially about union-related activity, and employers may not pry into those communications.   Contrary to these well-recognized principles, Respondent Starbucks Corporation issued sweeping subpoenas to Workers United ("Union"), as well as employees who support the Union and other individuals helping to organize Starbucks workers (collectively "Petitioners").  The subpoenas sought the most sensitive communications related to union representation, such as confidential communications detailing employee support or lack of support for the Union, internal Union strategy discussions, and Union advice and assistance to members.  The National Labor Relations Board ("NLRB"), which has exclusive jurisdiction to enforce the NLRA, has already issued a complaint alleging that Starbucks's violated the Act by issuing the subpoenas.  In February, the NLRB will hold a hearing on the matter.

Nevertheless, the district court largely enforced the subpoenas.  In doing so, it disregarded precedent recognizing the right of unions and employees to keep certain information private. Further, it declined to await the result of the pending administrative proceedings regarding the precise subpoenas at issue here.

Moreover, the district court ordered production although the requested documents are almost wholly irrelevant to the legal proceeding that was before the

1

district court.  That proceeding, arising under Section 10(j) of the Act, is limited to the narrow question of whether there is cause to believe that Starbucks committed unfair labor practices at stores in the Buffalo and Rochester New York area, and whether temporary injunctive relief should thus issue.  Petitioners are not party to that proceeding.  Yet, Starbucks is seeking their sensitive communications, not limited to the area where the alleged violations occurred, but across the entire country.  In effect, Starbucks is trying to co-opt the narrow district court proceedings for its own factfinding into union activity nationwide.

The district court's order is a clear abuse of discretion, requiring mandamus relief.  Petitioners recognize that mandamus is only granted in rare circumstances. But if this Court does not act now, Petitioners will be compelled to produce information protected by law that will irrevocably damage their organizing efforts by revealing their confidential organizing strategy to Starbucks, thereby allowing Starbucks to more effectively counter that effort and punish workers who support the Union. Such a clear abuse of discretion is exactly what a writ of mandamus is meant to prevent.

Moreover, this case gives the Court an opportunity to consider important matters of first impression in the Circuit, including whether a district court should defer to an ongoing administrative proceeding about the legality of subpoenas, and whether this Court should recognize a federal common law privilege protecting

confidential union communications, as other courts have.  These issues have the potential to affect labor relations throughout the Circuit.

## PROCEDURAL AND FACTUAL BACKGROUND

### A.    Starbucks workers' campaign to unionize and the Company's violations of federal labor law.

This case involves the groundbreaking unionization campaign by workers employed at Starbucks locations throughout the United States.  Starting in August 2021, thousands of Starbucks workers began filing petitions for union representation with the NLRB, asking that the Union to be certified as their collective bargaining representative.  To date, Starbucks workers have voted to be represented by the Union regarding at least 260 locations, spanning the country, with over 100 other petitions pending or awaiting final results.[1]

Starbucks has responded vigorously to the Union campaign.  Its anti-union efforts have forced the Union to file hundreds of Unfair Labor Practice ("ULP") charges with the NLRB alleging thousands of violations of the Act.  The NLRB has already found many of those charges merited, and has prosecuted Starbucks for many hundreds of violations of the Act.  This includes violations for terminating and disciplining workers for union support; closing stores based on perceived union

---

[1]    *See* Law360 Employment Authority, "Starbucks Unionization Tracker," *available at* https://www.law360.com/employment-authority/starbucks-tracker (last visited Dec. 13, 2022).

activity; interrogating, surveilling, and threatening workers; and implementing nationwide benefit improvements only for non-union workers.   See A1.

Several administrative law judges have already found that Starbucks has violated the NLRA.  *See Starbucks Corp. and Workers United Affiliated with SEIU*, 2022 WL 16709898 (NLRB Div. of Judges Nov. 3, 2022); *Starbucks Corp. and Chicago and Midwest Regional Joint Board, Workers United, SEIU*, 2022 WL 7506363 (NLRB Div. of Judges Oct. 12, 2022); *Starbucks Corp and Workers United*, 2022 WL 6435891 (NLRB Div. of Judges Oct. 7, 2022).  The district court for the Western District of Tennessee also granted a petition for injunctive relief under the Act, reinstating seven terminated workers.  *McKinney v. Starbucks Corp.*, 2022 WL 5434206 (W.D.Tenn. Aug. 18, 2022).

### B. The underlying administrative case and the petition for injunctive relief.

The underlying proceedings consists of three parallel cases: 1) an administrative prosecution of Starbucks for hundreds of violations of the Act before NLRB Administrative Law Judge Michael Rosas ("discharge ULP case"); 2) the NLRB's request for injunctive relief under §10(j) of the Act before the U.S. District Court for the Western District of New York ("§10(j) proceeding"); and 3) an administrative prosecution of Starbucks for issuing the subpoena in the 10(j) Proceeding that is the subject of the instant petition ("subpoena ULP case").

4

In the discharge ULP case, the NLRB, the Union, and Starbucks participated in a hearing before ALJ Rosas from July to September 2022.  The parties submitted post-hearing briefs and are currently awaiting a decision. *See* A2 et seq.

Notably, in the discharge ULP case, Starbucks served multiple rounds of subpoenas on individuals connected with the Union seeking broad categories of information related to union activity at its stores. *See* A57.  ALJ Rosas quashed the majority of subpoena requests, holding in part that they sought "information regarding protected union activities or other conduct covered by the investigatory and work product privileges."  A69 et seq.

In the §10(j) Proceeding, the NLRB petitioned the district court for temporary injunctive relief based on the same allegations in the discharge ULP case.  *See Leslie v. Starbucks Corporation*, 22-cv-00478-JLS (W.D.N.Y. 2022); A72 et seq. (hereinafter the "10(j) petition"); A116 et seq.; (NLRB's Memo of Points and Authorities). The district court initially stayed the §10(j) proceeding pending the parties' presentation of evidence to the ALJ in the discharge ULP case.  A204 et seq. After the parties completed presentation of evidence in the discharge ULP case, the entire administrative record was filed with the district court.

The Union moved to intervene in the §10(j) proceeding. The district court denied the motion, but allowed the Union to appear as amicus curiae, with the ability

to file a brief on the merits of the petition only.  The district court denied the Union's right to present evidence or make oral argument.  A206 et seq.

### C.     Starbucks' Subpoenas in the §10(j) case.

On September 10, 2022, in the context of the §10(j) proceeding, Starbucks served twenty-two subpoenas on Petitioners. *See* A216 et seq.  The subpoenas were similar to the subpoenas that Starbucks issued during the discharge ULP proceeding, which ALJ Rosas quashed because they sought information protected by the Act.

The subpoenas were directed at three partially overlapping groups: 1) Starbucks workers who had testified in the administrative case, many of whom have been terminated or disciplined by Starbucks in retaliation for union organizing; 2) Union employees (most of whom were workers who had been hired by the campaign after organizing, and still work at Starbucks); and 3) the Union's custodian of records.

The subpoenas sought sweeping categories of information about the Union's organizing campaign and workers' support for the Union anywhere in the U.S. since the time organizing began.  All twenty-two subpoenas sought functionally the same information from all individuals, namely: **(1)** Communications from employees detailing their support or lack of support for the Union (Requests 1b, 1c, 1d, 1f, 11, 14, 15); **(2)** Internal Union communications regarding strategy and employee support for the Union (Requests 1b, 1c, 1d, 1f, 3, 4a, 4c, 11, 13,

14); **(3)** Communications detailing Union advice and assistance provided to members; (Requests 1b, 1c, 1d, 1f, 3, 4a, 4c, 11, 13, 14); **(4)** Union and employee communications with the NLRB, including regarding pending ULP charges and elections (Requests 1b, 1c, 1d, 1f); and **(5)** Union and employee communications with media sources about the Union campaign (Requests 1b, 1c, 1d, 1f, 5a, 5c). *See* A216 et seq.

The Union filed a motion to quash the subpoenas, arguing that the requests violated the NLRA and sought privileged information. A460 et seq; A486 et seq. The NLRB also filed a motion for quash, and for a protective order. A506 et seq. On September 23, 2022, the district court denied the motions regarding the majority of the subpoena requests. *See* A535 et seq. (hereinafter the "Discovery Order"); A544 et seq. (transcript of hearing).

Meanwhile, the Union separately filed a ULP charge alleging that Starbucks violated the Act by issuing the subpoenas, since they sought protected information in violation of the Act. A594-95.

The Union filed a motion for reconsideration of the discovery order on October 8, 2022, requesting the subpoenas be quashed. *See* A596 et seq. In the alternative, the Union asked the district court to certify the question of compliance with the subpoenas to this Court, pursuant to 28 U.S.C. § 1292(b). The district court denied the motion. A604 et seq.

Since Petitioners believed the information sought was protected, and that compliance would entail serious violations of the Act, Petitioners did not produce the protected information.  Starbucks then filed a motion for sanctions or contempt against Petitioners on October 20, 2022. A610 et seq.  The Union opposed the motion and stated it intended to request a writ of mandamus from this Court. A624 et seq.

At an October 27, 2022 hearing the district court held the motion for sanctions or contempt in abeyance, and held all other aspects of the §10(j) case in abeyance until this Court resolved the merits of the instant mandamus petition.  A635 et seq.

On December 15, 2022, the NLRB General Counsel issued a complaint in the subpoena ULP case, based on the charge filed by the Union.  A651 et seq.  The case is pending before the NLRB, with a hearing scheduled for February 9, 2023. Following the issuance of the complaint in the subpoena ULP case, Petitioners again asked that the district court to stay enforcement of the subpoenas pending the outcome of the Board proceeding.  The district court denied the request.  Dec. 20 Dkt. entry.

## **ARGUMENT**

The Court should grant Petitioners request for a writ of mandamus and vacate the district court's discovery order.  Mandamus is appropriate under this Court's standard for granting a writ in cases involving questions of privilege, as well as the Court's more general mandamus standard.  The petition raises important issues of

8

first impression, given the extraordinary scope of the district court's order and its requirement that Petitioners divulge communications protected by federal law.  An immediate resolution is required because petitioners lack any other means for relief. Denying the writ will place Petitioners in the intolerable position of being forced to forgo their federal right to confidential communications by producing the documents, or risk contempt sanctions.  Accordingly, the Court should rectify the clear abuse of discretion by the district court, and vacate the discovery order.

## **Applicable law**

### A. **Standard for mandamus**

This Court may grant mandamus relief when a lower court's order "amount[s] to a judicial usurpation of power or a clear abuse of discretion," or would result in clear injustice.  *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–11 (2009) (internal quote omitted); *see also United States v. Manzano*, 945 F.3d 615, 623 (2d. Cir. 2019) (mandamus appropriate when the lower court's decision suffers from errors of law or abuse of its authority).

Where, as here, a trial court orders that a party produce privileged information, this Court considers whether: (1) "the petition raises an issue of importance and first impression," (2) "the petitioner's privilege will be lost if review must await final judgment," and (3) "immediate resolution will avoid the development of discovery

practices or doctrine undermining the privilege." *In re Sims*, 534 F. 3d 117, 128-29 (2d Cir. 2008) (internal quote omitted).

A more general standard applies in cases not involving production of arguably privileged documents. In such cases, the Court will issue a writ where a petition has (1) "no other adequate means" to obtain the relief, (2) the writ "is appropriate under the circumstances", and (3) the "right to issuance of the writ is clear and indisputable." *MacNamara v. City of New York*, 607 F.3d 923, 932-33 (2d Cir. 2010) (internal quote omitted).

This petition involves the Petitioners' assertion of privilege and Petitioners' argument that the district court order requires production of information protected by statute or otherwise non-discoverable information. Therefore, the Court should analyze the instant petition under the factors set forth in *In re Sims*. However, we also discuss the application of the more general standard below.

**B. The right to confidential communications regarding union organizing.**

          i. **Rights under the NLRA.**

Employees have a right under the NLRA to act concertedly in the workplace and to seek representation by a labor organization for the purposes of collective bargaining. 29 U.S.C. § 157. An important aspect of exercising that right is the ability to speak confidentially with fellow employees and labor organizations about collective action. *See Veritas Health Servs., Inc. v. NLRB,* 671 F.3d 1267, 1274

(D.C. Cir. 2012) ("'It is well settled that Section 7 of the Act gives employees the right to keep confidential their union activities, including their attendance at union meetings.'") (quoting *Guess?, Inc.,* 339 N.L.R.B. 432, 434 (2003)); *National Telephone Directory Corp*., 319 NLRB 420, 420-21 (1995) (discussing right to keep their union activity confidential).

For this reason, the NLRB and courts have consistently held that an employer may violate the NLRA when it seeks information about employees' concerted activity. *Chino Valley Medical Center,* 362 NLRB 283, 283 n. 1 (2015) *enfd.* 871 F.3d 767 (9th Cir. 2017); *Guess?, Inc.*, 339 NLRB 432 (2003).[2]  This includes where an employer seeks such information in the context of discovery in a pending lawsuit. *See, e.g, Wright Electric, Inc.,* 327 NLRB 1194, 1195 (1999) (employer violated Act by subpoenaing employee union cards in a state court lawsuit), *enfd*. 200 F.3d. 1162, 1167 (8th Cir. 2000).

For example, in *Chino Valley Medical Center,* the NLRB found the employer violated the Act by subpoenaing union membership information and communications between employees and the union.  362 NLRB 283, 283 n. 1 (2015). The Board reasoned that the breadth of the subpoenas "would subject

_____

[2]    This Court often looks to Board precedent in interpreting NLRA, given the Board's role in enforcing the Act and the deference this Court affords the Board's interpretations of the Act.  *See Elec. Contractors, Inc. v. NLRB*, 245 F.3d 109, 116 (2d Cir. 2001); *Constellation Brands, U.S. Operations, Inc. v. NLRB*, 842 F.3d 784 (2d Cir. 2016).

employees' Sec. 7 activities to unwarranted investigation and interrogation" in violation of the Act. *Id.* The Ninth Circuit agreed, enforcing the Board's decision. *United Nurses Associations of California v. NLRB*, 871 F.3d 767 (9th Cir. 2017). The Court noted that it is "well-established law that union activity is protected from employers' prying eyes" and that there is a "harmful effect that an employer's demand for information has on *all* workers, any one of whom might be dissuaded from union activity if they think an employer may learn of it." *Id.* at 785-86; *see also Chinese Daily News*, 353 NLRB 613, 614 (2008) (seeking employees' votes in union election unlawful); *Tower Industries*, 349 NLRB 1077, 1083 (2007) (discovery about discussions at union meetings unlawful); *Best Century Buffet, Inc*., 358 NLRB 143, 157 (2012) (discovery about employees' union membership and activity unlawful).

Relatedly, an employee's participation in NLRB processes is also protected. *See* 29 U.S.C. 158(a)(4). An employer may violate the Act by seeking confidential information shared by an employee with the NLRB, given the chilling effect that such employer action has on employees' exercising their right to relief from the Board and the detrimental impact it would have on the NLRB's ability to investigate pending cases. *See Pain Relief Centers, P.A.*, 371 NLRB No. 143, slip op. at *2 (2022) (violation where employer subpoenaed information that would reveal "the specifics of [employee] participation in a Board proceeding—a core right under the

12

Act"); *Cf. NLRB v. Scrivener*, 405 U.S. 117, 122 (1972) (discussing need to protect NLRB's ability to effectively conduct investigations without employer interference).

### ii. **Common law privilege.**

Separate and apart from protections offered by the NLRA, courts have also recognized a common law evidentiary privilege protecting against the disclosure of communications related to union activity. *See Bell v. Village of Streamwood*, 806 F.Supp.2d 1052, 1056-57 (N.D. Ill. 2011) (recognizing privilege against disclosing communications between union and members).

For example, in *International Union v. Garner*, the court denied a motion to compel documents that would reveal employee union support. 102 F.R.D. 108, 113 (M.D.Tenn. 1984). The court found that employees had a right to confidentiality in expressing their support for the union, and found it "doubtful that union certification election procedures would be effective if employees who signed authorization cards would be revealed in the course of litigation." *Id.* Further, the court found that a privilege against disclosure was appropriate given other similar associational privileges recognized under federal law, such as the right to withhold certain membership lists and the qualified news reporters' privilege to withhold information regarding confidential sources. *Id.* at 114-15 (citing *NAACP v. State of Ala. ex. rel. Patterson*, 357 U.S. 449, 460 (1958); *In re Petroleum Products Antitrust Litigation*, 680 F.2d 5, 7 (2d Cir. 1982)).

To Petitioners' knowledge, this Court has never considered whether to apply a common law privilege to a request for disclosure of union organizing communications. *See Hernandez v. Office of the Commission of Baseball*, 331 FRD 474, 477 (S.D.N.Y. 2019) (noting that Second Circuit has not considered issue).

### C. It is appropriate for the Court to consider mandamus in this case

The factors used by this Court to analyze mandamus cases involving an order to produce non-discoverable information are met by the instant petition. *In re Sims*, 534 F. 3d at 128-29.

First, the case raises issues of importance and first impression. The district court's order requires production of confidential communications regarding union organizing, contrary to the NLRA. Indeed, the NLRB's General Counsel has issued a complaint against Starbucks, which is currently pending a hearing before the agency. *See* A651 et seq. And the ALJ already ruled in the underlying discharge ULP case that subpoenas seeking similar information could not be enforced because they sought information protected by the Act. *See* A69-71. These circumstances create as issue of first impression, as, to Petitioners' knowledge, this Court has never considered whether a district court may require the production of documents where the prosecutor charged with prosecuting violations of the NLRA has found that the request of such documents violates the Act, and an ALJ has already ruled similar information protected.

The requirement that Respondents produce the documents is also a matter of significant importance.  The requested documents concern an ongoing national union campaign.  If produced, the documents will give Starbucks a window into the Union's strategies, which could be used to stymy its ongoing efforts.

Further, the documents would provide Starbucks with detailed information on past and current support for the Union.  This would subject those workers to retaliation for their support—a likely outcome given that the NLRB and courts have already found evidence that Starbucks retaliated against a significant number of workers because of their support for the Union.  *See* A1. The chilling effect that such retaliation could cause would be immediately damaging to the Union's efforts, and not something that could be remedied adequately in a future proceeding.

Moreover, the petition presents a separate issue of importance and first impression: whether this Court should recognize a federal common law privilege protecting disclosure of union activity.  Such "novel and significant question[s] of law . . . whose resolution will aid in the administration of justice" support the Court's consideration of the mandamus petition.  *See In re S.E.C. ex rel. Glotzer*, 374 F.3d 184, 187 (2d Cir. 2004) (internal quotation omitted).

Second, privilege will be lost if review awaits final judgment.  The district court ordered that the documents be produced now, prior to the beginning of any hearing in the §10(j) proceeding.  Further, the district court denied Petitioners'

15

request to certify a question regarding the issue, which would have provided for a direct appeal. Once disclosure is made, there will be no way to claw back the information or to remedy it after the conclusion of the 10(j) proceeding. Starbucks will already know significant pieces of the Union's organizing strategy, and there will be no way to erase that knowledge.

Third, for similar reasons, immediate resolution is needed to prevent the required disclosure of the documents. An immediate decision would also to permit the §10(j) proceeding to resume, which has been stayed pending resolution of the instant dispute.

Mandamus is also warranted under the general standard that this Court applies to mandamus petitions that do not involve privilege issues, should the Court decide to apply that test here.

First, Petitioners have no other means for relief. Starbucks has already sought sanctions and hold Petitioners in contempt for failing to produce the documents. Compliance with the subpoenas would mean revealing vast amounts of confidential information, causing damage that cannot be undone by a later appeal. Thus, mandamus relief is the only means for Petitioners' rights to remain protected without the risk of sanctions.

Second, mandamus is appropriate under the circumstances given the unprecedented nature of the district court's order to produce union support

information, and the issues of first impression raised by the petition. *See MacNamara*, 607 F.3d at 932-33 (finding factor met because petition raised novel issue about discovery production).

Third, Petitioners have a clear right to mandamus because the district court abused its discretion and relied on fundamental errors of law. It thereby failed to properly exercise its power and is thus subject to mandamus. *Grace Lines, Inc. v. Motley*, 439 F.2d 1028, 1031 fn. 2 (1971).

**D. The district court's order is a clear abuse of discretion**

Having demonstrated that the factors for consideration of mandamus are present, we next discuss why the district court's order was a clear abuse of discretion.

**i. Starbucks' requests unlawfully seek union activity communications which are protected from disclosure**

The subpoena requests impermissibly attempt to pry into protected activity, contrary to well-settled precedent under the NLRA making such conduct unlawful.

**a. Requests that would reveal employee support or lack of support for the Union**

The majority of requests enforced by the district court seek documents that would detail employees' support or lack of support for the Union (Requests 1a, 1b, 1c, 1d, 1f, 11, 14, 15). This includes requiring the Union to turn over statements by employees regarding their support for the Union at any store nationwide, and emails related to a Union email account "from any Starbucks employee that reflects interest

in starting a union campaign at any Starbucks store, attending union meetings, participating in a union bargaining committee, or serving as a Union representative, support for the Union and/or fear of retaliation for engaging in union activities." *See* Requests 1f, 14.

This is perhaps the most sensitive and confidential information about organizing that could be in a union's possession, as it would reveal support for the Union among hundreds of Starbucks workers who may prefer to remain unidentified. Longstanding precedent holds that employees have a right to keep such support confidential, and that an employer violates the Act by seeking such information. *United Nurses Associations of California*, 871 F.3d at 875-76.

Revealing such information is also likely to chill future union activity by signaling to employees that their private communications expressing support of the union will one day be shared with Starbucks. *See Pac. Molasses Co. v. NLRB Reg'l Office # 15*, 577 F.2d 1172, 1182 (5th Cir. 1978) (finding "it is impossible to minimize the seriousness of the threatened invasion" of an employer obtaining union support information and concluding "[t]he inevitable result" "would be to chill the right of employees to express their favorable union sentiments" contrary to the rights guaranteed by the NLRA); *Comm. on Masonic Homes of R. W. Grand Lodge, F. & A. M. of Pa. v. NLRB*, 556 F.2d 214 , 221 (3d Cir. 1977) ("[I]t is entirely plausible

that employees would be 'chilled' when asked to sign a union card if they knew the employer could see who signed.").

### b. Requests that would reveal advice to potential members and strategy communications

Several other requests would require disclosing Union advice to workers who contacted the Union, including about their rights under federal law and ongoing organizing at stores across the country. (Requests 1b, 1c, 1d, 1f, 3, 4a, 4c, 11, 13, 14). The same requests would require revealing internal Union communications regarding strategy about organizing efforts, pending elections, and ongoing ULP proceedings.

Producing such information would directly interfere with employees' right to organize and to communicate confidentially with union representatives. Employees often rely on communications with unions to understand their rights to act concertedly in the workplace. In seeking such advice, workers have an expectation that their identity and information shared in those communications will remain confidential. *See United States v. Dist. Council of N.Y.C. & Vicinity of Carpenters,* No. 90 Civ. 5722 (RMB), 2013 BL 417041, at *18 (S.D.N.Y. June 5, 2013) ("[S]ociety has a right to expect that personal information divulged in confidence, especially to an organization such as a union whose existence is for the benefit of the union members, will be guarded with the utmost care.") (internal quote omitted).

Employees will be significantly less likely to seek such advice if there is a risk it will be produced to their employer. Relatedly, the information in such communications would interfere with pending ULPs proceedings by revealing to Starbucks information not otherwise discoverable in those proceedings.

Further, employees' right to engage in concerted activity under the Act includes the right to communicate with fellow employees and labor organizations about unionization confidentially—shielded from the employer who may seek to use such information to undermine organizing efforts. This right would be severally undermined by compliance with the subpoenas, which would require production of employee-Union communications, and internal Union communications about organizing efforts and pending elections.

    c. **Requests that would reveal protected communications with the NLRB**

Other requests seek Union and employee communications with the NLRB (Requests 1b, 1c, 1d, 1f). Such communications are also protected under the NLRA, and an employer may violate the NLRA by seeking protected information regarding an employee's participation in the NLRB's process. *Pain Relief Centers, P.A.*, 371 NLRB No. 143, slip op. at *2 (2022).

Revealing such information would also cause a severe chilling effect on workers cooperation with the NLRB. *NLRB v. Maxwell*, 637 F.2d 698 , 702 (9th

Cir. 1981) ("If an employee knows that his statements may become available to his employer, he is certainly less likely to make a candid statement to the Board.").  This is particularly true here, where the NLRB has already found that Starbucks has retaliated against workers for participating in the NLRB process.  Further, the NLRB continues to investigate unfair labor practice charges across the country related to Starbucks, and will require the cooperation of workers to effectively complete its investigation.  *See* A1.

### d. **Requests that would reveal confidential communications with the media.**

Several requests seek Union and employee communications with media sources about the Union campaign (Requests 1b, 1c, 1d, 1f, 5a, 5c).  Union organizing campaigns often rely on media sources to communicate messages about worker's rights, and to spread information employer's labor abuses.  For this reason, the Supreme Court and the NLRB have long recognized a right for employees to publicize information about organizing and alleged violations of the Act.  *NLRB v. Electrical Workers Local 1229 (Jefferson Standard)*, 346 U.S. 464 (1953); *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565 (1978).  Here, revealing confidential communications that the Union and employees had with press sources will interfere

with that protected right, in addition to revealing union supporter information and union strategies.[3]

### ii. The district court failed to afford protections adequate to remedy the harm from the subpoenas or render them lawful

We next address Starbucks' argument below and comments by the district court that certain steps could be taken to limit the production burden on Petitioners. These supposed safeguards do not vitiate the violations of the NLRA, nor prevent the harm that production would cause.

First, while the Discovery Order allows redaction of certain worker names, that limitation applies only to Request 1(f) regarding statements of union-support by workers outside the Buffalo-Rochester area.  A540.  Statements made by employees at the Buffalo-Rochester stores must still be produced without redaction—even though many workers prefer to exercise their right under the Act to keep such statements confidential.  *See, e.g,* Request 1(b).  And while names may be redacted for Request 1(f), the content of such communications is still likely to reveal the identity of the workers.  For example, an email from a worker interested in the Union

---

[3]      Compliance would also subvert well-established first amendment protections regarding a free press.  Media sources often rely on a source's anonymity to obtain information that is then publicly reported.  This Court has recognized an interest in protecting such anonymity, and denied parties' attempts to obtain such information. *See In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 680 F.2d 5, 7 (2d Cir. 1982).

referencing their store location and personal details reveling their identity must still be produced.

Relatedly, while certain requests are limited to requesting "the number of" employees expressing support for the Union at a particular location, such information would likely allow Starbucks to determine worker support for the Union. Starbucks locations are small, usually staffing no more than twenty-five workers eligible to organize. By learning the level of support over time in response to the subpoena Starbucks could easily determine which workers supported the Union and at what time.

Second, while the district court suggested that Petitioners may submit a privilege log regarding withheld documents, its holding that Petitioners may not rely on the protections of the NLRA or a common law union communication privilege to withhold documents means that the vast majority of requested documents would have to be produced rather than logged. *See* A537. Thus, the opportunity to submit a privilege log would not resolve the district court's clear abuse of discretion in overruling Petitioners' arguments against producing the documents.

Moreover, as the Board recognized in *Chino Valley Medical Center* "the harm is in the very request itself, which would have a chilling effect on employees' willingness to engage in (or refrain from) protected activities." 362 NLRB 283, 283 n. 1 (2015). Thus, in that case, the NLRB found a violation of the Act even though

the employer argued that any coercion could be minimized by the ALJ reviewing documents in camera.  The Board rejected the argument, and held that the damage had already been done when the employer issued the broad and coercive subpoena. *Id.*  The same is true here—Starbucks violated the Act when it issued the overly broad requests.

### iii. Starbucks' request for the documents are irrelevant to the 10(j) proceeding

This Court should also grant mandamus because the documents that the district court ordered Petitioners to produce are almost wholly irrelevant to the proceeding before the district court.  While that proceeding turns on narrow questions about potential temporary injunctive relief, the subpoenas seek vast quantities of information about Petitioners' activities nationwide.

The district court's inquiry in a §10(j) proceeding is narrow.  It is limited to determining whether there is cause to believe that a ULP was committed, and an injunction would be just and proper.  *Kreisberg ex rel. NLRB v. HealthBridge Mgmt., LLC*, 732 F.3d 131, 141 (2d Cir. 2013).  As this Court has recognized, §10(j) petitions "come from a unique statutory scheme that requires (1) deference to the NLRB, which resolves the underlying unfair labor practice complaint on the merits and makes an initial determination, prior to the filing of a petition, to file such a complaint . . . as well as (2) speedy resolution to preserve the status quo in a labor

24

dispute." *Id.* (internal quote omitted); *see also Seeler v. The Trading Port, Inc.*, 517 F.2d 33, 36-37 (2d Cir. 1975) (courts should give the NLRB's findings on violations of the Act the "benefit of the doubt," even when there are disputed facts).

For this reason, district court's rarely permit extensive discovery in §10(j) proceedings, and instead often base their ruling entirely on the administrative record without any additional evidence.  *See Silverman v. Imperia Foods, Inc.*, 646 F.Supp. 393, 400 (S.D.N.Y. 1986); *Kaynard v. Bagel Bakers Council of Greater New York*, No. 67-C-776, 1968 BL 212, at fn. 4 (E.D.N.Y. Feb. 20, 1968); *see also* Turner, J. M., & Koppin, J. M. (2012). "Discovery in NLRA Section 10(j) Proceedings." ABA Journal of Labor & Employment Law, Vol. 27, No. 3 (Spring 2012), 385–395 (summarizing cases and finding that federal courts "generally share" the view "that discovery in section 10(j) proceedings should be limited").

As then-district judge Pooler held in denying discovery in a §10(j) proceeding, "[t]he injunction proceedings in federal court must not evolve into a hearing on the merits of the unfair labor practice charges because the district court must not usurp the NLRB's role." *Dunbar v. Landis Plastics, Inc.*, 977 F. Supp. 169, 176 (N.D.N.Y. 1997); *see also* 996 F. Supp. 174, 178 (denying motion for reconsideration and finding "[b]ecause I refuse to decide the merits of the unfair labor practice charges before the ALJ, I continue to find that the discovery [respondent] requests is over broad") *remanded on other grounds* 152 F.3d 917 (2d Cir. 1998).

The instant case provides no exception to the general rule that discovery should not be allowed, or at most limited, in §10(j) proceedings. Indeed, the district court initially stayed consideration of the petition pending development of the full administrative record, which was then filed with the court. This record was more than sufficient for the district court to render its decision on the petition, which included evidence that Starbucks engaged in the ULPs as alleged and that injunctive relief is just and proper based on the inherent chilling effect caused by the violations. *See* A187-89.

The subpoenaed information would not serve to rebut the evidence produced at the hearing, or the arguments in favor of an injunction. For example, the names and communications of union supporters—many of whom live across the country and do not work at the stores where the ULPs occurred—have no relevance to whether there is cause to believe that Starbucks violated the Act by firing the workers in the underlying ULP discharge case. That question is based on the facts presented in the administrative record before the ALJ. Similarly, media information and communications with the NLRB has no bearing on whether Starbucks violated the Act as alleged.

Further, such information is not relevant to the just and proper inquiry. That question requires the court to consider whether the injunction is "necessary to prevent irreparable harm or to preserve the status quo." *Hoffman ex rel. NLRB v.*

26

*Inn Credible Caterers, Ltd.,* 247 F.3d 360, 368 (2d Cir. 2001).  The existing record

provides sufficient evidence of harm to the workers involved, and the inherent

chilling effect such ULPs cause to ongoing organizing efforts.  *See Paulsen ex rel.*

*NLRB v. Remington Lodging & Hosp., LLC*, 773 F.3d 462, 469 (2d Cir. 2014)

(recognizing that discharges may support irreparable harm to organizing efforts

because "the absence of employees who support a union can quickly extinguish

organizational efforts and reinforce fears within the workforce concerning the

consequences of supporting a unionization campaign").  Emails from workers

interested in attending union meetings, or Union communications with the press

would not serve to contradict the NLRB's arguments.[4]

The nationwide scope of the requests is also unnecessary to the just and proper

inquiry.  Although the NLRB §10(j) complaint requests certain nationwide remedies,

that request is limited Starbucks informing employees of the Court's decision if it

grants an injunction.  *See* Complaint pg. 41-43.  The broad requests for nationwide

---

[4]     Even if the communications sought showed that employees remained
supportive of the Union after the ULPs, that would defeat the Board's claim that
there was a chilling effect or that an injunction should issue.  *See Dunbar ex rel.
NLRB v. Landis Plastics, Inc.*, 996 F. Supp. 174, 182 (N.D.N.Y. 1998) (where
employer presented affidavits that union support had not changed after alleged
ULPs, court found injunction still appropriate "because petitioner demonstrated that
the Section 10(j) injunction is a just and proper mechanism to protect the NLRB's
ability to issue a final remedy and protect the public interest in a collective
bargaining process free of employer intimidation.")

employee, Union, media, and NLRB communications are unnecessary for the Court to resolve that remedy question.

Yet, the discovery order requires production of significant nationwide communications regarding union activity, untethered to the limited question before the court.  Starbucks offered no compelling justification why such communications are relevant to the court's inquiry.  Thus, mandamus is appropriate.  *See In re Reyes*, 814 F.2d 168 (5th Cir. 1987) (granting writ of mandamus because lower court "ordered discovery as to information which was completely irrelevant to the case before it and was information that could inhibit petitioners in pursuing their rights in the case").

Further, given the extreme breadth of the subpoena requests and their detrimental impact on employee rights, any potential need that Starbucks may claim for seeking the information would not outweigh employees' right to confidentiality. *See Chino Valley Medical Center,* 362 NLRB 283, 283 n. 1 (2015) (finding that breadth of subpoenas violated the Act regardless of employer interest in information).  Thus, even assuming that Starbucks could seek similar information some context without violating the Act, the district court clearly abused its discretion by ordering production in the §10(j) proceeding, given that the requested documents are wholly irrelevant to the issues in that matter.  *See Dilling Mech. Contractors,*

28

*Inc.*, 357 NLRB 544 , 546 (2011) (employer violated Act by seeking Section 7 information not relevant to its lawsuit).

### iv. **At a minimum, the district court should have deferred to the NLRB's resolution of the subpoena ULP case**

As explained *supra*, the district court should have quashed the subpoenas. However, even if the district court did not grant Petitioners' motion to quash, at a minimum it should have stayed enforcement of the subpoena pending a decision from the NLRB regarding whether the subpoenas violate the Act.

Congress has designated the NLRB as the agency to decide whether conduct violates the Act in the first instance. While federal courts have concurrent jurisdiction with the Board to decide certain labor disputes, courts should defer to the Board's processes where its decision on a pending ULP would affect the results of litigation. *See N. Cal. Dist. Council of Hod Carriers, Bldg. & Constr. Laborers v. Opinski*, 673 F.2d 1074 (9th Cir. 1982) ("Appropriate deference to the jurisdiction and expertise of the agency often will require a stay of judicial proceedings.") (Kennedy, J.); *Bevona v. Field Bridge Assocs.*, No. 90 Civ. 5191 (RJW), 1991 BL 202, at *7 (S.D.N.Y. Dec. 5, 1991) (noting deference to the "special expertise" of Board).

For example, in *Int'l Org. of Masters, Mates & Pilots v. Trinidad Corp.,* this Court found it reversible error where a district court failed to stay consideration of a case pending the Board's decision on a related ULP complaint.  803 F.2d 69 (2d Cir.

1986). The Court concluded "the NLRB, having issued an unfair labor practice complaint and scheduled a hearing, is in the best position to determine whether a violation of the NLRA has occurred, we reverse the district court's order and remand the matter for further consideration pending resolution of the NLRB proceedings." *Id*. at 73. Moreover, the Court noted that the district court's consideration of the case prior to the Board reaching a decision risked "conflicting determinations by this court and the NLRB on the lawfulness of" the employer's actions. *Id.* at 74; *see also Sheet Metal Workers Local 36 v. Murphy Constr. Co.,* 191 F.3d 909 (8th Cir. 1999) (ordering district court to stay proceeding because "the NLRB's pending decision will address the same issue").

The same is true here. The NLRB General Counsel has issued a complaint alleging that Starbucks' issuance of the subpoenas violated the Act. A hearing has been scheduled before an ALJ. The NLRB is in the agency charged with determining whether the requests violate the Act. If it finds as such here, it would be improper for the district court to continue to order their production—since doing so would interfere with the Board's exclusive jurisdiction to determine whether conduct violates the Act.

Moreover, in addition to the subpoena ULP action brought by the NLRB regarding the subpoenas that are the subject of the instant petition, the NLRB has filed at least one other ULP complaint against Starbucks for issuing similarly

30

overbroad subpoenas regarding the same organizing campaign, in violation of the Act. That case remains pending. *See* NLRB Case No. 19-CA-290162 (Phoenix regional office, complaint issued August 23, 2022). A674 et seq.

It is also notable that the ALJ in the underlying discharge ULP proceeding already concluded that similar subpoenas issued by Starbucks could not be enforced because doing so would violate the Act. *See* A71. This provides another basis to defer to the Board—given that a judge, experienced in interpreting the Act, has already concluded that Starbucks is not entitled to such information.

Further, moving forward with production at this time could produce inconsistent results with the Board's decision. If Petitioners produce the documents now, they will forever give up their right keep the documents confidential. Thus, if the Board later determines that Starbucks violated the Act by seeking the documents, that decision and any remedy will become illusory as the documents would have already been produced. *See Newport News Shipbuilding and Drydock Co. v. Peninsula Shipbuilders Ass'n,* 646 F.2d 117, 120-21 (4th Cir.1981) (district courts should recognize the "real possibility of inconsistent adjudications" and not interfere in areas where the Board has "exclusive jurisdiction or at least a concurrent jurisdiction entitled by its primacy to deference").

31

v. **In the alternative, the Court should grant the petition to consider the application and scope of a federal common law privilege**

The forgoing provides ample reason to grant the petition, and issue a writ of mandamus vacating the discovery order.  However, there is an additional reason to grant the petition—this Court should adopt a federal common law privilege protecting communications about union activity as other courts have.  If applied in this case, such a privilege would prevent disclosure of the majority, if not all, of the documents subject to the subpoena, and therefore make mandamus appropriate.[5]

In assessing whether to recognize a new privilege, federal courts use their "reason and experience" to determine whether a privilege will "promote[] sufficiently important interests to outweigh the need for probative evidence." *Jaffee v. Redmond*, 518 U.S. 1, 10 (1996) (internal quotes omitted).

There is good reason to recognize a federal privilege protecting union communications.  As the court in *Garner* found, such a privilege is necessary to protect confidential communications about union activity so as to ensure workers are able to freely exercise their association and collective bargaining rights guaranteed under federal law.  102 F.R.D. 108, 113 (M.D.Tenn. 1984).  Those rights include the confidentiality rights protected by the NLRA, discussed above, and

---

[5]    Should the Court consider adopting such a privilege, it may be useful to order additional briefing regarding its appropriateness and application.

additionally include other associational protections recognized by federal law and the Constitution. *Id.*; *see also NLRB v. Carpenters Local 608*, 811 F.2d 149, 154 (2d Cir. 1987) (discussing protections under the Labor Management Reporting and Disclosure Act to keep membership information confidential).

Further, the *Garner* court found communications about union organizing are similar to other communications protected under federal law—like membership lists and press communications. *Id.* Similar to the privileges that apply to those communications, a privilege protecting union organizing information safeguards the important federal interests of freedom of association.

In *Bell v. Village of Streamwood*, the court recognized a privilege to union communications related to disciplinary proceedings. 806 F.Supp.2d at 1056-57 (N.D.Ill. 2011). The court found a privilege necessary because "[w]ithout confidentiality, union members would be hesitant to be fully forthcoming with their representatives, detrimentally impacting a union representative's ability to advise and represent union members with questions or problems." *Id.* at 1057. The court also noted that "[a]s with the attorney-client privilege" a union communication privilege encourages an employee to "communicate fully and frankly with his union representative . . ." *Id.*

The *Bell* court limited its holding to union disciplinary proceedings, because that was the issue before it. 806 F.Supp.2d at 1056. However, its reasoning is

equally applicable to other union communications, such as confidential discussions about a worker's interest in the union, since revealing such information to the worker's employer would discourage candid conversations about representation.[6]

This Court should similarly recognize a union communication privilege. At a minimum, the privilege should prevent the disclosure of confidential communications regarding: (1) union advice to members regarding protected activity; and (2) organizing efforts that would expose union strategies or worker support for the union. As with other privileges, such information could be required to be disclosed only upon a finding of compelling need for the information. *See United States v. Doe,* 219 F.3d 175, 191 (2d Cir. 2000).

---

[6] Some states also recognize such a privilege. *See, e.g., Peterson v. State,* 280 P.3d 559, 565 (Alaska 2012); *City of Newburgh v. Newman*, 421 N.Y.S.2d 673, 676 (App. Div. 3d Dep't 1979). And a privilege has been recognized for federal employees under the Federal Service Labor-Management Relations Statute. *See DOJ v. Fed. Labor Relations Auth.*, 39 F.3d 361, 369 (D.C. Cir. 1994).

34

## <u>CONCLUSION</u>

The Court should grant the petition and issue a writ of mandamus vacating the district court's discovery order.

Respectfully submitted,

Ian Hayes
NY Bar No. 5265889
Hayes Dolce
Attorneys for Petitioners
135 Delaware Ave. #502
Buffalo, NY 14202
ihayes@hayesdolce.com
(716) 608-3427

Daniel M. Rosenthal (DC Bar No. 1010473)
Michael P. Ellement (DC Bar No. 1521035)
James & Hoffman PC
1629 K Street NW, Suite 1050
Washington, DC 20006
regriffin@jamhoff.com
dmrosenthal@jamhoff.com
mpellement@jamhoff.com
(202) 496-0500

Mary Joyce Carlson (DC Bar No. 987939)
Counsel to Workers United
1629 K St. NW, Suite 1050
Washington, DC 20006
carlsonmjj@yahoo.com
(202) 230-4096

## **CERTIFICATE OF COMPLIANCE**

This is to certify that the foregoing petition complies with the 7,800-word limitation of Federal Rule of Appellate Procedure 21(d)(1), in that the brief is calculated by the word processing program to contain approximately 7,781 words, exclusive of the Table of Contents, Table of Authorities, the Certificate of Service, and this Certification.

Dated:      Buffalo, NY
           December 27, 2022

                    Respectfully Submitted,

                    Ian Hayes
                    NY Bar No. 5265889
                    Hayes Dolce
                    Attorneys for Petitioners
                    135 Delaware Ave. #502
                    Buffalo, NY 14202
                    ihayes@hayesdolce.com
                    (716) 608-3427

| STATE OF NEW YORK | ) | | **AFFIDAVIT OF SERVICE** |
|---|---|---|---|
| | ) | ss.: | **BY MAIL** |
| COUNTY OF NEW YORK | ) | | |

I, Natasha S. Johnson, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age

**On December 28, 2022**

deponent served the within: **Petition for Writ of Mandamus**

**upon:**
**Alicia E. Pender Stanley**
**National Labor Relations Board**
**11A Clinton Avenue**
**Room 342**
**Albany, NY 12207**

**Adam Paul Tuzzo**
**Littler Mendelson, P.C.**
**111 E. Kilbourn Ave.**
**Suite 1000**
**Milwaukee, WI 53202**

the address(es) designated by said attorney(s) for that purpose by depositing **1** true copy(ies) of same, in a postpaid properly addressed wrapper in a Post Office Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

I also filed the electronic copy of the foregoing documents via e-mail to the Court's email address (newcases@ca2.uscourts.gov), and four hard copies of the foregoing documents were sent to the Clerk's Office by overnight delivery on **December 28, 2022**.

**Sworn to before me on December 28, 2022**

**/s/ Mariana Braylovskiy**                      **/s/ Natasha S. Johnson**
     **Mariana Braylovskiy**                          **Natasha S. Johnson**
  Notary Public State of New York
      No. 01BR6004935
   Qualified in Richmond County
Commission Expires March 30, 2026

                                **Job #   511961**