**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

**LINDA M. LESLIE, Regional Director of the
Third Region of the National Labor Relations
Board, for and on behalf of the
NATIONAL LABOR RELATIONS BOARD,**

        **Petitioner,**

    vs.

**STARBUCKS CORPORATION,**

        **Respondent.**

**Case No. 1:22-cv-00478-JLS**

**STARBUCKS CORPORATION'S MEMORANDUM IN OPPOSITION TO
PETITIONER'S RENEWED MOTION TO QUASH, MOTION FOR
RECONSIDERATION, MOTION PURSUANT TO RULE 60(b), AND MOTION IN
THE ALTERNATIVE TO CERTIFY QUESTION FOR APPEAL**

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ................................................................................. 1

II.   PROCEDURAL HISTORY & FACTUAL BACKGROUND.......................................... 2

III.  ARGUMENT ................................................................................. 6

      A.    Petitioner's Renewed Motion to Quash Respondent's Subpoenas Should
            be Denied ................................................................................. 6

            1.    Respondent Had the Right Under the Federal Rules of Civil
                  Procedure to Issue Document Subpoenas to the Subpoenaed
                  Nonparties and the Protections Afforded the Subpoenaed
                  Nonparties Ordered by the Court and Contained in the Subpoenas'
                  Instructions Insulate the Subpoenaed Nonparties from any Real or
                  Perceived Violation of the NLRA .............................................. 6

            2.    Petitioner Is Not Owed Deference on Her Motion to Quash .................... 7

            3.    Petitioner Was Not Limited in Her Arguments in Her Motion to
                  Quash ................................................................................. 8

            4.    Petitioner's Renewed Motion to Quash Fails to Recognize the
                  Court Considered, and Rejected, the Premise that Discovery
                  Sought is "Protected" ....................................................... 10

            5.    Petitioner's Renewed Motion to Quash Fails to Recognize the
                  Court Properly Weighed Litigants' Interests, Including
                  Confidentiality Interests ................................................... 11

IV.   PETITIONER'S MOTION FOR RECONSIDERATION SHOULD BE DENIED ....... 16

V.    PETITIONER'S RULE 60(b) MOTION SHOULD BE DENIED.................................. 17

      A.    Petitioner's Rule 60(b) Motion Should Be Denied Because of the Absence
            of a "Judgment" or "Order" .................................................. 18

      B.    Petitioner's Rule 60(b) Motion Should Be Denied As Untimely ................ 18

      C.    Rule 60(b)(1) Does Not Support Relief From a Final Order Because Even
            if the Order is Final, There Has Been No "Mistake" or "Error"............ 19

      D.    Rule 60(b)(3) Does Not Support Relief From a Final Order Because Even
            if the Order is Final, There Has Been No "Misconduct".................... 21

# TABLE OF CONTENTS
(CONTINUED)

PAGE

E.      Rule 60(b)(5) Does Not Support Relief From a Final Order Because Even if the Order is Final, "Applying it Prospectively" Remains Equitable ............... 23

F.      Rule 60(b)(6) Does Not Support Relief from a Final Order Because Even if the Order is Final, Petitioner Presents No "Other Reason that Justifies Relief" ................................................................................................................. 25

VI.     THE MOTION FOR CERTIFICATION OF QUESTION FOR APPEAL SHOULD BE DENIED BECAUSE IT IS UNTIMELY AND DOES NOT MEET THE CONFINES OF 28 U.S.C. § 1292(B) .................................................... 26

VII.    CONCLUSION ........................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                                               PAGE(S)

*Aldapa v. Fowler Packing Co.*,
    2016 U.S. Dist. LEXIS 35522 (E.D. Cal. Mar. 18, 2016) .......................................................13

*Black v. Buffalo Meat Serv.*,
    No. 15-CV-49S, 2016 U.S. Dist. LEXIS 164441 (W.D.N.Y. Nov. 29, 2016) .......................17

*Brown v. Eli Lilly & Co.*,
    654 F.3d 347 (2d Cir. 2011)..................................................................................................27

*Calatrello ex. rel. NLRB v. First Student, Inc.*,
    2:12-cv-00493 (S.D. Ohio 2012) .............................................................................................7

*Callari v. Blackman Plumbing Supply, Inc.*,
    153 F. Supp. 3d 590 (E.D.N.Y. 2015) ...................................................................................16

*Certified Industries, Inc.*,
    Case No. 29-CA-9097, 1981 NLRB GCM LEXIS 118, *6......................................................14

*Dale v. Raczynski*,
    No. 21-1602, 2022 U.S. App. LEXIS 26976, at *5 (2d Cir. Sep. 27, 2022) ..........................20

*D'Amico ex rel. NLRB v. Cox Creek Refining Co.*,
    126 F.R.D. 501 (D. Md. 1989)..................................................................................................7

*DeWeerth v. Baldinger*,
    38 F.3d 1266 (2d Cir. 1994)...................................................................................................23

*Fleming v. New York University*,
    865 F.2d 478 (2d Cir. 1989)...................................................................................................21

*Flor v. BOT Financial Corp.*,
    79 F.3d 281 (2d Cir. 1996)....................................................................................................28

*Franzon v. Massena Memorial Hosp.*,
    189 F.R.D. 220 (N.D.N.Y. 1999).................................................................................17, 27, 29

*Fusco v. Richard W. Kaase Baking Co.*,
    205 F. Supp. 459 (N.D. Ohio 1962)..................................................................................6, 30

*Gold Circle Department Stores*,
    Cases 08-CA-13890, et al. (NLRB Gen. Counsel Mem. Mar. 30, 1981) ...............................14

*Guess?, Inc.*,
    339 NLRB 432 (2000) ..................................................................................................4, 11, 12

*Hickman v. Taylor*,
    329 U.S. 495, 67 S. Ct. 385 (1947).................................................................6

*Hoffman Plastic Compounds v. NLRB*,
    535 U.S. 137 (2002)...........................................................................................7

*Int'l Bhd. of Teamsters v. Allegiant Travel Co.*,
    2014 U.S. Dist. LEXIS 160469 (D. Nev. Nov. 12, 2014) ......................13

*Intern. Controls Corp. v. Vesco*,
    556 F.2d 665 (2d Cir. 1977)............................................................................18

*International Union v. Garner*,
    102 F.R.D. 108 (M.D. Tenn. 1984) .........................................................19, 20

*Kemp v. United States*,
    142 S. Ct. 1856 (2022).............................................................................18, 25

*Kinney ex. rel. NLRB v. Roll & Hold Warehousing & Distribution Corp.*,
    1:98-cv-07648 (N.D. Ill. 1998) ......................................................................7

*Lapointe v. Target Corp.*,
    2017 U.S. Dist. LEXIS 219768 (N.D.N.Y. Mar. 6, 2017)......................13

*Lee v. Marvel Enterprises, Inc.*,
    765 F. Supp. 2d 440 (S.D.N.Y. 2011)............................................................25

*Lucas v. Gold Standard Baking, Inc.*,
    2017 U.S. Dist. LEXIS 61841 (N.D. Ill. Apr. 24, 2017) ......................13

*Maldonado v. Local 803 I.B. of T. Health & Welfare Fund*,
    490 F. App'x 405 (2d Cir. 2013) ...................................................................17

*Martens v. Smith Barney, Inc.*,
    238 F. Supp. 2d 596 (S.D.N.Y. 2002).............................................................27

*Matarese v. LeFevre*,
    801 F.2d 98 (2d Cir. 1986)..............................................................................24

*Mitchell v. Senkowski*,
    246 F.R.D. 419 (N.D.N.Y. 2007)......................................................................17

*Montco, Inc. v. Barr*,
    666 F.2d 754 (2d Cir. 1981)............................................................................17

*Niederland v. Chase*,
    425 F. App'x 10 (2d Cir. 2011) ......................................................................18

*Ohr ex. rel. NLRB v. Nexeo Solutions, LLC*,
   1:12-cv-01226 (N.D. Ill. 2012) ................................................................7

*Pac. Molasses Co. v. NLRB*,
   577 F.2d 1172 (5th Cir. 1978) ...............................................................10

*Pain Relief Centers, P.A.*,
   371 NLRB No. 143 (2022) .....................................................................12

*Shearard v. Geithner*,
   No. 09-cv-0963, 2010 WL 2243414 (E.D.N.Y. May 30, 2010) .............16

*Shrader v. CSX Transp. Inc.*,
   70 F.3d 255 (2d Cir. 1995)......................................................................16

*Sperandeo v. Milk Drivers Dairy Employees*,
   334 F.2d 381 (10th Cir. 1964) ..........................................................6, 30

*State Street Bank v. Inversiones Errazuriz*,
   374 F.3d 158 (2d Cir. 2004).....................................................................21

*Steinberg v. Mount Sinai Med. Ctr. Inc.*,
   2014 U.S. Dist. LEXIS 44033 (E.D.N.Y. 2014) ....................................14

*Stevens v. Miller*,
   676 F.3d 62 (2d Cir. 2012)......................................................17, 18, 24

*Tapper v. Hearn*,
   833 F.3d 166 (2d Cir. 2016).....................................................................23

*U.S. Fidelity and Guar. Co. v. Frosty Bites, Inc.*,
   235 F. Supp. 2d 295 (S.D.N.Y. 2002).....................................................15

*United Airlines v. Brien*,
   588 F.3d 158 (2d Cir. 2009).....................................................................25

*Van Emrik v. Chemung County Dep't of Social Services*,
   1988 U.S. Dist. LEXIS 7901 (W.D.N.Y. 1988) .....................................14

*Veritas Health Servs., Inc. v. NLRB*,
   671 F.3d 1267 (D.C. Cir. 2012) ..............................................................10

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
   956 F.2d 1245 (2d Cir. 1992)...................................................................16

*Westwood Pharmaceuticals v. Nat. Fuel Gas Dist.*,
   964 F.2d 85 (2d Cir. 1992).......................................................................26

*Yu v. Hasaki Rest., Inc.*,
   874 F.3d 94 (2d Cir. 2017).............................................................................28

STATUTES

28 U.S.C. § 1292(b) ..............................................................................4, 26, 27

29 U.S.C. § 160(l) ...........................................................................................7

OTHER AUTHORITIES

Fed. R. Civ. P. 60(c)(1) ..................................................................................18

Fed. R. Evid. 402 ...........................................................................................12

Fed. R. of App. P. 4(a)(5)(A) ..........................................................................5

Fed. R. Civ. P. 26(c) ......................................................................................14

6 MOORE'S FEDERAL PRACTICE - CIVIL § 26.03 (2022)....................................6

## MEMORANDUM

## I.     INTRODUCTION

The motion before the Court demonstrates Petitioner's continued brash insistence that the Court defer to her judgment in deciding what information is confidential as "arguably protected by the NLRA" and therefore not subject to court-ordered discovery. This argument offers nothing the Court has not heard before—and rejected on each occasion. With apparent indifference to the Court's authority, and knowing full well Respondent was denied any discovery of exculpatory documents sought in the underlying administrative hearing, Petitioner stunningly claims: "Respondent . . . is not entitled to every piece of potentially exculpatory evidence[.]" But the Court has already ruled otherwise by setting the parameters for exculpatory and other evidence to which Respondent is entitled, while implementing appropriate safeguards for non-party rights. Petitioner raises no new arguments that warrant the Court's granting her renewed motion to quash Respondent's subpoenas, her motion to reconsider the Court's discovery order, or her Rule 60 motion.

Petitioner also fails to meet the standard for the Court to certify to the Second Circuit the question "whether the district court must consider confidentiality interests in information regarding activity arguably protected by the NLRA in discovery, and if so, what standards should apply to such discovery requests?" There is no "substantial ground for difference of opinion" that it is the role of a district court to consider litigants' respective interests in obtaining discovery, including by routinely evaluating confidentiality interests and establishing appropriate safeguards, both of which occurred here, and routinely occur in the myriad types of cases this and every other federal district court consider every day. Respondent thus opposes Petitioner's motion in its entirety.

## II.     PROCEDURAL HISTORY & FACTUAL BACKGROUND

Because Petitioner has always opposed Respondent's right to discovery and has now explored every procedural avenue she believes may change the Court's mind on this issue, the motion before the Court is fairly characterized as repetitive. It raises arguments that the Court, on each previous occasion, has rejected.

On June 21, 2022, the day Petitioner filed the petition in this case, she also filed a motion to determine the petition based upon affidavits and documentary evidence in her possession. (Doc. 3).

On June 24, 2022, during a telephone status conference, Petitioner's counsel said: "And just by way of previewing our position would simply be that discovery is neither appropriate, nor necessary." (Doc. 31, at 22, Tr. Oral Argument, June 24, 2022).

On June 29, 2022, Petitioner opposed Respondent's discovery plan. (Doc. 27).

On June 30, 2022, the Court stayed this case during the pendency of the administrative law judge hearing. (Doc. 29).

On September 7, 2022, the Court lifted the stay and issued an order allowing Respondent to serve document subpoenas. (Doc. 39). The Court also set deadlines for any motions to quash. (Doc. 39).

On September 16, 2022, Petitioner filed a motion to quash Respondent's document subpoenas, and in the alternative, for a protective order. (Doc. 44). In the motion, Petitioner argued, among other things, that "each subpoena request should be quashed in its entirety." (Doc. 44, at 12). Petitioner explicitly argued: ". . . questions related to calls between employees, organizers, and the Union are inappropriate as they seek to uncover protected concerted activity as well as protected union activity, which unto itself may constitute an unfair labor practice." (Doc. 44, at 25).

2.

On September 23, 2022, the Court held oral argument on the motions to quash Respondent's document subpoenas to the Union, the Union's agents, and the current and former employees of Respondent who were served with subpoenas (collectively, "Subpoenaed Nonparties"). During the session, Petitioner's counsel argued:

> **I would add -- and I believe we make this argument in brief, but I would add that some of these requests, this one included, has the potential that it might be violating the Act as a request. I mean, what they are seeking is unionization information from every potential person who might support the Union, essentially, across the country. And as you probably are aware, we have litigation across the country against this employer for committing unfair labor practice violations. And to hand them, on a plate, every person that supports the Union and does that is obviously problematic, so otherwise I support what Mr. Hayes has said.**

(Doc. 51, at 12-13, Tr. Oral Argument, Sept. 23, 2022).

Later that day, the Court memorialized its rulings on the motions to quash and ordered the Subpoenaed Nonparties to produce some of the documents and information Respondent requested by October 14, 2022. (Doc. 49).

On October 7, 2022, the Union filed a motion for reconsideration of the Court's September 23, 2022 order (Doc. 49), arguing that producing documents pursuant to the order would impinge upon "confidentiality and privilege between a labor union and employees that are represented by the union or seek to be" and that "Starbucks' issuance of the subpoenas itself violates the NLRA because the subpoena requests constitute interrogation regarding activity that is protected under the NLRA." (Doc. 53, at 3).

On October 11, 2022, Petitioner filed a response to the Union's motion for reconsideration and stated, "Petitioner supports the Union's request that the Court reconsider its September 23, 2022 Order based on the reasons set forth in her motion to quash (ECF No. 44)." (Doc. 55, at 1). Petitioner's motion to quash claimed that Respondent's subpoenas should be quashed because they

may constitute violations of the Act. (Doc. 44). As part of this filing, Petitioner also noted that she "takes no position on the Union's request for the Court to certify the matter to the Second Circuit Court of Appeals nor on the Union's pending unfair labor practice charge alleging that Respondent's [subpoenas are unlawful]." (*Id.*).[1]

On October 12, 2022, the Court denied the Union's motion for reconsideration of its order on the motions to quash and on the Union's alternative request for certification under 28 U.S.C. § 1292(b). (Doc. 57). In its order (Doc. 53), the Court noted that the NLRB cases, including *Guess?, Inc.*, 339 NLRB 432 (2000), on which the Union relied, were not "controlling decisions overlooked by the Court[,]" and found there was no "substantial ground for difference of opinion" on a controlling question of law. (Doc. 57).[2]

On October 20, 2022, Respondent, having received no documents or privilege log, let alone an email response from the Union and Subpoenaed Nonparties' counsel, filed a motion seeking an order holding the Subpoenaed Nonparties in contempt of the Court's September 23, 2022 order and imposing sanctions against them. (Doc. 59).

On October 27, 2022, the Court held oral argument on Respondent's contempt and sanctions motion. There, the Subpoenaed Nonparties argued that every document the Court ordered them to produce by October 14, 2022, was covered by either an employee-union representative privilege or "legal protection under the National Labor Relations Act," both of which arguments the Court had previously rejected. (Doc. 65 at 4, Tr. Oral Argument, Oct. 27, 2022). Petitioner argued the Court should not rule on the motion, and instead hold it in abeyance,

---

[1] Petitioner's counsel later made the same argument before the Court at oral argument and pointed out to the Court that her brief contained this argument. (Doc. 65 at 10, Tr. Oral Argument, Oct. 27, 2022).
[2] The order noted that "[f]or purposes of this decision and order only, the Court assumes that Workers United raises such a question." (Doc. 57, at n.5).

because "it would be improper for the Union or individuals to be held in contempt, or for sanctions to issue for failing to effectuate subpoena requests that may violate [f]ederal law." (Doc. 65 at 10, Tr. Oral Argument, Oct. 27, 2022). Petitioner also argued, "Asking the Union to reveal what is essentially Section 7 activity, which [R]espondent has now been prosecuted for surveilling and unlawfully seeking in other avenues, isn't appropriate, and that wouldn't be fair, Your Honor." (Doc. 65 at 12, Tr. Oral Argument, Oct. 27, 2022). Counsel for the Subpoenaed Nonparties, meanwhile, alerted the Court that the Subpoenaed Nonparties would be filing a writ of mandamus to the Second Circuit. At the conclusion of the arguments, the Court, anticipating the writ of mandamus to the Second Circuit, again stayed this case.

On December 15, 2022, Petitioner issued a complaint and notice of hearing in NLRB Case 03-CA-304675, claiming Respondent's document subpoenas in this case are unlawful, in violation of the National Labor Relations Act ("NLRA"). On December 29, 2022, Respondent filed its answer and affirmative defenses to the complaint, denying all of the allegations. A hearing in NLRB Case 03-CA-304675 is currently scheduled to commence on February 9, 2023. This Court has already determined that this case should not be stayed pending the outcome of that case. (Doc. 75).

On December 22, 2022, Petitioner filed a motion for extension of time to file a notice of appeal pursuant to Rule 4(a)(5)(A) of the Federal Rules of Appellate Procedure, stating that she recognized her request "may be construed as an appeal of this Court's order denying motions to quash subpoenas." (Doc. 77-1, at 1). Respondent opposed the motion (Doc. 82), and the Court denied it, finding Petitioner failed to demonstrate "excusable neglect." (Doc. 86).

Earlier that day, Petitioner filed the motion now before the Court. (Doc. 79).

### III.   ARGUMENT

**A.   Petitioner's Renewed Motion to Quash Respondent's Subpoenas Should be Denied**

On the multiple times it rejected Petitioner's arguments opposing Respondent's right to discovery, the Court properly balanced the parties' rights under the Federal Rules of Civil Procedure to permit, given the nature of a 10(j) case, truncated discovery that is tailored to ensure Respondent has access to information to which it is entitled under the Rules to defend itself, and that, at the same time, affords appropriate protection to the legitimate interests of those from whom the discovery is sought as well as others. For these reasons, and the reasons set forth below, the Court should deny Petitioner's renewed motion to quash Respondent's subpoenas.

**1.   Respondent Had the Right Under the Federal Rules of Civil Procedure to Issue Document Subpoenas to the Subpoenaed Nonparties and the Protections Afforded the Subpoenaed Nonparties Ordered by the Court and Contained in the Subpoenas' Instructions Insulate the Subpoenaed Nonparties from any Real or Perceived Violation of the NLRA**

Respondent's subpoenas, under the protections ordered by the Court and contained in the subpoenas' instructions, which are consistent with the accommodations available under Federal Rules of Civil Procedure, do not constitute violations of the NLRA. It is well-settled that "civil discovery rules are 'available in all types of cases at the behest of any party, individual or corporate, plaintiff or defendant.'" 6 MOORE'S FEDERAL PRACTICE - CIVIL § 26.03 (2022) (citing *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385, 391 (1947)). And, "the discovery provisions of the Federal Rules of Civil Procedure apply in 10(j) proceedings[.]" *Fusco v. Richard W. Kaase Baking Co.*, 205 F. Supp. 459, 463 (N.D. Ohio 1962); *see also Sperandeo v. Milk Drivers Dairy Employees*, 334 F.2d 381, 384 (10th Cir. 1964) ("[W]hile this action was brought by the appellant in his official governmental capacity, he is in no different position than any ordinary litigant and

is, therefore, bound by the discovery provisions of the Federal Rules of Civil Procedure in the same respects as any ordinary litigant.") (affirming Rule 37 case dismissal for the NLRB in a Section 10(l) case, 29 U.S.C. § 160(l)).

Federal courts have routinely ordered discovery in 10(j) cases, including depositions of union organizers, documents reflecting support or lack thereof for a union, and other information relevant to an employer's defenses. *See, e.g.*, *D'Amico ex rel. NLRB v. Cox Creek Refining Co.*, 126 F.R.D. 501, 508 (D. Md. 1989).[3] Federal courts also owe no deference to the Board's remedial preferences, particularly when such remedies would conflict with other federal laws or authorities. *Hoffman Plastic Compounds v. NLRB*, 535 U.S. 137, 144 (2002) ("[W]e have accordingly never deferred to the Board's remedial preferences where such preferences potentially trench upon federal statutes and policies unrelated to the NLRA.") (citing collection of cases). Therefore, to the extent Petitioner makes arguments contrary to the basic premise that Respondent is entitled to discovery, the Court should give Petitioner's renewed motion to quash Respondent's subpoenas no more than a proverbial shrug.

## 2.       Petitioner Is Not Owed Deference on Her Motion to Quash

In renewing her motion to quash Respondent's subpoenas (Doc. 44), Petitioner argues that the Court's reconsideration of that motion is warranted based "on the prosecutorial determination that the subpoenas propounded by Starbucks in this case were unlawful under the NLRA[.]" (Doc. 79-1, at 7). While couched as a renewed motion to quash, this is not Petitioner's first, or even second time, making this same argument. Following her initial motion to quash, where she argued

---

[3] Respondent has previously argued the undersigned counsel alone have taken discovery from non-parties, the NLRB, and unions in Section 10(j) proceedings repeatedly. *See, e.g.*, *Overstreet ex. rel. v. Starbucks Corporation*, 2:22-cv-00676 (D. Ariz. 2022); *Ohr ex. rel. NLRB v. Nexeo Solutions, LLC*, 1:12-cv-01226 (N.D. Ill. 2012); *Calatrello ex. rel. NLRB v. First Student, Inc.*, 2:12-cv-00493 (S.D. Ohio 2012); *Kinney ex. rel. NLRB v. Roll & Hold Warehousing & Distribution Corp.*, 1:98-cv-07648 (N.D. Ill. 1998). (Doc. 45, at n.2).

Respondent's subpoenas may constitute violations of the Act (Doc. 44), on October 11, 2022, Petitioner filed a response to the Union's motion for reconsideration and stated: "Petitioner supports the Union's request that the Court reconsider its September 23, 2022 Order based on the reasons set forth in her motion to quash (ECF No. 44)." (Doc. 55, at 1). Petitioner rests her renewed motion on her "prosecutorial determination," but she has made the same arguments all along and offers no authority that her determination—a fait accompli in view of the inherent conflict of interest in her serving as the petitioner in this case and the prosecutor in the NLRB case—makes or should make a difference in this case. Respondent incorporates its oppositions to the motions to quash by reference here. (Docs. 45-47). And for the third time now, Petitioner's arguments on the motion to quash should be denied.

### 3. Petitioner Was Not Limited in Her Arguments in Her Motion to Quash

Petitioner argues that the Court held Petitioner had "standing to challenge Starbucks' subpoenas" only on the grounds of "evidentiary privileges held by the Agency or in relation to procedural burdens affecting management of this case." (Doc. 79-1, at 8). This argument is supported neither by the transcript of the oral argument (Doc. 51), nor the Court's discovery order memorializing the rulings made during oral argument. (Doc. 49). At oral argument, Respondent conceded it did not matter whether the Union or Petitioner made some of the arguments on the motions to quash, as they overlapped, and the Court then stated, in agreement, it would consider the arguments regardless of whether it was Petitioner or the Union making them. (Doc. 51). In pertinent part, the colloquy between the Court and Respondent's counsel regarding Petitioner's standing on her motion to quash was as follows:

> THE COURT: As a substantive matter, in terms of me getting to each of the requests and each of the objections, it really doesn't matter anyway, does it?
>
> MR. HILLER: No.

> THE COURT: I didn't think so. Because it doesn't matter who is arguing it, I'm going to get to it, but I want to get it right. And I do think that there is standing, at a minimum, to the issue. And it would be more on the protective order side than the motion to quash side. But nonetheless, there is an interest in preserving the proceeding, the 10(j) proceeding and its pace. So I would say for those reasons alone, the petitioner has standing. But I think it's more along the lines of a motion of a protective order rather than motion to quash, just in term of -- I don't think that affects the outcome either, but I think it's more for the petitioner, more of a Rule 26; and the Union it's a Rule 45 motion. So when I get to the substance of these requests, they are either going to be allowed or not allowed.

(Doc. 51, at 5). Following this, the Court continued to permit, and even encourage, Petitioner to participate in oral argument on the subpoenas. Petitioner readily advanced the argument that Respondent's subpoenas may violate the Act:

> THE COURT: Ms. Cacaccio, anything to add to that?
>
> MS. CACACCIO: I would add -- and I believe we make this argument in brief, but I would add that some of these requests, this one included, has the potential that it might be violating the Act as a request.

(Doc. 51, at 12). And as for the Court's order, while it does delineate undue burden and privilege as potential grounds for objections that Petitioner was free to make (Doc. 49), the order in no way limited Petitioner from making other objections. In fact, as previously outlined in the procedural history and factual background section, Petitioner argued, both in briefing and at oral arguments, both before and after the new administrative complaint issued, that Respondent's subpoenas arguably violate the Act, including in her original motion to quash (Doc. 44), and in support of the Union's motion for reconsideration (Doc. 55). For Petitioner to claim that the Court failed to consider the argument, or that she was forbidden from making it, is therefore factually incorrect.

4.   **Petitioner's Renewed Motion to Quash Fails to Recognize the Court Considered, and Rejected, the Premise that Discovery Sought is "Protected"**

Petitioner argues Fed. R. Civ. P. 45 "imposes the nondiscretionary duty upon this Court to quash subpoenas to the extent they demand 'protected matter.'" (Doc. 79-1, at 15). In particular, Petitioner claims there is "a strong confidentiality interest in protecting such communications under Section 7, precisely because the NLRA prohibits an employer's retaliation based on awareness of such information." (Doc. 79-1, at 17).

To support this argument, Petitioner claims other courts have recognized a "right to privacy" under the Act. But these cases are inapposite. To start, *Pac. Molasses Co. v. NLRB*, 577 F.2d 1172, 1182 (5th Cir. 1978) was a Freedom of Information Act case holding union authorization cards were not subject to disclosure. Second, *Veritas Health Servs., Inc. v. NLRB*, 671 F.3d 1267, 1274 (D.C. Cir. 2012) was a test of certification case, where the D.C. Circuit evaluated whether the Board's decision certifying a unit as appropriate for the purposes of collective bargaining was supported by substantial evidence pursuant to Section 10(f) of the Act. In that action, Veritas challenged two of the administrative law judge's evidentiary rulings including the judge's application of the *Guess?* balancing test to redact certain documents and limit certain testimony.[4] However, the administrative proceeding in which these evidentiary holdings were issued was conducted pursuant to the Agency's statutory authority in Section 10(b), where Congress expressly stated that the application of the Federal Rules of Civil Procedure and the Federal Rules of Evidence shall only apply "so far as practicable."

---

[4] Under *Guess?*, the Board applies the following analysis for whether discovery purportedly violates the Act: "First, the questioning must be relevant. Second, if the questioning is relevant, it must not have an illegal objective. Third, if the questioning is relevant and does not have an illegal objective, the employer's interest in obtaining this information must outweigh the employees' confidentiality interests under Section 7 of the Act." *Guess?*, 339 NLRB at 434.

Petitioner brings the present matter pursuant to Section 10(j), which by way of contrast, does not suspend the Federal Rules of Civil Procedure or the Federal Rules of Evidence, and which grants the court discretion to decide whether an injunction is "just and proper." Further, neither the D.C. Circuit, nor courts in other Circuits, have applied the *Guess?* test in a manner that would require a "nondiscretionary duty to quash" under Fed. R. Civ. P. 45, as Petitioner urges here. Indeed, as set forth above, Respondent is not requesting any discovery that has not been granted in plenty of 10(j) cases where an employer has sought discovery similar to what the Court has ordered here. Therefore, Petitioner's argument that Rule 45 mandates that the Court grant her renewed motion to quash should be rejected.

### 5. Petitioner's Renewed Motion to Quash Fails to Recognize the Court Properly Weighed Litigants' Interests, Including Confidentiality Interests

In previously denying the Subpoenaed Nonparties' motion to reconsider the discovery order (Doc. 53), the Court held NLRB precedent, including *Guess?, Inc.*, 339 NLRB 432 (2000), were not "controlling decisions overlooked by the Court." (Doc. 57). Still, Petitioner hangs onto the tired argument that "when considering whether to quash a subpoena or issue a protective order under Rule 26(c), this Court should apply the *Guess?* framework when balancing discovery needs against confidentiality interests."[5] Petitioner claims that otherwise, the subpoenas "are arguably unlawful under the NLRA, impermissibly burden federally protected rights, and seek potentially protected matter." (Doc. 79-1, at 10).

---

[5] As the Subpoenaed Nonparties have not produced a single document, it is difficult for Petitioner to even make an argument that a balancing test should apply to exclude relevant evidence, particularly because the evidence consists of documents Petitioner has supposedly never seen. Perhaps more troubling, Petitioner asks the Court to apply this amorphous balancing test to documents Petitioner finds are "arguably protected." (Doc. 79-1, at 11).

As has now been argued multiple times, *Guess?* is a case where the Board announced a three-step analysis for determining whether questions asked during discovery in a civil proceeding are permissible under the Act. The cases Petitioner cites in support of that test are factually distinguishable, unconstitutionally vague[6] and inapplicable to discovery in 10(j) proceedings because, among other reasons, the concept of "marginal" relevance (as espoused under *Guess?*) does not exist. Under the Federal Rules, evidence is either relevant or it is not, and all relevant evidence is admissible, unless specifically excluded by: "the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed. R. Evid. 402. None of these exclusions applies here. The Board's decision in *Guess?* cannot be used as a vehicle for preventing litigants in federal court from obtaining and using otherwise relevant evidence.

While Petitioner argues that "[s]everal Board cases have applied *Guess?*, including one earlier this year[,]" Petitioner does not, and cannot, argue federal courts applied that Board standard. And the case to which Petitioner refers, *Pain Relief Centers, P.A.*, 371 NLRB No. 143 (2022), considered whether an employer's discovery requests "were unlawful under *Guess?, Inc.*, 339 NLRB 432 (2000)", when made as part of a "baseless and retaliatory" breach of contract and legally preempted defamation lawsuit against employees who had brought charges against the employer. There, the Board found that the requests had an "illegal objective" based on the baseless nature of the lawsuit and the timing of the defamation discovery requests, which were made immediately after the issuance of a complaint in the administrative law judge proceeding. This demonstrated to the Board that the employer's "motive [was] to retaliate against the Charging Parties for pursuing unfair labor practice charges and to coerce them into withdrawing the

---

[6] For additional background, see the ALJ's and Chairman Battista's dissenting opinions in *Guess?*, highlighting statutory and constitutional defects associated with looking beyond the relevance and purpose of questions and subjecting those questions to a vague and standardless balancing test.

charges."[7] That, said the Board, "in itself" rendered the discovery requests violations of Section 8(a)(1) of the Act under *Guess?*. Far different from *Pain Relief Centers*, and the cases on which it relied, there is no retaliatory lawsuit by Respondent here. Petitioner filed this action. Respondent is entitled to discovery likely to negate the claims against it and to establish its affirmative defenses.

Indeed, federal courts have routinely disallowed litigants' reliance on *Guess?* to undercut an employer's right to seek discovery. *See Lucas v. Gold Standard Baking, Inc.*, 2017 U.S. Dist. LEXIS 61841, at *9 (N.D. Ill. Apr. 24, 2017) ("Having voluntarily injected themselves into this litigation and offered their testimony as evidence regarding key allegations, neither [current nor former employees] can now hide behind alleged Section 7 confidentiality interests as [the employer] tries to defend itself."); *Lapointe v. Target Corp.*, 2017 U.S. Dist. LEXIS 219768, at *25 (N.D.N.Y. Mar. 6, 2017) (finding *Guess?* inapplicable and ordering plaintiff "to respond to questions at a further deposition without asserting any privilege provided by the NLRA"); *Aldapa v. Fowler Packing Co.*, 2016 U.S. Dist. LEXIS 35522, at *22 (E.D. Cal. Mar. 18, 2016) ("The Court finds that the employees' confidentiality interests are outweighed by Defendants' need for this information."); *Int'l Bhd. of Teamsters v. Allegiant Travel Co.*, 2014 U.S. Dist. LEXIS 160469, at *23 (D. Nev. Nov. 12, 2014) (employer entitled to discovery of union communication and redactions adequate to protect confidentiality interest).[8]

---

[7] The Board further held, in dicta, that even assuming a lawful objective, employer "interests in obtaining the information did not outweigh the employees' interests in keeping their Section 7 activities confidential" and concluded "the judge properly found that the employees' confidentiality interests outweighed the Respondent's ostensible need for the information it sought and that any discovery requests pertaining to the employees' Section 7 activities, even if predicated on the 'reasonably based' [defamation] claims, violated Section 8(a)(1)." *Id.* at *4.

[8] Imagine that, under Petitioner's reasoning, the courts should be applying *Guess?* anytime objections are made in a civil action, such as discrimination, wage and hour, or other employment cases, to document requests or to questions at a deposition or even a trial that touch upon matters

Even assuming for the sake of argument that *Guess?* is controlling, which it is not, the court's discovery order imposed sufficient procedural safeguards such that the subpoenas at issue may not be found to violate Section 8(a)(1) or (3) of the Act. In fact, the Court maintained specific authority to decide whether the Union or individuals were required to produce the documents at issue and twice invited Petitioner and the Union to propose a protective order to further address Section 7 related concerns, an invitation which Petitioner and the Union have twice disregarded and continue to do so.[9] *See, e.g.*, *Certified Industries, Inc.*, Case No. 29-CA-9097, 1981 NLRB GCM LEXIS 118, *6 (NLRB Gen. Counsel Mem. Dec. 21, 1981) (*citing Gold Circle Department Stores*, Cases 08-CA-13890, *et al.* (NLRB Gen. Counsel Mem. Mar. 30, 1981) (no violation of Section 8(a)(1) when employees were questioned about their union activities during a representation case hearing because the questioning took place within the confines and with the procedural safeguards of a Board-refereed hearing and there was no evidence the questions were asked for the purpose of chilling union activities)).

---

that could be construed as involving employees' Section 7 rights. If the witness refused to produce the requested information or answer the question and filed an unfair labor practice charge, would the court have to defer to the Board on ruling on the objection and stay the matter until the Board ruled? That is the logical extension of Petitioner's argument.

[9] Petitioner's claim that *Guess?* is consistent with Fed. R. Civ. P. 26(c) is puzzling. (Doc. 79 at 5). The *Guess?* standard does not apply here, and importing it is unnecessary when the protective order process is available, and even if it did apply it would not act as a substitute for a protective order under Rule 26(c). Whereas *Guess?* allows the Board to limit disclosure of relevant, non-privileged information, Rule 26 does not limit disclosure of discoverable non-privileged information. *See Steinberg v. Mount Sinai Med. Ctr. Inc.,* 2014 U.S. Dist. LEXIS 44033, at *6 (E.D.N.Y. 2014) ("If the information sought is confidential but not privileged, FRCP 26 does not limit disclosure of otherwise discoverable information."); *see also Van Emrik v. Chemung County Dep't of Social Services*, 1988 U.S. Dist. LEXIS 7901 (W.D.N.Y. 1988) ("A non-disclosure or 'confidentiality' provision in a statute may not always create an evidentiary privilege, especially if the legislature did not explicitly create an evidentiary privilege")(internal quotations removed). The court weighs the interests of those involved to craft a protective order suitable to protect the confidential information at issue, an exercise with which the court is familiar and which is capable of addressing the concerns Petitioner raises in this instance.

Petitioner's claim that Respondent's subpoenas are unlawful ignores these procedural safeguards, which were first proposed by Starbucks in its subpoena instructions,[10] and further bolstered by the Court's discovery order. (Doc. 49). The Court's discovery order quashed about half of Respondent's document requests (Doc. 49, at 4-6) and allowed for the redaction of employee names where appropriate. (Doc. 49, at 6). Moreover, for the portions which were not quashed, the Court continues to allow for objections based on privileges (other than any union-employee privilege, which is not recognized in this Circuit), to be made through a privilege log. (Doc. 49, at 3). The procedural safeguards set forth in Respondent's subpoena instructions and the Court's discovery order are ample and detailed. If Petitioner wishes to absolve the Subpoenaed Nonparties from their discovery obligations, then her recourse is to withdraw the petition, not seek an already rejected order preventing Respondent from obtaining any discovery. As Respondent previously argued, federal courts have long permitted discovery in Section 10(j) cases. (Doc. 45,

---

[10] For example, as previously argued, Instruction 15 to the Union's custodian of records provides Respondent does not seek documents "[y]ou conclude must be withheld because they are covered by the attorney-client privilege, or the work product doctrine." (Doc. 46, 14-25). Likewise, Respondent issued subpoenas only to individuals who were alleged discriminatees and/or testified to chill of union support in the administrative hearing and, per Instruction 26 to the individuals subpoenaed (Doc. 47, at 12-23): (1) provided for assurances that Respondent did not intend from the subpoena to have the purpose or effect of interfering, restraining, or coercing the exercise of Section 7 rights; (2) specifically asked the individuals to redact any hourly employee names unless such name would demonstrate "one way or the other, in union organizing or union representation" or where related to whether Section 10(j) relief would be "just and proper," as referenced in certain individuals' administrative hearing testimony; (3) specifically stated it was not seeking *Jencks* materials; and (4) acknowledged its consent to the entry of an appropriate protective order.

at 8). Petitioner raises no persuasive argument why the Court should reconsider its discovery order here.[11]

## IV.   PETITIONER'S MOTION FOR RECONSIDERATION SHOULD BE DENIED

Motions for reconsideration face a high bar in the Second Circuit, and Petitioner falls well short of clearing that bar here. "In the Second Circuit, the standard for granting a motion for reconsideration is strict, and reconsideration will generally be denied." *U.S. Fidelity and Guar. Co. v. Frosty Bites, Inc.*, 235 F. Supp. 2d 295, 297 (S.D.N.Y. 2002) (quoting *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)) (internal alterations omitted). Denial of a motion for reconsideration is warranted "unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257. Thus, "to succeed on a motion for reconsideration, the movant must show 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Callari v. Blackman Plumbing Supply, Inc.*, 153 F. Supp. 3d 590, 592 (E.D.N.Y. 2015) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). Absent these circumstances, "[r]econsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the Court in deciding the original motion." *Callari*, 153 F. Supp. 3d at 592 (citing *Shearard v. Geithner*, No. 09-cv-0963, 2010 WL 2243414, at *1 (E.D.N.Y. May 30, 2010)).

---

[11] Petitioner makes similar arguments on how the information is "protected" under the Act or under Fed. R. Civ. P. 45. Respondent has previously set forth its position that the Union failed to demonstrate "undue burden" under Rule 45. (Doc. 46, at 18-19; Doc. 47, at 19-20). Similarly, Respondent has set forth its position that the NLRA and its regulations–and even the NLRB's own 10(j) manual–anticipate discovery in Section 10(j) cases, and that even if Board authorities did apply to require a balancing test here (which is denied), Respondent would still be entitled to the information sought. (Doc. 46, at 12-13; Doc. 47, at 13-15). Those arguments are incorporated by reference and need not be repeated at length.

Petitioner asks for the Court to reconsider three orders: (1) the September 23, 2022 order granting and denying, in part, motions to quash Respondent's subpoenas (Doc. 49); (2) the October 12, 2022 order denying the Subpoenaed Nonparties' motion for reconsideration of the same (Doc. 57); and (3) the October 27, 2022 order holding the case in abeyance after the Subpoenaed Nonparties' counsel advised the Court of "his plan to petition the Second Circuit for a writ of mandamus involving the privilege issue, which could affect the Court's discovery order." (Doc. 64). In the interest of judicial economy, Respondent incorporates by reference its arguments set forth in Part III of this opposition memorandum. Petitioner is untimely and has not met the standard for a motion for reconsideration. Therefore, Petitioner's motion for reconsideration of these orders should be denied.

## V.    PETITIONER'S RULE 60(b) MOTION SHOULD BE DENIED

Federal Rule of Civil Procedure 60(b) provides, in pertinent part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:   (1) mistake, inadvertence, surprise, or excusable neglect;  . . . (3) . . . misrepresentation, or misconduct by an opposing party; . . . (5) the judgment . . .  applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

"The decision whether to grant a party's Rule 60(b) motion is within the district court's 'sound discretion' and appellate review is confined to determining whether the district court abused that discretion." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (citing *Montco, Inc. v. Barr*, 666 F.2d 754, 760 (2d Cir. 1981)). Rule 60(b) motions are not "a means to short circuit the appeals process." *Mitchell v. Senkowski*, 246 F.R.D. 419, 420 (N.D.N.Y. 2007) (citing collection of cases). And, "[a] Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided." *Maldonado v. Local 803 I.B. of T. Health & Welfare Fund*, 490 F. App'x 405, 406 (2d Cir. 2013).

17.

### A.    Petitioner's Rule 60(b) Motion Should Be Denied Because of the Absence of a "Judgment" or "Order"

Petitioner's Rule 60(b) motion seeks relief from orders directly related to Respondent's right to discovery. Second Circuit courts have held that a discovery order is not an "order" or "judgment" contemplated by Rule 60(b). *Black v. Buffalo Meat Serv.*, No. 15-CV-49S, 2016 U.S. Dist. LEXIS 164441, at *20 (W.D.N.Y. Nov. 29, 2016) ("motion to reconsider a non-final discovery [o]rder may not be reconsidered under Rule 60(b)"); *Franzon v. Massena Memorial Hosp.*, 189 F.R.D. 220, 223 (N.D.N.Y. 1999) ("This Court's prior Order regarding a discovery issue was interlocutory in nature and, thus, not within the ambit of Rule 60."). Because Petitioner's motion relates to the initial discovery order, the denial of a motion for reconsideration of that order (which considered and rejected Petitioner's arguments), and the stay, which are not final orders or judgments for the Court to consider under Rule 60(b), Petitioner is not entitled to relief under Rule 60(b).

### B.    Petitioner's Rule 60(b) Motion Should Be Denied As Untimely

Rule 60(c) imposes deadlines on Rule 60(b) motions. *Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022). All must be filed "within a reasonable time." Fed. R. Civ. P. 60(c)(1). But for some, including motions under Rule 60(b)(1), that "reasonable time" may not exceed one year. Fed. R. Civ. P. 60(c)(1).[12] And "[i]n no circumstances . . . may a party use a Rule 60(b) motion as a substitute for an appeal it failed to take in a timely fashion." *Stevens*, 676 F.3d at 67; *see also Niederland v. Chase*, 425 F. App'x 10, 12 (2d Cir. 2011) ("Rule 60(b)(1) motions to reopen based on district court mistakes are generally deemed untimely if made after the deadline for filing a notice of appeal."). "One of the reasons for not permitting Rule 60(b)(1) motions to correct court

---

[12] Motions under Rule 60(b)(6) are not subject to this additional one-year constraint. Rule 60(c)(1). But, "[t]his last option is available only when Rules 60(b)(1) through (b)(5) are inapplicable." *Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022).

errors after the deadline for appeal is to prevent the rule from becoming a vehicle to assert an otherwise time-barred appeal." *Niederland*, 425 F. App'x at 12.

As the Court recently concluded Petitioner failed to demonstrate "excusable neglect" warranting her request for an extension of time to file a notice of appeal (Doc. 86), Petitioner's Rule 60(b) motion should be summarily dismissed as untimely.

### C.   Rule 60(b)(1) Does Not Support Relief From a Final Order Because Even if the Order is Final, There Has Been No "Mistake" or "Error"

Petitioner asks the court to find Rule 60(b)(1) relief from a final order warranted based on a "mistake" or "error."  While this section of the Rule contemplates mistakes from litigants and courts, "a motion for relief from such judicial mistakes under Rule 60(b)(1) may not be made after the time for appeal has elapsed." *Intern. Controls Corp. v. Vesco*, 556 F.2d 665, 670 (2d Cir. 1977).

Petitioner claims the Court made mistakes or errors as "discussed in Part II(A) [pp. 18-19]" of Petitioner's memorandum of law. (Doc. 79-1, at 26). At Part II (A), Petitioner makes the following arguments: (1) the Court considered the union-employee privilege, but not whether the subpoenas touched on information protected by the Act; (2) the Court did not consider that the subpoenaed individuals are non-parties; (3) enforcement of the subpoenas will "threaten statutory associational and organizational rights"; and (4) "the General Counsel has now determined that the subpoenas are unlawful on their face and were propounded for an illegal objective under the NLRA." (Doc. 79-1, at 25). Each of these arguments is easily disposed.

First, the Court has considered, on multiple occasions, whether the subpoenas, as modified by the Court, request documents protected by the Act, and each time, has rejected this argument. (Doc. 49, at 1-2; Doc. 86).

Second, the Court considered that the subpoenaed individuals are non-parties, and in fact, specifically asked Counsel for Workers United if he represented the individuals at oral argument

regarding the motion for contempt, and Counsel for Workers United said that he did. (Doc. 65, at 4, Oral Argument Tr., Oct. 27, 2022). And even prior to that, Workers United participated in briefings and oral arguments, and regularly made arguments on behalf of the individuals.

Third, Petitioner's claimed threat to "statutory associational and organizational rights" through discovery to which Respondent is entitled, and had no other way to obtain, lacks merit and has also been previously rebuffed. Petitioner offers *International Union v. Garner*, 102 F.R.D. 108, 115 (M.D. Tenn. 1984) to support this argument. But, as Respondent previously detailed, *Garner* does not support a claim that discovery should be disallowed because it would violate the Act.[13] Rather, *Garner* involved a case where, after the court issued a temporary injunction, an employer sought to discover "the names of employees who signed authorization cards and who attended any organizational meetings" in order to demonstrate "the degree of intrusiveness of the activities, the percentage of signers subject to surveillance, and the overall chilling effect of defendants' activities." While the court found that the employer was not entitled to employee names and rejected some other discovery, the court allowed the employer to "depos[e] prospective witnesses and learn[] the names of others who were present" at union meetings, and to "ask only for the number of authorization cards, the date on which they were signed, and . . . inquire only about those cards that were signed prior to the [c]ourt's entry of a temporary restraining order." *Id.* at 116. The court in *Garner* never accepted, as Petitioner argues, that the Act made discovery unlawful. And, to the contrary, the court said that the "determination whether material is 'privileged' and not subject to discovery depends on privileges as defined in the Rules of Evidence." *Id.* at 113. The same holds true here.

---

[13]   Respondent previously described why *Garner* does not apply in its opposition to Workers United's motion for reconsideration. (Doc. 56, at 7-8).

Fourth, the Court owes no deference to a prosecutorial determination by the General Counsel (which is an allegation and does not mean Respondent violated the Act), and, again, Petitioner points to no authorities to suggest otherwise. Petitioner's prosecutorial determination also cannot be considered an intervening change in law because Petitioner is bound by the Act, which has not changed. *Dale v. Raczynski*, No. 21-1602, 2022 U.S. App. LEXIS 26976, at *5 (2d Cir. Sep. 27, 2022) (case law could not "be characterized as an intervening development in the law" to support a Rule 60(b) motion because that case law referenced a policy dating "back to at least the 1990s."). It is beyond argument that a prosecutorial determination is not final, binding, or owed deference as though it is a final agency determination.

For all of these reasons, Petitioner failed to show any "mistake" or "error" to support a Rule 60(b)(1) motion for relief from a final order.

### D.    Rule 60(b)(3) Does Not Support Relief From a Final Order Because Even if the Order is Final, There Has Been No "Misconduct"

Under Rule 60(b)(3), a district court may relieve a party from a final judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). The Second Circuit has held that the moving party must prove fraud, misrepresentation, or misconduct by "clear and convincing evidence." *Fleming v. New York University*, 865 F.2d 478, 484 (2d Cir. 1989). In addition to providing clear and convincing evidence, the moving party "must show that the conduct complained of prevented the moving party from fully and fairly presenting his case." *State Street Bank v. Inversiones Errazuriz*, 374 F.3d 158, 176 (2d Cir. 2004).

Petitioner does not come close to making these showings. Perhaps Petitioner's most audacious argument, which should shock the conscience of all attorneys who have taken an oath to zealously represent their clients, is the claim that Respondent's counsel issuing subpoenas as

21.

permitted by Court order, constitutes "misconduct" preventing Petitioner—in a case she brought against Respondent—from "fully and fairly presenting [her] case" or receiving "full and fair consideration of the merits of its Section 10(j) petition." (Doc. 79-1, at 27). To Petitioner, Respondent issuing subpoenas permitted by the Court has "transformed the Section 10(j) proceeding into a further method of coercion and retaliation against individual employees for exercising their rights under the Act." (Doc. 71-1, at 11). Petitioner then states, "The Court's subpoena-related orders were also a product of misconduct, as alleged by the General Counsel, warranting relief under Rule 60(b)(3)." (Doc. 79-1, at 26).[14] This, says Petitioner, means the Court must "remedy orders procured by 'misconduct' in litigation." (Doc. 79-1, at 27).

Petitioner's claim that Respondent's court-approved issuance of subpoenas constitutes "misconduct" in litigation sufficient to meet the Rule 60(b)(3) standard is nothing short of dangerous government overreach. As Respondent stated in its answer to Petitioner's administrative complaint claiming its subpoenas are unlawful:

> The allegations in the Complaint and the requested remedies are precluded and preempted by the substantive and procedural jurisdiction and inherent power the Federal District Court has over the 10(j) Case. The Regional Director, at the direction of the General Counsel and with the approval and on behalf of the Board, knowingly subjected herself to that power by initiating the 10(j) Case. Having done so, she is compelled to litigate the 10(j) case under the Federal Rules of Civil Procedure and Federal Rules of Evidence, rules that give the Court exclusive domain to control the nature and scope of permissible discovery, and that necessarily bar the Regional Director from interfering with the Court's exercise of that control and Starbucks' right to defend itself in the 10(j) Case by her issuing and litigating a complaint that seeks the issuance of an order and wide-ranging remedies holding Starbucks liable for doing precisely what the Court ordered it could do – issue the subpoenas duces tecum the Complaint alleges violated the Act. The Regional Director's issuance of the Complaint is an unprecedented, unwarranted and impermissible attempt to interfere with the jurisdiction of the Court to litigate the 10(j) Case under federal substantive and procedural law and,

---

[14] By implication then, Petitioner argues she exercised her prosecutorial discretion effectively to hold Respondent liable for doing what this Court ordered permissible, and in doing so, seeks an order finding that this Court was wrong.

22.

in the process, not only chill Starbucks from seeking but deny it from obtaining information to which it is entitled to defend against the allegations the Regional Director makes in the 10(j) Case.

Respondent, which received zero documents it requested to defend itself in the underlying administrative hearing, did not issue its document subpoenas in the instant proceeding as a "retaliatory response to coerce or dissuade individuals who might be witnesses in this proceeding." (Doc. 79-1, at 27). Petitioner's sole basis for this misguided allegation is that "Starbucks cumulatively subpoenaed every individual who provided testimony at the Agency's administrative hearing." (Doc. 79-1, at 26). But this is false. Starbucks did not subpoena half of the witnesses Petitioner called. Instead, Starbucks subpoenaed only witnesses whose testimony *Petitioner* designated as "just and proper" at the administrative hearing and the individuals whose terminations or constructive discharge form the basis for the Section 10(j) relief Petitioner seeks.

Petitioner's argument in this regard, which she repeats in various iterations throughout, are no more than bare accusations that are contrary to logic. The Court should see Petitioner's overreach for what it is and deny this motion.

### E. Rule 60(b)(5) Does Not Support Relief From a Final Order Because Even if the Order is Final, "Applying it Prospectively" Remains Equitable

Under Rule 60(b)(5) of the Federal Rules of Civil Procedure, a district court may relieve a party from a final judgment or order where "applying it prospectively is no longer equitable." A "final judgment or order has prospective application for purposes of Rule 60(b)(5) only where it is executory or involves the supervision of changing conduct or conditions." *Tapper v. Hearn*, 833 F.3d 166, 170 (2d Cir. 2016) (internal alterations omitted). "In practical terms, these standards mean that judgments involving injunctions have 'prospective application,' while money judgments do not." *DeWeerth v. Baldinger*, 38 F.3d 1266, 1275 (2d Cir. 1994).

Petitioner argues that she is entitled to relief under Rule 60(b)(5) because continued enforcement of the subpoenas would not be equitable, as: (1) "the General Counsel has now found merit to the subpoenaed parties' charge that the subpoenas are unlawful under the NLRA[;]" (2) subpoena enforcement "undermines the NLRB's ability to obtain cooperation from witnesses" and; (3) "enforcement of the subpoenas prospectively chills the federally protected NLRA rights of employees beyond these proceedings in a manner contrary to the public interest." (Doc. 79-1, at 27-28). Petitioner also broadly asserts that "allowing Starbucks to continue to use this Court's processes to further what is potentially a violation of the law is not equitable." *Id.*

Petitioner makes grand statements like these to claim the discovery in this case is not "equitable," but not equitable to whom? To her first point, regarding a prosecutorial merit determination, the Court has already concluded the instant litigation will not be stayed during the pendency of the administrative hearing on the subpoenas (Doc. 75), notwithstanding that "the General Counsel has now found merit to the subpoenaed parties' charge." Second, to the extent Petitioner believes witnesses will be less likely to cooperate with the NLRB because they received Respondent's subpoenas, Petitioner's argument is undercut by her assertion that in 10(j) cases like this one, she comes to the Court armed with all of the evidence she would need to prove her case. (Doc. 79-1, at 11) (arguing "a Section 10(j) case comes to the Court having already been investigated, with a clear universe of evidence having been supplied both to the Court and to the respondent."). Third, Petitioner's allegations that Respondent's subpoenas will "chill" employees elsewhere fails to recognize the Subpoenaed Nonparties' lack of request for a protective order, or *in-camera* review of any documents. Petitioner also cannot claim in good faith that Respondent's due process right, including the right to all exculpatory evidence in existence when being sued by the government, is any lesser public interest than workers' rights to communicate about union

24.

organizing. Respondent has no interest in obtaining those communications for any improper purpose, and only seeks to defend the allegations against it in the petition. For these reasons too, Petitioner's motion under Rule 60(b)(5) should be denied.

### F.   Rule 60(b)(6) Does Not Support Relief from a Final Order Because Even if the Order is Final, Petitioner Presents No "Other Reason that Justifies Relief"

Rule 60(b)(6) authorizes a district court to grant relief to a moving party for "any other reason that justifies relief." It is a "grand reservoir of equitable power to do justice in a particular case." *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986) (internal quotation marks omitted). "But that reservoir is not bottomless." *Stevens*, 676 F.3d at 67.  Rather, "[t]his last option is available only when Rules 60(b)(1) through (b)(5) are inapplicable." *Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022). And "[e]ven then, 'extraordinary circumstances' must justify reopening." *Id.*; *see also Lee v. Marvel Enterprises, Inc.*, 765 F. Supp. 2d 440, 452 (S.D.N.Y. 2011) ("The rule is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment.").

Petitioner raises two arguments supposedly justifying Rule 60(b)(6) relief based on extraordinary circumstances that warrant prevention or correction of an erroneous judgment: (1) the Court, which has already ordered compliance with Respondent's subpoenas, could find the Subpoenaed Nonparties in contempt of the Court's order and impose sanctions; and (2) the risk of "hardship resulting from inconsistent judgments" if the Board finds, and a Court of Appeals affirms, that Respondent's subpoenas are unlawful in violation of the Act. (Doc. 79-1, at 28-29).

To her first argument, regarding the potential for a finding of contempt, this Court has held the motion for contempt and imposition of sanctions in abeyance, pending the Second Circuit's decision on the writ of mandamus. (Doc. 64). While Petitioner does not explain how these are extraordinary circumstances, the Court's alternative would be denying Respondent's motion for

25.

contempt and imposition of sanctions, even though the Subpoenaed Nonparties have openly refused to comply with a court order. That Petitioner finds Respondent's entitlement to court-ordered discovery an "extreme and undue hardship" to her own case, including possible sanctions to the Subpoenaed Nonparties if they do not comply with a court order mandating that discovery, does not justify relief under Rule 60(b)(6).

Second, Petitioner's citation to *United Airlines v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) cuts directly against her argument that the potential for inconsistent judgments constitutes "extraordinary circumstances" warranting relief. There, the Second Circuit reversed the grant of a Rule 60(b)(6) motion and held that a conflict between two cases was "not, by itself, sufficiently 'extraordinary' to justify reopening the judgment . . . especially given that such conflict resulting from a subsequent Circuit Court or Supreme Court decision would very likely not suffice to grant Rule 60(b)(6) relief. " *Id.* That case is also inapposite because it involved two cases with arguably conflicting premises, whereas here, Petitioner is acting as a prosecutor and cannot predict how the Board or Court of Appeals will decide on the issue of whether Respondent's subpoenas are unlawful in violation of the Act, and therefore, can only speculate about the risk of inconsistent judgments. Accordingly, there is no risk of "hardship resulting from inconsistent judgments" for the Court to entertain.

## VI.    THE MOTION FOR CERTIFICATION OF QUESTION FOR APPEAL SHOULD BE DENIED BECAUSE IT IS UNTIMELY AND DOES NOT MEET THE CONFINES OF 28 U.S.C. § 1292(b)

In the alternative, and while the Court has since rejected Petitioner's request for an extension of time to file a notice of appeal (Doc. 86), Petitioner asks the Court to certify to the Second Circuit, pursuant to 28 U.S.C. § 1292(b), the question "whether the district court must consider confidentiality interests in information regarding activity arguably protected by the

NLRA in discovery, and if so, what standards should apply to such discovery requests?" (Doc.79, at 29).

Under 28 U.S.C. § 1292(b), if both the district court and the court of appeals make the required certifications, an appeal may be taken from an interlocutory order not otherwise appealable where "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.* The Second Circuit has "urge[d] the district courts to exercise great care in making a § 1292(b) certification." *Westwood Pharmaceuticals v. Nat. Fuel Gas Dist.*, 964 F.2d 85, 89 (2d Cir. 1992). Questions "involving the discretion of the judge in conducting pretrial discovery proceedings, should not be reviewed by an appellate court." *Franzon v. Massena Memorial Hosp.*, 189 F.R.D. 220, 224 (N.D.N.Y. 1999) (collecting cases). Moreover, an order "denying § 1292(b) certification is not appealable." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 353 (2d Cir. 2011).

Petitioner's motion for certification under § 1292(b) is untimely. "Interlocutory appeals are a form of 'immediate appeal.'" *Martens v. Smith Barney, Inc.*, 238 F. Supp. 2d 596, 601 (S.D.N.Y. 2002) (citing 28 U.S.C. § 1292(b)). In *Martens*, the court denied a motion under Section 1292(b) because "the passage of almost five months prior to the . . . filing[,]" coupled with insufficient reasons for the delay, rendered the motion untimely. *Id.* Likewise here, the Court recently opined that Petitioner was "on notice of, and actively engaged with" the issues of "whether any privilege or other legal protections applies to the subpoenaed documents" for "more than three months." (Doc. 86, at 9). Petitioner is now nearing four months, but provides no explanation for the delay, aside from the fact that in her prosecutorial role, she determined Respondent's subpoenas in the instant case are unlawful, in violation of the Act. But as mentioned in prior sections of this

opposition memorandum, that cannot carry the day because Petitioner advanced the same arguments both before and after the administrative complaint regarding the subpoenas issued. In contrast to Petitioner's lengthy delay in making this motion, the Union filed its motion to certify a question for appeal a mere 14 days following the issuance of the Court's discovery order. (Doc. 53). Because Petitioner was "on notice of, and actively engaged with" these issues "since September 7, 2022" which have been "this litigation's almost singular focus[,]" Petitioner's motion for certification under § 1292(b) should be denied as untimely. (Doc. 86).

Even if the motion had been timely, Second Circuit case law does not support finding a "substantial ground for difference of opinion" exists here. In the Second Circuit, even "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Flor v. BOT Financial Corp.*, 79 F.3d 281, 284 (2d Cir. 1996) (citations omitted). Instead, "[i]t is the duty of the district judge . . . to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute." *Id.* at 284 (citations omitted). The Second Circuit has found "substantial ground" for dispute under Section 1292(b) based on "differing rulings within this Circuit." *Yu v. Hasaki Rest., Inc.*, 874 F.3d 94, 98 (2d Cir. 2017) (citing two cases from the Southern and Eastern Districts of New York, issued just over one month apart, reaching opposite conclusions on same Fair Labor Standards Act issue). In contrast, Petitioner cites to no Second Circuit district court cases demonstrating "differing rulings" on how they assess "confidentiality interests in information regarding activity arguably protected by the NLRA" and Respondent submits there are none.

Moreover, certifying a question whether the materials sought are "arguably protected by the Act" would not materially advance termination of the litigation because of the safeguards

already in place for any such materials. This Court issued a discovery order, granting in part and denying in part Petitioner's and the Union's motions to quash Respondent's document subpoenas. (Doc. 49). While Petitioner dissects the Court's order and the subpoena instructions, she has never filed a motion for clarification of that order. (Doc. 49). The Subpoenaed Nonparties have also never filed a motion for a protective order. Therefore, to "permit appellate review of this kind of discretionary discovery order, merely an intermediate step in these complex cases, would thwart rather than effectuate the purpose of 1292(b) to materially advance the ultimate termination of the litigation." *Franzon*, 189 F.R.D. at 225 (denying motion to reconsider and motion to certify question for interlocutory appeal; rejecting bid to "appeal an [o]rder with respect to discovery" based on claim of "self-critical analysis privilege," noting that such privilege was not recognized by the Second Circuit, it was recognized by another district court, but its viability was "in serious doubt," and the "interest in disclosure outweigh[ed] the interest in confidentiality which the privilege protect[ed].") (internal citations omitted). Petitioner may choose to withdraw her petition at any time, but otherwise, the procedural safeguards described here, which the Court has ruled are adequate, will occur before the termination of the litigation.

Certifying the question for appeal also would not materially advance the termination of this litigation because it would undermine Respondent's due process rights and create other potential grounds for an appeal. Drawing the question Petitioner proposed for certification to its logical conclusion demonstrates that employers in the Second Circuit would have lessened due process rights than those in other circuits. According to Petitioner, the Second Circuit courts would need to avoid "interference with the NLRB's statutory role" and thus "presume an activity is protected if it is arguably protected," and therefore accompanied by confidentiality interests, a standard

Petitioner claims to have met here. (Doc. 79-1, at n.7).[15] Petitioner asks the Court to certify the question of what "standards should apply to such discovery requests" in these circumstances. (Doc. 79, at 29). But it is not "interference with the NLRB's statutory role" that should concern the Court here, as Petitioner claims. Rather, it is the fact that affording Petitioner, or any arm of the federal government acting as a litigant, the power to limit permissible discovery by parties defending against the government's claims, would lend to a flagrant abuse of power and the denial of due process. *See Fusco,* 205 F. Supp. at 463; *see also Sperandeo*, 334 F.2d at 384. For these reasons, Petitioner's motion to certify a question for appeal should be denied.

## VII.   CONCLUSION

For all of the foregoing reasons, Respondent respectfully submits that Petitioner's renewed motion to quash Respondent's document subpoenas, for relief under Rule 60, for reconsideration of the Court's discovery order, or to certify a question for appeal, must be denied in its entirety.

---

[15] Without claiming to have seen any of the documents the Subpoenaed Nonparties refuse to produce, Petitioner says: "union-related activity here is at least arguably protected." (Doc. 79-1, at 11).

Dated: January 13, 2023

/s/ *David Kadela*

David Kadela (*Pro Hac Vice*)
Jeffrey S. Hiller (*Pro Hac Vice*)
LITTLER MENDELSON, P.C.
41 South High Street, Suite 3250
Columbus, OH 43215
Tel: 614-463-4201
Fax: 614-573-7475
Email: dkadela@littler.com
        jhiller@littler.com

Jacqueline Phipps Polito
LITTLER MENDELSON, P.C.
375 Woodcliff Drive, Suite 2D
Fairport, NY 14450
Tel:  585-203-3413
Fax:  585-486-1774
Email: jpolito@littler.com

Jonathan Levine (*Pro Hac Vice*)
Adam-Paul Tuzzo (*Pro Hac Vice*)
LITTLER MENDELSON, P.C.
111 East Kilbourn Ave., Suite 1000
Milwaukee, WI 53202
Tel: 414-291-5536
Fax: 414-291-5526
Email: jlevine@littler.com
        atuzzo@littler.com

Brittany L. Stepp (*Pro Hac Vice*)
LITTLER MENDELSON, P.C.
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102
Tel: 267-402-3124
Fax: 267-402-3131
Email: bstepp@littler.com

*Attorneys for Respondent*
*Starbucks Corporation*