# 23-_____

---

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

NATIONAL LABOR RELATIONS BOARD,

                    Petitioner,

v.

STARBUCKS CORP.

                    Respondent.

---

### On Petition for Writ of Injunction
### Related Case Nos. 22-3229 (2d Cir); 1:22-cv-00478-JLS (W.D.N.Y.)

---

## PETITION OF NATIONAL LABOR RELATIONS BOARD
## FOR WRIT OF INJUNCTION

---

JENNIFER A. ABRUZZO
  *General Counsel*
PETER SUNG OHR
  *Deputy General Counsel*
RICHARD A. BOCK
  *Associate General Counsel*
NANCY E. KESSLER PLATT
  *Associate General Counsel*
RICHARD J. LUSSIER
  *Assistant General Counsel*
DAWN L. GOLDSTEIN
  *Assistant General Counsel*

LAURA T. VAZQUEZ
  *Deputy Assistant General Counsel*
POLLY MISRA
  *Supervisory Trial Attorney*
MATHEUS TEIXEIRA
  *Trial Attorney*
DAVID P. BOEHM
  *Trial Attorney*
  (202) 273-4202

NATIONAL LABOR RELATIONS BOARD
1015 HALF STREET, S.E., 4TH FLOOR
WASHINGTON, DC 20003

To the Honorable, the Judges of the United States
   Court of Appeals for the Second Circuit:

## INTRODUCTION AND RELIEF SOUGHT

Pursuant to the All Writs Act[1] and this Court's inherent authority
to protect its prospective jurisdiction, the National Labor Relations
Board (Petitioner or NLRB),[2] an agency of the United States,
respectfully petitions this Court for a writ of injunction commanding
Respondent Starbucks Corp. (Starbucks) to withdraw subpoenas issued
in a pending case in the United States District Court for the Western
District of New York [No. 1:22-cv-00478-JLS (W.D.N.Y.)].[3]

Starbucks is the respondent to nationwide unfair labor practice
allegations pending administrative proceedings before the Agency, as
well as the employer in hundreds of NLRB union election proceedings.[4]

_____

[1] 28 U.S.C. § 1651.

[2] References to "the NLRB" or to "the Agency" refer to the Agency as a
whole. "The Board" refers to the appointed five-member statutory body
known as the National Labor Relations Board.

[3] On December 28, 2022, the subpoena recipients petitioned this Court
for a writ of mandamus directing the district court to quash the
subpoenas. [22-3229, Document 1-2]. The NLRB intends to file a motion
to consolidate these proceedings.

[4] *See* NPR, "Starbucks workers have unionized at record speed; many
fear retaliation now" *available at*

It is also the respondent in the district court proceeding below initiated by the NLRB requesting injunctive relief pursuant to Section 10(j) of the National Labor Relations Act (NLRA).[5]

Starbucks issued expansive subpoenas to nonparty employees and Workers United (Union), seeking disclosure of employee communications regarding union organizing and related subjects, which the district court below largely enforced. The subpoenaed nonparties maintain that the information is protected and have resisted production. To this end, they have petitioned this Court for a writ of mandamus ordering the subpoenas quashed; a motion to hold these nonparties in contempt has been stayed pending disposition of that mandamus petition.

First and foremost, the coercive threat posed by these subpoenas jeopardizes the prospective review and enforcement jurisdiction of this Court with respect to that Section 10(j) district court proceeding.  Such proceedings are brought in order to obtain swift interim relief while the Board's administrative proceedings play out. In this case, Starbucks'

---

https://www.npr.org/2022/10/02/1124680518/starbucks-union-busting-howard-schultz-nlrb (last visited Jan. 26, 2023).

[5] 29 U.S.C. § 160(j).

subpoenas have subverted and delayed that district court proceeding; its active contempt threat against the subpoenaed nonparties endanger this Court's ability to ultimately exercise appellate jurisdiction over that district court case. And in the absence of effective interim relief, this Court's jurisdiction to enforce a final Agency order related to the same alleged unfair labor practices that are the subject of the Section 10(j) proceeding is also threatened.

Moreover, the Agency's General Counsel has alleged that the information sought by the subpoenas is protected by the NLRA and that issuance of such subpoenas was an unfair labor practice, on the basis of in terrorem effects these subpoenas could impose upon employees' statutory self-organization rights and access to the NLRB. The district court's orders here also threaten this Court's prospective enforcement jurisdiction over that pending administrative case. Absent an order issuing the relief sought, this Court's power to order an effective remedy that would effectuate the policies and purposes of the NLRA as to that proceeding is also likely to be defeated.

In support of this Petition and pursuant to Rule 21 of the Federal Rules of Appellate Procedure, the NLRB states as follows:

## STATUTORY BACKGROUND AND ISSUE PRESENTED

The NLRB is an independent federal agency created by Congress to enforce and administer the NLRA. Employee rights set out in Section 7 of the NLRA are public rights. This Section protects employees' rights "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection," as well as the right to refrain from such activities.[6] As the Supreme Court has found, "the central purpose of the Act" is "achievement and maintenance of workers' self-organization."[7]

In order to meet those goals, the NLRB is the "public agent chosen by Congress" to enforce the NLRA's provisions and secure remedies for violations.[8] Under the Act, certain conduct is prohibited under Section 8 as unfair labor practices. One such unfair labor practice occurs when

---

[6] 29 U.S.C. § 157.

[7] *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 193 (1941).

[8] *Nathanson v. NLRB*, 344 U.S. 25, 27 (1952).

employers seek information in discovery related to activity protected by Section 7, under certain circumstances.[9]

The Board is empowered by Section 10 with exclusive authority to prevent and remedy the commission of those unfair labor practices.[10] Judicial review and enforcement of Board orders remedying unfair labor practices is obtained in a United States court of appeals where the unfair labor practice occurred or where the person(s) aggrieved by the order resides or transacts business.[11] When intervening events are likely to render the normal process of agency adjudication and court of appeals enforcement ineffective, the NLRB may seek temporary

---

[9] Under *Guess?, Inc.,* 339 NLRB 432 (2003), the Board applies a three-part test when determining whether a party's discovery or questioning in civil litigation violates Section 8(a)(1): (1) the questioning must be relevant; (2) the questioning must not have an illegal objective; and (3) if relevant and lacking an illegal objective, the employer's interest in obtaining the information must outweigh employees' confidentiality interests under Section 7 of the Act. *See also Wright Electric, Inc.*, 327 NLRB 1194 (1999), *enforced,* 200 F.3d 1162 (8th Cir. 2000) (employer could not seek union authorization cards signed by employees in discovery).

[10] 29 U.S.C. §§ 158, 160.

[11] 29 U.S.C. § 160(e), (f).

injunctive relief in an appropriate United States district court pursuant to Section 10(j) of the NLRA, as it did in the case pending below.[12]

Here, the Agency seeks to protect the efficacy of its proceedings and congressionally created judicial remedies, as well as the rights of employees against compelled disclosure of information in which they have a significant, federally protected confidentiality interest. Enforcement of the subpoenas at issue threatens the integrity of a district court proceeding initiated by the NLRB to remedy other serious violations of the NLRA, a proceeding over which this Court possesses appellate jurisdiction.[13] This is because Starbucks has successfully weaponized discovery before the district court as a further method of coercing employees, which has threatened to derail the proceeding intended to protect those very rights.

Moreover, the Agency's General Counsel has issued an administrative complaint alleging that Starbucks' subpoenas unlawfully coerce and restrain employees in the exercise of NLRA

---

[12] 29 U.S.C. § 160(j).

[13] 28 U.S.C. § 1291.

rights. A651 *et seq.*[14] And should these administrative proceedings culminate in a final Board order, that order is also potentially subject to review or enforcement in this Court.[15]

Under these unique circumstances, a writ of injunction directing Starbucks to withdraw its subpoenas would both aid this Court's prospective jurisdiction over these various proceedings, as well as be "agreeable to the principles and usages of law."[16]

## STATEMENT OF FACTS

A. <u>A nationwide organizing campaign begins at a Starbucks in Buffalo, New York, and the NLRB holds an administrative hearing to determine whether Starbucks engaged in unfair labor practices to suppress union organizing in and around Buffalo.</u>

On August 30, 2021, the Union filed an election petition with the Agency's Regional office in Buffalo (Region 3) seeking to be the exclusive bargaining representative of Starbucks' employees at its facility in Hamburg, a Buffalo suburb. This was the first Starbucks

---

[14] To avoid filing duplicative documents, this petition references the Appendix to the Union's Petition for a Writ of Mandamus [A#]. References to the NLRB's Supplemental Appendix are indicated by [SA#].

[15] The alleged unfair labor practices occurred in this Circuit and all parties to the case reside or transact business in the same. *See* 29 U.S.C. § 160(e), (f).

[16] *See* 28 U.S.C. § 1651.

location in the country to file an election petition, which has since been followed by the filing of hundreds of other election petitions at Starbucks stores across the country.

The NLRB conducted a secret ballot election on October 28, 2021, at which time a majority of eligible employees voted against Union representation. After filing the election petition, the Union filed unfair labor practice charges alleging that Starbucks engaged in unlawful conduct at that store, both before and after the election. Subsequently, the Union filed objections asking that the election result be set aside due to the allegedly unlawful conduct.

Region 3's Regional Director consolidated the unfair labor practice complaint with the Union's election objections for hearing. A2 *et seq.* Later, Region 3 further consolidated other pending Starbucks cases, adding nearly 300 other unfair labor practices allegations. SA001 *et seq.* A hearing before an administrative law judge (ALJ) began on July 11, 2022, and concluded September 14, 2022.[17] The parties are presently awaiting the ALJ's recommended decision.[18]

---

[17] Hereinafter, all dates refer to 2022, unless otherwise noted.

[18] In the administrative proceeding, the ALJ permitted presentation of "just and proper evidence" regarding the appropriateness of temporary

B. <u>The NLRB asks the district court for injunctive relief against Starbucks and the district court allows discovery on whether the relief is "just and proper"; the district court enforces Starbucks' overly broad subpoenas to nonparties demanding production of confidential communications.</u>

1. The district court grants Starbucks' request to engage in expedited discovery, but later stays its proceeding and related discovery until after the closing of the record before the ALJ.

On June 21, between the issuance of the administrative complaint and the opening of the administrative hearing, the NLRB petitioned the district court for interim injunctive relief under Section 10(j), pending a final agency decision. A72 *et seq.* The Agency sought a nationwide cease-and-desist order, and an affirmative order requiring Starbucks to, among other things, (1) offer reinstatement to seven discharged employees, (2) recognize and bargain in good faith with the Union as the employees' bargaining representative at one of Starbucks' Buffalo-area stores via an interim bargaining order,[19] and (3) read and post the district court's order nationwide.

---

relief. There, the ALJ quashed similar administrative subpoenas because, in relevant part, they sought information regarding protected union activities. A69 *et seq.*

[19] *See NLRB v. Gissel Packing Co.*, 395 U.S. 575, 610 (1969).

The district court initially rejected the NLRB's request that 10(j) relief be decided exclusively on the Agency's initiating papers. SA057 *et seq.* Upon claims by Starbucks and the NLRB that both would suffer prejudice due to the temporal overlap between discovery in the administrative and 10(j) proceedings, the district court stayed the 10(j) matter until after the administrative record closed. A204 *et seq.*

> 2. Starbucks issues subpoenas to nonparties asking for documentary evidence related to the Union's organizing; the NLRB and Union object; and the district court issues a discovery order requiring the Union and individuals to produce confidential communications.

After the Agency's administrative hearing closed, discovery ensued in the 10(j) proceeding. Starbucks issued subpoenas to the Union's custodian of records, two non-Starbucks union employees, and 19 former and current Starbucks employees, each of whom had provided testimony for the NLRB's General Counsel in the ALJ hearing. A216 *et seq.*

Each subpoena demanded production of numerous items of information concerning: (1) communications between the recipient and the NLRB, the Union, and other Starbucks employees related to Union organizing; (2) social media posts related to the Union; and

(3) documents related to organizing and Union support among stores. Notably, while paragraph 26 of the subpoena instructions permits redaction of individual employee names, it does so in a manner that fails to sufficiently protect Section 7 rights of individuals.[20]

The Union and the NLRB each filed motions to quash the subpoenas. A460 *et seq.* Here, although the NLRB acknowledged that limited discovery may be available as a general matter in Section 10(j) proceedings, it argued that even such limited discovery was inappropriate in this particular case [SA062 *et seq.*]. This was because the 10(j) petition was supported by affidavits submitted by the NLRB and the administrative record. Moreover, the Agency argued that the subpoenas would be redundant, because Starbucks had the opportunity during the administrative proceeding to cross-examine the same

---

[20] Paragraph 26 states, in part: "To ensure that the requests that follow are not construed to have the purpose or effect of interfering with, restraining or coercing employees in the exercise of their rights under Section 7 of [the NLRA], please redact from responsive Documents the name of any Starbucks hourly employee." But then the paragraph goes on to *exclude* the particular individuals who provided affidavits and/or were witnesses in the underlying ULP hearing. Among additional exceptions, it further excepts from redaction documents that "reflect[] or could be construed to reflect matters that effected [sic] the employee's interest, one way or the other, in union organizing or union representation." *See, e.g.*, A225.

witnesses from whom it sought evidence in the injunction case. The NLRB additionally maintained that subpoenas issued to individual Agency witnesses are inherently coercive. It further argued, among other things, that the requests are overly broad and unduly burdensome, especially as served upon nonparties to the case.

Finally, the NLRB argued that Starbucks had received the evidentiary basis for the request for injunctive relief in the administrative hearing. Given Starbucks' full opportunity to question the employee witnesses during the administrative proceeding, including on the issue of whether injunctive relief would be "just and proper," the Agency argued that discovery would be duplicative, excessive, and unnecessary. SA081 *et seq.*

> 3. The district court requires the Union and employees to produce confidential communications arguably protected by Section 7 of the NLRA.

On September 23, the district court issued its order summarily denying in relevant part the motions to quash, rejecting "blanket claims of privilege to entire topics." A535 *et seq.* Although it acknowledged that

a court "may limit discovery to avoid delay in this action's resolution,"[21] it noted that the Second Circuit does not recognize a union-employee privilege. A537. The district court concluded that it had "balanced Respondent's need for the requested documents with Petitioner's need to proceed expeditiously (and the burden of subpoena compliance generally), in the context of the interim relief requested in this Section 10(j) proceeding."[22] A538.  The court subsequently denied the Union's motion for reconsideration, but did not address the asserted NLRA confidentiality interest, again discussing only a "union-employee privilege," which is entirely different. A604 *et seq*.

The district court found [A540] the following subpoena requests proper:

1. All Documents and Recordings relating to any Communications by you to, or to you from (i) any employee or former employee of Starbucks, (ii) the Union, (iii) the NLRB, or (iv) any digital, print, radio, TV, internet-based or other media outlet concerning any of the following matters:

---

[21] A537 (citing *U.S. v. Electro-Voice, Inc.*, 879 F. Supp. 919, 923 (N.D. Ind. 1995)).

[22] The district court modified one request, item 1(f), *see* n.23 below, and permitted individuals in possession of responsive documents to object "to the production of specific documents on a specific, articulable privilege ground."

a. For each [Buffalo or Rochester store] for which an election petition was filed, . . . the number of employees (not names) who were considered to be in favor of union representation ("yes" votes) and the number of employees who were considered not to be in favor of union representation ("no" votes) at the time the petition was filed and each week thereafter until an election was held, or if no election has been held or one is scheduled to be rerun, up to the present;

b. For each employee of the [Buffalo or Rochester store] for which an election petition was filed, . . . who was or has been considered at any time to have changed from being in favor or union representation to not being in favor of it, any statements the employee made or things that the employee did that factored into that determination and, if there are any, the employee's name;

c. For each [Buffalo or Rochester store] for which an election petition has not been filed, the number of employees (not names) considered to be in favor or [sic] union representation and the number of employees considered not to be in favor of union representation since the outset of organizing in Buffalo and at weekly or whatever intervals used since that time.

d. For each employee of the [Buffalo or Rochester store] for which an election petition has not been filed who was or has been considered at any time to have changed from being in favor or [sic] union representation to not being in favor of it, any statements the employee made or things that the employee did that factored into that determination and, if there are any, the employee's name.

\*     \*     \*     \*

f. For each employee or former employee of Starbucks employed outside of the [Buffalo or Rochester stores] who has had any communication with the Union, or any Starbucks' employees

or former employees from the [Buffalo or Rochester stores] relating to the subject of unionization, whether in Buffalo or Rochester, at their store, or elsewhere, any statements the employee made relating to whether they were in favor or not in favor of union representation and the reasons for their position and, if such statements were made, the employee's name.[23]

\*       \*       \*       \*

3. All Documents relating in any way to Communications you have had with the Union or agents, representatives, or employees of the Union concerning their putting you in contact or connecting you with any digital, print, radio, TV, internet-based or other media outlet.

4. All Documents relating in any way to Communications the Union has had or agents of the Union have had with Partners regarding information to be provided by Partners to any digital, print, radio, TV, internet-based or other media outlet concerning union organizing, union elections and other union related matters involving the Buffalo stores and the Rochester store and concerning Starbucks' discipline and termination of Partners allegedly because of their union activities.

5. All Documents relating in any way to Communications the Union has had, including interviews, information provided to, and articles published by, any digital, print, radio, TV, internet-based or other media outlet concerning union organizing, union elections and other union related matters involving the Buffalo stores and the Rochester store and

---

[23] The district court modified this request as follows: "except that all names from documents responsive to this request may be redacted; if information identifying the particular store at issue exists in the document, it shall remain unredacted, but the producing party need not add such information to any responsive documents."

concerning Starbucks' discipline and termination of Partners allegedly because of their Union activities."

\*      \*      \*      \*

13. All Documents discussing an increase and/or decline in support for the organizing campaigns at the Buffalo stores or the Rochester store.

\*      \*      \*      \*

15. All Documents relating to changes to the timing of filing election petitions at any Starbucks store based on the Complaint or underlying charges, other alleged unfair labor practices, or any other factor.

16. All emails from the email account sbworkersunited@gmail.com sent since August 2021 by any Starbucks employee that reflects interest in starting a union campaign at any Starbucks store, attending union meetings, participating in a union bargaining committee, or serving as a Union representative, support for the Union and/or fear of retaliation for engaging in union activities.

17. All Documents relating to and/or discussing reasons other than alleged retaliation that employees have cited as a reason for not supporting the Union.

C.  The Union Alleges that Starbucks' Subpoenas Violate the NLRA and Region 3 Issues Complaint.

After the district court's September 23 discovery order, the Union

filed an NLRB charge in Case 03-CA-304675, alleging that Starbucks'

subpoenas violated Section 8(a)(1) and (4) of the NLRA.[24] A594 *et seq.*
On December 15, the NLRB's Regional Director issued an unfair labor
practice complaint and notice of hearing as to that charge, A651 *et seq.*,
and an administrative hearing will begin February 9, 2023.

D. Meanwhile, the Union and Employees face contempt threats for
    their failure to turn over the subpoenaed documents.

The subpoenaed nonparties failed and refused to turn over
documents required by the discovery order's October 14 deadline. In
response, Starbucks filed a motion for contempt and sanctions against
both the Union and the employees. A.610 *et seq.* The district court held
that motion in abeyance upon the Union's announced intent to file a
mandamus petition. A635 *et seq.*  On December 28, counsel for the
Union and employees filed a petition for writ of mandamus with this
Court.

E. The NLRB renews its motion to quash the subpoenas,
    alternatively seeking reconsideration or relief under Rule 60, or
    certification of an interlocutory appeal.

On December 22, Petitioner filed a renewed motion to quash
Starbucks' subpoenas, SA129 *et seq.*, arguing that: the General

---

[24] 29 U.S.C. § 158(a)(1), (4).

Counsel's prosecutorial determination to issue complaint should weigh in favor of quashing the subpoenas, Federal Rules of Civil Procedure 26 and 45 require properly balancing nonparties' confidentiality interests and the specialized concerns under Section 7 of the NLRA against the needs of discovery, and that the subpoenas are an unlawful use of court discovery according to *Guess?*. Petitioner alternatively sought reconsideration or relief under Rule 60(b), or certification of an interlocutory appeal under 28 U.S.C. § 1292(b).

On January 25, 2023, the District Court denied this motion and refused to certify an appeal, finding it had already balanced the required interests in discovery, but notably failing to apply the standards presented by the NLRB. SA167 *et seq.*

### REASONS WHY THE WRIT SHOULD ISSUE

Petitioner does not seek an extraordinary remedy under the All Writs Act lightly. Starbucks' litigation conduct, however, subverts a court proceeding intended to protect employee rights, threatening further restraint and coercion in violation of the NLRA. The course of litigation in the district court proceeding threatens to prevent this Court from effectively exercising appellate review regarding interim remedies for Starbucks' alleged unfair labor practices and from

meaningfully enforcing a final Agency order in the underlying administrative proceeding. Further, as to the Agency case alleging the subpoenas to be unlawful, allowing the subpoenas to be enforced or permitting the nonparties to be held in contempt would also defeat this Court's prospective jurisdiction over that proceeding.

The NLRB is without adequate legal alternatives to obtain the necessary relief. A writ of injunction is therefore necessary and appropriate to protect this Court's enforcement and appellate jurisdiction.

## I.  A writ of injunction would aid this Court's prospective jurisdiction.

The All Writs Act codifies common law writs used to preserve a court's judicial functions.[25] As interpreted by appellate courts, the statute authorizes injunctions against an "action or behavior" which threatens the "integrity" of proceedings subject to a court's jurisdiction.[26] In other words, such an injunction may restrain litigation

---

[25] 28 U.S.C. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usage and principles of law.").

[26] *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004); *see also In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir.

conduct in another forum that would undermine the issuing court's ability to effectively render a judgment.[27] This includes proceedings "that could potentially come before the issuing court for review,"[28] including administrative agency proceedings where a court would have eventual review or enforcement jurisdiction.[29]

A court may grant a writ of injunction under this statute whenever it is "calculated in [the court's] sound judgment to achieve the

---

1985) (writ may issue where the "integrity of the court's power to render a binding judgment" is at stake). While this Court has issued injunctive relief under the All Writs Act, decisions of the Eleventh Circuit appear to discuss the underlying principles in the greatest detail.

[27] *See* 13 Moore's Federal Practice - Civil § 65.04 (2022).

[28] *Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1264 (11th Cir. 2021); *see Michael v. INS*, 48 F.3d 657, 664 (2d Cir. 1995) (granting All Writs Act injunction to stay deportation); *see also* Samuel I. Ferenc, Note, Clear Rights and Worthy Claimants: Judicial Intervention in Administrative Action Under the All Writs Act, 118 Colum. L. Rev. 127, 138 (2018).

[29] *Sheehan v. Purolator Courier Corp.*, 676 F.2d 877, 884 (2d Cir. 1981); *see also Heckler v. Redbud Hosp. Dist.*, 473 U.S. 1308, 1313 (1985) (a court may issue an injunction under the All Writs Act to "preserve the status quo while administrative proceedings are in progress . . . to prevent impairment of the effective exercise of appellate jurisdiction" (citing *FTC v. Dean Foods Co.*, 384 U.S. 597, 603-04 (1966)); *ITT Comm. Devel. Corp. v. Barton*, 569 F.2d 1351, 1359 n.19 (5th Cir. 1978) ("When potential jurisdiction exists, a federal court may issue status quo orders to ensure that once its jurisdiction is shown to exist, the court will be in a position to exercise it."); *Klay*, 376 F.3d at 1099 n.10 (same).

ends of justice entrusted to it," and not only when it is "'necessary' in the sense that the court could not otherwise physically discharge its . . . duties."[30] A court may thus "enjoin almost any conduct which, left unchecked, would have the practical effect of diminishing the court's power to bring the litigation to a natural conclusion."[31]

The Board authorized the filing of the district court proceeding to remedy interference with the Union's ongoing organizing efforts. But Starbucks' subpoenas have succeeded in grinding that proceeding to a halt, while simultaneously leaving employees fearful of being found in contempt for attempting to protect the exercise of their Section 7 rights.

---

[30] *Adams v. United States*, 317 U.S. 269, 273 (1942). While some courts have transposed more stringent standards (such as "a clear and indisputable right") for injunctive relief under the All Writs Act, they have done so by erroneously relying on decisions of a single Circuit Justice of the Supreme Court refusing to grant relief under the inapplicable Supreme Court standard for an injunction pending appeal. *See, e.g., M.O.C.H.A. Soc'y v. City of Buffalo*, 2007 U.S. Dist. LEXIS 93066, at *10 (W.D.N.Y. Dec. 13, 2007) (quoting *Wisconsin Right to Life, Inc. v. FEC*, 542 U.S. 1305, 1306 (2004) (Rehnquist, J., in chambers)). The Fifth Circuit has also (erroneously) applied the standards applicable to mandamus to injunctions under the All Writs Act. *See Moore v. Tangipahoa Par. Sch. Bd.*, 507 F. App'x 389, 397 (5th Cir. 2013). But this Court has not adopted such an approach, which is at odds with the Supreme Court's instruction that courts may avail themselves of such writs to achieve "the rational ends of law." *Harris v. Nelson*, 394 U.S. 286, 299 (1969); *accord Adams*, 317 U.S. at 273.

[31] *Klay*, 376 F.3d at 1102.

These circumstances threaten to render the interim relief sought in the district court, as well as the final remedy sought in the underlying Agency proceeding, ineffectual due to the passage of time. In such a case, "justice delayed is justice denied."[32] Moreover, the invasive and burdensome nature of the subpoenas, combined with the threat of contempt sanctions, may well convince employees that their interest in union organizing or involvement in NLRB and related court proceedings is more trouble than it is worth, further undermining the integrity of those proceedings.[33] Finally, requiring employees, upon pain of contempt, to divulge confidential information that could compromise statutorily protected union organizing activity would frustrate this Court's prospective jurisdiction over the administrative *Guess?* charge pending before the Agency.

Significantly here, courts have authority to issue an All Writs Act injunction to protect confidential information from discovery proceedings before a different court. In a seminal case, the Seventh

---

[32] *Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990) (granting mandamus relief under All Writs Act in habeas case).

[33] *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 240 (1978) (noting the "all too familiar unwillingness" of employees and others in labor cases to "get too involved").

Circuit found in *Winkler v. Eli Lilly & Co.*, that a writ may be issued to "prevent predatory discovery, especially of sensitive documents, ensuring that litigants use discovery properly as an evidence-gathering tool, and not as a weapon."[34]

After the district court ordered discovery, it would have been proper if Starbucks had propounded proportionate and relevant discovery in support of its legitimate litigation defenses, in a manner sensitive to statutory rights of employees and recognizing the limited scope of inquiry in a 10(j) proceeding. And in a marginal case, one might extend the benefit of the doubt. But here, instead of treading carefully, Starbucks has exhibited all the discretion of a battle tank.

---

[34] 101 F.3d 1196, 1202 (1996); *see also Ret. Sys. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 430 (2d Cir. 2004) (while distinguishing *Winkler*, noting the potential for state court proceedings to "threaten[] to negate [a court's] injunction by exposing confidential information that the [issuing] court sought to protect."); *cf. In re Ocwen Fed. Bank FSB Mortgage Servicing Litigation*, 397 F. Supp. 2d 957, 963 (N.D. Ill. 2005) (counsel enjoined from pursuing parallel actions in state court that could well result in violations of the court's pretrial order staying discovery); *OBANCorp, Inc. v. Holtzman*, 96-CV-1700 (RSP/DNH), 1997 U.S. Dist. LEXIS 9502, at *7-8 (N.D.N.Y. June 27, 1997) (state court discovery enjoined to effectuate terms of federal confidentiality order) *aff'd.* 125 F.3d 844 (2d Cir. 1997).

As Petitioner argued to the district court, overbroad discovery that would disclose names of employees or locations at which Union organizing is nascent or planned, or seeks to peer inside the organizing strategy of the Union or employees should be disallowed. Here, Starbucks has targeted the employees who provided testimony in the ALJ proceeding with burdensome and invasive document requests. Such requests disclose an improper purpose, are unduly burdensome and oppressive under the Federal Rules. And the orders denying requests to quash or modify the subpoenas notably lack reasoned discussion of the applicable standards for nonparty subpoenas or NLRA confidentiality interests. A535 *et seq.*; A604 *et seq.*; SA167 *et seq.*

It was argued to the district court that the subpoenas have been alleged to violate the Agency's *Guess?* standards in a pending Agency proceeding. [A596 *et seq.*; SA129 *et seq.*][35] Specifically, the NLRB General Counsel's complaint alleges that Starbucks' subpoenas are

---

[35] *Guess? Inc.*, 339 NLRB at 435. Initially, as discussed above at n.20 Paragraph 26 of the subpoenas, which purports to limit the scope of the discovery requests to avoid unlawfully infringing upon employees' exercise of Section 7 rights, is ineffectual. Redactions allowed have exceptions are so broad as to nullify its stated purpose. The language is also internally inconsistent, giving with one hand what it takes away with the other, and in some cases explicitly seeking employees' names.

highly invasive and burdensome, and seek vast swaths of information

protected by the Act's Section 7, including employees' communications

regarding union activities and sympathies.[36]

Relevance aside, Starbucks' need for the information is

outweighed by the employees' and Union's confidentiality interests. As

noted above, p.12, Starbucks had the unfettered opportunity to examine

each of the persons it subpoenaed under oath in the administrative

proceeding to obtain evidence for use before the district court. And the

information sought in the subpoenas would permit individual

employees or store locations to be identified and singled out for

surveillance, promises of benefits, or adverse actions like discipline or

preemptive closure to nip organizing in the bud. But even absent such

action, disclosure of information protected by Section 7 would be

harmful in and of itself: "[t]he inevitable result of the availability of this

---

[36] In addition to burden and oppression on federally protected NLRA rights [*see* Fed. R. Civ. P. 26(c)], the subpoenas would also impose extremely burdensome logistical responsibilities of collection and redaction on nonparty employees, which would have the predictable effect of disaffection with the Union. [A651 *et seq*.]. Vague and internally inconsistent language in subpoena instructions allowing for certain redactions do not cure their coercive effect.

information would be to chill the right of employees to express their favorable union sentiments."[37]

Significantly, Starbucks' subpoenas were propounded in the context of a nationwide organizing campaign involving hundreds of stores. Permitting Starbucks to examine the Union's internal organizing strategies will have the effect of cutting off the organizing campaign at the knees by prospectively closing communication channels between the Union and employees at stores where organizing is nascent or planned. As the Supreme Court has recognized, "employees' right of self-organization depends in some measure on their ability to learn the advantages of self-organization from others."[38]

Accordingly, what is at stake here is not simply the individual confidentiality interests of employees and union representatives (which are themselves significant), but the viability of the collective enterprise

---

[37] *Chino Valley Medical Center*, 362 NLRB at 283 n.1 (finding employer subpoena seeking, *inter alia*, communications between employees and their union to be unlawful).

[38] *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 532 (1992) (cleaned up).

of self-organization, which Congress has determined should be protected by law.[39]

Furthermore, the Agency complaint alleges that Starbucks' subpoena plan, *in toto*, was unlawfully motivated to retaliate against employees who previously testified or gave statements in the NLRB's earlier administrative proceeding.[40] Accordingly, the enforcement of Starbucks' subpoenas poses a grave threat to the integrity of proceedings within this Court's prospective jurisdiction.[41] A writ of injunction is therefore warranted to secure "the ends of justice" entrusted to this Court by Congress when it enacted the NLRA.[42]

---

[39] "It is hereby declared to be the policy of the United States to . . . encourage[e] the practice and procedure of collective bargaining and [protect] the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." 29 U.S.C. § 151.

[40] *See Winkler*, at 101 F.3d at 1202 (All Writs Act may restrain predatory discovery). Further demonstrating Starbucks' unlawful objective, the Agency's ALJ disallowed numerous requests for similar information in the administrative hearing. [A69 *et seq.*]. Starbucks was aware that its subpoenas implicated NLRA rights; Paragraph 26 of the subpoenas, discussed above, n.36, demonstrates an ineffectual attempt to maintain the pretense that the requests do not coerce employees.

[41] *See Klay*, 376 F.3d at 1100.

[42] *Adams*, 317 U.S. at 273.

## II. The requested writ would be "agreeable to the usage and principles of law."

The requested writ of injunction is appropriate here because the NLRB has no adequate legal alternative to obtain the relief it needs. Moreover, this Court's failure to act would result in significant and irreparable harm to federally protected rights of employees and the NLRB's ability to enforce congressional policy committed to its statutory responsibility.

A.   <u>Petitioner has no adequate legal alternatives to obtain the requisite relief.</u>

The traditional requirements for injunctive relief do not apply to All Writs Act injunctions, because the historical scope of a court's inherent power to protect its jurisdiction is "grounded in entirely separate concerns."[43] Nevertheless, such relief is essentially equitable and generally unavailable where there are adequate remedies at law.[44] Here, no potential legal remedies available to the Board are adequate.

First, the ordinary protections of nonparties in federal discovery rules, which provide overlapping but distinct means of relief, have

---

[43] *Klay,* 376 F.3d at 1100.

[44] *Adams v. United States*, 317 U.S. 269, 273 (1942).

proven ineffective here. Here, despite the district court's earlier finding that Director Leslie's standing was limited to questions of privileges held by the Agency and administrative burdens on the case, [A536] she again sought to quash the subpoenas via a motion for reconsideration under Rule 60 of the Federal Rules of Civil Procedure, or alternatively, for the district court to certify the question for appeal.[45] The district court denied those requests, stating that it had "explicitly and implicitly" balanced all competing concerns, but nonetheless failed to apply the relevant legal standards. SA168. The district court also found that no controlling question of law was raised supporting certification of an appeal. *Id.*[46]

The district court proceedings have been stayed pending adjudication of the Union and employees' petition for mandamus relief by this Court.[47] This course of events threatens the integrity of the

---

[45] Director Leslie urged the court to quash the subpoenas under the federal rules of civil procedure and by applying the standard set forth by the NLRB in *Guess?, Inc.*, 339 NLRB 432 (2003). *See* pp.17-18, above.

[46] SA129 *et seq.* This relief was previously requested by the Union and denied by the district court [A596 *et seq.*; A604 *et seq.*].

[47] "Court holds the contempt/sanctions motion in abeyance, holds the merits briefing schedule in abeyance, and takes all scheduled court dates off the calendar, pending the outcome of [the Union's] mandamus petition." SA170.

Section 10(j) proceeding by undermining its central purpose of preventing the passage of time from rendering the NLRB's usual remedies ineffectual.[48]

Second, it does not appear that an appeal is a viable course for the NLRB to obtain relief.[49] Although Director Leslie argued to the district court that the NLRB possesses standing to assert the public statutory rights of nonparty employees [SA129 *et seq.*], the general rule is that "[a] party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege or a proprietary interest in the subpoenaed matter."[50] And discovery orders directed to nonparties are

---

[48] *See Kaynard v. MMIC, Inc.*, 734 F.2d 950, 954 (2d Cir. 1984) (Congress intended Section 10(j) as a "swift interim remedy to halt unfair labor practices").

[49] *See Consol. Edison Co. of N.Y. v. United States*, No. 99-6239, 2000 U.S. App. LEXIS 9967, at *3 (2d Cir. May 11, 2000) ("As a general matter, interlocutory discovery orders are not appealable under the collateral order doctrine or any other provision for appellate jurisdiction.") (citing *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 163 (2d Cir. 1992)).

[50] *NYC Med. Practice P.C. v. Shokrian,* No. 19 CV 162, 2020 U.S. Dist. LEXIS 154386 (E.D.N.Y. August 25, 2020).

generally not appealable as of right; a challenging party must stand in contempt to obtain the right of appeal.[51]

Third, the NLRB's ordinary administrative processes regarding the pending *Guess?* charge will take a significant amount of time to produce a final Board order that may be enforced in a court of appeals.[52] During this time, absent this Court's intervention, Starbucks will have succeeded in subjecting employees and the Union to coercive judicial process (including contempt sanctions) to extract information which the NLRB General Counsel has alleged is protected by the NLRA. Allowing such a scenario to play out is thus an intolerable interference with employee rights under the NLRA and the statutory power of the NLRB, and potentially this Court, to enforce those rights by issuing a meaningful remedy.

Section 10(j) of the NLRA, which provides district courts with jurisdiction to order interim injunctive relief in unfair labor practice cases, is not viable here. The allegedly violative subpoenas here were

---

[51] "The remedy of the [nonparty] wishing to appeal . . . is to refuse to answer and subject himself to civil or criminal contempt." *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 591 F.2d 174, 177 (2d Cir. 1979).

[52] *See* 29 U.S.C. § 160(e).

themselves issued and enforced in a Section 10(j) proceeding. And the

district court here has denied reconsidering the lawfulness of the

subpoenas under the NLRA. A604 *et seq.*; SA167 *et seq.* Given that the

district court would consider its prior orders preclusive, filing a new

Section 10(j) petition in district court seeking withdrawal of the

subpoenas would be a futile exercise which would entail harmful

additional delay.[53]

Taken together, it is clear that Petitioner possesses no other

adequate legal means by which to obtain the relief sought.

B.   <u>The balance of harms and public interest weigh in favor of
granting the instant Petition.</u>

Although traditional injunction factors do not apply in this

instance, these factors nevertheless support the NLRB's request.[54] As

discussed above, p.31, absent relief from this court, subpoena recipients

will be placed in the untenable position of either providing Starbucks

with information protected under the Act or refusing and being

sanctioned by the district court. Once disclosed, a subsequent order to

---

[53] It is a maxim that litigants are not required to do a "vain and useless" thing. *See Green v. Liter*, 12 U.S. 229, 248 (1814).

[54] *Cf. In re Vuitton Et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979).

destroy information (or to not use it) is cold comfort to the employees and Union, whose identities, worksites, and organizing strategy will have already been revealed.

Beyond this immediate harm to the Union and employees' interests in uncoerced self-organization at the stores involved, such forced disclosures are likely to poison current and future employee support of nationwide organizing efforts. Such an "unseemly and unsettling" course is all the more intolerable in the context of proceedings which seek to protect the statutory right of self-organization.[55]

Additionally, Starbucks faces minimal hardships compared to the those faced by employees and Union representatives discussed above. Starbucks is not entitled to every piece of potentially exculpatory evidence, especially where Section 10(j) relief is limited in time to

---

[55] *ManorCare Health Services-Easton*, 356 NLRB 202, 235 (2010). In that case, the Agency ALJ noted: "I cannot accept the perversity that Board proceedings should become a forum for employer investigation into union activity, using questioning that would be unlawful outside the hearing room, and, perhaps unlawful *in* a hearing room, an issue I need not reach only because my ruling foreclosed the questioning."

prevent the erosion of union support and employee rights in the wake of serious unfair labor practices.[56]

Moreover, the subpoenas' continued enforcement would be contrary to the public interest as it undermines the NLRB's ability to remedy violations of the NLRA and chills the federally protected rights of employees beyond these proceedings.[57]

## III. Even if this Court denies the requested writ, it should nevertheless resolve the key issues presented.

In the event that this Court is not inclined to grant the requested writ of injunction, it should nonetheless resolve the crucial issue presented by this Petition.

First, should the Court find that jurisdiction is lacking under the All Writs Act, and instead properly lies in the district court via a petition for injunctive relief pursuant to Section 10(j) of the NLRA, it should transfer this petition to that court under 28 U.S.C. § 1631. That

---

[56] *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990) ("[e]*ven if relevant*, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information").

[57] *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) ("the government's interest [in enforcing the law] *is* the public interest") (citations omitted).

statute instructs a court to transfer an action "in the interests of justice" to another court "which the action or appeal could have been brought at the time it was filed or noticed." *Id.* Upon transfer, the Agency would amend the instant petition to conform to the applicable pleading requirements.

Or, if the Court were to construe the requested writ of injunction as a request for review of the district court's discovery orders, it could then exercise "advisory mandamus" jurisdiction.[58] This Court would then be enabled to provide guidance on a "novel question of general or exceptional importance to the administration of justice that should not await review by appeal from a final judgment."[59] The discovery issues presented here implicate key federally protected rights and confidentiality interests. Because these questions have recently arisen

---

[58] Separately, the subpoenaed nonparties have invoked this Court's supervisory mandamus jurisdiction. *See* No. 22-3229 (2d. Cir.). The NLRB does not duplicate those arguments, but if the Court does not grant the relief requested in the instant Petition, the questions presented in that mandamus petition warrant further briefing; the NLRB would request to file a response. *See* Fed R. App. P. 21(a).

[59] *See In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 123 (2d Cir. 2010).

in proceedings within and without this Circuit,[60] this Court's resolution of these issues would provide much needed guidance. But even more importantly, failing to address these crucial issues would result in the disclosure of confidential information causing irrevocable damage to the rights of employees to organize under the NLRA and the NLRB's ability to remedy violations.[61]

Discovery orders are generally not appealable as of right.[62] But should this Court find the district court's discovery orders appealable under the "collateral order doctrine,"[63] it should construe this Petition

---

[60] *See Poor ex rel. NLRB v. Starbucks Corp.*, No. 1:22-cv-07255-ARR-JRC (E.D.N.Y.), Doc. 46-1; *Kinzer, et al. v. Whole Foods Market, Inc.*, No. 22-1064 (1st Cir.) *appeal docketed* Jan. 25, 2022.

[61] This Court's cases establish that advisory mandamus "sometimes may be granted to reverse an erroneous discovery ruling where the ruling orders discovery that could not be undone on appeal from a final judgment because the allegedly undiscoverable information will have been disclosed." *Zyprexa Prods.*, 594 F.3d at 123 n.34 (citing *Am. Express Warehousing, Ltd. v. Transamerica Ins. Co.*, 380 F.2d 277, 282 (2d Cir. 1967)); *In re Attorney Gen. of the United States*, 596 F.2d 58, 63 (2d Cir. 1979).

[62] *See* n.49, above.

[63] The requirements for collateral order appeal are: that an order [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment. *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 146 (2d Cir. 2013). While the facts of this case may present a colorable argument for such

(or the subpoenaed parties' petition for writ of mandamus) as an appeal as of right under 28 U.S.C. § 1291 and grant jurisdiction to resolve that appeal.[64]

## CONCLUSION

Starbucks' abusive litigation conduct has already significantly delayed justice in a proceeding designed by Congress to provide swift relief. Worse still, it has enlisted the power of a federal court to try to extract confidential information implicating important federally protected rights. Absent intervention from this Court, these actions are likely to defeat this Court's prospective appellate and enforcement jurisdiction by foreclosing meaningful remedies. Accordingly, the Petition should be granted or the alternative relief requested should be ordered.

---

appellate jurisdiction, this Court may wish to invite separate briefing before resolving this question.

[64] *See In re 2920 ER, LLC*, 607 F. App'x 349, 354 (5th Cir. 2015) (construing mandamus petition as notice of appeal).

Respectfully submitted,

/s David P. Boehm
DAVID P. BOEHM
Trial Attorney
david.boehm@nlrb.gov
(202) 273-4202

RICHARD J. LUSSIER
Assistant General Counsel
richard.lussier@nlrb.gov
(202) 273-3826

DAWN L. GOLDSTEIN
Assistant General Counsel
dawn.goldstein@nlrb.gov
(202) 273-2936

LAURA T. VAZQUEZ
Deputy Assistant General
Counsel
laura.vazquez@nlrb.gov
(202) 273-3832

POLLY MISRA
Supervisory Trial Attorney
polly.misra@nlrb.gov
(202) 273-3744

MATHEUS TEIXEIRA
Trial Attorney
matheus.teixeira@nlrb.gov
(202) 273-2959

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure Rules 21(d)(1) and 32(g)(1), the undersigned counsel certifies that this brief is proportionally spaced, has a typeface of 14 points or larger, and contains 7778 words.

/s David P. Boehm

DAVID P. BOEHM
Trial Attorney
david.boehm@nlrb.gov
(202) 273-4202

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Petition with the Clerk of Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system. I certify that the Petition was served on all parties, or their counsel of record, through the appellate CM/ECF system or by electronic mail.

<div style="margin-left: 50%;">

/s David P. Boehm
DAVID P. BOEHM
Trial Attorney
National Labor Relations Board
1015 Half Street, S.E., 4th Floor
Washington, D.C. 20003
david.boehm@nlrb.gov
(202) 273-4202

</div>

Dated at Washington, D.C.
this 27th day of January 2023