**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **LINDA M. LESLIE, Regional Director of the Third Region of the National Labor Relations BOARD, for and on behalf of the NATIONAL LABOR RELATIONS BOARD** | |
| | **No. 1:22-cv-00478-JLS** |
| Petitioner, | |
| vs. | |
| **STARBUCKS CORPORATION,** | |
| Respondent. | |

<u>**MOTION TO RECONSIDER**</u>

Ian Hayes, Esq.
Hayes Dolce
Attorneys for Workers United
135 Delaware Ave.
Ste. 502
Buffalo, NY 14202
716-608-3427
ihayes@hayesdolce.com

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ................................................................................................. 1

I.    THE DECISION OF JUDGE MUHL PRECLUDES ENFORCEMENT OF THE SUBPOENAS ............................................................................................................................. 2

   A.    Federal Courts defer to the NLRB on interpretation and application of the NLRA ....... 2

   B.    Judge Muhl applied the Act to the subpoenas in this case, and the Court should defer to his Decision. .......................................................................................................................... 4

   C.    The Court can certify a question regarding application of Judge Muhl's Decision ....... 7

II.    THE SUBPOENA REQUESTS ARE NO LONGER NECESSARY IN LIGHT OF JUDGE ROSAS'S DECISION IN THE UNDERLYING CASE AND RECENT DEVELOPMENTS .................................................................................................................... 7

   A.    ALJ Rosas's Decision establishes both the "just and proper" and "reasonable cause" requirements for 10(j) relief, rendering further discovery unnecessary ................................. 7

   B.    Decertification petitions filed in the Buffalo and Rochester areas provide further evidence of irreparable harm to workers' exercise of their rights under the Act. .................. 9

III.    THE SUBPOENAS CANNOT BE ENFORCED BECAUSE THEY SEEK PROTECTED INFORMATION ............................................................................................... 9

   A.    The NLRA protects confidential communications. ....................................................... 9

   B.    The NLRA otherwise protects information about organizing and related conduct. ..... 11

   C.    A federal common law privilege applies to information related to organizing. ........... 12

   D.    The subpoena requests violate NLRB and other federal authority. .............................. 14

     i.    Requests that would reveal employee support or lack of support for the Union. ...... 14

     ii.    Requests that would reveal advice to potential members and strategic information. 15

     iii.    Requests that would reveal protected communications with the NLRB. ................. 16

     iv.    Requests that would reveal confidential communications with the media .............. 17

IV.    THE SUBPOENAS REQUEST INFORMATION THAT IS IRRELEVANT TO A 10(J) PROCEEDING ..................................................................................................................... 18

**CONCLUSION** ................................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Abbey's Transp. Servs., Inc. v. NLRB*,
    837 F.2d 575 (2d Cir. 1988)................................................................................ 8

*Angle v. Sacks*,
    382 F.2d 655 (10th Cir. 1967) ............................................................................. 8

*Bell v. Village of Streamwood*,
    806 F.Supp.2d 1052 (N.D. Ill. 2011) ......................................................... 12, 13

*Berbiglia, Inc.*,
    233 NLRB 1476 (1977) ...................................................................................... 12

*Best Century Buffet, Inc.*,
    358 NLRB 143 (2012) ........................................................................................ 11

*Bevona v. Field Bridge Assocs.*,
    No. 90 Civ. 5191 (RJW), 1991 BL 202, (S.D.N.Y. Dec. 5, 1991) ........................ 3

*Champ Corp.*,
    291 N.L.R.B. 803 (1988) .................................................................................... 12

*Cheney v. United States Dist. Court for D. C.*,
    542 U.S. 367 (2004)............................................................................................. 7

*Chinese Daily News*,
    353 NLRB 613 (2008) ........................................................................................ 10

*Chino Valley Medical Center*,
    362 NLRB 283 (2015) .................................................................................. 10, 21

*City of Newburgh v. Newman*,
    421 N.Y.S.2d 673 (App. Div. 3d Dep't 1979) ..................................................... 13

*Comm. on Masonic Homes of R. W. Grand Lodge, F. & A. M. of Pa. v. NLRB*,
    556 F.2d 214 (3d Cir. 1977)............................................................................... 15

*Constellation Brands, U.S. Operations, Inc. v. NLRB*,
    842 F.3d 784 (2d Cir. 2016)............................................................................... 10

*DOJ v. Fed. Labor Relations Auth.*,
    39 F.3d 361 (D.C. Cir. 1994).............................................................................. 13

*Dunbar ex rel. NLRB v. Landis Plastics*, Inc,
    996 F. Supp. 174 (N.D.N.Y. 1998)................................................................ 19, 20

*Dunbar v. Carrier Corp.*,
    66 F. Supp. 2d 346 (N.D.N.Y. 1999)................................................................... 8

*Dunbar v. Landis Plastics, Inc.*,
    977 F. Supp. 169 (N.D.N.Y. 1997)..................................................................... 19

*Eastex, Inc. v. NLRB*,
    437 U.S. 556 (1978)........................................................................................... 17

*Elec. Contractors, Inc. v. NLRB*,
   245 F.3d 109 (2d Cir. 2001) ............................................................. 10

*Fernbach v. Sprain Brook Manor Rehab., LLC*,
   91 F. Supp. 3d 531 (S.D.N.Y. 2015) ................................................. 8

*Guess?, Inc.*,
   339 N.L.R.B. 432 (2003) ................................................................. 10

*Hernandez v. Office of the Commission of Baseball*,
   331 FRD 474 (S.D.N.Y. 2019) ......................................................... 14

*Hoffman ex rel. NLRB v. Inn Credible Caterers, Ltd.*,
   247 F.3d 360 (2d Cir. 2001) ............................................................. 20

*In re Petroleum Products Antitrust Litigation*,
   680 F.2d 5 (2d Cir. 1982) ........................................................ 13, 17

*In re Reyes*,
   814 F.2d 168 (5th Cir. 1987) ........................................................... 14

*Int'l Org. of Masters, Mates & Pilots v. Trinidad Corp.*,
   803 F.2d 69 (2d Cir. 1986) ............................................................... 3

*International Union v. Garner*,
   102 F.R.D. 108 (M.D.Tenn. 1984) ............................................. 12, 13

*Kaiser Steel Corp. v. Mullins*,
   455 U.S. 72 (1982) ............................................................................ 2

*Kaynard v. Bagel Bakers Council of Greater New York*,
   No. 67-C-776, 1968 BL 212 (E.D.N.Y. Feb. 20, 1968) ...................... 18

*Kaynard v. Palby Lingerie, Inc.*,
   625 F.2d 1047 (2d Cir. 1980) ............................................................ 8

*Kreisberg ex rel. NLRB v. HealthBridge Mgmt., LLC*,
   732 F.3d 131 (2d Cir. 2013) ............................................................ 18

*Laguna College of Art and Design*,
   362 NLRB 965 (June 15, 2015) ........................................................ 12

*Longshore and Warehouse v. ICTSI Or., Inc.*,
   932 F. Supp. 2d 1181 (D. Or. 2013) ................................................... 4

*Mattina v. Kingsbridge Heights Rehab. & Care Ctr.*,
   2008 WL 3833949 (S.D.N.Y. 2008), *aff'd*, 329 F. App'x 319, 323 (2d Cir. 2009) ................ 8

*N. Cal. Dist. Council of Hod Carriers, Bldg. & Constr. Laborers v. Opinski*,
   673 F.2d 1074 (9th Cir. 1982) ........................................................... 3

*NAACP v. State of Ala. ex. rel. Patterson*,
   357 U.S. 449 (1958) .................................................................. 13, 14

*National Telephone Directory Corp.*,
   319 NLRB 420 (1995) ..................................................................... 10

*Newport News Shipbuilding and Drydock Co. v. Peninsula Shipbuilders Ass'n,*
    646 F.2d 117 (4th Cir.1981) ................................................................... 3

*NLRB v. Carpenters Local 608,*
    811 F.2d 149 (2d Cir. 1987) ................................................................. 14

*NLRB v. Electrical Workers Local 1229 (Jefferson Standard),*
    346 U.S. 464 (1953) ............................................................................. 17

*NLRB v. Maxwell,*
    637 F.2d 698 (9th Cir. 1981) ............................................................... 17

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) ............................................................................. 12

*NLRB v. Scrivener,*
    405 U.S. 117 (1972) ............................................................................. 11

*Pac. Molasses Co. v. NLRB Reg'l Office # 15,*
    577 F.2d 1172 (5th Cir. 1978) ............................................................. 15

*Pain Relief Centers, P.A.,*
    371 NLRB No. 143 (2022) ............................................................ 11, 16

*Paulsen ex rel. NLRB v. Remington Lodging & Hosp., LLC,*
    773 F.3d 462 (2d Cir. 2014) ............................................................... 20

*Peterson v. State,*
    280 P.3d 559 (Alaska 2012) ................................................................ 13

*San Diego Building Trades Council v. Garmon,*
    359 U.S. 236 (1959) ............................................................................... 2

*Seeler v. The Trading Port, Inc.,*
    517 F.2d 33 (2d Cir. 1975) ................................................................. 18

*Sheet Metal Workers Local 206 v. W. Coast Sheet Metal Co.,*
    660 F.Supp 1500 (S.D. Cal. 1987) ........................................................ 3

*Sheet Metal Workers Local 36 v. Murphy Constr. Co.,*
    191 F.3d 909 (8th Cir. 1999) ................................................................. 3

*Silverman v. Imperia Foods, Inc.,*
    646 F.Supp. 393 (S.D.N.Y. 1986) ...................................................... 18

*Tower Industries,*
    349 NLRB 1077 (2007) ...................................................................... 10

*United Nurses Associations of California v. NLRB,*
    871 F.3d 767 (9th Cir. 2017) ......................................................... 10, 15

*United States v. Dist. Council of N.Y.C. & Vicinity of Carpenters,*
    No. 90 Civ. 5722 (RMB), 2013 BL 417041 (S.D.N.Y. June 5, 2013) ......... 16

*Veritas Health Servs., Inc. v. NLRB,*
    671 F.3d 1267 (D.C. Cir. 2012) ............................................................ 9

*Wright Electric, Inc.,*
   327 NLRB 1194 (1999) ......................................................................................... 10

**Statutes**

29 U.S.C. § 157.................................................................................................... 9, 11

**Other Authorities**

Turner, J. M., & Koppin, J. M. (2012). "Discovery in NLRA Section 10(j) Proceedings." ABA
   Journal of Labor & Employment Law, Vol. 27, No. 3 (Spring 2012)..................................... 18

**PRELIMINARY STATEMENT**

Movant and Amicus Curiae Workers United ("Union") hereby moves the Court to reconsider the Order dated September 23, 2022 ("the discovery order") ordering that Workers United and twenty-one individuals comply with document requests in subpoenas duces tecum ("the subpoenas") issued by Respondent Starbucks Corporation ("Starbucks"). Starbucks broke federal labor law by issuing the subpoenas and a federal Administrative Law Judge ("ALJ") has therefore ordered Starbucks to withdraw the subpoena requests and its motion for sanctions or contempt related to them. To date, Starbucks has refused to do so.

In the time since the Court ruled on the appropriateness of the subpoenas, the ALJ in the underlying matter has already decided the case, concluding that Starbucks demonstrated "extreme animus" towards workers exercising their rights under the National Labor Relations Act ("NLRA or "Act"), and committed "egregious and widespread misconduct demonstrating a general disregard for employees' fundamental rights" under the Act. ALJ Michael Rosas therefore issued broad remedies to Starbucks' violations of the law, including a bargaining order. Also since this Court ruled on the subpoenas, additional evidence of the type of worker disaffection that an employer's violations of the NLRA cause has emerged: in recent weeks, two decertification petitions have been filed with the NLRB. All of this, in addition to the record of "just and proper" evidence already built before ALJ over the course of weeks, provides more than ample evidence for the Court to exercise its limited role in deciding the merits of the 10(j) petition; further discovery is not warranted.

Starbucks violated federal law simply by issuing the subpoenas. Given the deference federal courts show towards the NLRB in deciding application of the NLRA, and given the explicit conclusions of ALJ Muhl, this Court cannot implicate itself in Starbucks' lawbreaking. Even if an

ALJ had not concluded these very subpoenas violated the NLRA, compliance with the discovery order would require the Union to reveal sweeping categories of information that are "protected," within the meaning of Federal Rules of Civil Procedure Rule 45, by the NLRA, by confidentiality and privilege between a labor union and employees that are represented by the union or seek to be, and by the rules and policies of the NLRB.  Therefore, the Union respectfully requests that the Court reconsider its decision in the discovery order, and instead grant the motions to quash filed by the Union and Petitioner NLRB with respect to every request in all twenty-two subpoenas, or otherwise allow the Decision by Judge Muhl to be enforced, in addition to any other remedy the Court deems appropriate.

## I.   THE DECISION OF JUDGE MUHL PRECLUDES ENFORCEMENT OF THE SUBPOENAS

### A.   Federal Courts defer to the NLRB on interpretation and application of the NLRA

Federal courts defer to the NLRB as the paramount source of interpretation of the Act. This deference takes place in several different contexts and is appropriate here.  Generally, federal courts "must defer to the exclusive competence of the National Labor Relations Board." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959).  As such, a federal court cannot enforce a party's potential legal right if doing so would compel violation of the NLRA.  *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) (a court cannot enforce provision of parties' labor contact if it is illegal under labor or antitrust law).

Congress has designated the NLRB as the agency to decide whether conduct violates the Act in the first instance. While federal courts have concurrent jurisdiction with the Board to decide certain labor disputes, courts should defer to the Board's processes where its decision on a ULP would affect the results of litigation.  *See N. Cal. Dist. Council of Hod Carriers, Bldg. & Constr.*

*Laborers v. Opinski*, 673 F.2d 1074 (9th Cir. 1982) ("Appropriate deference to the jurisdiction and expertise of the agency often will require a stay of judicial proceedings.") (Kennedy, J.); *Bevona v. Field Bridge Assocs.*, No. 90 Civ. 5191 (RJW), 1991 BL 202, at *7 (S.D.N.Y. Dec. 5, 1991) (noting deference to the "special expertise" of Board).

 For example, in *Int'l Org. of Masters, Mates & Pilots v. Trinidad Corp.,* the Second Circuit found it reversible error where a district court failed to stay consideration of a case pending the Board's decision on a related ULP complaint.  803 F.2d 69 (2d Cir. 1986).  The court concluded "the NLRB, having issued an unfair labor practice complaint and scheduled a hearing, is in the best position to determine whether a violation of the NLRA has occurred, we reverse the district court's order and remand the matter for further consideration pending resolution of the NLRB proceedings." *Id*. at 73.  Moreover, the court noted that the district court's consideration of the case prior to the Board reaching a decision risked "conflicting determinations by this court and the NLRB on the lawfulness of" the employer's actions.  *Id.* at 74; *see also Sheet Metal Workers Local 36 v. Murphy Constr. Co.,* 191 F.3d 909 (8th Cir. 1999) (ordering district court to stay proceeding because "the NLRB's pending decision will address the same issue").

 The real danger conflicting results leads federal courts to act with caution when confronted with an issue within the Board's expertise, especially, as here, when the NLRB has a ULP charge at issue.  Given the "real possibility of inconsistent adjudications," they have decided not to interfere in areas where the Board has "exclusive jurisdiction or at least a concurrent jurisdiction entitled by its primacy to deference…"  *Newport News Shipbuilding and Drydock Co. v. Peninsula Shipbuilders Ass'n,* 646 F.2d 117, 120-21 (4th Cir.1981); *see also Sheet Metal Workers Local 206 v. W. Coast Sheet Metal Co.*, 660 F.Supp. 1500, 1509 (S.D. Cal. 1987) ("The potential conflict between the NLRB proceedings and this case is quite real.").  For the same reasons, federal courts

defer to the NLRB even when considering a related claim under a statute other than the NLRA. *E.g.*, *Longshore and Warehouse v. ICTSI Or., Inc.*, 932 F. Supp. 2d 1181 (D. Or. 2013) (deferring to the NLRB's adjudication of a ULP charge when considering a related claim under the Labor Management Relations Act, in part because "the NLRB has primary responsibility for resolving issues arising under the NLRA.").

>   **B.**     **Judge Muhl applied the Act to the subpoenas in this case, and the Court should defer to his Decision.**

The situation facing the court strongly urges for deference to the NLRB's role as an expert interpreter of the Act.  As of now, the agency has fully investigated the ULP charge over the subpoenas, concluded they violate the law, moved the case to prosecution, developed a record before ALJ Charles J. Muhl, and received a final Decision from ALJ Muhl that the subpoenas do violate the Act.

Judge Muhl found that, with the exception of two subcategories, all the subpoenas' requests violated the Act because they sought protected information.  The judge found the *Guess?* Standard developed in NLRB case law applied, even given the instant litigation.  ALJ Muhl rejected Starbucks' argument that the pendency of the 10(j) case meant he could not rule on the subpoenas. Muhl Decision 7.  The judge also rejected Starbucks' arguments that the *Guess?* Standard violates U.S. Supreme Court case law on discovery issues, or that it violated free speech rights.  *Id*.  The ALJ's Decision to apply NLRB authority while a related 10(j) matter is open is symmetrical with the case law discussed *supra*, since he exercised the agency's role as the primary interpreter of the Act, even when other decision makers are considering identical issues.

Applying the *Guess?* Framework, the ALJ found the subpoenas violated workers' rights. *See* Muhl Decision 9-18.

The requests for information about union and organizing activity[1] violated the Act because "employees' strong interest in keeping their union activities confidential outweighs the Respondent's need for the information."  Muhl Decision 14.  In addition, the ALJ found the requests were overly broad, and that they were, in part, not relevant to the 10(j) proceeding.  *Id*.

The requests for information about publicizing union activities and Starbucks' violations of the Act[2] were violations because they were not relevant in the 10(j) context.  Muhl Decision 14-15.

The requests for information about other employment of current and former Starbucks workers[3] were violations of the Act because they were also not relevant to a 10(j) proceeding.  Muhl Decision 15-16.

The request for information provided to the NLRB[4] was also a violation under *Guess?*.  Muhl Decision 17-18.  The judge found Starbucks had an illegal objective in making the request, since compliance with the request would violate the Board's Rules and Regulations.  *Id*.; *see* NLRB Rules and Regulations § 102.118.

In coming to these conclusions, Judge Muhl also found that, for many of requests, "[t]he geographic and temporal scope of these requests is overly broad and irrelevant to the 10(j) proceeding. The relevant geographic scope is the Buffalo stores. The relevant time period is from the date an election petition was filed to the date of an election, unless no petition has been filed."  Muhl Decision 18, n. 18.  This provided another, independent ground for finding many of the requests violated *Guess?*.  *Id*.

---

[1] Subpoena paras. 1(b), 1(d), 1(f), 9, 12, 13, 15, 16, 17.
[2] Subpoena paras. 2, 3, 4, 5, 6, 14.
[3] Subpoena paras. 7, 8, 10, 11, 18, 19, 20, 21.
[4] Subpoena paras 1(g); and 1(a), 1(b), 1(c), 1(d), 1(e), 1(f).

The same is true of Judge Muhl's Decision as in the federal case law cited *supra*. An NLRB ALJ has already found the subpoenas violate the Act, and the case will be decided by the Board on appeal.  The NLRB is the agency charged with determining whether the requests violate the Act.  If it finds as such here, it would be improper for the district court to continue to order their production—since doing so would interfere with the Board's exclusive jurisdiction to determine whether conduct violates the Act.

Moreover, in addition to the subpoena ULP action brought by the NLRB regarding the subpoenas that are the subject of the instant petition, the NLRB has filed multiple Complaints against Starbucks for issuing similarly overbroad subpoenas regarding the same organizing campaign, in violation of the Act. Those cases remain pending. *See*, *e.g.*, NLRB Case No. 19-CA-290162 (Phoenix regional office, complaint issued August 23, 2022).

It is also notable that the ALJ in the underlying discharge ULP proceeding already concluded that similar subpoenas issued by Starbucks could not be enforced because doing so would violate the Act.  This provides another basis to defer to the Board—given that an ALJ, experienced in interpreting the Act, has already concluded that Starbucks is not entitled to such information.

Further, moving forward with production at this time could produce inconsistent results with the Board's decision.  If Petitioners produce the documents now, they will forever give up their right to keep the documents confidential.  Thus, if the Board later determines that Starbucks violated the Act by seeking the documents, that decision and any remedy will become illusory as the documents would have already been produced.

    **C.**    **The Court can certify a question regarding application of Judge Muhl's Decision**

In the alternative, the Court has the authority to certify the question of whether the subpoenas should be enforced by the district court, in light of ALJ Muhl's Decision (or in light of ALJ Rosas's Decision, or both). Such a question could be decided on interlocutory appeal by the Court of Appeals for the Second Circuit under 28 U.S.C. § 1292(b). *See Cheney v. United States Dist. Court for D. C.*, 542 U.S. 367, 390 (2004).

**II.**    **THE SUBPOENA REQUESTS ARE NO LONGER NECESSARY IN LIGHT OF JUDGE ROSAS'S DECISION IN THE UNDERLYING CASE AND RECENT DEVELOPMENTS**

    **A.**    **ALJ Rosas's Decision establishes both the "just and proper" and "reasonable cause" requirements for 10(j) relief, rendering further discovery unnecessary.**

When the Second Circuit dismissed the Union's and NLRB's petitions for relief on the subpoenas on procedural grounds (not the merits), it noted that it would be appropriate for the parties to move to reconsider in light of ALJ Rosas's Decision. Under Second Circuit and related authority, that Decision does fundamentally change the context of this 10(j) matter, because Starbucks has been found to have violated the Act in ways that fully satisfy the NLRB GC's burden in seeking injunctive relief.

On March 1, 2023, ALJ Rosas issued his Decision in the underling ULP case. The ALJ found Starbucks engaged in widespread violations of the Act, finding Starbucks liable for virtually every violation alleged in the petition, constituting hundreds of instances of lawbreaking. Decision of ALJ Michael J. Rosas, JD-17-23 189 et seq. (Mar. 1, 2023) ("Rosas Decision"). Since the evidentiary standard for an ALJ to reach such conclusions of law on the merits is higher than the

"reasonable cause" standard in a 10(j) case, there can therefore be no question that prong of the GC's case before this Court is met.

Judge Rosas's conclusions of law also definitively establish that relief under 10(j) is "just and proper," because certain kinds of violations of the Act by their very nature prove that an employer has done irreparable harm to employees' rights. *See*, *e.g.*, *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1053 (2d Cir. 1980); *Abbey's Transp. Servs., Inc. v. NLRB*, 837 F.2d 575, 576 (2d Cir. 1988). Federal courts, including within the Second Circuit, have held that where such violations have occurred, there is no further need for discovery. *See Mattina v. Kingsbridge Heights Rehab. & Care Ctr.*, 2008 WL 3833949 at *1 (S.D.N.Y. 2008), *aff'd*, 329 F. App'x 319, 323 (2d Cir. 2009); *Fernbach v. Sprain Brook Manor Rehab., LLC*, 91 F. Supp. 3d 531, 537 n.1 (S.D.N.Y. 2015); *Dunbar v. Carrier Corp.*, 66 F. Supp. 2d 346, 351-52, 354 n.4 (N.D.N.Y. 1999).

Relief under Section 10(j) is appropriate, for example, based on a finding that an employer violated the Act by terminating workers. *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1053 (2d Cir. 1980); *Abbey's Transp. Servs., Inc. v. NLRB*, 837 F.2d 575, 576 (2d Cir. 1988). *See also Angle v. Sacks*, 382 F.2d 655, 660 (10th Cir. 1967). Even threats of store closures are so grave that they are the type of violations that justify 10(j) relief without further development of a record. *Kaynard, supra*.

Judge Rosas found such violations and many more, including seven terminations of union supporters, and both temporary and permanent store closures (not mere threats). *See* Rosas Decision at 189 et seq. (conclusions of law). Now that the ALJ has come to these conclusions on the merits, further discovery would serve no purpose.

In addition, the parties have already spent days developing a record strictly on the "just and proper" question before ALJ Rosas, pursuant to the Court's original discovery order. This further reiterates that no further discovery is necessary in order for the Court to rule on the 10(j) petition.

**B.     Decertification petitions filed in the Buffalo and Rochester areas provide further evidence of irreparable harm to workers' exercise of their rights under the Act.**

In addition, Starbucks' actions have caused two petitions to decertify the Union as the bargaining representative of workers to be filed in the Buffalo and Rochester areas in recent weeks. *See* NLRB Cases 03-RD-316974, 03-RD-317482.  The Regional Director of the NLRB's Region 3 office found that both petitions should be dismissed in light of the numerous and sprawling instances of Starbucks being prosecuted for violations of the Act across the U.S.  However, the petitions themselves are relevant to determine the appropriate relief under 10(j).  The types of violations which are alleged in the petition, and which ALJ Rosas concluded were proven, are the types of violations that tend to cause employee disaffection with the Union.  The filing of decertification petitions demonstrates employee disaffection with the Union.

When viewed in the context of Starbucks' many proven violations of the law in Buffalo and Rochester, the petitions stand as further confirmation those violations continue to have reverberations to this day.  This confirms that the types of violations that justify 10(j) relief without further discovery have already been proven, highlighting the need for such relief.

**III.    THE SUBPOENAS CANNOT BE ENFORCED BECAUSE THEY SEEK PROTECTED INFORMATION**

The subpoenas seek information that is protected under the NLRA and related authority, and the Union cannot be compelled to produce it.

**A.     The NLRA protects confidential communications.**

Employees have a right under the NLRA to act concertedly in the workplace and to seek representation by a labor organization for the purposes of collective bargaining.  29 U.S.C. § 157. An important aspect of exercising that right is the ability to speak confidentially with fellow employees and labor organizations about collective action.  *See Veritas Health Servs., Inc. v.*

9

*NLRB,* 671 F.3d 1267, 1274 (D.C. Cir. 2012) ("'It is well settled that Section 7 of the Act gives employees the right to keep confidential their union activities, including their attendance at union meetings.'") (quoting *Guess?, Inc.,* 339 N.L.R.B. 432, 434 (2003)); *National Telephone Directory Corp*., 319 NLRB 420, 420-21 (1995) (discussing right to keep their union activity confidential).

  For this reason, the NLRB and courts have consistently held that an employer may violate the NLRA when it seeks information about employees' concerted activity. *Chino Valley Medical Center,* 362 NLRB 283, 283 n. 1 (2015) *enfd.* 871 F.3d 767 (9th Cir. 2017); *Guess?, Inc.*, 339 NLRB 432 (2003).[5]   This is true even where an employer seeks such information in the context of discovery in a pending lawsuit. *See, e.g, Wright Electric, Inc.,* 327 NLRB 1194, 1195 (1999) (employer violated Act by subpoenaing employee union cards in a state court lawsuit), *enfd*. 200 F.3d. 1162, 1167 (8th Cir. 2000).

  For example, in *Chino Valley Medical Center,* the NLRB found the employer violated the Act by subpoenaing union membership information and communications between employees and the union.  362 NLRB 283, 283 n. 1 (2015). The Board reasoned that the breadth of the subpoenas "would subject employees' Sec. 7 activities to unwarranted investigation and interrogation" in violation of the Act. *Id.*  The Ninth Circuit agreed, enforcing the Board's decision. *United Nurses Associations of California v. NLRB*, 871 F.3d 767 (9th Cir. 2017).  The court noted that it is "well-established law that union activity is protected from employers' prying eyes" and that there is a "harmful effect that an employer's demand for information has on *all* workers, any one of whom might be dissuaded from union activity if they think an employer may learn of it."  *Id.* at 785-86;

---

[5] The Second Circuit often looks to Board precedent in interpreting the NLRA, given the Board's role in enforcing the Act and the deference this Court affords the Board's interpretations of the Act. *See Elec. Contractors, Inc. v. NLRB*, 245 F.3d 109, 116 (2d Cir. 2001); *Constellation Brands, U.S. Operations, Inc. v. NLRB*, 842 F.3d 784 (2d Cir. 2016).

*see also Chinese Daily News*, 353 NLRB 613, 614 (2008) (seeking employees' votes in union election unlawful); *Tower Industries*, 349 NLRB 1077, 1083 (2007) (discovery about discussions at union meetings unlawful); *Best Century Buffet, Inc*., 358 NLRB 143, 157 (2012) (discovery about employees' union membership and activity unlawful).

An employee's participation in NLRB processes is also protected.  *See* 29 U.S.C. 158(a)(4). An employer may violate the Act by seeking confidential information shared by an employee with the NLRB, given the chilling effect that such employer action has on employees' exercising their right to relief from the Board and the detrimental impact it would have on the NLRB's ability to investigate pending cases.  *See Pain Relief Centers, P.A.*, 371 NLRB No. 143, slip op. at *2 (2022) (violation where employer subpoenaed information that would reveal "the specifics of [employee] participation in a Board proceeding—a core right under the Act"); *Cf. NLRB v. Scrivener*, 405 U.S. 117, 122 (1972) (discussing need to protect NLRB's ability to effectively conduct investigations without employer interference).

**B.    The NLRA otherwise protects information about organizing and related conduct.**

In the underlying ULP charges against Starbucks, the NLRB GC alleged that Starbucks engaged in numerous instances of surveilling and interrogating workers about activity protected under the NLRA.  *See* Petition for Injunction; NLRB Case No. 03-CA-285671 et al.  The NLRB has routinely found that discovery requests by an employer violate the NLRA when they seek protected concerted activity under the law, meaning the requests themselves are violations of the law.  *See Pain Relief Centers, P.A.*, 371 NLRB No. 143 (2022).  Furthermore, the Union has alleged similar surveillance and interrogation by Starbucks across the U.S., and NLRB Regional Offices have found merit to these allegations, leading the agency to prosecute Starbucks for those and other violations of the NLRA in over thirty Complaints across the U.S.  NLRB ALJs have

already started to find merit to the allegations that Starbucks has engaged in violations of the NLRA by, for example, terminating pro-union workers. *See, e.g.*, ALJ Decision dated October 7, 2022, NLRB Case No. 07–CA–292971 et al.

Here, Starbucks seeks extensive and overly broad information concerning virtually every "communication" where a Starbucks worker has contacted the Union, or the Union has contacted a worker, regarding any organizing issue since the campaign began. In other words, Starbucks attempts to extend its illegal campaign of surveillance and interrogation of Union activity by means of the discovery process itself. The discovery order allows them to execute this plan.

Since the information the discovery order requires the Union to produce is about activity that is protected under the Act, longstanding NLRB urges against enforcing the subpoenas. *See Berbiglia, Inc.*, 233 NLRB 1476, 1495 (1977); *Champ Corp.*, 291 N.L.R.B. 803, 817-818 (1988); *Laguna College of Art and Desig*n, 362 NLRB 965 n.1 (June 15, 2015).

The discovery order also requires production of information protected by NLRB authority and underlying policy interests, since it requires communications among the Union, the NLRB, and workers seeking the protection of both the Union and the NLRB. This information is plainly protected under the law. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978).

**C.     A federal common law privilege applies to information related to organizing.**

Separate and apart from protections offered by the NLRA, courts have also recognized a common law evidentiary privilege protecting against the disclosure of communications related to union activity. *See Bell v. Village of Streamwood*, 806 F.Supp.2d 1052, 1056-57 (N.D. Ill. 2011) (recognizing privilege against disclosing communications between union and members).

For example, in *International Union v. Garner*, the court denied a motion to compel documents that would reveal employee union support. 102 F.R.D. 108, 113 (M.D. Tenn. 1984).

The court found that employees had a right to confidentiality in expressing their support for the union and found it "doubtful that union certification election procedures would be effective if employees who signed authorization cards would be revealed in the course of litigation." *Id.* Further, the court found that a privilege against disclosure was appropriate given other similar associational privileges recognized under federal law, such as the right to withhold certain membership lists and the qualified news reporters' privilege to withhold information regarding confidential sources. *Id.* at 114-15 (citing *NAACP v. State of Ala. ex. rel. Patterson*, 357 U.S. 449, 460 (1958); *In re Petroleum Products Antitrust Litigation*, 680 F.2d 5, 7 (2d Cir. 1982)).

Similarly, in *Bell v. Village of Streamwood*, the court recognized a privilege to union communications related to disciplinary proceedings. 806 F.Supp.2d at 1056-57 (N.D.Ill. 2011). The court found a privilege necessary because "[w]ithout confidentiality, union members would be hesitant to be fully forthcoming with their representatives, detrimentally impacting a union representative's ability to advise and represent union members with questions or problems." *Id.* at 1057. The court also noted that "[a]s with the attorney-client privilege" a union communication privilege encourages an employee to "communicate fully and frankly with his union representative . . ." *Id.* The *Bell* court limited its holding to union disciplinary proceedings because that was the issue before it. 806 F.Supp.2d at 1056. However, its reasoning is equally applicable to other union communications, such as confidential discussions about a worker's interest in the union, since revealing such information to the worker's employer would discourage candid conversations about representation.[6]

---

[6] State courts also recognize such a privilege. *See, e.g., Peterson v. State,* 280 P.3d 559, 565 (Alaska 2012); *City of Newburgh v. Newman*, 421 N.Y.S.2d 673, 676 (App. Div. 3d Dep't 1979). Such a privilege was also recognized for federal employees under the Federal Service Labor-Management Relations Statute. *See DOJ v. Fed. Labor Relations Auth.*, 39 F.3d 361, 369 (D.C. Cir. 1994).

Historically, courts have protected this and similar information from disclosure when, as here, compliance would reveal information about activity protected under the law, thereby chilling further exercise of that activity.  *See NAACP*, *supra* (state could not compel production of NAACP membership lists); *In re Reyes*, 814 F.2d 168 (5th Cir. 1987) (regarding discovery requests implicating immigration status); *see also NLRB v. Carpenters Local 608*, 811 F.2d 149, 154 (2d Cir. 1987) (discussing protections under the Labor Management Reporting and Disclosure Act to keep membership information confidential).

Contrary to Starbucks' claims in this case, the Second Circuit has not considered whether to apply a common law privilege to a request for disclosure of union organizing communications. *See Hernandez v. Office of the Commission of Baseball*, 331 FRD 474, 477 (S.D.N.Y. 2019) (noting that Second Circuit has not considered issue).  For the reasons above, such authority applies squarely to the document requests Starbucks make, urging against enforcement of the subpoenas.

**D.      The subpoena requests violate NLRB and other federal authority.**

The subpoena requests impermissibly attempt to pry into protected activity, contrary to well-settled precedent under the NLRA making such conduct unlawful.  The Court should not enforce them.

**i.      Requests that would reveal employee support or lack of support for the Union.**

The majority of requests enforced by the Court in the discovery order seek documents that would detail employees' support or lack of support for the Union (Requests 1a, 1b, 1c, 1d, 1f, 11, 14, 15).  This includes requiring the Union to turn over statements by employees regarding their support for the Union at any store nationwide, and emails related to a Union email account "from any Starbucks employee that reflects interest in starting a union campaign at any Starbucks store, attending union meetings, participating in a union bargaining committee, or serving as a Union

14

representative, support for the Union and/or fear of retaliation for engaging in union activities."
*See* Requests 1f, 14.

This is perhaps the most sensitive and confidential information about organizing that could
be in a union's possession, as it would reveal support for the Union among hundreds of Starbucks
workers who may prefer to remain unidentified.  Longstanding precedent holds that employees
have a right to keep such support confidential, and that an employer violates the Act by seeking
such information.  *United Nurses Associations of California*, 871 F.3d at 875-76.

Revealing such information is also likely to further chill future union activity by signaling
to employees that their private communications expressing support of the union will one day be
shared with Starbucks.  *See Pac. Molasses Co. v. NLRB Reg'l Office # 15*, 577 F.2d 1172, 1182
(5th Cir. 1978) ("[I]t is impossible to minimize the seriousness of the threatened invasion" of an
employer obtaining union support information and concluding "[t]he inevitable result" "would be
to chill the right of employees to express their favorable union sentiments" contrary to the rights
guaranteed by the NLRA); *Comm. on Masonic Homes of R. W. Grand Lodge, F. & A. M. of Pa. v.
NLRB*, 556 F.2d 214 , 221 (3d Cir. 1977) ("[I]t is entirely plausible that employees would be
'chilled' when asked to sign a union card if they knew the employer could see who signed.").

### ii.     Requests that would reveal advice to potential members and strategic information.

Several other requests would require disclosing Union advice to workers who contacted
the Union, including about their rights under federal law and ongoing organizing at stores across
the country. (Requests 1b, 1c, 1d, 1f, 3, 4a, 4c, 11, 13, 14).  The same requests would require
revealing internal Union communications regarding strategy about organizing efforts, pending
elections, and ongoing ULP proceedings.

Producing such information would directly interfere with employees' right to organize and to communicate confidentially with union representatives. Employees often rely on communications with unions to understand their rights to act concertedly in the workplace. In seeking such advice, workers have an expectation that their identity and information shared in those communications will remain confidential. *See United States v. Dist. Council of N.Y.C. & Vicinity of Carpenters,* No. 90 Civ. 5722 (RMB), 2013 BL 417041, at *18 (S.D.N.Y. June 5, 2013) ("[S]ociety has a right to expect that personal information divulged in confidence, especially to an organization such as a union whose existence is for the benefit of the union members, will be guarded with the utmost care.") (internal quotation omitted). Employees will be significantly less likely to seek such advice if there is a risk it will be produced to their employer. Relatedly, the information in such communications would interfere with pending ULP proceedings by revealing to Starbucks information not otherwise discoverable in those proceedings.

Further, employees' right to engage in concerted activity under the Act includes the right to communicate with fellow employees and labor organizations about unionization confidentially, shielded from the employer who may seek to use such information to undermine organizing efforts. This right would be severely undermined by compliance with the subpoenas, which would require production of employee-Union communications, and internal Union communications about organizing efforts and pending elections.

      **iii.    Requests that would reveal protected communications with the NLRB.**

Other requests seek Union and employee communications with the NLRB (Requests 1b, 1c, 1d, 1f). Such communications are also protected under the NLRA, and an employer may violate the NLRA by seeking protected information regarding an employee's participation in the NLRB's process. *Pain Relief Centers, P.A.*, 371 NLRB No. 143, slip op. at *2 (2022).

Revealing such information would also cause a severe chilling effect on workers cooperation with the NLRB.  *NLRB v. Maxwell*, 637 F.2d 698 , 702 (9th Cir. 1981) ("If an employee knows that his statements may become available to his employer, he is certainly less likely to make a candid statement to the Board.").  This is particularly true here, where the NLRB has already found that Starbucks has retaliated against workers for participating in the NLRB process.  Further, the NLRB continues to investigate unfair labor practice charges across the country related to Starbucks, requiring the cooperation of workers to effectively complete its investigation.

        **iv.**       **Requests that would reveal confidential communications with the media.**

Several requests seek Union and employee communications with media sources about the Union campaign (Requests 1b, 1c, 1d, 1f, 5a, 5c).  Union organizing campaigns often rely on media sources to communicate messages about worker's rights, and to spread information employer's labor abuses.  For this reason, the Supreme Court and the NLRB have long recognized a right for employees to publicize information about organizing and alleged violations of the Act.  *NLRB v. Electrical Workers Local 1229 (Jefferson Standard)*, 346 U.S. 464 (1953); *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565 (1978).  Here, revealing confidential communications that the Union and employees had with press sources will interfere with that protected right, in addition to revealing union supporter information and union strategies.[7]

---

[7] Enforcement of the subpoenas would also subvert well-established first amendment protections regarding a free press.  Media sources often rely on a source's anonymity to obtain information that is then publicly reported.  This Court has recognized an interest in protecting such anonymity, and denied parties' attempts to obtain such information.  *See In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 680 F.2d 5, 7 (2d Cir. 1982).

IV.   **THE SUBPOENAS REQUEST INFORMATION THAT IS IRRELEVANT TO A 10(J) PROCEEDING**

This Court should also grant mandamus because the documents that the Court ordered the Union to produce are almost wholly irrelevant to a 10(j) proceeding.  The proceeding turns on narrow questions about potential temporary injunctive relief; the subpoenas seek vast quantities of information about Petitioners' activities nationwide.

The district court's inquiry in a 10(j) proceeding is narrow.  It is limited to determining whether there is cause to believe that a ULP was committed, and an injunction would be just and proper.  *Kreisberg ex rel. NLRB v. HealthBridge Mgmt., LLC*, 732 F.3d 131, 141 (2d Cir. 2013).  Petitions under 10(j) "come from a unique statutory scheme that requires (1) deference to the NLRB, which resolves the underlying unfair labor practice complaint on the merits and makes an initial determination, prior to the filing of a petition, to file such a complaint . . .  as well as (2) speedy resolution to preserve the status quo in a labor dispute."  *Id.* (internal quote omitted); *see also Seeler v. The Trading Port, Inc.*, 517 F.2d 33, 36-37 (2d Cir. 1975) (courts should give the NLRB's findings on violations of the Act the "benefit of the doubt," even when there are disputed facts).

For this reason, district courts rarely permit extensive discovery in §10(j) proceedings, and instead often base their ruling entirely on the administrative record without any additional evidence.  *See Silverman v. Imperia Foods, Inc.*, 646 F.Supp. 393, 400 (S.D.N.Y. 1986); *Kaynard v. Bagel Bakers Council of Greater New York*, No. 67-C-776, 1968 BL 212, at fn. 4 (E.D.N.Y. Feb. 20, 1968); *see also* Turner, J. M., & Koppin, J. M. (2012). "Discovery in NLRA Section 10(j) Proceedings." ABA Journal of Labor & Employment Law, Vol. 27, No. 3 (Spring 2012), 385–395 (summarizing cases and finding that federal courts "generally share" the view "that discovery in section 10(j) proceedings should be limited").

18

As then-district judge Pooler held in denying discovery in a 10(j) proceeding, "[t]he injunction proceedings in federal court must not evolve into a hearing on the merits of the unfair labor practice charges because the district court must not usurp the NLRB's role." *Dunbar v. Landis Plastics, Inc.*, 977 F. Supp. 169, 176 (N.D.N.Y. 1997); *see also* 996 F. Supp. 174, 178 (denying motion for reconsideration and finding "[b]ecause I refuse to decide the merits of the unfair labor practice charges before the ALJ, I continue to find that the discovery [respondent] requests is over broad") *remanded on other grounds* 152 F.3d 917 (2d Cir. 1998).

The instant case provides no exception to the general rule that discovery should not be allowed, or at most limited, in 10(j) proceedings. The Court initially stayed consideration of the petition pending development of the full administrative record, which was then filed with the court. This record was more than sufficient for the Court to render its decision on the petition, which included evidence that Starbucks engaged in the alleged ULPs and that injunctive relief is just and proper based on the inherent chilling effect caused by the violations.

Furthermore, as discussed *supra*, ALJ Rosas's Decision further eliminates the need for additional discovery or the creation of another record.

In any event, the subpoenaed information would not serve to rebut the evidence produced at the hearing, or the arguments in favor of an injunction. For example, the names and communications of union supporters—many of whom live across the country and do not work at the stores where the ULPs occurred—have no relevance to whether there is cause to believe that Starbucks violated the Act by firing the workers in the underlying ULP discharge case. That question is based on the facts presented in the administrative record before ALJ Rosas. Similarly, media information and communications with the NLRB has no bearing on whether Starbucks violated the Act as alleged.

Critically, the information is not relevant to the just and proper inquiry.  That question requires the Court to consider whether the injunction is "necessary to prevent irreparable harm or to preserve the status quo."  *Hoffman ex rel. NLRB v. Inn Credible Caterers, Ltd.,* 247 F.3d 360, 368 (2d Cir. 2001).  The existing record provides sufficient evidence of harm to the workers involved, and the inherent chilling effect such ULPs cause to ongoing organizing efforts.  *See Paulsen ex rel. NLRB v. Remington Lodging & Hosp., LLC*, 773 F.3d 462, 469 (2d Cir. 2014) (recognizing that discharges may support irreparable harm to organizing efforts because "the absence of employees who support a union can quickly extinguish organizational efforts and reinforce fears within the workforce concerning the consequences of supporting a unionization campaign").  Emails from workers interested in attending union meetings, or Union communications with the press would not serve to contradict the NLRB's arguments.[8]

The nationwide scope of the requests is also unnecessary to the just and proper inquiry.  Although the NLRB's petition requests certain nationwide remedies, that request is limited to Starbucks informing employees of the Court's decision if it grants an injunction.  The broad requests for nationwide employee, Union, media, and NLRB communications are unnecessary for the Court to resolve that remedy question.

Further, given the extreme breadth of the subpoena requests and their detrimental impact on employee rights, any potential need that Starbucks may claim for seeking the information would

---

[8] Even if the communications sought showed that employees remained supportive of the Union after the ULPs, that would not defeat the Board's claim that there was a chilling effect or that an injunction should issue.  *See Dunbar ex rel. NLRB v. Landis Plastics, Inc.*, 996 F. Supp. 174, 182 (N.D.N.Y. 1998) (where employer presented affidavits that union support had not changed after alleged ULPs, court found injunction still appropriate "because petitioner demonstrated that the Section 10(j) injunction is a just and proper mechanism to protect the NLRB's ability to issue a final remedy and protect the public interest in a collective bargaining process free of employer intimidation.")

not outweigh employees' right to confidentiality. *See Chino Valley Medical Center,* 362 NLRB 283, 283 n. 1 (2015) (finding that breadth of subpoenas violated the Act regardless of employer interest in information).

For these reasons, the information in the subpoenas is wholly irrelevant to this proceeding. This is particularly true given the full development of the record before ALJ Rosas and the Decision in the underlying case.

## CONCLUSION

**WHEREFORE**, Workers United respectfully requests that:

a. The Court reconsider the September 23, 2022 discovery order, and grant the Motions to Quash of Workers United and the NLRB with respect to all requests in Starbucks' 22 subpoenas duces tecum; or

b. In the alternative, certify the question of whether the subpoenas should be enforced in light of the Decision by ALJ Muhl and/or the Decision by ALJ Rosas, pursuant to 28 U.S.C. § 1292(b);

c. In any event stay enforcement of the discovery order until Starbucks complies with the Order of Judge Muhl to withdraw the discovery requests and its motion for contempt and sanctions; and

d. In addition to any other relief the Court deems appropriate.

Dated:          Buffalo, NY
                June 16, 2023

                                        Respectfully submitted,

                                        /s/ Ian Hayes
                                        Ian Hayes, Esq.

21

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 16, 2023, the foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF system.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Ian Hayes
Ian Hayes