**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

**LINDA M. LESLIE, Regional Director of the
Third Region of the National Labor Relations
Board, for and on behalf of the NATIONAL
LABOR RELATIONS BOARD,**

        **Petitioner,**

    **v.**

**STARBUCKS CORPORATION,**

        **Respondent.**

**Case No. 1:22-cv-00478-JLS**

<u>**STARBUCKS CORPORATION'S MEMORANDUM IN OPPOSITION TO
PETITIONER'S MOTION TO STAY OR IN THE ALTERNATIVE FOR
RECONSIDERATION OF THE COURT'S DISCOVERY ORDER**</u>

# TABLE OF CONTENTS

PAGE

I.   INTRODUCTION ................................................................................................ 1

II.  PROCEDURAL HISTORY................................................................................. 2

III. ARGUMENT ...................................................................................................... 4

A.  Petitioner's "Primary Jurisdiction" Argument Carries No Weight Because the Doctrine Does Not Apply ...................................................................... 5

B.  Even if the Doctrine Were to Apply, Petitioner Cannot Satisfy the "Primary Jurisdiction" Criteria ................................................................... 9

1.  The Purposes of the Primary Jurisdiction Doctrine Would Not Be Served by Its Application.................................................. 10

2.  Petitioner Does Not Meet the Primary Jurisdiction Criteria................... 12

a.  The Issue Is Within The Conventional Experience Of Judges, Not Agency Expertise ...................................... 12

b.  The Issue Is Not Within The Agency's Discretion...................... 14

c.  Whether There Exists A Substantial Danger Of Inconsistent Rulings ........................................................ 14

d.  Whether There Was Prior Application To The Agency .............. 18

e.  Costs and Delay Resulting From Petitioner's Separately-Initiated Administrative Case Against Starbucks ...................... 20

C.  The Court Should Deny Petitioner's Motion to Reconsider the Court's Discovery Order And Should Not Modify the Discovery Order in the Manner Specified by an NLRB Administrative Law Judge ................................ 21

IV.  CONCLUSION.................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Betal Environmental Corp. v. Local Union No. 78*,
    123 F. Supp. 2d 156 (S.D.N.Y. 2000) ......................................................................13

*Bloedorn v. Francisco Foods, Inc.*,
    276 F.3d 270 (7th Cir. 2001) ..................................................................................19

*Board of Education v. Harris*,
    622 F.2d 599 (2d Cir. 1979) ....................................................................................12

*Consol. Express v. New York Shipping Ass'n*,
    641 F.2d 90 (3d Cir. 1981) ........................................................................................8

*Ellis v. Tribune Television Co.*,
    443 F.3d 71 (2d Cir. 2006) ........................................................................11, 18, 19

*Glob. Crossing Bandwith, Inc. v. OLS, Inc.*,
    No. 05-cv-6423, 2009 U.S. Dist. LEXIS 22402 (W.D.N.Y. Mar. 19, 2009) ..........14

*Hotel Rest. Employees Union Local 217 v. J.P. Morgan Hotel*,
    996 F.2d 561 (2d Cir. 1993) ....................................................................................13

*In re Agent Orange*,
    517 F.3d 76 (2d Cir. 2008) ......................................................................................22

*In re Doe*,
    964 F.2d 1325 (2d Cir. 1992) ..................................................................................22

*Interstate Commerce Com. v. Maine Central Railroad Co.*,
    505 F.2d 590 (2d Cir. 1974) ..................................................................................5, 6

*Kaiser Steel Corp. v. Mullins*,
    455 U.S. 72 (1982) ..................................................................................................6, 7

*Kohn v. Southwest Regional Council of Carpenters*,
    289 F. Supp. 2d 1155 (C.D. Cal. 2003) ....................................................................7

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ................................................................................................20

*McDermott v. Peyton Cramer, Inc.*,
    No. 06-cv-04618, 2006 U.S. Dist. LEXIS 70794 (C.D. Cal. Sep. 26, 2006) ..........12

*Miller v. California Pacific Medical Center*,
    19 F.3d 449 (9th Cir. 1994) ........................................................................6, 17

*Myers v. Bethlehem Shipbuilding Corp.*,
    303 U.S. 41 (1938)........................................................................................3

*National Communications Ass'n v. American Telephone & Telegraph Co.*,
    46 F.3d 220 (2d Cir. 1995)............................................................................20

*Nelson v. Int'l Bhd. of Elec. Workers Local 46*,
    899 F.2d 1557 (9th Cir. 1990) ..................................................................17, 18

*NLRB v. Brown Transport Corp.*,
    620 F. Supp. 648 (N.D. Ill. 1985) ................................................................14

*Leslie ex rel. NLRB v. Starbucks Corp.*,
    No. 22-cv-478, 2022 WL 2708915 (W.D.N.Y. June 27, 2022)............................13

*Overstreet v. United Broth. of Carpenters*,
    409 F.3d 1199 (9th Cir. 2005) ......................................................................17

*Palmer v. Amazon.com, Inc.*,
    51 F.4th 491 (2d Cir. 2022) ......................................................9, 10, 11, 12

*Paulsen v. Remington Lodging & Hospitality, LLC*,
    773 F.3d 462 (2d Cir. 2014)..........................................................................13

*Read v. Corning Inc.*,
    351 F. Supp. 3d 342 (W.D.N.Y. 2018) ........................................................9, 10

*Reed v. 1-800-Flowers.com, Inc.*,
    327 F. Supp. 3d 539 (E.D.N.Y. 2018) ..........................................................14

*Reiter v. Cooper*,
    507 U.S. 258 (1993)......................................................................................21

*Sharp ex rel. NLRB v. Webco Indus.*,
    265 F.3d 1085 (10th Cir. 2001) ....................................................................16

*Sheet Metal Workers Int'l Ass'n v. J.E. Workman, Inc.*,
    343 F. Supp. 480 (D. Del. 1972) ....................................................................3

*Small ex rel. NLRB v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200*,
    611 F.3d 483 (9th Cir. 2010) ....................................................................17, 18

*U.S. v. General Dynamics Corp.*,
    828 F.2d 1356 (9th Cir. 1987) ......................................................................11

*United States v. W. Pac. R.R. Co.*,
  352 U.S. 59 (1956)......................................................................................................10

**Statutes**

29 U.S.C. §160(j) ............................................................................................ *passim*

## I.       INTRODUCTION

Petitioner brought this action against Starbucks over a year ago on June 21, 2022, seeking emergency injunctive relief. Petitioner now seeks an indefinite stay rather than dismissing the action.

Petitioner has tried endless procedural maneuvers to avoid Starbucks' efforts to obtain discovery establishing that Petitioner cannot prove Section 10(j) injunctive relief is "just and proper." When this Court stayed this case to allow Petitioner to put on her case-in-chief in the administrative case, Petitioner opposed Starbucks obtaining any discovery in the administrative case, the ALJ sided with Petitioner and rejected all of Starbucks' administrative subpoenas, and Petitioner tried to take just and proper discovery into the Board's hands by introducing just and proper evidence at the administrative hearing before Starbucks could obtain documents to use to question Petitioner's witnesses.  After the underlying administrative case ended, over Petitioner's opposition, the Court ruled that Starbucks has the right to take discovery. Despite a prior ruling denying a motion for reconsideration by the Subpoenaed Nonparties, Petitioner filed her own motion for reconsideration, which was denied. Dissatisfied that the Court would not defer to the agency, Petitioner sought to have the Second Circuit order the Court to change its ruling, which was denied. Petitioner simultaneously attempted to take matters into her own hands, prosecuting Starbucks in a new administrative case, NLRB Case No. 03-CA-304675, claiming Starbucks' court-approved discovery was illegal. After expressing doubts about Petitioner's theory as applied in a 10(j) case but noting he was bound by extant Board law, the NLRB administrative law judge ("ALJ") in his decision ("ALJD") sided with Petitioner, finding that all but two of Starbucks' discovery requests were illegal, and ordering Starbucks to withdraw them, together with its motion for sanctions, and to pay the Subpoenaed Nonparties for costs they allegedly incurred in the 10(j) Litigation.

Petitioner now asks the Court to stay this case under the doctrine of primary jurisdiction or, in the alternative, to reconsider its discovery order by conforming it to match the rulings in the ALJD. (Dkt. 106). Petitioner's request to stay the case flies in the face of her prior arguments about the need for immediate injunctive relief. Further, her request would stay the case indefinitely, pending the outcome of a ULP complaint she filed that would need to wind its way through the administrative process at the NLRB, followed by appeal to a federal circuit court. Only after the conclusion of that process would Petitioner have this Court re-engage and proceed in this emergency injunction action.

The Court should deny both requests. First, Petitioner's request for a stay should be denied because: (1) the primary jurisdiction doctrine does not apply in 10(j) cases; and, (2) even if the doctrine did apply, Petitioner cannot satisfy the requisite criteria. Second, based upon the Court's previous order that this case should not be stayed pending the outcome of NLRB Case No. 03-CA-304675, the Court should not entertain Petitioner's suggestion that the Court reconsider its discovery order to match the ALJD. The Court should stand firm on its order because, simply stated, Starbucks is entitled to an immediate judicial forum and the doctrine of primary jurisdiction does not apply.

## II.  PROCEDURAL HISTORY

Starbucks incorporates by reference the procedural history section of its motion to lift the abeyance on its motion for sanctions, and petition for writ of injunction or alternative motion to dismiss. (Dkt. 109, at 13-19). While the procedural history is set forth more fully there, Starbucks calls the Court's attention here to the following portion of the ALJD, (Dkt. 103-1, at 5-6), which is the NLRB's explanation for why the agency believes it had jurisdiction to order Starbucks to withdraw its subpoenas:

The Respondent is correct that, under the Federal Rules of Civil Procedure (FRCP), the district court has the exclusive authority to determine if and what discovery is allowed in the 10(j) proceeding. But the legal question in this case is not whether discovery should be allowed at all in the 10(j) proceeding and, if so, what document requests are permissible under the FRCP. Rather, the question is whether specific document requests made by the Respondent in the 10(j) proceeding constitute unfair labor practices under the Act. Jurisdiction over that question rests solely with the Board. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938).[1] The Board is not deprived of its jurisdiction to decide the question simply because the district court has concurrent jurisdiction in the 10(j) proceeding. *NLRB v. C&C Plywood Corp.*, 385 U.S. 421, 428 (1967). Furthermore, if any violations of the Act are found in the ULP proceeding, the remedy is to order the Respondent to withdraw the unlawful discovery requests, not to order the district court to quash them.

Following issuance of the ALJD, the Court gave Petitioner, Starbucks, and the Subpoenaed Nonparties the opportunity to submit briefs on the issue of how the Court should proceed following decisions from the Second Circuit and NLRB administrative law judge. (Dkt. 104).

On June 16, 2023, Starbucks filed its motion to lift the abeyance on the motion for sanctions, and a petition for a writ to enjoin the NLRB, or to dismiss the petition. (Dkt. 109). Starbucks also filed counterclaims against the NLRB, seeking, among other things, an order from the Court declaring unlawful and enjoining actions taken by the NLRB, through its General Counsel, Jennifer Abruzzo ("Abruzzo"), acting in her capacity as General Counsel, and its

---

[1] As Starbucks argued, "This Court has exclusive subject matter jurisdiction in the instant litigation pursuant to Section 10(j).  29 U.S.C. §160(j).  In *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 51-52 (1938), the Supreme Court held that the Board had exclusive jurisdiction to decide unfair labor practices and generally applied an administrative exhaustion requirement prior to judicial intervention in unfair labor practice proceedings. *Myers* preceded Section 10(j), which was enacted in 1947 together with other amendments that limited the Board's jurisdiction and expanded the courts' jurisdiction over federal labor law in pertinent ways.  *See, e.g.*, *Sheet Metal Workers Int'l Ass'n v. J.E. Workman, Inc*., 343 F. Supp. 480, 483 (D. Del. 1972) (noting limitation of "exclusive jurisdiction" holding of *Myers* because it preceded Section 301, also enacted in 1947, providing courts with jurisdiction over labor contract disputes). Section 10(j) reserves to federal courts the exclusive jurisdiction to determine whether interim injunctive relief is just and proper." (Dkt. 109).

Regional Director of Region 3, Linda M. Leslie ("Leslie"), acting in her capacity as Regional Director, that deprive and interfere with the rights of Starbucks under the First and Fifth Amendments of the United States Constitution. (Dkt. 107).

Petitioner also filed a motion that day asking the Court: (1) to stay the 10(j) Litigation, including a stay on Starbucks' motion for sanctions, pending the Board's decision following appeal of the ALJD; or alternatively, (2) to modify the discovery order in a manner "consistent with the Administrative Law Judge's decision in NLRB Case No. 03-CA-304675." (Dkt. 106).[2]

On June 30, 2023, Starbucks filed its exceptions to the ALJD in NLRB Case No. 03-CA-304675.

## III.   ARGUMENT

Petitioner argues that a stay of the 10(j) Litigation is "necessary to protect the NLRB's primary jurisdiction and ability to determine, on review of ALJ Muhl's decision, whether the discovery sought by Respondent is violative of the NLRA." (Dkt. 106, at 5). In the alternative, Petitioner again moves for reconsideration of the Court's discovery order, asking the Court to modify that order in a manner consistent with the ALJD, (Dkt. 106, at 8), by requiring Starbucks to withdraw all but two of its discovery requests as specified by the ALJD, withdraw its sanctions

---

[2] On the same day, the Subpoenaed Nonparties filed a motion for reconsideration (Dkt. 108), arguing: (1) the ALJD precludes enforcement of the subpoenas and the Court should defer to that administrative decision; (2) the subpoena requests are "no longer necessary" because the ALJD's analysis establishes the "just and proper" and "reasonable cause" standards were met, and also because "decertification petitions . . . provide further evidence of irreparable harm" to NLRA rights; (3) the subpoenas are unenforceable because they seek information that is "protected" and violate "NLRB and other federal authority" including requests that reveal: (i) employee support or lack of support for the union; (ii) "advice to potential members" and "strategic information;" (iii) "protected communications with the NLRB;" or (iv) "confidential communications with the media." (Dkt. 108). Those arguments are addressed in Starbucks' response to the Subpoenaed Nonparties' motion.

motions, and pay the individuals (who ignored this Court for months) for unspecified costs they claim to have incurred in this 10(j) Litigation.

The doctrine of primary jurisdiction does not apply and, if it did, would not support Petitioner's request for a stay of the 10(j) Litigation. Petitioner's motion comes as her latest display of stunning overreach toward the Court's exclusive jurisdiction in deciding whether injunctive relief under Section 10(j) is "just and proper," and its power to order discovery under the Federal Rules of Civil Procedure and Federal Rules of Evidence.

### A. Petitioner's "Primary Jurisdiction" Argument Carries No Weight Because the Doctrine Does Not Apply

The doctrine of primary jurisdiction "can have no application where . . . the very institution of suit in the courts by the relevant administrative body represents an exercise of its 'special competence.'" *Interstate Commerce Com. v. Maine Central Railroad Co.*, 505 F.2d 590, 594 (2d Cir. 1974). In *Maine Central*, a case in which a train company claimed primary jurisdiction meant the Interstate Commerce Commission's administrative process applied, the Second Circuit, in rejecting the argument, opined: "Neither the language of § 1(20)," which "specifically authorizes the courts to enjoin unauthorized abandonments," "nor the inclusion of the Commission itself as one of the designated parties in interest who are empowered to commence an action, supports the need or desirability of prior resort to I.C.C. administrative proceedings." *Id.* The Second Circuit said the plain language of the Interstate Commerce Act, 49 U.S.C. § 1(18), indicates only district courts may issue injunctive relief:

> Any construction, operation, or abandonment contrary to the provisions of this paragraph or of paragraph (18) or (19) of this section <u>may be enjoined by any court of competent jurisdiction at the suit of the United States</u>, the Commission, any commission or regulating body of the State or States affected, or any party in interest.

*Maine Central*, 505 F.2d at 592 n.5 (emphasis added). The argument to the contrary "border[ed] on frivolous."[3] *Id.*

The plain language of the NLRA makes clear that Petitioner cannot claim that primary jurisdiction applies when she was responsible for the "very institution of the suit." *Maine Central*, 505 F.2d at 594. Here too, "the claim borders on the frivolous." *Id.* Federal courts, not the NLRB, are vested with jurisdiction to determine whether the grant of injunctive relief under Section 10(j) of the National Labor Relations Act is "just and proper." 28 U.S.C. § 160(j).

Section "10(j) is an exception to the primary jurisdiction of the NLRB over labor disputes" and "it reflects an intention that the district court will exercise judgment rather than simply sign off on Board requests." *Miller v. California Pacific Medical Center*, 19 F.3d 449, 458 (9th Cir. 1994). "Otherwise, jurisdiction for the *court* to grant such relief 'as *it* deems just and proper' would be unnecessary." *Id.* (emphasis in original). The "NLRA provisions requiring deference to the NLRB show that when Congress wanted to tell the courts to give the benefit of the doubt to the Board's expertise, it knew how to do so." *Id.*

Petitioner argues the "NLRB [is] vested with primary jurisdiction to determine what is or is not an unfair labor practice under NLRA" and the Court has discretion "to stay its proceedings in order to give an administrative agency the opportunity to decide questions within its expertise." (Dkt. 106, at 6). She relies on *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982), to support that argument. However, in *Kaiser*, the NLRB was not a party, let alone requesting application of the primary jurisdiction doctrine while petitioning for 10(j) injunctive relief against its opponent. That aside, even if *Kaiser* did apply, *Kaiser* would lend no support to Petitioner's argument for the doctrine's applicability. In *Kaiser*, the Supreme Court opined, "We also do not agree that the

---

[3] Petitioner did not mention this important Second Circuit decision in her briefing.

question of the legality of the purchased-coal clause under § 8(e) of the NLRA was within the exclusive jurisdiction of the National Labor Relations Board and that the District Court was therefore without authority to adjudicate Kaiser's defense in this respect." *Id.* Rather, it is the role of the courts to "determine whether a contract violates federal law before enforcing it." *Id.* at 73. It is therefore easy to see that *Kaiser* does not stand for the proposition that the NLRB can call opponents' discovery an unfair labor practice and claim primary jurisdiction after it does not get its way.

Petitioner is not the first regional director who "misses the point that Congress empowered the District Court, not an ALJ, to determine whether to grant or deny a Regional Director's request for a temporary injunction." *Kohn v. Southwest Regional Council of Carpenters*, 289 F. Supp. 2d 1155, 1174 (C.D. Cal. 2003). In *Kohn*, the petitioning regional director filed a petition for injunctive relief under Section 10(l) of the NLRA, asking the court to "force the union to cease displaying [a] banner during the pendency of this [administrative] lawsuit before the NLRB." *Id.* at 1159. Along with the petition, the regional director attached an administrative law judge's decision from a separate case, with facts "nearly identical" to the 10(l) case, and which concluded that the same picketing conduct at issue was unlawful. *Id.* Relying on that ALJ decision, petitioner argued to the court that "[g]iven the labor law expertise of the ALJ, and the lesser exposure of this Court to the Act and its mandates, the Court should rely more heavily on the views of the ALJ than on the contrary views in [a parallel federal court decision]." *Id.* The court in *Kohn* denied the petition because petitioner's argument advanced "a discredited construction of the statute" and implicated "serious" First Amendment concerns beyond the NLRB's purview. *Id.* The court reasoned:

> While the ALJ may have greater substantive labor law expertise than this Court, this Court has substantial experience in the assessment of

> applications for preliminary injunctions, the art of statutory construction, and the application of federal and Supreme Court precedent to issues of constitutional concern. Because these are the areas of concern raised by this petition, the Regional Director provides no persuasive reason why the Court should abdicate its constitutional duty to independently determine the merits of this case.

*Id*. Likewise, it is the role of this Court, not Petitioner, to review requests for 10(j) injunctive relief, to apply federal precedent on constitutional matters, and to control discovery. As such, the primary jurisdiction doctrine does not apply, and does not support Petitioner's request for a stay pending the adjudication of NLRB Case No. 03-CA-304675.

Petitioner's citation to *Consol. Express v. New York Shipping Ass'n*, 641 F.2d 90, 94 (3d Cir. 1981) actually undermines her case. Petitioner argues, based on that case, "where resolution of a particular issue has also been vested in an administrative agency having primary responsibility for the resolution of issues arising under a given statutory regulatory scheme, a stay pending agency determination is often appropriate." (Dkt. 106, at 6). In *New York Shipping*, the court stayed an antitrust action because it would "require development of the same facts" as in a proceeding before the NLRB. *Id.* at 94-95. Here, there are no facts to be developed further because the ALJD was decided on a stipulated record, which primarily consisted of the subpoenas issued and the public filings in the 10(j) Litigation and the administrative record on the merits of the unfair labor practice allegations. But even if factual issues did exist, discovery in the federal case would be warranted. Critically, the Third Circuit noted in *New York Shipping*:

> We do not suggest that in the meantime the case must stand still. Whether discovery should go forward, and whether dispositive motions directed to issues not affected by the alleged unfair labor practice should be entertained are questions we leave to the district court's discretion.

As such, even if the Court recognized primary jurisdiction on any factual issue, which it should not, the Court retains discretion to proceed with discovery in the 10(j) Litigation.

**B.     Even if the Doctrine Were to Apply, Petitioner Cannot Satisfy the "Primary Jurisdiction" Criteria**

The doctrine of primary jurisdiction is a "relatively narrow exception" to courts' "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 504-05 (2d Cir. 2022) (citing *Tassy v. Brunswick Hosp. Ctr., Inc.*, 296 F.3d 65, 73 (2d Cir. 2002) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Second Circuit courts apply the doctrine of primary jurisdiction "where a claim is originally cognizable in the courts, but enforcement of the claim requires, or is materially aided by, the resolution of threshold issues, *usually of a factual nature*, which are placed within the special competence of the administrative body." *Palmer*, 51 F.4th at 505 (emphasis added) (quoting *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58–59 (2d Cir. 1994); *see also Read v. Corning Inc.*, 351 F. Supp. 3d 342, 352 (W.D.N.Y. 2018) ("[M]ost primary jurisdiction cases involve questions of whether the district court should defer to a *federal* agency's determination of *factual questions*[.]") (quoting *Johnson v. Nyack Corp.*, 964 F.2d 116, 122 (2d Cir. 1992)) (some emphasis in original, some emphasis added). While the doctrine focuses on "promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties," it "does not implicate[] subject matter jurisdiction of federal courts." *Id.* (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956) (internal quotations omitted)).

First, "when determining whether to apply the doctrine of primary jurisdiction, a court must look to whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Palmer*, 51 F.4th at 506 (citing *W. Pac. R.R. Co.*, 352 U.S. at 64) (internal quotations omitted)). If the purposes of the doctrine support its application, Second Circuit courts then consider four factors: "(1) whether the question

at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *Read*, 351 F. Supp. 3d at 351 (citing *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82-83 (2d Cir. 2006)). Courts also "balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Palmer*, 51 F.4th at 506 (citations omitted).

If these factors support a finding of primary jurisdiction, "the judicial process is suspended pending referral of such issues to the administrative body." *United States v. Western Pac. R. Co.*, 352 U.S. 59, 64 (1956). The court "has discretion either: (1) to dismiss the case without prejudice; or (2) retain jurisdiction." *Palmer*, 51 F.4th at 505. When the court retains jurisdiction, the case is "stayed so as to give the plaintiff a reasonable opportunity within which to apply to the [agency] for a ruling." *Id.*

Despite Petitioner's best effort to argue otherwise, the purpose of the primary jurisdiction doctrine would not be served by its application here. But if the doctrine were to apply, none of these factors would weigh in Petitioner's favor and therefore do not support her request for a stay. (Dkt. 106, at 6). Starbucks urges the Court to retain jurisdiction over Starbucks' counterclaims and dismiss the rest of the case.

1.  **The Purposes of the Primary Jurisdiction Doctrine Would Not Be Served by Its Application**

When a court is urged to stay a case based on the doctrine of primary jurisdiction, the court's first task is to determine whether the reason for the request is supported by the purposes of the doctrine. There are two purposes behind the primary jurisdiction doctrine: (1) to "foster

10

uniformity and consistency in the regulation of business entrusted to a particular agency," and avoid varying decisions from U.S. "courts and juries"; and (2) in "certain matters, the expert and specialized knowledge of the agencies' should be ascertained before judicial consideration of the legal claim." *Palmer*, 51 F.4th at 506 (citing collection of cases). "[W]here resort to the agency would plainly be unavailing in light of its manifest opposition or because it has already evinced its 'special competence' in a manner hostile to [its opposition], courts need not bow to the primary jurisdiction of the administrative body." *Ellis v. Tribune Television Co.*, 443 F.3d 71, 90 (2d Cir. 2006); *see also U.S. v. General Dynamics Corp.*, 828 F.2d 1356, 1363 (9th Cir. 1987).

Petitioner has already evinced her hostility toward Starbucks' taking the court-approved discovery at issue in this case. Petitioner has manifestly opposed Starbucks' right to discovery from the day Petitioner filed the 10(j) petition, and through repeated filings and legal maneuvering thereafter, culminating in the *Guess?* Complaint. Petitioner argues for deferral, but for Starbucks, the Court's acceptance of the argument would be "plainly unavailing" and futile. A sampling of conduct and arguments demonstrating Petitioner's hostility include:

- Petitioner has been opposed to Respondent obtaining any discovery since the inception of this case. (Dkts. 3, 23, 26).

- Petitioner has long argued to the Court that Respondent's document subpoenas may, and now allegedly do, violate the Act. (Dkts. 44, 79, 88).

- Petitioner's counsel represented during oral argument that it was her office that was investigating the unfair labor practice charge making such a claim, and that it may well be that her office would ask the Board to require Respondent to rescind the document subpoenas this Court authorized. (Dkt. 51 at 12-13, Tr. Oral Argument, Sept. 23, 2022).

- Petitioner argued to the ALJ that Starbucks violated the Act by issuing the court-approved discovery in the 10(j) Litigation. (Dkt. 109-2).

- Petitioner relied on the ALJD to argue the NLRB has primary jurisdiction. (Dkt. 106).

11

As the above sampling demonstrates, Petitioner's hostility toward Starbucks is manifest. And the Court should not bow to an agency that has exceeded its statutory authority and abused its discretion.

  **2.  Petitioner Does Not Meet the Primary Jurisdiction Criteria**

    **a.  The Issue Is Within The Conventional Experience Of Judges, Not Agency Expertise**

"It is well established that the courts need not defer to an agency where the issue involved is a strictly legal one, involving neither the agency's particular expertise nor its fact finding prowess." *Board of Education v. Harris*, 622 F.2d 599, 607 (2d Cir. 1979). For this factor to favor primary jurisdiction, the agency's particular expertise around factfinding must be of "*material* aid" to the court. *Palmer*, 51 F.4th at 499 ("OSHA's expertise would not be a *material* aid here; the issues before us are of a legal, not factual, nature and do not require the kind of highly factual inquiry that would typically be aided by OSHA's expertise.") (emphasis in original). According to the Second Circuit, just some of the examples of legal questions within "the daily fare of federal judges" include: "applying 'reasonably settled definitions' in a statute to the facts of a case," "issues of contract interpretation," and "issues involving the application of common law principles." *Palmer*, 51. F.4th at 507 (internal citations and alterations omitted). *McDermott v. Peyton Cramer, Inc.*, No. 06-cv-04618, 2006 U.S. Dist. LEXIS 70794, *5 (C.D. Cal. Sep. 26,

2006) ("Section 10(j) of the Act provides district courts with limited jurisdiction over labor relations matters that are otherwise the province of Administrative Law Judges.").[4]

Permissible discovery in a Section 10(j) case is a legal issue "within the conventional experience of judges." The legislative scheme adopted by Congress delegated to the "United States district court[s]" the exclusive authority to assess whether the grant of Section 10(j) injunctive relief would be "just and proper." 29 U.S.C. § 160 (j). "Upon the filing of any such petition the court shall . . . have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper." *Id*. Indeed, "Section 10(j) makes clear that the district court's jurisdiction derives from the Board's filing of a petition." *Paulsen v. Remington Lodging & Hospitality, LLC*, 773 F.3d 462, 468 (2d Cir. 2014). And discovery in Section 10(j) and other injunction cases is a subject that federal courts regularly address.[5] As Starbucks noted in prior briefing, Starbucks' undersigned counsel alone has taken discovery from non-parties, the NLRB, and unions in Section 10(j) proceedings numerous times. (Dkt. 45, at 8) (citing collection of cases). Simply put, the

---

[4] As another example, "Congress itself has carved out exceptions to the NLRB's exclusive jurisdiction, notably section 303's grant of jurisdiction for those injured by a violation of section 8(b)(4) to recover damages even though such unfair labor practices are also remediable by the Board and section 301's grant of jurisdiction over suits for breach of a collective bargaining agreement regardless of whether the particular breach is also an unfair labor practice within the jurisdiction of the Board." *Betal Environmental Corp. v. Local Union No. 78*, 123 F. Supp. 2d 156, 159 (S.D.N.Y. 2000). *See also Hotel Rest. Employees Union Local 217 v. J.P. Morgan Hotel*, 996 F.2d 561, 565 (2d Cir. 1993) ("[I]t is wrong to say . . . that the NLRB has *exclusive* jurisdiction over representation issues. Rather, § 301(a) grants courts concurrent jurisdiction over representation issues arising under a contract.") (internal citations and quotations omitted) (emphasis in original).

[5] As this Court previously recognized, regarding discovery, it has "discretion to chart a path that gives it the information necessary to determine the petition and is fair to both sides under the circumstances of the particular case." *Leslie ex rel. NLRB v. Starbucks Corp.*, No. 22-cv-478, 2022 WL 2708915, at *1 (W.D.N.Y. June 27, 2022) (citing collection of cases).

NLRB's wading into the 10(j) Litigation to determine what is relevant to "just and proper" is not "within the agency's field of expertise."

### b.      The Issue Is Not Within The Agency's Discretion

Petitioner says the agency should decide, while this 10(j) Litigation is stayed, "whether the discovery at issue violates the NLRA, and to remedy any such violations in the public interest." (Dkt. 106, at 6). The remedies Petitioner mentions in her motion, which are not all-inclusive of those set forth in the ALJD, would require Starbucks to withdraw its subpoenas and contempt motion in the 10(j) Litigation. (Dkt. 106, at 5). Fortunately, however, the "relevant inquiry is not whether the agency finds a particular question within its discretion, but rather whether Congress deems it so." *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539, 547 (E.D.N.Y. 2018). Contrary to Petitioner's arguments, Congress decided that it is the role of the district courts, and only the district courts, to make "just and proper" evidentiary determinations, including, to that end, what discovery is necessary to make the determination, and the consequences, if any, that are appropriate for non-compliance with the court's orders.[6]

### c.      Whether There Exists A Substantial Danger Of Inconsistent Rulings

Second Circuit courts have recognized litigants, like Petitioner here, "should not be permitted to manufacture a risk of inconsistent rulings." *Glob. Crossing Bandwith, Inc. v. OLS, Inc.*, No. 05-cv-6423, 2009 U.S. Dist. LEXIS 22402, *17-18 (W.D.N.Y. Mar. 19, 2009) (motion to stay denied where defendants lost summary judgment, filed a petition with the FCC, then "us[ed] that petition to belatedly seek a stay of further proceedings in this Court."). There is no question

---

[6] Even when the NLRB petitions to enforce a subpoena from its own administrative agency in federal court, it is the court that makes evidentiary determinations on relevancy. *NLRB v. Brown Transport Corp.*, 620 F. Supp. 648, 651 (N.D. Ill. 1985) (issuing order enforcing subpoena after ruling on relevancy).

Petitioner engaged in every effort to manufacture that precise risk, which is now a reality. But due process commands that Petitioner cannot manufacture a win. To that end, as Starbucks previously argued:

> In its own All Writs Act petition, the Board inappropriately accused Starbucks of "successfully weaponizing discovery." *In re National Labor Relations Board*, No. 23-120 (2d Cir.) (Dkt. 1, p. 6). Yet, it is the Board itself that has weaponized discovery by filing the *Guess?* Complaint against Starbucks alleging, which the ALJD finds, that the Company violated federal law by issuing Court-approved subpoenas to obtain relevant documents, subject to appropriate protections afforded by the discovery orders, and by daring to defend itself against the Board's allegations in the 10(j) Litigation. The *Guess?* Complaint attempts to—and the ALJD does—force Starbucks to act at its own peril whenever it obeys the Court's rulings, at risk of facing further alleged violations of federal labor law and prospective sanctions of attorneys' fees whenever the Board disagrees with the Court's rulings. Further, the *Guess?* Complaint inappropriately attempts to—and the ALJD does—intrude on the Court's exclusive jurisdiction to determine what is relevant to whether interim injunctive relief is "just and proper" under Section 10(j) and the weight to be given competing interests.

(Dkt. 109, at 21). It bears repeating that, "This predicament [the danger of inconsistent rulings] can only be cured by enjoining the *Guess?* Complaint in aid of this Court's jurisdiction under 10(j) and in aid of its enforcement of its prior orders." (Dkt. 109, at 21).[7]

Petitioner concedes a risk of inconsistent rulings but takes a different angle on how the Court should proceed to avoid "conflicting orders between the Board and Court." (Dkt. 106, at 8). In the middle of petitioning this Court under Section 10(j) for extraordinary relief on an expedited basis, Petitioner now claims a stay of the 10(j) Litigation is the right path. Petitioner argues that if "the contempt motion and discovery" move forward in the 10(j) Litigation, there is "considerable

---

[7] Starbucks argued above that the doctrine of primary jurisdiction does not apply. In prior briefing, Starbucks urged the Court to issue an injunction against the NLRB in processing the *Guess?* Complaint, and for imposition of sanctions and immediate dismissal of the 10(j) Litigation. Simply because there is a potential or real risk of inconsistent rulings does not mean applying the doctrine of primary jurisdiction is the way to mitigate such risk. That has already proven true here.

risk that Respondent and the subpoenaed parties will be subject to conflicting rulings from the Board, a likely court of appeals review of the Board order, and the District Court." (Dkt. 106, at 7). Petitioner says that a stay would allow the Court to "take advantage" of the NLRB's "specialized knowledge expertise, and central position within the regulatory regime," citing *Ellis*, 443 F.3d, at 71, ". . . on this issue." (Dkt. 106, at 7). Petitioner argues the "issue" to which this Court should defer to the Board includes whether Starbucks must "withdraw or dismiss all of the subpoena requests found unlawful [by the NLRB], including ones that were not quashed by the Court and are the basis for the pending contempt motion." (Dkt. 106, at 7).

Petitioner's cited cases entail procedural paths that differ vastly from the 10(j) Litigation here, making them inapposite. Petitioner first cites *Sharp ex rel. NLRB v. Webco Indus.*, 265 F.3d 1085, 1088-89 (10th Cir. 2001), for the proposition that this Court should enter a stay in the 10(j) Litigation to "preserve the Board's exclusive jurisdiction" and "prevent the possibility of inconsistent judgments between the Board and the state forums." (Dkt. 106, at 6). Petitioner there argued the district court should enjoin an employer's state law breach of contract claim against two employees who filed unfair labor practice charges alleging discriminatory layoffs after signing severance agreements that said they waived their NLRA rights. Petitioner argued for 10(j) relief to enjoin the state court case on the basis that the NLRB has "exclusive jurisdiction to determine if [the employer's] . . . waiver defense is valid under federal labor law." *Id.* at 1088. The court accepted that argument, noting it is "'well settled' law that the Board has the authority to enjoin state actions where its federal power preempts, or arguably preempts, the field." *Id.* at 1089 (citing *NLRB v. Nash-Finch Co.*, 404 U.S. 138 (1971)). In contrast, Petitioner here has no preemption

argument in a case she filed in federal court. Also, by virtue of her filing this case and Starbucks' inevitable need to defend itself, she cannot claim retaliation by Starbucks.[8]

Likewise, Petitioner's reliance on *Nelson v. Int'l Bhd. of Elec. Workers Local 46*, 899 F.2d 1557, 1564 (9th Cir. 1990) does not support her request for a stay.[9] Petitioner argues that in *Nelson*, the Ninth Circuit held the "NLRB has primary jurisdiction to construe the Act and enjoining [*sic*] lawsuit under Section 10(l) of the NLRA to protect the primary jurisdiction of the Board." (Dkt. 106, at 6). In *Nelson*, the petitioner sought an injunction under Section 10(l) of the NLRA against a union, on the theory that, while petitioner processed a related unfair labor practice charge through the agency, the *union's* lawsuit to enforce an arbitration award should be stayed because enforcement would cause secondary interruptions to commerce in violation of the NLRA. *Nelson*, 899 F.2d at 1563. The district court concluded, and the Ninth Circuit affirmed, that a stay of the union's case was warranted as a form of injunctive relief because the union was "forced . . . to discontinue some of its services, and several nonunion members resigned as a result" so deferral supported the "statutory purposes of the Act." *Id.* at 1564. But there, the petitioner did not argue that the Section 10(l) case, which petitioner brought, should be stayed—rather, the 10(l) case was the mechanism that allowed her to ask for a stay of the union's case while parallel unfair labor practice allegations processed through the agency. *Id.* Petitioner in *Nelson* did not first lose in

---

[8] The ALJD likewise did not find that Starbucks issued subpoenas to retaliate against its partners (employees) for participating in Board proceedings, in violation of Section 8(a)(4) of the Act. (Dkt. 103-1, at 18-20).

[9] *Nelson* was overruled on grounds that the lower courts applied the wrong standard for 10(l) relief. *See Overstreet v. United Broth. of Carpenters*, 409 F.3d 1199, 1205 (9th Cir. 2005) ("[W]e hold that *Miller* overruled *Nelson,* and that we should apply the *Miller* standard here."). *See also Small ex rel. NLRB v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200*, 611 F.3d 483, 491 (9th Cir. 2010) ("*Overstreet* remains good law following the *Winter* decision.").

federal court, then argue for a stay of the federal court case for what she hoped would be a better outcome for her before her own agency.

For the same reasons *Nelson* does not support Petitioner's argument for a stay, nor does *Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200*, 611 F.3d 483, 485 & 495 (9th Cir. 2010), on which Petitioner also relies. There, another petitioner used a 10(l) petition for injunctive relief to argue a stay of a case filed by a union was warranted. *Id.* The district court agreed, and the Ninth Circuit affirmed, finding that Section 10(l) injunctive relief was warranted to stay the *union's* separate lawsuit where the "only hardship" to the union was "the delay in prosecuting lawsuits the Board likely will conclude are unlawful." *Id.* Unlike in *Small* though, where the union's lawsuit triggered the unfair labor practice charge and the NLRB's related motion to stay, Petitioner here is the prosecutor in the 10(j) Litigation and asks for a stay while awaiting an NLRB decision she knows will benefit her prosecution strategy by finally forcing Starbucks to defend itself with its hands behind its back. This again ties to Petitioner's lack of special expertise in this area and why the Court should not bow to her tactics.

Petitioner may not manufacture her own inconsistent ruling when she disagrees with the Court, in order to decide what evidence an employer may request to defend a lawsuit brought against it by Petitioner's agency, in conflict with the Court's prior discovery orders.

### d.  Whether There Was Prior Application To The Agency

In explaining the next factor, whether a "prior application to the agency has been made," the Second Circuit has said, "courts have jurisdiction over the subject matter of the action and that the only question is whether they should exercise their jurisdiction initially or require 'prior resort' to the appropriate agency." *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82 n.12 (2d Cir. 2006). Generally, when an administrative agency "is currently conducting an investigation into the lawfulness of the [practice] under attack," courts avoid involvement so as not to "invite the very

disruption" the doctrine of primary jurisdiction "is meant to discourage." *Id.* at 88 (citing *Danna v. Air France*, 463 F.2d 407, 412 (2d Cir. 1972) (alterations omitted)).

"Prior application to the agency" may be the most damning factor for Petitioner. This is probably why she makes no mention of it in her motion. (Dkt. 106). Indeed, Petitioner argued in her motion to quash and at oral argument in September 2022 – prior to the October 2022 filing of the underlying unfair labor practice charge by Workers United challenging the subpoenas – that she opposed Starbucks' subpoenas, characterizing them as "irrelevant, redundant, and coercive," "harassing," and "the weaponization of discovery as an instrument of delay and oppression." (Dkt. 44, at 8 n.3 & 10-11 and *passim*). And she openly agreed with Workers United's argument at the September 23, 2022, hearing that such subpoenas were unlawful under the NLRA. (Dkt. 51, at 12-13, Tr. Oral Argument, Sept. 23, 2022). Petitioner has since continued to argue that the "discovery sought by Respondent is violative of the NLRA" and therefore should not be permitted. This Court on each occasion rejected those arguments; the Court ordered discovery, denied her motion to quash, and denied her untimely motion for reconsideration.[10] But then, Petitioner lost before the Second Circuit, which ruled that the Subpoenaed Nonparties may accept a contempt order from which they could appeal. Dissatisfied with that option, Petitioner pivoted to the current arguments of primary jurisdiction, a stay of the 10(j) Litigation, and adoption of the agency's contrary discovery rulings.

Petitioner's deference arguments likewise fail. All of the cases on which Petitioner relies for the argument that the Court should defer to the ALJD are from a string cite in *Bloedorn v. Francisco Foods, Inc.*, 276 F.3d 270, 288 (7th Cir. 2001), which merely found that an ALJD may

---

[10] Starbucks incorporates by reference the procedural history section of its memorandum in opposition to Petitioner's motion for reconsideration, where Starbucks thoroughly sets forth the chronology of docket entries. (Dkt. 87).

be "useful" to the court in assessing what the *Board* is likely to do on the merits of a charge – not what a district or appellate court is likely to or should do. Here, however, the administrative law judge should have deferred to this Court's prior rulings on the relevance and balance of competing interests regarding the subpoena requests it approved in the 10(j) Litigation.

> e.    **Costs and Delay Resulting From Petitioner's Separately-Initiated Administrative Case Against Starbucks**

As Petitioner notes, the "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

Even if primary jurisdiction applied as to warrant deference on a factual dispute here, the lengthy delay that would result from a stay of this case would have no positive outcome. In similar circumstances where the Second Circuit questioned whether primary jurisdiction warranted a stay, the court opined:

> At oral argument the parties estimated that the delay resulting from referring this case to the FCC would be from two to five years. Since the district court can conclude this matter far more expeditiously, a potential delay of even two years more than outweighs any benefit that might be achieved by having the FCC resolve this relatively simple factual dispute.

*National Communications Ass'n v. American Telephone & Telegraph Co.*, 46 F.3d 220, 225 (2d Cir. 1995). Without question, this Court can conclude this matter far more expeditiously by either enjoining the processing of the *Guess?* Complaint or dismissing the 10(j) petition because of Petitioner's interference with this Court's jurisdiction and Starbucks' ability to obtain discovery necessary to resolve the question before the Court regarding whether injunctive relief is "just and proper."

Petitioner argues, as if someone other than she initiated the 10(j) Litigation, "under the primary jurisdiction doctrine, courts may give parties reasonable opportunities to seek an

20

administrative ruling before further court proceedings." She cites *Reiter v. Cooper*, 507 U.S. 258, 268 (1993) for this proposition. There though, the court said it was spelling out the "actual procedure contemplated" where, if primary jurisdiction applies, district courts can order a stay of the case before it "as to give the plaintiff a reasonable opportunity within which to apply to the Commission [or agency] for a ruling . . . ." *Id.* at 269, n.3. In *Reiter*, a plaintiff who failed to exhaust administrative remedies was permitted to do so. The case does not sync with the law or facts present here. On the legal front, the Court does not require from the NLRB a "ruling as to the reasonableness" of the practice of ordering discovery. And on the facts, Petitioner here initiated the 10(j) Litigation then the prosecution of the *Guess?* Complaint. A world away from the plaintiff's circumstances in *Reiter*, Petitioner has no way to argue that she, on behalf of and as the agency, should get to exhaust the agency's processes in adjudicating the *Guess?* Complaint and "seek an administrative ruling before further court proceedings." (Dkt. 106, at 6).

C.     **The Court Should Deny Petitioner's Motion to Reconsider the Court's Discovery Order And Should Not Modify the Discovery Order in the Manner Specified by an NLRB Administrative Law Judge**

In the alternative to a stay, Petitioner moves (again) for reconsideration of the Court's discovery order. (Dkt. 106, at 8). This motion is a fruitless endeavor and a waste of the Court's time because the Union and the Subpoenaed Nonparties already told the Court they would not comply with the Court's discovery order in any manner and that all of the documents requested are either subject to union-representative privilege or are protected from discovery by the NLRA. (Dkts. 44, 79, 88). These have been the arguments for over a year, in what is supposed to be an expedited proceeding.

In short, Starbucks previously argued it is entitled to discovery, the Court agreed, the Court reviewed motions for reconsideration, and the Court again agreed Starbucks is entitled to discovery and that the discovery order stands. Since then, two developments occurred that could impact the

Court's ruling on Petitioner's second motion for reconsideration now before the Court: (1) the NLRB issued the ALJD in the *Guess?* Complaint, which attempts to wipe out nearly all of Starbucks' discovery; and, (2) the Second Circuit denied Petitioner's petition for a writ of injunction and the Union's petition for a writ of mandamus because they failed to pursue a "contempt-then-appeal" route, as required to reach the Second Circuit at this stage on a discovery order.

The Second Circuit indicated there are two paths for how this case might proceed next, and the Court's grant of a stay of the 10(j) Litigation was not one of them. Path one is that after considering all briefing, the Court orders the existing discovery order stands. (Case 22-3229, Dkt. 7, at 2). Petitioner and the Union would then need to take the "contempt-then-appeal" route. The Second Circuit would review the Court's discovery order for abuse of discretion—a high bar to clear. *See In re Agent Orange*, 517 F.3d 76, 102 (2d Cir. 2008) ("We review discovery rulings for abuse of discretion."). The Second Circuit may also consider substantive arguments on privilege or violations of the NLRA at that time, but that only comes after the "contempt-then-appeal route" is taken. *See In re Doe*, 964 F.2d 1325 (2d Cir. 1992) ("issues on appeal are whether we should recognize a psychotherapist-patient privilege and whether that privilege shields appellant from the civil contempt order."). Oddly, Petitioner made no effort to argue why the Court should not deny her latest motion for reconsideration outright and require pursuit of this route. Starbucks submits that if this case is not dismissed as urged in its motion (Dkt. 109), this is precisely what the Court should do. It should do so because the Court has thoroughly considered all arguments and, unless the Court issues a modified discovery order that is precisely conformed

to what discovery the ALJD says Starbucks gets, Petitioner will end up in the same place.[11] Summary denial of the motion for reconsideration is therefore warranted.

The Second Circuit's second path was for "Petitioners to seek reconsideration of the district court's discovery order" for a determination whether the ALJD warrants a "material alteration" of the discovery order. (Case 22-3229, Dkt. 7, at 2). Petitioner offered no argument on how exactly this Court should "reconsider its previous discovery order, and issue such an order consistent with the determinations of the Administrative Law Judge in his decision in NLRB Case No. 03-CA-304765." (Dkt. 106, at 8). Instead of arguing that the Court should reconsider specific portions of its discovery order, Petitioner gave the Court nothing more than a blanket statement arguing for reconsideration consistent with the ALJD. (Dkt. 106, at 8). She had no other argument.

These are the procedural paths the Second Circuit mentioned. Equally important are the questions its decision left unanswered. The Court should consider that the Second Circuit urged the Court to review the ALJD's legal conclusions but did not consider that in Section 10(j) cases, deference to the agency on discovery is not permitted because the determination on the "just and proper" element, by statute, is one only the Court can make. (Cases 22-3229, 23-120; Dkt. 79, at 1-2).

While Starbucks maintains that the Court should dismiss this case, if the Court does reconsider its discovery order, neither the ALJD nor the Second Circuit require the Court to do any more than outright deny the motions for reconsideration and hold the Subpoenaed Nonparties to the "contempt-then-appeal" route. Absent dismissal of this case, this is the appropriate path forward.

---

[11] The Subpoenaed Nonparties, also advancing a motion for reconsideration, did not concede they would provide responses to the two discovery requests the ALJD deemed permissible. This alone warrants an immediate contempt sanction.

**IV.    CONCLUSION**

For the foregoing reasons, Starbucks respectfully requests that the Court issue an order denying Petitioner's motion to stay and alternative motion to reconsider and modify the Court's discovery order to conform to the ALJD.


Dated: July 21, 2023                          /s/ *David A. Kadela*
                                              David A. Kadela (*Pro Hac Vice*)
                                              Jeffrey S. Hiller (*Pro Hac Vice*)
                                              LITTLER MENDELSON, P.C.
                                              41 South High Street, Suite 3250
                                              Columbus, OH 43215
                                              Tel: 614-463-4201
                                              Fax: 614-573-7475
                                              Email: dkadela@littler.com
                                                       jhiller@littler.com

                                              Jonathan Levine (*Pro Hac Vice*)
                                              Adam-Paul Tuzzo (*Pro Hac Vice*)
                                              LITTLER MENDELSON, P.C.
                                              111 East Kilbourn Ave., Suite 1000
                                              Milwaukee, WI 53202
                                              Tel: 414-291-5536
                                              Fax: 414-291-5526
                                              Email: jlevine@littler.com
                                                       atuzzo@littler.com

                                              Brittany L. Stepp (*Pro Hac Vice*)
                                              LITTLER MENDELSON, P.C.
                                              1601 Cherry Street, Suite 1400
                                              Philadelphia, PA 19102
                                              Tel: 267-402-3124
                                              Fax: 267-402-3131
                                              Email: bstepp@littler.com

                                              Sam P. Wiles (Bar No. 5759725)
                                              LITTLER MENDELSON, P.C.
                                              375 Woodcliff Drive, Suite 2D
                                              Fairport, NY 14450
                                              Tel: 585-203-3400
                                              Fax: 585-203-3414
                                              Email: swiles@littler.com

                                              *Attorneys for Respondent*
                                              *Starbucks Corporation*

## CERTIFICATE OF SERVICE

I certify that on July 21, 2023, I caused a copy of Starbucks Corporation's *Memorandum of Law in Opposition To Petitioner's Motion To Stay This Case And Petitioner's Alternative Motion For Reconsideration Of The Court's Discovery Order*, to be e-filed and served via email upon the following:

**Alicia Pender Stanley**
National Labor Relations Board
11A Clinton Avenue, Room 342
Albany, NY 12207
Email: *alicia.pender@nlrb.gov*

**Caroline V. Wolkoff**
National Labor Relations Board
11A Clinton Avenue, Room 342
Albany, NY 12207
Email: *cwolkoff@nlrb.gov*

**Jessica Lynn Cacaccio**
National Labor Relations Board
130 S. Elmwood Avenue, Suite 630
Buffalo, NY 14202
Email: *jessica.cacaccio@nlrb.gov*

**Linda M. Leslie**
National Labor Relations Board
130 S. Elmwood Avenue, Suite 630
Buffalo, NY 14202
Email: *linda.leslie@nlrb.gov*

**Ian H. Hayes**
Hayes Dolce
135 Delaware Avenue, Suite 502
Buffalo, NY 14202
Email: *ihayes@hayesdolce.com*

*/s/ David A. Kadela*
David A. Kadela