## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

**LINDA M. LESLIE, Regional Director of the
Third Region of the National Labor Relations
Board, for and on behalf of the NATIONAL
LABOR RELATIONS BOARD,**

        **Petitioner,**

  **v.**

**STARBUCKS CORPORATION,**

        **Respondent.**

**Case No. 1:22-cv-00478-JLS**

**REPLY TO PETITIONER'S RESPONSE TO MOTION TO LIFT ABEYANCE ON
MOTION FOR SANCTIONS AND PETITION FOR WRIT OF INJUNCTION
OR, IN THE ALTERNATIVE, MOTION TO DISMISS 10(J) PETITION**

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION AND SUMMARY OF ARGUMENTS ................................................ 1

II.    ARGUMENTS ................................................................................................ 2

    A.    The Court Should Issue the Relief Starbucks Has Requested Rather Than
Abide the Board's Request for Further Delay ........................................ 2

        1.    The Guess? Complaint and ALJD create legal uncertainty during
the 10(j) Litigation and deprive Starbucks of constitutional rights;
indefinite abeyance is inappropriate in an action seeking
extraordinary relief on an expedited basis .................................... 2

        2.    Starbucks is not required to accept the Board's trampling of its
constitutional rights ................................................................ 6

        3.    The Court should not allow the Board to redecide the Subpoenas'
lawfulness by re-weighing what the Court has already weighed and
interfering with the Court's exclusive jurisdiction under Section
10(j) ................................................................................... 11

III.    THE COURT SHOULD DENY THE BOARD'S AD NAUSEAM EFFORTS TO
OBTAIN NEW BITES AT THE RECONSIDERATION APPLE ................................ 12

IV.    THE ALL WRITS ACT CONFERS JURISDICTION TO GRANT THE
REQUESTED RELIEF .................................................................................. 14

    A.    Under Leedom v. Kyne, the Court May Enjoin the Board's Guess?
Complaint Because it Violates the Language of Section 10(j) Reserving to
the District Court the Jurisdiction to Decide the Petition .................................. 15

        1.    The Court has jurisdiction to stop the Board from action that
contravenes Section 10(j), and Starbucks will be harmed in the
interim by the Board's action ..................................................... 15

        2.    Appellate review of the Guess? Complaint will come too late to
stop the interim harm and legal uncertainty to Starbucks and
interference with this Court's jurisdiction ..................................... 19

    B.    Exhaustion Is Not Required .................................................................. 21

    C.    Starbucks Meets the Thunder Basin/Axon Factors ................................ 21

    D.    The Court Already Has Jurisdiction and May Use the All Writs Act to
Protect that Jurisdiction ...................................................................... 23

V.    CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bill Johnson's Rests., Inc. v. NLRB,*
  461 U.S. 731 (1983)..................................................................................1, 6, 9

*Board of Governors of Fed. Reserve Sys. v. MCorp Fin.,*
  502 U.S. 32 (1991)..............................................................................................17

*Boire v. Greyhound Corp.,*
  376 U.S. 473 (1964)............................................................................................14

*Bourne v. NLRB,*
  332 F.2d 47 (2d Cir.1964).....................................................................................5

*Chauffeurs, Teamsters & Helpers v. NLRB,*
  509 F.2d 490 (D.C. Cir. 1974)...............................................................................5

*Elgin v. Dep't of the Treasury,*
  567 U.S. 1 (2012)................................................................................................23

*Geske & Sons Inc. v. NLRB,*
  103 F.3d 1366 (7th Cir. 1997) .............................................................................19

*Ginx, Inc. v. Soho Alliance,*
  720 F. Supp. 2d 342 (S.D.N.Y. 2010)....................................................................7

*Goethe House v. NLRB,*
  869 F.2d 75 (2d Cir. 1989)..................................................................................20

*Grider v. Keystone Health Plan Cent., Inc.,*
  500 F.3d 322 (3d Cir. 2007)................................................................................24

*Hooks ex rel. NLRB v. Starbucks Corp.,*
  No. 2:23-cv-1000 (W.D. Wash. 2023)..................................................................13

*Lucas v. Gold Std. Baking, Inc.,*
  13-cv-1524, 2017 U.S. Dist. LEXIS 61841 (N.D. Ill. April 24, 2017)....................4

*Maritz Communs. Co.,*
  274 NLRB 200 (1985) ...........................................................................................4

*Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills,*
  701 F. Supp. 2d 568 (S.D.N.Y. Mar. 31, 2010)..................................................6, 7

*Myers v. Bethlehem Shipbuilding Corp.* ...................................................................14

*NLRB v. Gissel Packing Co.*,
    395 U.S. 575 (1969) ...............................................................................6, 7

*Poor ex rel. NLRB v. Starbucks Corporation*,
    1:22-cv-07255-ARR-JRC (2022)....................................................................14

*Rossmore House*,
    269 NLRB 1176 (1984) ......................................................................................5

*Smith v. SEC*,
    129 F.3d 356 (6th Cir. 1997) ..........................................................................24

*Szabo v. P\*I\*E Nationwide, Inc.*,
    878 F.2d 207 (7th Cir. 1989) ..........................................................................13

*Telecomms. Research & Action Ctr. v. FCC*,
    750 F.2d 70 (D.C. Cir. 1984)...........................................................................16

*United Nurses Ass'ns of Cal./Union of Health Care Professionals, NUHHCE, v.
    NLRB*,
    871 F.3d 767 (9th Cir. 2017) .......................................................................3, 10

*Wolff v. Selective Service Local Board*,
    372 F.2d 817 (2d Cir. 1967)............................................................................21

*Zipp v. Geske & Sons Inc.*,
    103 F.3d 1379 (7th Cir. 1997). Dkt. 117 ....................................................19, 20

**Statutes**

28 U.S.C. § 1651(a) ...........................................................................................24

NLRA...............................................................2, 9, 11, 15, 18, 20, 21, 23, 24

Section 10(a) of the NLRA ...........................................................................16, 22

Section 10(j) of the NLRA...................................1, 2, 4, 10, 11, 13, 15, 16, 17, 19, 21, 22, 23, 24

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)........................................................................................4

Rule 26(c)............................................................................................................7

Rule 81 and Section 10(j) ...................................................................................18

## I.      INTRODUCTION AND SUMMARY OF ARGUMENTS

The Board's *Guess?* Complaint interferes with Starbucks' First Amendment rights by punishing and deterring Starbucks's efforts to petition the Court to gather relevant evidence and speak in its own defense in litigation brought by the Board.  Depriving Starbucks of due process, the *Guess?* Complaint interferes with Starbucks's property rights by attempting to shift onto Starbucks the Subpoenaed Non-Parties' attorneys' fees for the 10(j) litigation and interfering with Starbucks's ability to defend against 10(j) remedies the Board seeks that include the expense of reopening a store that Starbucks no longer owns.  The Court's intervention is necessary because the Board's actions harm Starbucks in the interim and interfere with the Court's exclusive jurisdiction under Section 10(j). Appellate review will come too late to prevent and can never remedy those harms.

The Supreme Court has expressly warned the Board not "to usurp the traditional fact-finding function of the state-court jury or judge."  *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 745 (1983).  By pursuing the *Guess?* Complaint, the Board has done just that in the context of the Court's discovery orders – usurp them. The Board now invites Starbucks to raise its constitutional counterclaims before the Board, ignoring that it has neither the expertise to consider such issues nor the jurisdiction to rule on counterclaims.  The Board apparently sees no limit to the claims and issues over which it can seize control from this Court.

Contrary to the Board's arguments, Starbucks's petition for injunction does not ask this Court to conduct a plenary review to decide the merits of the *Guess?* Complaint and it does not depend on the All Writs Act for jurisdiction.  The Court already has jurisdiction under Section 10(j).  And the Court already decided that Starbucks's Subpoenas lawfully request relevant evidence and, in the process, balanced the parties' competing interests and relative burdens.  The

1

Court made and remade that decision after the Board and Workers United argued – repeatedly - that the requests violated the NLRA and employees' confidentiality interests. By pursuing the *Guess?* Complaint, it is the Board that has attempted to interfere with the Court's exclusive jurisdiction under Section 10(j), not the other way around. In the event of a conflict between 10(j) and 10(a), Congress provided a solution: the All Writs Act. This arms the Court with the power to push the Board's overreach back out of its courtroom. The Board has no such power.

We are now more than ten months removed from this Court's ordering compliance with Starbucks's Subpoenas. Petitioner and the Subpoenaed Non-Parties have run out of time. The Court should lift the abeyance on Starbucks's motion for sanctions, hold the Subpoenaed Non-Parties in contempt, enjoin the Board's and General Counsel's prosecution of the *Guess?* Complaint, and award Starbucks other relief as requested – or dismiss the 10(j) petition.

## II.    ARGUMENTS

### A.    The Court Should Issue the Relief Starbucks Has Requested Rather Than Abide the Board's Request for Further Delay

#### 1.    The *Guess?* Complaint and ALJD create legal uncertainty during the 10(j) Litigation and deprive Starbucks of constitutional rights; indefinite abeyance is inappropriate in an action seeking extraordinary relief on an expedited basis

The Board's argument that it was previously deemed to have "exclusive" authority to enforce the NLRA ignores that this concept was statutorily abrogated and limited in 1954 by, *inter alia*, Section 10(j) of the NLRA. The Board cites no authority for its proposition that it may police "civil discovery requests, regardless of the forum in which those requests are made." Dkt. 117 at 4. The Board's arguments continue to ignore the statutory language of 10(j) giving this Court exclusive authority to decide whether 10(j) relief is just and proper, language that necessarily includes whether discovery is or is not appropriate. This Court – not the Board – is armed with the All Writs Act and equitable powers to resolve any conflicts or Board overreach that intrudes

2

on the Court's jurisdiction.

The Board continues to plow ahead with its citations to its own decisions, like *Guess?*, to tell this Court what it must do.  The Board also cites distinguishable cases where, unlike here, Board law does control, such as an appeal from a decision under Section 10(b) (*Veritas*), or a Section 11 subpoena enforcement action (*United Nurses*) or a preempted state court matter initiated by an employer for a retaliatory purpose (*Pain Relief*).  Such decisions are inapplicable here for the reasons already stated in prior briefing and the Board provides no new reason the Court should yield to what the Board or its officials say about discovery in 10(j) litigation.  The Board offers no case to support application of *Guess?* or its predecessors to a 10(j) petition because no court has done so.  This Court alone, guided by the Federal Rules, controls the 10(j) proceeding, not the Board under additional, unconstitutional tests it tries to impose.

The Board now argues that *Guess?* does not conflict with the Federal Rules. Dkt. 117 at 6. But in its recent cross-exceptions brief to the Board in the *Guess?* Complaint proceedings, Petitioner's counsel admitted that *Guess?* contains additional factors and restrictions on relevant evidence beyond what the Federal Rules impose:  "Nor do the Federal Rules of Civil Procedure ensure adequate protections for employee interests in the absence of applying the *Guess?* framework. . . ."  Exhibit A (GC Mem. 9).[1]  Petitioner's counsel took the legal position that there are two different relevance standards:  "the district court is charged with determining relevance under the FRCP; the ALJ is charged with considering relevance within the context of the unfair labor practice proceeding under the *Guess? Inc*. framework."  Exhibit B (GC Ans. Br. N. 8).[2]  Petitioner's counsel also took the position that district court decisions "are not binding on the Board in deciding" whether Section 8(a)(1) was violated.  (*Id*. at n. 2). She is requesting an

---

[1] The complete document can be found at Starbucks Corporation | National Labor Relations Board (nlrb.gov).
[2] The complete document can be found at Starbucks Corporation | National Labor Relations Board (nlrb.gov).

administrative scheme that allows her to usurp the district court in Section 10(j) cases when she disagrees with its discovery orders, instead of having to appeal a contempt order to the Court of Appeals like every other litigant must do, and application of some relevance standard other than that provided in the Federal Rules.

The General Counsel's misconception that relevance is not gauged according to the Federal Rules and in the context of the litigation where the discovery is occurring – here, a 10(j) case - is contrary to even *Guess?* itself. There, the Board evaluated relevance under California Civil Procedure Code Sec. 2017 because the challenged discovery occurred during litigation in California, and it did so within the context of the litigation, not the unfair labor practice proceeding. 339 NLRB at 433, n. 7. *See also Lucas v. Gold Std. Baking, Inc.*, 13-cv-1524, 2017 U.S. Dist. LEXIS 61841 (N.D. Ill. April 24, 2017) (applying Fed. R. Civ. P. 26(b)(1) to determine relevance under *Guess?* and removing attorneys-eyes only designation for designated testimony).

The Board asserts that *Guess?* was decided by "[r]elying on earlier Board precedent," and purports to cite such precedent. Dkt. 117 at 4, n. 3.  However, the Board omits the case that was the basis for the relevance test in *Guess?*. In *Maritz Communs. Co.,* 274 NLRB 200 (1985), the ALJ considered relevance as part of a totality of the circumstances test "to assess the scope of the interrogation in order to determine whether it may fairly be regarded as arguably relevant to the issues or the needs of trial preparation in the district court proceeding." *Id*. at 212. Applying that test, the *Maritz* Board dismissed the complaint because the discovery at issue fell within the scope of Fed. R. Civ. P. 26(b)(1), and further held that discovery abuse in civil litigation should be addressed through a protective order.  *Id*. at 201, n. 10, 12.

Even if *Guess?* did apply to Starbucks' Subpoenas in the 10(j) proceeding (which Starbucks denies), the requests were relevant, made for a lawful purpose, and the employees'

4

confidentiality interests were outweighed by the need for discovery, as this Court already held several times.  The Board and courts alike have held that not all questioning of employees regarding their union activities or implicating Section 7 rights is impermissible.  *Rossmore House*, 269 NLRB 1176, 1177 (1984) ("It is well established that interrogation of employees is not illegal *per se*. Section 8(a)(1) of the Act prohibits employers only from activity which in some manner tends to restrain, coerce or interfere with employee rights. To fall within the ambit of § 8(a)(1), either the words themselves or the context in which they are used must suggest an element of coercion or interference."); *see also Bourne v. NLRB*, 332 F.2d 47, 48 (2d Cir.1964) ("Under our decisions interrogation, not itself threatening, is not held to be an unfair labor practice unless it meets certain fairly severe standards."); *Chauffeurs, Teamsters & Helpers v. NLRB*, 509 F.2d 490, n. 15 (D.C. Cir. 1974).  Even *Guess?* noted that questioning in a legal proceeding like a deposition may be permissible, particularly if the questions are relevant.  The majority in *Guess?* presumed (and the ALJ and dissent expressly found, citing applicable rules of civil procedure) that the discovery requests were relevant and lawful, noting that "employees' confidentiality interests may not be the same" in a legal proceeding "as they would be during an organizing campaign," and adding that the same questions asked "outside of" a legal proceeding would violate the Act. *Guess?, Inc*., 339 NLRB 432, 434-35 (2003).

Here, the Court's discovery orders expressly noted that it had weighed the parties' competing interests in reaching its conclusions, including the Section 7 and confidentiality interests the Board and Workers United raised in their briefs:

> This Court already has carefully balanced – both explicitly and implicitly – all of the competing fairness and confidentiality concerns Petitioner and Respondent raise here.  . . . Even balancing these competing concerns anew based on the parties' current papers and cited authority, the Court denies Petitioner's motion.  Moreover, a contrary result would shield from disclosure, for example, communications that may directly bear on the Section 10(j) merits issues, such as a chilling effect arising

5

from a person, entity, or source other than Respondent.  The law does not justify non-disclosure of such information.

Dkt. 89 at p. 2.  The Board's disagreement with the weight the Court gave each factor and the outcome of its discovery orders does not justify the attempt to relitigate and nullify those determinations and create conflicting legal obligations.  The Board should have deferred to and adopted the Court's prior rulings on these issues and now must be enjoined from proceeding with the *Guess?* Complaint to avoid interfering with the Court's jurisdiction.

> ### 2.   Starbucks is not required to accept the Board's trampling of its constitutional rights

The Board makes the sweeping claim that employer First Amendment rights, including any speech that the Board deems "coercive," are not entitled to protection and cannot outweigh employee rights.  Dkt. 117 at 6.  This is not the law, nor does it mean Starbucks' rights must yield here.  The Board's simplistic argument exposes a viewpoint that underlies the core problem with the Board's track record under the third prong of its *Guess?* test:  on the Board's scales, employer rights never outweigh employee rights.  It has been used as a *de facto* prohibition on employer speech in lawsuits, and now is being used to punish employers for speaking in their own defense, notwithstanding courts' repeated efforts to caution the Board about its limitations in the area of the First Amendment.

The Board cites *NLRB v. Gissel Packing Co*., 395 U.S. 575, 617 (1969), but errs by lumping together all employer "First Amendment rights." Not all First Amendment rights are entitled to the same degree of protection.  *See Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 701 F. Supp. 2d 568, 593 (S.D.N.Y. Mar. 31, 2010), citing *BE & K Constr. Co. v. NLRB*., 536 U.S. 516, 530-33 (2002); *Bill Johnson's Rests., Inc. v. Nat'l Labor Relations Bd*., 461 U.S. 731, 743 (1983).  The Board improperly attempts to expand the Supreme Court's holding in *Gissel* to cover all First

Amendment rights equally.  But *Gissel* was careful to "note that an employer's free speech right to communicate his views to his employees is firmly established, and cannot be infringed by a union or the Board . . . so long as such expression contains 'no threat of reprisal or force or promise of benefit.'"  *Id.*, citing 29 U.S.C. § 158(c) (Section 8(c) of the NLRA).  And *Gissel* expressly limited its holding to the situation "[w]here an employer's anti-union efforts consist of *speech alone*" to its employees in the context of organizing – not petitioning the government in its own defense.  *Id.*  (emphasis added).  Nor does *Gissel* address due process rights under the Fifth Amendment, the infringement of which (here and in the *Guess?* Complaint) is fully briefed in Starbucks' opening memorandum.  Dkt. 109.

The Board cites no case holding that alleged risks to Section 7 or confidentiality rights outweigh an employer's constitutional right to petition, much less its right to due process. Petitioning is given elevated status, particularly in the present situation where the speech is in the context of defending oneself in court against government prosecution for alleged illegal conduct. On its own, the "right to petition the government is essentially an absolute privilege because it is 'core political speech'" and a party's right to file a lawsuit "without liability is unimpeachable unless the suit is a 'sham,' meaning 'objectively baseless.'" *Ginx, Inc. v. Soho Alliance*, 720 F. Supp. 2d 342, 363-64 (S.D.N.Y. 2010).

"[P]arties' competing constitutional and statutory rights require courts to balance carefully the interests at stake." *Mosdos Chofetz,* 701 F. Supp. 2d at 597.  Here, Instruction 26 in the Subpoenas, the Court's discovery orders, and the availability of a protective order under Rule 26(c) (as offered in the Subpoenas) already solved this problem by giving employees sufficient protections.  However, the Board and Subpoenaed Non-Parties simply refuse to proceed along the path forward that the Court charted, instead choosing a path of defying, seeking to overturn, and

attempting to nullify the Court's orders. The Board has failed to establish that Starbucks' Subpoenas requesting relevant evidence to defend itself in the 10(j) litigation contained an unlawful "threat of reprisal or force or promise of benefit," or that Starbucks had an "objective that is illegal under federal law." The Court already carefully considered the arguments, weighed the competing interests, and ruled - repeatedly. Dkt. 49, 57, 89.

The Board also cites cases regarding employer requests during "ongoing" union organizing campaigns for unredacted employee authorization cards to support its argument that Starbucks's requests threaten to expose individual employee union sentiments and that Starbucks's First Amendment rights should yield to employee confidentiality interests. Dkt. 117 at 7. However, Starbucks' Subpoenas did not expressly request any authorization card. Further, the last petition, election, certification, Union loss, or withdrawal in the Buffalo and Rochester stores at issue was in July 2022, meaning there was no ongoing campaign in the area when the Subpoenas were issued in September 2022. But the Board's protests about the dangers of Starbucks' requests exposing individual employees' union sentiments ring hollow in light of its own actions. Petitioner itself filed numerous employee authorization cards on PACER in this case, without restriction, without a protective order, and without redacting a single name. *See, e.g.*, Dkt. 4-21, Exh. 12 at pp. 1-32. Regardless, Starbucks' requests for documents on changes in union sentiment (e.g., Requests 1 a. and c.) expressly note that the documents Starbucks seeks are ones containing "no names" and, thus, if they include partner names, the names may be redacted – a position the Court's discovery order incorporates where appropriate for other requests. Thus, while Starbucks's Subpoenas would not identify the previously undisclosed union sentiments of any individual, the same cannot be said for the Board's own public filings, which pose a far bigger threat to the confidentiality of

employee union sentiments.[3]

The Board argues that the *Noerr-Pennington* doctrine does not protect speech any time it allegedly has an "illegal objective," citing *Bill Johnson's*, 461 U.S. at 737 n. 5. The Board reads the dicta in footnote 5 far too broadly. There, the Supreme Court explained that federal courts are not prohibited from dismissing a lawsuit that is either preempted by federal law or baseless (like a union's lawsuit that was properly dismissed because the relief it sought was expressly prohibited by the NLRA) just because the complaint is also protected speech. *Id.* Indeed, *Bill Johnson's* went on to hold that, "[c]onsidering the First Amendment right of access to the courts . . . the filing of a well-founded lawsuit may not be enjoined as an unfair labor practice, even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by the Act." *Id.* at 742-43. "[A] baseless lawsuit" that is "improperly motivated" and "lacking a reasonable basis," however, is not shielded from Board action. *Id.* at 744-45. But the Board's inquiry must stop if the lawsuit raises a genuine issue of material fact or the legal issues are not "plainly foreclosed as a matter of law" or "frivolous." *Id.* at 745-46. The Supreme Court expressly warned the Board not "to usurp the traditional fact-finding function of the state-court jury or judge." *Id.* at 745. That is precisely what the Board has done to this Court's discovery orders by pursuing Starbucks in the *Guess?* Complaint and usurping this Court's powers.

The Board also tries to avoid the *Noerr-Pennington* protection of Starbucks' speech by

---

[3] The same is true of the unredacted employee emails purporting to show "chill" that Petitioner produced at the administrative hearing, exposing the names of employees who never voluntarily injected themselves into this litigation (unlike the Subpoena recipients). GC Ex. 160. This practice of using what benefits the government's position but withholding exculpatory documents under the guise of protecting employee rights is precisely what the Court warned about when it commented at the September 23, 2022 hearing: "Let's say there are a hundred documents and you use 50 of them to support your 10(j) petition, and the other 50 are bad for you, but you hang on to them and not produce them, how is that fair?" Dkt. 51, Tr. 19.

arguing that the Subpoenas are not "direct petitioning," citing a Ninth Circuit case (*United Nurses*) that discussed application of the *Noerr-Pennington* doctrine in the labor law context to "employer lawsuits." Dkt. 117 at 8.   However, *United Nurses Ass'ns of Cal./Union of Health Care Professionals, NUHHCE, v. NLRB*, 871 F.3d 767, 787-88 (9th Cir. 2017) concerned administrative subpoenas issued under Section 11 of the Act. The holding in that case was reached because the NLRB's involvement in the subpoena process is purely "ministerial" (i.e., the Regional Director was required by law to issue them) and the employer was not seeking to influence any government agency. That is distinguishable from the present case, where the subpoenas were issued as part of Article III litigation, which the law recognizes as direct petitioning, were approved by the Court, and were issued as part of Starbucks' defense in a Section 10(j) case brought by the NLRB.

The Board does not bother to address or try to distinguish the numerous cases Starbucks cited – including from the Ninth Circuit and courts in this Circuit - holding that discovery (including subpoenas) is protected direct petitioning. Dkt. 109 at 24-27.   Starbucks obtained the Subpoenas by directly petitioning the Court for expedited discovery and for enforcement of the Subpoenas through its opposition to the motions to quash and its own motion to compel, which occurred after the Section 10(j) petition was filed.   The Subpoenas were issued in accordance with the Court's discovery order, which means that the government's involvement was anything but "purely ministerial." Starbucks' purpose for issuing the Subpoenas was to attempt to convince the Court through the production of relevant evidence to dismiss a government agency's petition.   All of this describes protected, direct petitioning under *Noerr-Pennington*, with which the Board is impermissibly interfering. The *Guess?* Complaint burdens this petitioning by imposing liability on Starbucks for availing itself of court ordered discovery of relevant evidence needed to defend itself in a lawsuit the government initiated. The protections of the First Amendment are implicated

10

because the Section 10(j) case is ongoing and, therefore, the complaint and ALJD restrain access

to the court's processes.  The Subpoenas do not fall outside the First Amendment (i.e., they are not

a sham and do not have an illegal purpose). As this Court held, the Subpoenas constitute a

reasonable request for relevant discovery as part of Starbucks's defense. Therefore, the NLRA

cannot be construed to prohibit them.

> **3.     The Court should not allow the Board to redecide the Subpoenas'
> lawfulness by re-weighing what the Court has already weighed and
> interfering with the Court's exclusive jurisdiction under Section 10(j)**

While the Board pays lip service to "not seeking to usurp the Court's authority to interpret

and apply the Federal Rules of Civil Procedure to the discovery" in the 10(j) case, its actions bely

its words, as set forth in Starbucks's opening memorandum.  Dkt. 109.

Petitioner waited 2.5 months to move the Board to resolve the *Guess?* case on an

"expedited" basis.  A Board ruling (even if it grants the motion to expedite) on the *Guess?*

Complaint would not resolve the issue.  It would be subject to appeal under Section 10(e) or (f).

As noted in Starbucks' opposition to the Board's motion to stay, the Board's request to wait for

the Board and any appeals simply kicks the can down the road indefinitely. The Board's advocacy

for that approach stands in stark contrast to the very nature of the instant petition, i.e., one for

extraordinary relief on an expedited basis, and would leave the parties and non-parties in legal

limbo, with witnesses potentially scattering and memories fading.  The Board decision in the

*Guess?* Complaint and eventual appellate review of that Board decision will not cover Starbucks'

counterclaims or the harms occurring in the 10(j) case nor would a decision arrive in time to

remedy them. The correct path forward is to lift the abeyance on Starbucks' motion for sanctions,

hold the Subpoenaed Non-Parties in contempt, enjoin the Board's *Guess?* Complaint to preserve

this Court's jurisdiction and stop the Board and General Counsel from interfering with Starbucks's

rights – or, in the alternative, dismiss the 10(j) petition.

### III.   THE COURT SHOULD DENY THE BOARD'S *AD NAUSEAM* EFFORTS TO OBTAIN NEW BITES AT THE RECONSIDERATION APPLE

The Board rehashes the same arguments that it already asserted and that the Court previously rejected requesting reconsideration of the Court's discovery orders.  The only new glosses are the Board's attempt to use the ALJD in the merits case, the ALJD in the *Guess?* Complaint case, and its baseless claim of legal error by this Court.  Dkt. 117 at 9-12.

The intervening ALJD by ALJ Rosas, which made recommended findings about the merits of unfair labor practice allegations but did not (and could not) rule on whether interim injunctive relief is "just and proper," does not merit reconsideration of the Court's discovery rulings.  All of the requests the Court's discovery orders permitted related in part or in whole to the "just and proper" factor.

The Board also asks the Court to reconsider its orders by "consider[ing] the public interest and confidentiality interests."  Dkt. 117 at 10.  But the Court already did that at the September 2022 hearings, in its ensuing discovery order, in its order denying the Union's motion for reconsideration, and in its order denying the Board's prior motion for reconsideration.  ALJ Muhl's decision in the *Guess?* Complaint (necessitated, as he wrote, by his duty to follow extant Board law as he interpreted it) does not merit a different result on the discovery orders for the reasons already articulated by Starbucks in its response opposing Workers United's motion to reconsider.

The Board baselessly accuses the Court of "clear legal error" "in not considering in its discovery analysis the burden on employees' statutory rights, governmental and public interests" and "confusing these important considerations with a 'union-employee' privilege.'"  Dkt. 117 at 10.  As noted, the Court considered these issues – after full briefing by the Board and Union (Dkt. 89 at p. 2) - and addressed and rejected the privilege issue separately (Dkt. 49, 57).

The Board also makes the preposterous argument that "expedited discovery 'is not the norm'" and therefore should not have been allowed by the Court. Dkt. 117 at 10-11. However, the Board's own citations prove that *full* discovery is the "norm," and that expedited discovery is appropriate in injunction proceedings, like this one. *Id.*, citing *Mullane v. Almon*, 339 F.R.D. 659, 663 (N.D. Fla. 2021) ("Because of the expedited nature of injunctive proceedings, expedited discovery is more likely to be appropriate when a plaintiff is seeking a preliminary injunction."), citing *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996).[4]

Lastly, the Board critiques the reasons underlying the requests and the Court's discovery decisions. The Board argues that "[p]ublicizing a labor dispute" is protected, but this has no bearing on whether Starbucks's requests are relevant. Dkt. 117 at 11. Further, the Court has already considered and correctly ruled upon the relevance of Starbucks's requests to its defense on the source of the alleged "chill," which relates directly to the Board's allegation that the source was Starbucks's alleged violations.[5]

---

[4] The Board made the same flawed argument, with the same citations, in a motion in a new Section 10(j) petition against Starbucks filed recently in Seattle, challenging its decision to create a three-store Heritage Market and staffing of those stores. *Hooks ex rel. NLRB v. Starbucks Corp.*, No. 2:23-cv-1000 (W.D. Wash. 2023) (Dkt. 11 at 6).

[5] The Board accuses Starbucks of engaging in "fanciful speculation" (Dkt. 117 at 11) about its 10(j) defense that the Union's actions in the media may have generated any alleged chill. This is not speculation. The transcript the Board attaches to its response, Dkt. 117-4, at page 28, identifies that a Union organizing partner gave sworn testimony that the Union trains partners on what to say to the media. Further, there is evidence in the administrative case in Buffalo that partners and Union organizers were using social media and the press to mischaracterize Starbucks' actions, and in Phoenix partners admitted to fabricating their prior sworn testimony about alleged violations. Remarkably, the Board itself engages in fanciful speculation on the same page that it accuses Starbucks of speculation. *See* Dkt. 117 at 11-12 & n. 9 (speculating about hypothetical reasons that disaffection with the union "could . . . have" occurred "if employees believed" a hypothetical set of facts). Discovery will help answer these questions about the source of alleged chill, without the need for either side to speculate. The Board is also wrong by asserting that the source of chill is not relevant. In *Szabo v. P*I*E Nationwide, Inc.*, 878 F.2d 207, 210 (7th Cir. 1989), the court recognized the relevance of evidence on the source of alleged chill. That the *Szabo* court recognized the importance of such evidence even when there was only "a single allegation" of

## IV.    THE ALL WRITS ACT CONFERS JURISDICTION TO GRANT THE REQUESTED RELIEF

The Board has filed eight separate 10(j) petitions against Starbucks in the past 18 months in search of some forum that will buy the General Counsel's request for nationwide injunctive relief.  In its filings, the Board has recycled its arguments and tactics in a coordinated attack on the Company.  Thus, rather than stay this case, the Court should address the issues raised in the AWA petition because those issues are being repeated and are likely to continue to be repeated between the parties but evade review if not addressed now.[6]

Starbucks is mindful of the Supreme Court's outline of jurisdiction noted in *Myers v. Bethlehem Shipbuilding Corp.*, as well as the Supreme Court's caution that "[t]he [*Leedom v.] Kyne* exception is a narrow one, not to be extended to permit plenary district court review of Board orders . . . whenever . . . an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law. Judicial review in such a situation has been limited by Congress to the courts of appeal . . . ."  *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964).  But these cases did not involve unconstitutional Board actions that interfered with an ongoing 10(j) proceeding (indeed, 10(j) did not yet exist when *Myers* was decided).

Contrary to the Board's argument that district courts do not have general jurisdiction in a 10(j) case (Dkt. 117 at 12), Starbucks' AWA petition does not ask this Court to conduct plenary

---

employee discharge actually supports the need for such discovery here.  Starbucks needs access to evidence regarding whether, where, when, and why employees chose not to support the union, changed their minds, or were allegedly chilled.

[6] The Board also recently gave notice to Starbucks that it intends to pursue yet another 10(j) subpoena complaint arising out of 10(j) litigation in *Poor ex rel. NLRB v. Starbucks Corporation*, 1:22-cv-07255-ARR-JRC (2022).  There, the Court rejected nationwide remedies due to the limited scope of the facts (one terminated employee at one store, terminated long after the union election), granted Starbucks's request for discovery, and Starbucks issued subpoenas.

review of the *Guess?* Complaint.  The Court already has jurisdiction under Section 10(j); it already decided that Starbucks' Subpoenas request relevant information and are lawful; and it balanced the parties' competing interests and the expediency of a 10(j) case.  As said before, the Court did so after the Board and Workers United argued – repeatedly - that the requests violated the NLRA and employees' confidentiality interests. Again, it is the Board that has attempted to interfere with the Court's exclusive jurisdiction under Section 10(j), not the other way around.  And contrary to the Board's arguments, the Court's intervention is necessary because the Board's action harms Starbucks in the interim and interferes with the Court's exclusive jurisdiction under Section 10(j).  And to repeat once more, appellate review will come too late to prevent those harms.

A. **Under *Leedom v. Kyne*, the Court May Enjoin the Board's *Guess?* Complaint Because it Violates the Language of Section 10(j) Reserving to the District Court the Jurisdiction to Decide the Petition**

The Board's action in the *Guess?* Complaint violates Section 10(j)'s express mandate that only the "United States district court" may determine whether interim injunctive relief is "just and proper," fashion any remedies and, consistent with those responsibilities, determine whether and what discovery is appropriate.  The Board's suggestion that Starbucks may obtain "meaningful and adequate" judicial review in the appellate courts on the propriety of the ALJD and any *Guess?* Complaint decision by the Board (Dkt. 117 at 12, 16-18) ignores that such review will come too late to stop and can never remedy the interference in the ongoing 10(j) litigation, the harm to Starbucks' rights, and the legal uncertainty under which Starbucks and the Subpoenaed Non-Parties would have to operate until such time.

1. **The Court has jurisdiction to stop the Board from action that contravenes Section 10(j), and Starbucks will be harmed in the interim by the Board's action**

The Board argues that there is no clear statutory command that gives district courts

exclusive jurisdiction "to determine if interim relief is 'just and proper.'" Dkt. 117 at 16.   To support this argument, the Board cites Section 10(a), which gives it jurisdiction to prevent unfair labor practices without states seeking to regulate the same area, and Section 3(d), which provides that the General Counsel has the Board's authority to decide whether to investigate a charge or issue a complaint. However, these provisions do not insulate the Board from injunctive relief to stop the Board from acting in violation of Section 10(j) nor from violating an employer's constitutional rights in a way that cannot be remedied by ordinary appellate review of an unfair labor practice complaint.   They merely prevent the court from requiring the General Counsel to investigate a charge or initiate a complaint and provide the starting point for unfair labor practice litigation, while Sections 10(e) and (f) provide the next step for review of Board decisions.   None of this impacts the Court's jurisdiction under Section 10(j) or its powers under the All Writs Act.

Tellingly, the Board argues that Section 10(j) does not limit the Board's power and that the Court's jurisdiction over 10(j) petitions is not exclusive because Section 10(j) does not use the word "exclusive." The Board cites Section 10(e)'s use of "exclusive" as proof that Congress knew where to use "exclusive" when it intended jurisdiction to be such.  Dkt. 117 at 16.  Evidently, the Board's same logic does not dissuade the Board from declaring that it has "primary" (or "exclusive") jurisdiction under Section 10(a), despite the absence of the words "primary" and "exclusive" in that provision, too.   Regardless, the Board's own cites are again the undoing of its arguments. *See Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("It is well settled that even where Congress has not expressly stated that statutory jurisdiction is 'exclusive,' as it has here with regard to final FCC actions, a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute."), cited by the Board at Dkt. 117 at 21-22.  Section 10(j) expressly identifies the only government

entity that has the power to decide 10(j) petitions: "United States district court[s]" - not the Board.

The Board also appears to avoid the inconvenient holding of *Board of Governors of Fed. Reserve Sys. v. MCorp Fin.*, 502 U.S. 32, 44 (1991).  There, the Supreme Court held:

> In *Kyne*, the NLRB contended that a statutory provision that provided for judicial review implied, by its silence, a preclusion of review of the contested determination.  By contrast, in FISA Congress has spoken clearly and directly: "No court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any [Board] notice or order under this section." 12 U. S. C. § 1818(i)(1) (1988 ed., Supp. II) (emphasis added).  In this way as well, this litigation differs from *Kyne*.
>
> Viewed in this way, *Kyne* stands for the familiar proposition that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967). As we have explained, however, in this case the statute provides us with clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the Board's ongoing administrative proceedings.

*Id*.  Applied here, Section 10 of the NLRA does not provide "clear and convincing evidence" of Congressional intent to deny the Court jurisdiction to review and enjoin the Board's *Guess*? Complaint to the extent it interferes with the 10(j) proceeding.  There is no provision (like the one in FISA) that states that "no court shall have jurisdiction to affect by injunction" any Board action. To the contrary, in 1954 when Congress enacted Section 10(j) (at which time the AWA already existed), Congress expressly provided the "district court" with exclusive jurisdiction over 10(j) litigation.  This necessarily includes the power to enjoin the litigants from engaging in acts that interfere with a 10(j) case and district courts' jurisdiction.  The language of 10(a) regarding the power of the Board to "prevent" unfair labor practices not being "affected by any other means of adjustment or prevention" (which prevents state regulation) does not impede the Court from acting under 10(j) nor from protecting its own jurisdiction under the All Writs Act.  A contrary reading

17

would render the language of 10(j) meaningless, violating yet another canon of statutory construction, and ignoring decisions in *Kyne*, *McCulloch*, and other cases restraining Board action.

The Board also argues that "Congress . . . knew how to make clear" the delineation between which branch of government has which powers. Dkt. 117 at 16. This is evident in 10(j)'s language reserving authority to this Court. However, what Congress evidently did not intend was a Board that views 10(j) proceedings as the Board's turf, not a district court's. (Nor did it intend, when writing the Federal Rules, for Board law to apply in 10(j) proceedings, as it made clear in Rule 81 and Section 10(j).) In the event of a conflict between 10(j) and 10(a), Congress did provide a solution: the All Writs Act. This arms the Court with the power to push the Board's over-reach back out of its courtroom. The Board has no such power.

Contrary to the Board's suggestion, constitutional harm is not necessary for *Leedom v. Kyne* to apply (and, indeed, no constitutional harm was alleged in *Kyne* itself). Harm from Board action that exceeds the language of the NLRA and that cannot be remedied by normal appellate review suffices. The Board appears to conflate *Kyne* with *Fay v. Douds*, which provides a separate path a district court may take to enjoin the Board in the event of constitutional harm.

Regardless, Starbucks has shown several forms of harm from the Board's action here, including constitutional harms. The *Guess?* Complaint interferes with Starbucks' right to petition and its speech, as already discussed. Further, the Board's *Guess?* Complaint proceeding deprives Starbucks of due process by, among other things, interfering with its property rights, as reflected in the ALJD sanctions, including attorneys' fees for the 10(j) litigation, and the proceeding's adverse effect on Starbucks' ability to defend against the remedies sought in the 10(j) petition here, which include the expense of reopening a store that Starbucks no longer owns.

18

2.  **Appellate review of the *Guess?* Complaint will come too late to stop the interim harm and legal uncertainty to Starbucks and interference with this Court's jurisdiction**

None of the cases that the Board cites finding *Leedom v. Kyne* to be inapplicable involved a Board action directly interfering with an ongoing 10(j) proceeding, where appellate review would not resolve the interference before any harm would occur.  Nor do the cited cases involve a pattern of Board actions likely to be repeated between the parties but that would evade review.  Instead, the Board's cites involved straightforward determinations that *Kyne* was inapplicable because the Board action did not violate any particular statutory language, and no harm was alleged or the harm could be remedied upon review of the Board action through regular channels.  Dkt. 117 at 12-14, 17-18.

The Board relies on two cases to argue that the *Leedom v. Kyne* test precludes intervention here.  First, it cites *Zipp v. Geske & Sons Inc.*, 103 F.3d 1379, 1384 (7th Cir. 1997).  Dkt. 117 at 12, 17.  It initially mischaracterizes *Zipp* as "dismissing for lack of subject matter jurisdiction counterclaims raised in Section 10(j) or 10(l) injunction proceedings."  Dkt. 117 at 12.  It then doubles down, repeating this misrepresentation at Dkt. 117 at 17.[7]  But *Zipp* was not a 10(j) (nor a 10(l)) case.  Instead, the employer had filed a baseless lawsuit against the union in state court and sought an injunction against the union there, as explained by the Seventh Circuit.  103 F.3d at 1381.  An Illinois appellate court stayed the state court action, then later affirmed the denial of the injunction motion.  *Id*.  Separately, the union filed a ULP charge and the Board filed a complaint regarding the lawsuit. An ALJ found that the employer's lawsuit was both *baseless* and retaliatory.  *Id*. at 1382.  As explained in *Zipp*, *id.*, and its companion case, *Geske & Sons Inc. v. NLRB*, 103

---

[7] The Board cites *Zipp* as "103 F.3d at 1981" (which is not *Zipp*), presumably intending to refer to "1381."  Dkt. 117 at 17.

19

F.3d 1366, 1368 (7th Cir. 1997), the Board ordered the employer to dismiss the state court lawsuit, the employer asked the Seventh Circuit to deny enforcement and the Board asked the Seventh Circuit to enforce the Board's order.  Further, the employer "sought an injunction from the district court prohibiting the [NLRB] from pursuing unfair labor practice charges against" it. *Zipp*, 103 F.3d at 1380-81. As the Seventh Circuit held, "[n]either [of the employer's] counterclaim[s] alleged a plain constitutional violation, nor did either counterclaim allege that the NLRB violated a 'plain and unambiguous statutory command or prohibition'" under the *Leedom v. Kyne* test. Instead, the appellate court merely needed to review the Board's decision and interpret the NLRA via Sections 10(e) and (f).  *Zipp*, 103 F.3d at 1384.  Thus, *Zipp* was merely an enforcement action in which *Leedom v. Kyne* did not apply, not a 10(j).  It has no bearing here.

Similarly, the Board's citation to *Goethe House v. NLRB*, 869 F.2d 75, 78-80 (2d Cir. 1989) is misplaced.  Dkt. 117 at 17-18.  *Goethe House* was an appeal from a district court order enjoining the NLRB from conducting an election at an employer that was not covered by the NLRA.  It was not a 10(j) case, either.  *Id.*  Like *Zipp*, it rejected application of *Leedom v. Kyne* because "Goethe House does not argue that the Board violated 'a specific prohibition in the [NLRA].'"  *Id.* at 78. Further, the employer could obtain review from the appellate court without intervening harm other than participation in a representation proceeding, which appellate route provided adequate relief. *Id.*  But in *Goethe House* and *Zipp*, and unlike here, there was neither intervening deprivation of constitutional rights causing significant harm nor interference with a district court's jurisdiction and prior rulings in an ongoing 10(j) that could not be remedied by later appellate review of the Board proceeding under Section 10(e) or (f).

As noted in Starbucks' opening brief, the present case presents a new problem: the Board exceeding its statutory authority and undermining an ongoing 10(j) proceeding, in order to

interfere with and nullify a prior order of the district court.  Thus, Starbucks has shown that the Board has acted in excess of its powers, contrary to the mandates of Section 10(j), and that, barring review by this Court, Starbucks will be harmed (here, by deprivation of its constitutional rights, and by the legal uncertainty created by its interference with the Court's jurisdiction), meeting the requirements of *Leedom v. Kyne*.

### B.    Exhaustion Is Not Required

As Starbucks noted in its opening brief (Dkt. 109 at 34-35), waiting for exhaustion of administrative remedies of the *Guess?* Complaint would serve no purpose here.  *Wolff v. Selective Service Local Board*, 372 F.2d 817, 825-826 (2d Cir. 1967) ("When there is nothing to be gained from the exhaustion of administrative remedies and the harm from the continued existence of the administrative ruling is great, the courts have not been reluctant to discard this doctrine.") (citing *Kyne*).  The Board mischaracterizes this argument as Starbucks claiming that 10(e) and (f) of the NLRA "are optional" if a district court wishes to "resolv[e] the [ULP} dispute itself." Dkt. 117 at 18. The Board misses the point.  Again, no expertise of the Board is required for resolution of the constitutional issues or whether injunctive relief is just and proper and what discovery is needed, and judicial time will not be conserved by administrative exhaustion (quite the opposite if the 10(j) must be relitigated).  The *Guess?* Complaint will continue to interfere with the 10(j) litigation here (and in other cases) if not enjoined.

### C.    Starbucks Meets the *Thunder Basin/Axon* Factors

The Board erroneously argues that the Court's intervention under *Axon/Thunder Basin* would not be appropriate because "Starbucks may obtain meaningful judicial review of its constitutional claims by raising them in the Board proceeding and pressing them before a court of appeals on review."  Dkt. 117 at 19. But the Board does not have either special expertise in or

jurisdiction over constitutional claims – its administrative function is limited statutorily to administering unfair labor practice cases under Section 10(a) of the NLRA.  And, again, the Board's argument disregards that meaningful review will be lost by awaiting eventual appellate review when the 10(j) action is pending (and when the Board continues to follow this repetitive course of conduct of filing 10(j) actions and then filing *Guess?* complaints to punish and deter Starbucks's attempts to gather relevant evidence to defend itself). *See* Dkt. 109 at 28-30.  In any event, the Board's review and appellate review of the *Guess?* Complaint will not address Starbucks's interim harms in the ongoing 10(j) proceeding.

The Board's disregard for the legal uncertainty it has created – not only for Starbucks, but also for the Subpoenaed Non-Parties – is manifest in its dismissive arguments.  Dkt. 117 at 19. But the Board is wrong when it argues that the ALJD's remedies (such as attorneys' fee-shifting) are not sufficiently serious to trigger the need for protection.  That is particularly true here due to the procedural posture, where Starbucks must – either abide by the ALJD immediately, withdraw its Subpoenas and motions, gather none of the evidence permitted and deemed relevant by the Court related to "just and proper," and thereby stand defenseless in the ongoing 10(j) litigation – or incur and accrue expensive attorneys' fees and other remedies.  This is precisely the type of case that calls for immediate resolution because later judicial review will come too late.

Under the second factor, the determination of what discovery is relevant to "just and proper" is "wholly collateral" to the NLRA's review provisions.  First, Section 10(j) expressly reserves such decisions to the District Court, not the Board.  Second, the Board's argument that the issues presented are "of the type 'regularly adjudicated' by" the Board is incorrect – the Board has never presumed to determine (or redetermine, here) what is relevant to whether interim injunctive relief is "just and proper" in a 10(j) proceeding.  It may not do so.

Under the third factor, what is relevant under the Federal Rules and whether interim injunctive relief is "just and proper" under 10(j) is within the expertise of the District Court, and the Board has no expertise on what is or is not "relevant" to such determinations.  Similarly, "the Board has no expertise in developing a factual record for a constitutional adjudication." *McCormick*, 460 F. Supp. at 1347-48 (no expertise of the NLRB is required for resolution of a constitutional challenge).  The Board's citation to *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 22 (2012) – which involved a different agency that actually does have expertise routinely resolving federal employees' constitutional claims (MSPB) and a variety of other claims under the Civil Service Act – does not help the Board establish that it is an expert on such claims because it decides limited questions under the NLRA.  Dkt. 117 at 20.  Nor do the Board's decisions regarding the limits of its jurisdiction over religious schools or appellate decisions where federal courts of appeals weighed constitutional defenses make the Board an expert in constitutional claims, or the Federal Rules – much less whether injunctive relief is just and proper.

### D.    The Court Already Has Jurisdiction and May Use the All Writs Act to Protect that Jurisdiction

The Board's arguments against application of the All Writs Act (Dkt. 117 at 21) ignore that this Court already has jurisdiction of this case under Section 10(j). The Court's jurisdiction is not dependent on the All Writs Act.  The Board has attempted to interfere with the Court's exclusive jurisdiction under Section 10(j).  For the reasons already identified, the Court's intervention is necessary here because the Board's action interferes with the Court's exclusive jurisdiction under Section 10(j).

To support its claim that the AWA would not aid the Court's jurisdiction because "parallel litigation" must be "on all fours" with "another suit," the Board cites cases involving a wholly different principle, as even a cursory glance at those cases reveals:  when two "federal district

23

courts" have "duplicative litigation" to each other.  *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997); *Grider v. Keystone Health Plan Cent., Inc*., 500 F.3d 322, 323 (3d Cir. 2007) ("This appeal requires us to explore the limits of the All Writs Act, 28 U.S.C. § 1651(a), as it relates to actions by one federal court that may affect those *in a different federal court*.").  This line of cases (regarding *Colorado River* abstention) has absolutely no application here.  Dkt. 117 at 22-23.

The requested relief is agreeable to the principles and usage of law for the reasons already outlined in Starbucks's opening brief. Dkt. 109 at 29-38. Again, the Board's argument (Dkt. 117 at 23) that Starbucks could raise its constitutional claims before the Board ignores that the Board has neither expertise to consider such issues nor jurisdiction to rule on counterclaims.  The Board apparently sees no limit to the claims and issues over which it can seize control from this Court.  Further, the Board's argument that enjoining its *Guess?* Complaint would violate the separation of powers is truly ironic, given that the Board is trying to usurp the Court's jurisdiction and nullify the Court's 10(j) rulings.  Dkt. 117 at 24-25.  The Board is seeking to redetermine relevance and reweigh the competing interests for itself in the *Guess?* Complaint and ALJD, making the Board master of its own litigation.  This violates the constitutional separation of powers by housing in the same federal agency the power to bring litigation in federal court to enforce the NLRA and judge for itself whether discovery is relevant and punish discovery with which it disagrees.  An ALJ of the Board reweighing and deciding the propriety of discovery requests already blessed by the District Court in the 10(j) Litigation further violates the separation of powers and the statutory scheme under Section 10(j).  Lastly, the Board's delay argument ignores that it issued the *Guess?* Complaint and the ALJD while the Court held this action in abeyance pending the outcome of the Board's and Union's failed bids for AWA relief at the Second Circuit.

## V.     CONCLUSION

For all of the foregoing reasons and the reasons stated in its opening brief, the Court should

lift the abeyance on Starbucks' motion for sanctions, hold the Subpoenaed Non-Parties in

contempt, enjoin the Board's and General Counsel's prosecution of the *Guess?* Complaint, and

award Starbucks other relief as requested – or dismiss the 10(j) petition.

Dated: August 4, 2023

/s/ *Jeffrey S. Hiller*
David A. Kadela (*Pro Hac Vice*)
Jeffrey S. Hiller (*Pro Hac Vice*)
LITTLER MENDELSON, P.C.
41 South High Street, Suite 3250
Columbus, OH 43215
Tel: 614-463-4201
Fax: 614-573-7475
Email: dkadela@littler.com
      jhiller@littler.com

Jonathan Levine (*Pro Hac Vice*)
Adam-Paul Tuzzo (*Pro Hac Vice*)
LITTLER MENDELSON, P.C.
111 East Kilbourn Ave., Suite 1000
Milwaukee, WI 53202
Tel: 414-291-5536
Fax: 414-291-5526
Email: jlevine@littler.com
      atuzzo@littler.com

Brittany L. Stepp (*Pro Hac Vice*)
LITTLER MENDELSON, P.C.
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102
Tel: 267-402-3124
Fax: 267-402-3131
Email: bstepp@littler.com

Sam P. Wiles (Bar No. 5759725)
LITTLER MENDELSON, P.C.
375 Woodcliff Drive, Suite 2D
Fairport, NY 14450
Tel: 585-203-3400
Fax: 585-203-3414
Email: swiles@littler.com

*Attorneys for Respondent*
*Starbucks Corporation*

25

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 4, 2023, I caused a copy of the foregoing *Reply to Petitioner's Response to Motion to Lift Abeyance on Motion for Sanctions and Petition For Writ Of Injunction Or, In The Alternative, Motion To Dismiss* to be e-filed and served via email upon the following:

**Alicia Pender Stanley**
National Labor Relations Board
11A Clinton Avenue, Room 342
Albany, NY 12207
Email: *alicia.pender@nlrb.gov*

**Caroline V. Wolkoff**
National Labor Relations Board
11A Clinton Avenue, Room 342
Albany, NY 12207
Email: *cwolkoff@nlrb.gov*

**Jessica Lynn Cacaccio**
National Labor Relations Board
130 S. Elmwood Avenue, Suite 630
Buffalo, NY 14202
Email: *jessica.cacaccio@nlrb.gov*

**Linda M. Leslie**
National Labor Relations Board
130 S. Elmwood Avenue, Suite 630
Buffalo, NY 14202
Email: *linda.leslie@nlrb.gov*

**Ian H. Hayes**
Hayes Dolce
135 Delaware Avenue, Suite 502
Buffalo, NY 14202
Email: *ihayes@hayesdolce.com*

*/s/ Jeffrey S. Hiller*

**UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
THIRD REGION**


**STARBUCKS CORPORATION**


      **and**                                                 **Case 03-CA-304675**


**WORKERS UNITED**


**GENERAL COUNSEL'S BRIEF IN SUPPORT OF CROSS-EXCEPTIONS TO THE
DECISION OF THE ADMINISTRATIVE LAW JUDGE**

Pursuant to Section 102.46(e) of the Board's Rules and Regulations, Counsel for the General Counsel hereby submits this Brief in Support of Cross-Exceptions to the Decision of Administrative Law Judge Charles Muhl ("ALJ"), dated March 12, 2023, in the above-captioned case. Under separate cover, the General Counsel also files with the Board on this date an Answering Brief to Starbucks Corporation's ("Respondent") exceptions. It is respectfully submitted that in all respects, other than what is excepted to herein, the findings of the ALJ are appropriate, proper, and fully supported by the credible record.

**I.     PRELIMINARY STATEMENT**

On May 12, 2023, ALJ Muhl issued a decision ("ALJD") in which he rightly found that Respondent violated Section 8(a)(1) of the Act by serving subpoenas duces tecum on 19 of its current and former employees in addition to two union representatives and the Custodian of Records for Workers United ("Union") in connection with the Section 10(j) proceeding *Leslie v.*

**EXHIBIT A**

Regardless, the balancing test is unlikely to meaningfully weaken a respondent's case in either situation. It specifically protects from disclosure irrelevant information, information sought for an unlawful objective, and information over which employees' have a greater confidentiality interest than a respondent does in obtaining the documents. Irrelevant and unlawfully-sought information is not necessary to a respondent's case and therefore its absence cannot weaken it. Likewise, if a respondent's need for the information to mount its case is great relative to employees' confidentiality interests, it stands to reason that it will be entitled to it under the framework. And, even when employees' Section 7 confidentiality interests are greater than a respondent's need, the determination does not preclude a respondent from mounting a defense based on other evidence that appropriately protects employee confidentiality interests. Indeed, the ALJ offered examples of how a Respondent might do so in his decision. Rather than demanding identifying information about employees' Section 7 activities, he noted that a Respondent could seek other information, such as the number but not the names of employees engaged in certain organizing activities and participation at union meetings.

Nor do the Federal Rules of Civil Procedure ensure adequate protections for employee interests in the absence of applying the *Guess?* framework, as the ALJ appears to suggest in his dicta. As he separately noted when finding that the Board has jurisdiction over this case:

> [U]nder the Federal Rules of Civil Procedure (FRCP), the district court has the exclusive authority to determine if and what discovery is allowed in the 10(j) proceeding. But the legal question in this case is not whether discovery should be allowed at all in the 10(j) proceeding and, if so, what document requests are permissible under the FRCP. Rather, the question is whether specific document requests made by the Respondent in the 10(j) proceeding constitute unfair labor practices under the Act. Jurisdiction over that question rests solely with the Board.

---

by the ALJ, at least with respect to the 8(a)(1) allegations. The General Counsel cannot be accused of "weakening" Respondent's theoretical defenses simply by enforcing the Act.

**EXHIBIT A**

Thus, Respondent violated Section 8(a)(4) of the Act by serving subpoenas duces tecum in connection with a 10(j) proceeding on the General Counsel's witnesses in the underlying administrative matter.

## III.   CONCLUSION

For the reasons set forth above, the General Counsel respectfully requests that the Board grant her Cross-Exceptions to the Decision of the Administrative Law Judge and issue an appropriate order that Respondent be found to have committed the additional violation of Section 8(a)(4) of the Act. The General Counsel further requests that the Board issue an order otherwise affirming and adopting the Decision and Recommendations of the ALJ, except to the extent excepted herein.

**DATED** at Albany, New York, this 14th day of July, 2023.

Respectfully submitted,

_____/s/_____

**Caroline V. Wolkoff**
Counsel for the General Counsel
National Labor Relations Board, Region Three
Leo W. O'Brien Federal Building
11A Clinton Avenue, Room 342
Albany, New York 12207-2350
Phone: (202) 674-5235
Email: cwolkoff@nlrb.gov

15

**EXHIBIT A**

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**THIRD REGION**


**STARBUCKS CORPORATION**


   **and**                **Cases 03-CA-304675**


**WORKERS UNITED**



**GENERAL COUNSEL'S ANSWERING BRIEF**
**TO RESPONDENT'S EXCEPTIONS TO THE DECISION TO THE**
**ADMINISTRATIVE LAW JUDGE**



Submitted by:


Caroline V. Wolkoff
Counsel for the General Counsel
National Labor Relations Board, Region Three
Leo W. O'Brien Federal Building
11A Clinton Avenue, Room 342
Albany, New York 12207-2350
Phone: (202) 674-5235
Email: cwolkoff@nlrb.gov


**EXHIBIT B**

### III.     ARGUMENT

**a.  The ALJ properly concluded that the Board has jurisdiction to decide whether Respondent's subpoenas duces tecum violated the Act [EXCEPTIONS 8-12, 42, 45]**

Respondent excepts the ALJ's determination that the Board has jurisdiction to decide whether subpoenas that seek to uncover Section 7 activity violate Section 8(a)(1) of the Act.  In that regard, it wholly ignores that the Board has exclusive jurisdiction to determine the existence of unfair labor practices, which is precisely the issue in this matter.  Indeed, Respondent effectively seeks to strip the Board of its exclusive jurisdictional authority to determine the existence of unfair labor practices by conflating the district court's authority to determine the proper scope of discovery under the Federal Rules of Civil Procedure ("FRCP") with the separate question of whether individual discovery requests constitute unfair labor practices.

Fortunately, the ALJ wholly understood the jurisdictional framework here.  As he explained, the district court has authority to determine if and what discovery is allowed in a 10(j) proceeding while the Board has exclusive jurisdiction to determine whether specific requests constitute unfair labor practices.  (ALJD 5-6.)  He then rightly identified that the issue in the case was not whether the document requests were permissible under the FRCP but "whether specific document requests made by Respondent in the 10(j) proceeding constitute unfair labor practices under the Act."  (ALJD 5-6.)

In rightly identifying the issue, the ALJ correctly cited longstanding Supreme Court precedent, *Meyers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 49 (1938), for the proposition that the Board has sole jurisdiction to determine the existence of unfair labor practices.  (ALJD 6.) He further noted that the Board is not deprived of that jurisdiction simply because the district court has concurrent jurisdiction in the 10(j) proceeding, as the Supreme Court acknowledged in *NLRB*

**EXHIBIT B**

Respondent's exceptions related to the ALJ's ordered remedies should thus be denied.

## IV.    CONCLUSION

For the foregoing reasons and for any additional reasons the Board identifies, the General Counsel respectfully requests that the Board deny Respondent's Exceptions in their entirety.

**DATED** at Albany, New York, this 14th day of July 2023.

Respectfully submitted,

/s/

_____

Caroline V. Wolkoff
Counsel for the General Counsel
National Labor Relations Board
Leo O'Brien Federal Building
11A Clinton Avenue – Room 342
Albany, New York 12207-2350
Telephone: (716) 398-7022

**EXHIBIT B**