UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



LINDA M. LESLIE, Regional
Director of the Third Region of
the National Labor Relations
Board for and on behalf of the
National Labor Relations Board,

Petitioner,

v.

22-CV-478 (JLS)

STARBUCKS CORPORATION,

Respondent.

## DECISION AND ORDER

In this proceeding, the National Labor Relations Board (the "NLRB") seeks an injunction under Section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j).

Currently before the Court are three motions: (1) the NLRB's motion to stay the proceeding in this Court pending further administrative proceedings on its *Guess?* complaint or, alternatively, for reconsideration of this Court's discovery order to conform to the ALJ's decision on the *Guess?* complaint; (2) the union's motion for reconsideration of the discovery order to conform to the ALJ's decision on the *Guess?* complaint,[1] to stay enforcement of the discovery order until Starbucks complies with ALJ Muhl's decision on the *Guess?* complaint or, alternatively, to

---

[1] One form of this reconsideration request asks the Court to quash the subpoenas in their entirety.

certify the question whether the discovery order should be enforced in light of ALJ Muhl and ALJ Rosas's decisions; and (3) Starbucks' motion to lift the abeyance on its motion for contempt/sanctions, to grant its petition for a writ of injunction or, alternatively, to dismiss the NLRB's 10(j) petition.

Ultimately, the NLRB asks this Court to issue a 10(j) injunction on the record before it, insisting that the Court has no need for—and no right to see—the subpoenaed documents. In other words, the NLRB, as Petitioner, attempts to adjudicate for itself the scope of proper discovery in this 10(j) proceeding, notwithstanding this Court's existing discovery order resolving that very issue. This, Petitioner cannot do.

## I.    Governing Rules

A 10(j) injunction "is an extraordinary remedy." *Kreisberg v. Healthbridge Mgmt., LLC*, 732 F.3d 131, 141 (2d Cir. 2013). A court deciding whether such an injunction is "just and proper" applies traditional "equitable principles 'in the context of federal labor laws.'" *Id.* at 141, 143 (citation omitted). Such injunctive relief is "just and proper," under the statute, when it is necessary to prevent irreparable harm or to preserve the status quo. *Id.* at 142.

Relevant to this "just and proper" analysis is whether the employer—or the union or someone else—is responsible for chilling organizing activity. In the recent Sixth Circuit case involving Starbucks, that court recognized (as have other circuit courts) that chill causation, if supported by record evidence, could be a factor in the "just and proper" analysis. *McKinney v. Starbucks Corp.*, No. 22-5730, --- F.4th ---,

2

2023 WL 5030110, at *6–*7 (6th Cir. Aug. 8, 2023) (but concluding that there was

no evidence of inappropriate union conduct documented in the record) (citing *Arlook*

*v. S. Lichtenberg & Co., Inc.*, 952 F.2d 367, 374 (11th Cir. 1992) ("To justify the

denial of § 10(j) equitable relief on the basis of inappropriate union conduct . . . , the

conduct must be documented in the record.")). *See also Overstreet v. El Paso Elec.*

*Co.*, 176 F. App'x 607, 609–10 (5th Cir. 2006) (distinguishing *Arlook*, and citing

"other evidence [in the record] demonstrat[ing] that the Union publicized [the

employee]'s firing and, in so doing, inculcated the air of intimidation"). These

decisions are consistent with the idea that, if a union (or others acting in

cooperation with a union) created a narrative that itself had a "chilling effect" on

organizing activities, such conduct should not be attributed to the employer.

## II.   Background

In the instant case, the NLRB came to this Court seeking a 10(j) injunction

that would enjoin Starbucks from various claimed unfair labor practices during the

pendency of its underlying administrative case. Eleven months ago, after

considering all written and oral argument on the point, the Court issued the

discovery order, which permitted certain items of discovery subpoenaed by

Starbucks relevant to the question whether such an injunction would meet the

statutory "just and proper" requirement.

In the discovery order, the Court addressed the union's motion to quash the

subpoenas, as well as Petitioner's similar motion and motion for a protective order.

*See* Dkt. 49. The Court rejected the blanket privilege/protected matter arguments,

set forth a process for articulating any specific privilege concerns, and addressed the undue burden arguments on a request-by-request basis. Ultimately, the Court quashed some document requests, while allowing others, including those that might bear on the issue whether a person or entity other than Starbucks had a role in causing a chill of organizing activities.

Chill causation could prove to be an important factor in this 10(j) proceeding. And that possibility was an animating reason for the discovery order. In other words, to decide whether an injunction is "just and proper," the Court must know and consider whether the chill complained of is attributable to those other than Starbucks. *See McKinney*, --- F.4th ---, 2023 WL 5030110, at \*6–\*7; *Arlook*, 952 F.2d at 374; *Overstreet*, 176 F. App'x at 609–10. Any chill attributable to others may narrow or limit the scope of any injunction against Starbucks. As such, the employer must have an opportunity, in the 10(j) proceeding, to obtain documents that may shed light on this relevant issue.

The Court had set an October 2022 deadline for the production of subpoenaed documents and/or any privilege logs. In the meantime, the Court had set a schedule for the ultimate determination of the injunction issue after a scheduled hearing. *See* Dkt. 49, at 8–9. But no one produced the subpoenaed documents or any privilege logs, and the hearing never happened.

Instead, Petitioner commenced another administrative case—this one without precedent—alleging that the Court-approved subpoenas issued by Starbucks were themselves unfair labor practices (the "*Guess?* Complaint"). In the

meantime, Petitioner and the union petitioned the Second Circuit for relief, which

that court rejected on procedural grounds.  *See* Dkt. 79.

Petitioner moved forward with its administrative *Guess?* Complaint, which

resulted in a decision from the NLRB's ALJ.  The ALJ recognized that the

administrative complaint was unprecedented.  *See* Dkt. 117-2, at 7 ("To my

knowledge, this is the first Board case involving this factual situation"—*e.g.*, where

"the General Counsel is a party in the separate proceeding while simultaneously

prosecuting alleged unfair labor practices arising out of that proceeding.").  The ALJ

also recognized that Petitioner and the union were "utilizing th[e] unfair labor

practice case [before him] to effectively challenge the district court's discovery

rulings," citing the fact that the union "waited until after the district court's adverse

discovery order" to file the unfair labor practice charge.  *Id.*  And the ALJ

acknowledged that Petitioner and the union were "using *Guess?* not just as a shield

to protect employee confidentiality interests, but as a sword to weaken Respondent's

10(j) defense and obtain an injunction."  *Id.*

Nevertheless, the ALJ ruled against Starbucks, and against nearly all of the

subpoena requests approved by this Court, while conceding the relevance of some of

them.  The ALJ's remedy includes forcing Starbucks to withdraw the subpoena

requests approved by this Court and all efforts to enforce them.

## III.   Analysis

Successful thus far in its own tribunal, the NLRB now seeks to have this

Court decide the 10(j)-injunction proceeding without the benefit of Court-ordered

documents that the NLRB and the union do not want Starbucks or this Court to see. In sum, then, compliance with the discovery order and the subpoenas, as limited and authorized by the Court, has not occurred. The union has refused to comply, and the NLRB has enabled that obstruction.

The NLRB essentially posits that this Court nevertheless should: (1) enjoin an employer without giving that employer a fair opportunity to defend itself; (2) endorse this hide-the-ball tactic and decide the matter without the benefit of certain "just and proper" evidence; and (3) abide the NLRB's own determination of what discovery might be permissible in a proceeding it commenced before this Court. Such conduct, by a government petitioner, should not be tolerated by this Court.

Federal courts have dismissed NLRB proceedings seeking interim relief for failure to comply with court discovery orders. In one involving the NLRB's request for relief under 10(l),[2] the district court saw "no reason why normal discovery limited to the issues raised by the petition for an injunction should not be required" because "[n]either the Federal Rules nor any statute exclude[d] . . . 10(l) proceedings therefrom." *Madden*, 229 F. Supp. at 492. The court dismissed the proceeding because the petitioner, a Regional Director for the NLRB, failed to comply with the court's orders to answer certain deposition questions. *See id.*

---

[2] In that case, the Court cited a 10(j) case to support its conclusion, recognizing that the facts presented were similar. *Madden v. Milk Wagon Drivers Union*, 229 F. Supp. 490, 492 (N.D. Ill. 1964).

Likewise, the Tenth Circuit affirmed dismissal of a 10(l) proceeding, where the district court ordered production of certain documents after deciding a motion to quash the subpoena. *See Sperandeo v. Milk Drivers and Dairy Emps.*, 334 F.2d 381, 384–85 (10th Cir. 1964). The court stated that the proceeding "was brought by the [petitioner] in his official governmental capacity, [but] he [was] in no different position than any ordinary litigant and [was], therefore, bound by the provisions of the Federal Rules of Civil Procedure in the same respects as any ordinary litigant." *Id.* at 384. In other words, "[t]he Government as a litigant is . . . subject to the rules of discovery." *Id.* (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958)) (internal quotation marks omitted).

As to the NLRB's position that it could decide privilege questions for itself, the court said: "It is for the Court, and not the governmental agency or the executive branch, to determine whether documents sought to be withheld under a claim of privilege are entitled to protection of that privilege." *Id.* at 384. The court noted that the NLRB sought relief in "an equitable action in which the maxims of equity are fully applicable" and that, "under the express terms of the statute[,] the [district] court ha[d] the discretionary power to issue or deny an injunction." *Id.* at 385. As a result, when the NLRB "refused to produce the documents in response to the court's order, the court properly . . . dismissed the case." *Id. Cf. N.L.R.B. v. Modern Drop Forge Co.*, No. 96-3735, 1997 WL 120572, at *1–*3 (7th Cir. Mar. 14, 1997) (recognizing that, on a proper record, dismissal of a 10(j) proceeding for

7

refusal to comply with court-ordered discovery might be proper, and noting that the court could not resolve the privilege issue on appeal in the abstract).

The same is true here. The NLRB—Petitioner in this 10(j) proceeding—may not decide for itself what discovery is permissible. The NLRB nevertheless has elected to thwart the Court's discovery order, using the *Guess?* Complaint to re-litigate the discoverability of documents already addressed by this Court. This approach is without precedent in the 10(j) context and without any basis in statute or caselaw. Petitioner knew that, yet proceeded anyway.

The D.C. Circuit captured the equitable principles involved here when addressing an ALJ's refusal to permit a subpoena in an unfair labor practice proceeding: "The proceeding is . . . a complaint pressed by the Board itself against the party who asserts the need for the testimony. It is *repugnant* to notions of fairness for the government to seek sanctions for alleged wrongdoing while withholding from the proceeding evidence that would demonstrate innocence." *Drukker Comm'cns, Inc. v. N.L.R.B.*, 700 F.2d 727, 733 (D.C. Cir. 1983) (Scalia, J., for the Court) (emphasis added).

It is repugnant here as well. Thus, given these facts and the caselaw above, dismissal of the 10(j) petition is required—unless Petitioner certifies, by September 1, 2023, that she has terminated all efforts to impede or frustrate this Court's discovery order, including by termination of the *Guess?* proceeding.

This opportunity for Petitioner to remedy the issue aligns with the principles in Federal Rule of Civil Procedure 37 and corresponding caselaw, and allows

Petitioner to avoid dismissal.  Before dismissing a case under Rule 37, courts "may consider: '(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance.'" *Shcherbakovskiy v. Seitz*, 450 F. App'x 87, 88 (2d Cir. 2011) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)) (alterations omitted).  These factors provide guideposts for a court considering dismissal; the court need not count every factor against the non-compliant party to dismiss the case.  *See id.*  And the court need not impose lesser sanctions before dismissal, if dismissal is appropriate on the record.  *See id.*[3]

In this case, if Petitioner does not certify that she has terminated all efforts to impede or frustrate this Court's discovery order, as explained above, dismissal is appropriate.  In particular, as ALJ Muhl recognized, commencing the *Guess?* proceeding was an intentional effort to evade compliance with this Court's discovery order.  Nor are there effective lesser sanctions, as indicated by the repeated efforts, in this forum and others, to obtain relief from the discovery order.[4]  Moreover,

---

[3] Rule 37 dismissal applies equally to cases involving a government-entity party, as long as the court follows the prescribed procedure. *See Ingalls Shipbuilding, Inc. v. United States*, 857 F.2d 1448, 1454–55 (Fed. Cir. 1988) (concluding that dismissal under Rule 37 of the Rules for the U.S. Court of Federal Claims, which mirror the Federal Rules of Civil Procedure, was not appropriate because the government did not have specific notice of the court's discovery order or the opportunity to comply with the order).

[4] To the extent that Starbucks' contempt/sanctions motion could be viewed as a potential lesser sanction, it would not be effective.  That motion relates to the noncompliance of the subpoenaed nonparties.  So, even if the Court were to hold the

Petitioner issued the *Guess?* Complaint on December 15, 2022, and has persisted in that proceeding since that time, so the duration of noncompliance is lengthy. *See* Dkt. 71-1. And finally, the Court is now providing Petitioner notice through this decision and order. Under these circumstances, dismissal is appropriate. *See Shcherbakovskiy*, 450 F. App'x at 88–89 (affirming dismissal after considering four factors); *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365–68 (2d Cir. 1991) (affirming dismissal as to one party after considering Rule 37 principles).

## CONCLUSION

In sum, as discussed above, and for the additional reasons discussed on the record today, the Court:

1. DENIES the motions by Petitioner and the union to reconsider the discovery order in light of ALJ Muhl's decision on the *Guess?* Complaint;

2. DENIES the motions to stay by Petitioner and the union;

3. DENIES the union's request to certify the question whether the subpoenas should be enforced in light of ALJs Rosas and Muhl's decisions under 28 U.S.C. § 1292(b);

4. DENIES, without prejudice, Respondent's request for an injunction;

5. DENIES, without prejudice, Respondent's motion to lift the abeyance on its contempt/sanctions motion; and

---

subpoenaed nonparties in contempt, the issue of the NLRB's *Guess?* proceeding would persist.

6.  GRANTS Respondent's motion to dismiss the petition, unless Petitioner

certifies, by CM/ECF filing on or before September 1, 2023, that she has

terminated all efforts to impede or frustrate the discovery order, including

termination of the *Guess?* proceeding.

SO ORDERED.

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

Dated:      August 23, 2023
            Buffalo, New York